**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II) | Case No. 6:20-MD-02977-RJS-CMR |
| | Chief Judge Robert J. Shelby |
| | Magistrate Judge Cecilia M. Romero |
| *This document relates to all actions.* | |

**PLAINTIFFS' MOTION FOR AN ORDER COMPELLING**
**DEFENDANT PILGRIM'S PRIDE TO PRODUCE CERTAIN DOCUMENTS**
**FOR FAILURE TO SHOW THAT THE DOCUMENTS ARE PRIVILEGED**
**AND INCORPORATED MEMORANDUM IN SUPPORT**

**<u>TABLE OF CONTENTS</u>**

I.      BACKGROUND ................................................................................................ 3

II.     ARGUMENT ..................................................................................................... 7

     A.     The Producing Party Bears the Burden to Substantiate A Claimed Privilege and the Failure to Do So in A Timely Manner Waives the Privilege. .................... 7

     B.     PPC Cannot Withhold A Document When It Refuses to Expressly Identify The Relied Upon Privilege(s). ............................................................... 8

     C.     PPC Has Failed to Meet Its Burden to Demonstrate the Challenged Documents Are Protected By A Valid Privilege Claim........................................ 10

III.    CONCLUSION .............................................................................................. 13

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Doe v. Intermountain Health Care, Inc.*,
No. 2:18-cv-807-RJS, 2021 WL 425117 (D. Utah Feb. 8, 2021)................................ 2, 11

*EEOC v. BDO USA, L.L.P.*,
876 F.3d 690 (5th Cir. 2017) .................................................................................... 3, 8, 13

*Empire Bank v. Dumond*,
No. 13-cv-388, 2014 WL 12910485 (N.D. Okla. May 14, 2014) ..................................... 7

*Estate of Cummisky v. Estes Express Lines*,
No. Civ-11-42, 2012 WL 12846988 (W.D. Okla. Apr. 25, 2012).................................... 12

*In re Grand Jury Proceedings*,
616 F.3d 1172 (10th Cir. 2010) ............................................................................. 2, 7, 10

*In re Qwest Communications International Inc.*,
450 F.3d 1179 (10th Cir. 2006) .................................................................................. 7, 11

*LeBlanc v. Texas Brine Co.*,
No. 16-1026, 2017 WL 913801 (W.D. Okla. Mar. 7, 2017) ............................................ 7

*Leonen v. Johns-Manville*,
135 F.R.D. 94 (D.N.J. 1990)........................................................................................... 11

*Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982,
to "Custodian of Records, Ellison, Nelson & Kennedy"*,
697 F.2d 277 (10th Cir. 1983) .................................................................................. 3, 12

*Mold-Masters Ltd. v. Husky Injection Molding Systems Ltd.*,
No. 01-cv-1576, 2001 WL 1558303 (N.D. Ill. Dec. 6, 2001)......................................... 11

*O'Connor v. Boeing North American, Inc.*,
185 F.R.D. 272 (C.D. Cal. 1999) .................................................................................. 11

*Pacamor Bearings, Inc. v. Minebea Co.*,
918 F. Supp. 491 (D.N.H. 1996)..................................................................................... 11

*Peat, Marwick, Mitchell & Co. v. West*,
748 F.2d 540 (10th Cir. 1984) ................................................................................. 3, 8, 13

*Sonnino v. University of Kansas Hospital Authority*,
221 F.R.D. 661 (D. Kan. 2004)............................................................................. 7, 8, 13

*United States v. Bernard*,
    877 F.2d 1463 (10th Cir. 1989) ..................................................................................... 10

**Rules**

Federal Rule of Civil Procedure 26 ....................................................................... *passim*

Federal Rule of Civil Procedure 37 .............................................................................. 1

Plaintiffs[1] respectfully move this Court for an Order, pursuant to Federal Rules of Civil Procedure 26 and 37, compelling Pilgrim's Pride Corporation ("PPC") to produce certain documents from its privilege logs for failure to substantiate its privilege claims for these documents. Plaintiffs' motion addresses two categories of documents from PPC's privilege logs: (i) documents disclosed to third parties, thereby destroying any conceivable privilege; and (ii) ordinary business documents that are otherwise responsive to Plaintiffs' requests for production, that have been withheld merely because they were attached to putative attorney-client communications.[2]

Plaintiffs received four privilege logs from PPC that collectively address a shocking 24,849 documents. For the vast majority of the entries, the logs do not even identify the privilege relied upon by PPC to withhold the documents, and the only information available to Plaintiffs is objective metadata (*i.e.*, information like filename, author, recipient, date, etc., that was automatically extracted from the electronic copies of withheld documents).

After reviewing PPC's privilege logs, Plaintiffs raised a number of challenges. The thrust of these challenges was that many of the entries on the logs appeared, on their face, to lack a legitimate basis for being withheld. The parties conferred in person and through written correspondence,[3] but as previewed during the last joint status conference, the Parties are at impasse with respect to two categories of withheld documents.[4]

---

[1] "Plaintiffs" includes Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles Weaver, Melissa Weaver, Marc McEntire, Karen McEntire, and Mitchell Mason.

[2] Plaintiffs have also raised additional types of challenges concerning withheld documents and continue to meet and confer with PPC, which discussions may narrow the scope of any privilege issues that would require the Court's assistance for those challenges. Plaintiffs also raised similar privilege challenges concerning the privilege log produced by Perdue Foods, LLC and Tyson (collectively referring to Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Breeders, Inc. and Tyson Poultry, Inc.), but these challenges have been deferred.

[3] Pursuant to Local Rule 7.1(f), movant's counsel certifies that they have met and conferred with counsel for PPC multiple times by telephone and electronic mail concerning their respective privilege logs. Despite Plaintiffs' sincere attempts to resolve this dispute without Court intervention, PPC's refusal to supplement its privilege claims has placed the parties at an impasse. *See* Section I, *infra*. Movant's counsel also certifies that the distance between movant's offices and PPC's counsel's office (as well as the ongoing pandemic) renders a personal conference infeasible and unsafe.

[4] Plaintiffs reserve the right to raise other challenges to PPC's privilege logs, but these two challenges are ripe for adjudication now.

First, for documents disclosed to third parties, Plaintiffs asked PPC to identify an applicable privilege and provide information demonstrating that the disclosure does not negate the privilege. *See*, *e.g.*, *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184 (10th Cir. 2010) ("Because confidentiality is the key to maintaining the attorney-client privilege, a party waives the privilege when he voluntarily discloses to a third party material or information that he later claims is protected."). Second, for documents identified as "attachments" on the logs, Plaintiffs asked PPC to identify an applicable privilege and provide factual information demonstrating that the attachment itself warrants withholding (because the mere act of attaching a document to an attorney-client communication does not make the attachment privileged, otherwise a limitless number of documents could be withheld simply by sending them to a lawyer), or alternatively confirm that a duplicate of the otherwise responsive business document was produced to Plaintiffs separately. *See*, *e.g.*, *Doe v. Intermountain Health Care, Inc.*, No. 2:18-cv-807-RJS, 2021 WL 425117, at *2 (D. Utah Feb. 8, 2021) ("a document that was not privileged in the client's hands cannot magically become privileged merely by sending it to an attorney in search of legal advice … otherwise, a party could shield quantities of highly relevant and fully discoverable documentary evidence through the simple expedient of conveying copies to its attorney.") (internal quotation marks omitted).

PPC refused to provide the requested information. It contends that the stipulated ESI Order,[5] specifically ¶¶ 8.3(a) & 8.4, relieve PPC of the obligation to supplement the insufficient information provided for the challenged entries. PPC also argues that Plaintiffs must supply detailed reasons—beyond those already raised—setting forth why each particular entry is not privileged before PPC is even obligated to provide basic information about the nature and basis for the privilege or protection being asserted. PPC contends, for example, that its disclosures of the putatively privileged information to third parties—disclosures that, as a matter of course, destroy most claims of privilege—is an insufficient basis for Plaintiffs to even *request* additional information substantiating PPC's privilege claims.

PPC is wrong. Rule 26(b)(5) directs that when a party withholds discoverable

---

[5] The term "ESI Order" refers to the Stipulated Order Regarding the Production of Documents And Electronically Stored Information first entered in Case No. 6:17-cv-00033, Doc. No. 311 (April 7, 2020), and entered in MDL No. 2977 pursuant to MDL Pretrial Order No. 2, Doc. No. 56 (Feb. 12, 2021).

information on the basis of a privilege or protection, that party must (i) expressly state the claim and (ii) provide information that will enable the receiving party to assess the claim. Fed. R. Civ. P. 26(b)(5). It is also black letter law that "[i]t is not the [requesting party's] responsibility to sort out what is privileged from what is not; the burden of establishing a privilege is on the one who asserts it." *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to "Custodian of Recs., Ellison, Nelson & Kennedy"*, 697 F.2d 277, 280 (10th Cir. 1983) ("*Matter of Grand Jury 1982*"). Nothing in the ESI Order relied upon by PPC removes these bedrock obligations.

When Plaintiffs raised clear and cognizable challenges to entries on PPC's privilege logs, it was under a duty to supplement the subject entries in order to preserve any asserted privilege or protection. Because PPC has refused to satisfy its burden, after repeated requests by Plaintiffs, it waived the right to assert a privilege for the withheld documents. *See, e.g.*, *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) ("The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document."); *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (the "[c]ontinual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith").

Accordingly, these documents must be produced.

## I.   BACKGROUND

Relying on the ESI Order ¶ 8.3(a), PPC prepared initial privilege logs for documents it withheld on the basis of a claimed privilege. PPC collectively produced five privilege logs containing over 24,000 entries: (i) an August 31, 2020 log with 118 entries; (ii) a December 14, 2020 log with 28 entries; (iii) a December 21, 2020 log with 16 entries; and (iv) a December 22, 2020 log with 24,687 entries.[6]

Those log entries, with few exceptions, contain only objective metadata (*i.e.*, file name, subject line, author(s), recipient(s), cc('s), and date information) from the withheld documents. Not all of the metadata is available for every entry, particularly for documents identified as

---

[6] The four PPC privilege logs are grouped together at Exhibit 1 to the Declaration of David A. Langer in Support of Plaintiffs' Motion for An Order Compelling Defendant Pilgrim's Pride to Produce Certain Documents for Failure to Show That the Documents Are Privileged (the "Langer Decl."). PPC later provided a revised version of the August 31, 2020 log that corrected Privilege Family IDs in that log. *See* Letter from L. Alexander to D. Langer (June 3, 2021) (Langer Decl. Exhibit 2).

attachments on the logs (*i.e.*, an entry may be missing the author or date or other information). For some entries, the file name or subject line may reflect a claimed privilege. Also, PPC's August 31, 2020 log does identify the claimed privilege for its 118 entries, but only 16 of those entries include additional descriptive information about the *basis* for the claimed privilege. For the vast majority of PPC's thousands of other entries, the logs do not identify the privilege claimed or any descriptive information (beyond that included in the metadata) demonstrating it has met its burden to show that any privilege is properly invoked.

After reviewing PPC's privilege logs, Plaintiffs raised a number of concerns regarding the lack of information in the logs.[7] Plaintiffs explained that the absence of a stated privilege claim, as required under Rule 26(b)(5), constitutes a waiver of the privilege. Plaintiffs also identified a number of issues that either defeated a purported privilege claim (although, Plaintiffs were forced to guess what privilege was asserted for virtually all of the 24,000-plus withheld documents, as the logs omitted even that information)[8] or that render it difficult for Plaintiffs to assess whether a privilege was warranted for the subject documents.

PPC responded that it was not required under the terms of the ESI Order to identify a privilege claim for the documents listed in the logs.[9] PPC asserted that in the course of negotiating the ESI Order, the parties agreed to drop the requirement that they must actually identify the privilege relied upon to withhold otherwise responsive materials unless that information is available in metadata (which it virtually never is). Contrary to PPC's position, the ESI Order contemplated the use of metadata to ease PPC's burden in generating "initial privilege logs," and preserved Plaintiffs' ability to request additional information and supplemental logs where, as here, those initial metadata logs do not produce sufficient information to assess the claimed privilege. *See* ESI Order ¶¶ 8.3(e)-(f), 8.4. Nowhere does the ESI Order contemplate that the "initial" metadata privilege logs would serve as Plaintiffs' only avenue of assessing PPC's (often unspecified) claims of privilege, that PPC (or any Defendant) could rely on the absence of information in the initial metadata logs to preclude Plaintiffs' requests for information sufficient

---

[7] *See* Letter from D. Langer to R. Dahnke (Mar. 10, 2021) (Langer Decl. Exhibit 3).

[8] PPC's logs collectively identify a specific privilege for approximately 186 entries of its 24,687 entries (or only 0.7% of the entries).

[9] *See* Letter from R. Dahnke to D. Langer (Mar. 22, 2021) (Langer Decl. Exhibit 4).

to evaluate those privilege claims, or that the parties were waiving the plain requirements of Rule 26(b)(5) in all instances.

Despite all of this, PPC refused to supplement its logs, asserting that the ESI Order requires the parties to meet and confer about "particular entries" and that Plaintiffs had raised blanket challenges that do not require a response.[10] In short, by PPC's reading of the ESI Order, *the more widespread and persistent* PPC's failure to substantiate its claimed privileges, the more likely it is to get away with wrongfully withholding otherwise responsive documents. It cannot be true that by disregarding Rule 26(b)(5)'s mandates with greater frequency that PPC is thereby able to do so with greater success.

The parties held a meet and confer call on April 1, 2021 to discuss Plaintiffs' privilege challenges. PPC continued to refuse to provide supplemental information for their privilege claims. To facilitate the process, Plaintiffs offered to send a second letter addressing their challenges. In this letter, Plaintiffs described what steps PPC could take to address the issues Plaintiffs raised about the privilege log entries.[11] And while not relevant for this motion, Plaintiffs' letter also listed particular log entries for two other categories of challenges that Plaintiffs reserve the right to challenge at a later date.[12]

Responding to this letter, PPC continued to refuse to supplement its logs to address Plaintiffs' privilege challenges, other than providing additional information for a handful of exemplars listed in Plaintiffs' March 2021 letters.[13] PPC also asserted that Plaintiffs had no basis for their privilege challenges, thereby placing the burden on Plaintiffs to disprove the privilege assertions without even knowing what privilege(s) PPC was invoking for a given log entry: "Plaintiffs have demonstrated no reasonable basis to believe such entries are not privileged."[14]

For the two categories of challenges that are the subject of this motion—documents disclosed to a third party, and business documents attached to a putative attorney-client

---

[10] *See* Langer Decl. Exhibit 4 at 3.

[11] *See* Letter from D. Langer to K. Kroger, R. Dahnke and B. Justus (Apr. 13, 2021) (Langer Decl. Exhibit 5).

[12] *See id.* at 4-6.

[13] *See* Letter from R. Dahnke to D. Langer at 1-2 (May 17, 2021) (Langer Decl. Exhibit 6).

[14] *See id.* at 1.

communication—PPC refuses to revisit the log entries for these documents and continues to rely solely on the objective metadata in its logs.[15] Instead of supplementing its logs, PPC asserted that because there are a handful of case-specific instances where a privilege has been upheld for documents shared with third parties or business documents attached to communications with a lawyer, PPC "will not consider any of these purported reasons, without more, to be a sufficient basis for challenging the privilege assertion" and requesting supplemental information about the claimed privilege.[16]

With its May responses to Plaintiffs' April letter, PPC still had not identified an express privilege claim for each of the challenged documents (other than for the exemplars listed in Plaintiffs' March letters and the small number of entries discussed at p.4 above).[17]

The parties held another meet and confer on May 21, 2021, after the Joint Status Conference with the Court. During this discussion, PPC suggested it might consider Plaintiffs' challenges, particularly with respect to documents reflecting disclosures to third parties. But as of the date of this motion, PPC has offered nothing further either in support of its privilege claims or addressing Plaintiffs' challenges. The time for PPC to substantiate its privilege claims has long passed. This motion is ripe for adjudication.

---

[15] *See id.* at 4-5.

[16] *See id.*

[17] Plaintiffs exclude from the relief requested the 118 entries of PPC's August 31, 2020 log and the specific entries discussed by PPC in its May 17, 2021 letter (Exhibit 6) where it provides additional information for exemplars previously identified by Plaintiffs. As to the former, the August 31, 2020 log entries appear to concern attorney communications relating to the DOJ investigation for which PPC identified in its initial log specific privileges it relied upon to withhold the documents, as well as some additional information about the claimed privilege for 16 entries. Should any of these entries warrant a closer examination, Plaintiffs will raise that issue with PPC. With respect to the exemplars addressed by PPC in its May 17, 2021 letter, PPC withdrew its claim of privilege for some of those documents and produced them, and provided additional information for others, including identifying the applicable privilege. Based on the additional information provided, Plaintiffs still have concerns about certain entries, which Plaintiffs will first seek to resolve via the meet and confer process.

## II.     ARGUMENT

### A.     The Producing Party Bears the Burden to Substantiate A Claimed Privilege and the Failure to Do So in A Timely Manner Waives the Privilege.

The Supreme Court cautioned that withholding otherwise discoverable information based on a privilege is the exception because "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public … has a right to every man's evidence." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)). Accordingly, the "privilege must be strictly constructed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Grand Jury Proceedings*, 616 F.3d at 1183 (quoting *Trammel*, 445 U.S. at 50) (internal quotation marks omitted); *see also Empire Bank v. Dumond*, No. 13-cv-388, 2014 WL 12910485, at *2 (N.D. Okla. May 14, 2014) ("because all privileges are 'in derogation of the search for truth,' both [the attorney-client and attorney work product doctrine] are narrowly construed"); *LeBlanc v. Texas Brine Co.*, No. 16-1026, 2017 WL 913801, at *3 (W.D. Okla. Mar. 7, 2017) ("to balance this protection of confidentiality with the competing value of public disclosure, … courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable") (quotation marks omitted).

It follows from this limiting principle that the "burden of establishing the applicability of [a] privilege rests on the party seeking to assert it." *Grand Jury Proceedings*, 616 F.3d at 1183 (quotation marks omitted); *see also LeBlanc*, 2017 WL 913801, at *3 ("The party claiming the privilege has the burden to assert the privilege specifically.") *Empire Bank*, 2014 WL 12910485, at *2 ("the party asserting attorney-client privilege or work-product protection has the burden of clearly showing that either or both apply").

"The party must bear the burden as to specific questions or documents, not by making a blanket claim." *Grand Jury Proceedings*, 616 F.3d at 1183 (quotation marks omitted). "Blanket assertions of the privilege are ineffective because they disable the court and the adversary party from testing the merits of the claim of privilege." *LeBlanc*, 2017 WL 913801, at *3 (quotation marks omitted). This means the party must "provide sufficient information to enable the court to determine whether *each element* of the asserted [privilege] is satisfied." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 668 (D. Kan. 2004) (emphasis in original).

These requirements are also part of the Federal Rules of Civil Procedure. Rule 26 directs that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i)     expressly make the claim; and

(ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

Fed. R. Civ. P. 26(b)(5).

Importantly, a party cannot unreasonably withhold or delay providing the information necessary to satisfy its burden for each asserted privilege. *See West*, 748 F.2d at 542 ("The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document."); *Sonnino*, 221 F.R.D. at 668-69 (the party resisting discovery "has the burden to establish the existence of the privilege/immunity prior to the time that the Court is asked to determine its sufficiency and applicability"); *EEOC*, 876 F.3d at 697 ("Continual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith").

As the Tenth Circuit explained:

A party seeking to assert the privilege must make a clear showing that it applies. Failure to do so is not excused because the document is later shown to be one which would have been privileged if a timely showing had been made. Even though it does not seem seriously disputed that the privilege would have attached if the objection had been timely and adequately asserted, that such a showing had not been made when the trial court was called upon to make its ruling defeats the privilege. It is not enough that a document would have been privileged if an adequate and timely showing had been made.

*West*, 748 F.2d at 542.

### B.     PPC Cannot Withhold A Document When It Refuses to Expressly Identify The Relied Upon Privilege(s).

Rule 26(b)(5) and applicable law, as discussed above, unequivocally require PPC to expressly state the privilege it relies on to withhold documents. PPC's continued refusal to supply this basic information, repeatedly requested by Plaintiffs, waives its right to assert a privilege and warrants production of the challenged documents. *See West*, 748 F.2d at 542; *Sonnino*, 221 F.R.D. at 668-69; *EEOC*, 876 F.3d at 697.

It is obvious why a withholding party must state the privilege—if the requesting party

does not know what privilege is asserted, then they cannot evaluate whether the withholding party has met its burden to properly bar production of relevant information. As of the date of this motion, Plaintiffs do not know, for example, whether PPC is relying on the attorney-client privilege, the work product doctrine, the common interest privilege, or some combination of these as the basis for withholding virtually all documents on its logs (more than 99% of PPC's 24,000-plus entries). *See* n.8, *supra*.

PPC has no reasonable basis for refusing to comply with Rule 26(b)(5)'s requirement that it identify a privilege for each challenged document. PPC argues that it is burdensome for it to state the relied upon privilege because Plaintiffs challenge so many privilege log entries. There is no authority that allows a producing party to eschew the requirement that it identify the applicable privilege simply because there is a large volume of documents withheld. Indeed, if PPC were correct, then a party would be rewarded for liberally withholding documents. To the contrary, the caselaw states that the proponent of the privilege claim bears the burden to establish the validity of each privilege. It does not fall upon Plaintiffs to eschew the reasonableness of privilege challenges because they might be time consuming for PPC to sufficiently substantiate. During the meet and confer process, Plaintiffs offered to consider any suggestions by PPC to streamline the review of the challenged log entries, but PPC offered none.

PPC's argument that the terms of the ESI Order relieves it of its Rule 26(b)(5) duties is similarly unfounded. Nowhere does the ESI Order state the parties agree Rule 26(b)(5) does not apply or that the obligations under that rule are curtailed somehow. Paragraph 8.3(a) of the ESI Order allows a producing party to generate an ***initial*** privilege log using metadata from a database that contains the withheld documents, as opposed to requiring PPC to type all necessary information into a spreadsheet at the outset. This metadata log provision neither replaces, supersedes, nor obviates Rule 26(b)(5), it was meant to afford PPC a cost-effective way of generating an initial privilege log on the hopes that the initial log would be sufficiently detailed. If the initial privilege logs prove to be deficient (as they did here), they must be timely supplemented, or the claim of privilege is waived.

Nor did Plaintiffs agree to drop the Rule 26(b)(5) requirements. While negotiating Paragraph 8.3(a), PPC struck language incorporating these requirements for the "initial"

privilege log, ostensibly on PPC's hopes it could be ascertained through objective metadata.[18] Since the paragraph in question only addressed the creation of an ***initial*** log, Plaintiffs were willing to allow PPC to include less than all of the required information in its initial logs ***only***. PPC's assertion, however, that the process set forth in Paragraph 8.3(a) means it was no longer obligated to expressly state a privilege—even if the metadata failed to show it and Plaintiffs subsequently request for the information—has no support in the language of the ESI Order. Plaintiffs agreed to allow PPC to use a computer to populate certain fields in an initial privilege log—they did not agree to waive the requirements of Rule 26(b)(5) or any aspect of PPC's burden to establish the elements of each of their claims of privilege.

Indeed, PPC's argument conflicts with other provisions in the ESI Order. Paragraph 8.3(e) ***expressly states*** that if the receiving party challenges a claim of privilege, then the producing party will not unreasonably refuse to provide "more information about the basis of the asserted privilege in compliance with Fed. R. Civ. P. 26(b)(5)." And Paragraph 8.3(f) states the same obligation owed by the producing party for documents that were redacted for privilege.

In sum, PPC elected to omit the claimed privilege in its initial logs for almost all of the withheld documents. When Plaintiffs raised challenges to entries based on the limited objective information provided in the logs, PPC was required to identify the privilege doctrines it was relying on (and to provide information addressing Plaintiffs' challenges). PPC refuses to do so. Accordingly, it has failed to meet the express requirements of Rule 26(b)(5) and the documents covered by the challenged assertions of (often unspecified) privilege(s) must be produced immediately.

### C.   PPC Has Failed to Meet Its Burden to Demonstrate the Challenged Documents Are Protected By A Valid Privilege Claim.

Plaintiffs' motion concerns two categories of well recognized privilege challenges.

First, Plaintiffs challenged each entry reflecting disclosure of a withheld document to (or with) a third party. "Because confidentiality is the key to maintaining the attorney-client privilege, a party waives the privilege when he voluntarily discloses to a third-party material or information that he later claims is protected." *Grand Jury Proceedings*, 616 F.3d at 1184; *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989) ("Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." (citation omitted)).

---

[18] *See* Exhibit 4, at 2.

As the Tenth Circuit instructs, "the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *Qwest Commc'ns*, 450 F.3d at 1185 (quotation marks omitted). It is axiomatic that such disclosure destroys the privilege in most instances.

Second, Plaintiffs challenged each entry reflecting an attachment to a putative attorney-client communication. (For purposes of this motion, Plaintiffs will assume the originating communication is a valid attorney-client communication.) "Even if attorney-client privilege protects an email itself, attachments to the email are not privileged unless the attached document is privileged when the client created it." *Intermountain Health Care, Inc.*, 2021 WL 425117, at *2; *see also Mold-Masters Ltd. v. Husky Injection Molding Sys. Ltd.*, No. 01-cv-1576, 2001 WL 1558303, at *3 (N.D. Ill. Dec. 6, 2001) ("a party objecting to the disclosure of a document with an attachment must prove that both the document and the attachment individually satisfy the requirements of the applicable privilege or doctrine"); *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999) ("As to documents subject to the attorney-client privilege or work product doctrine, the plaintiffs are correct in contending that not all attachments to, or enclosures with, such documents are necessarily protected by the privilege."). It is black-letter law that, without more, these documents are not privileged.[19]

PPC refused to address Plaintiffs' straightforward privilege challenges to these two categories of documents. PPC asserted it did not know which log entries were subject to these challenges, and it argued Plaintiffs were not following the challenge process articulated in the ESI Order ¶ 8.4. Both arguments are meritless.

PPC's claim that it is uncertain which log entries are subject to these two challenges is

---

[19] *See also*, *e.g.*, *Intermountain Health Care*, 2021 WL 425117, at *2 ("[A] document that was not privileged in the client's hands cannot magically become privileged merely by sending it to an attorney in search of legal advice. Were the rule otherwise, a party could shield quantities of highly relevant and fully discoverable documentary evidence through the simple expedient of conveying copies to [its] attorney.") (internal quotation marks omitted); *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 511 (D.N.H. 1996) ("Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with the attorney." (citation omitted)); *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (same).

specious. PPC identified, collected and logged all of the withheld documents. It knows which entries involve a third party. And it knows which entries are attachments, as these documents are identified as such on the logs. PPC does not need Plaintiffs to list these entries because the subject entries are readily identifiable. Indeed, the documents are more readily identifiable to PPC than to Plaintiffs. As PPC itself conceded, one can "easily filter" its logs and identify the challenged document.[20]

PPC's assertion that Plaintiffs are not following the process set forth in Paragraph 8.4 of the ESI Order is wrong. The nature of each challenge is plain and straightforward. The particular entries that are the subject of each challenge are known to and identifiable by PPC. It is PPC's burden, pursuant to Rule 26(b)(5) and applicable law (as discussed herein), to demonstrate these challenges do not defeat the claimed privilege (once PPC has identified the claimed privilege) for each entry. Yet PPC contends Plaintiffs' challenges to documents disclosed to third parties and attachments to attorney-client communications are "categorical" or "blanket" challenges and that Plaintiffs must instead bring challenges to "particular" entries. Again, this erroneously suggests that the more widespread the issues with PPC's privilege logs, the more likely they are to circumvent Rule 26(b)(5).

It is unclear what more PPC believes Plaintiffs need to do. Plaintiffs are not limited in the number of privilege challenges they may raise under the law or the language of Paragraph 8.4 (or under Paragraphs 8.3(e) and (f)). If PPC believes some (or even all) of the challenged documents can easily be defended by facts known to it, or in reliance on certain legal principles, then PPC should have supplied that information in compliance with its burden to establish each element of each claimed privilege after Plaintiffs requested it back in March 2021. As mentioned above (at Part II.B), Plaintiffs were willing to entertain recommendations on how to streamline the challenge process, but PPC offered none.

If PPC is suggesting the word "particular" in Paragraph 8.4 means that Plaintiffs must provide detailed reasons demonstrating a particular entry is not privilege, that is clearly improper because it is not Plaintiffs' "responsibility to sort out what is privileged from what is not." *Matter of Grand Jury 1982*, 697 F.2d at 280; *Estate of Cummisky v. Estes Express Lines*, No. Civ-11-42, 2012 WL 12846988, at *2 (W.D. Okla. Apr. 25, 2012) ("By forcing Plaintiff to

---

[20] *See* Exhibit 6, at 4.

attempt to overcome the privilege, Defendant seeks to shift the burden to Plaintiff. Of course the law does not support this approach."). It also would mean that PPC could preclude Plaintiffs from challenging claims of privilege by withholding sufficient information to evaluate the claim with particularity. And in any event, Plaintiffs have identified documents that are of particular concern for particular reasons, *e.g.*, documents sent to third parties.

Plaintiffs have complied with the procedures set forth in the ESI Order. They have identified reasonable bases, recognized in numerous cases, for why specific entries on PPC's logs are unlikely to be privileged (and have not otherwise been shown to be). It was PPC's duty to demonstrate that each element of a claimed privilege was met in order to withhold each challenged document. It has refused to do so. Accordingly, PPC has failed to meet its burden, under Rule 26(b)(5) and applicable law, and therefore the challenged documents must be produced because PPC has waived the right to assert a privilege. *See*, *e.g.*, *West*, 748 F.2d at 542; *Sonnino*, 221 F.R.D. at 668-69; *EEOC*, 876 F.3d at 697.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order compelling PPC to produce the following two categories of documents listed on PPC's privilege logs: (i) documents disclosed to third parties; and (ii) business documents attached to putative attorney-client communications that were not already produced to Plaintiffs.


Dated: July 2, 2021                                    Respectfully submitted,


                                                          /s/ Daniel J. Walker
                                                        Daniel J. Walker*
                                                        **BERGER MONTAGUE PC**
                                                        2001 Pennsylvania Avenue, NW, Suite 300
                                                        Washington, DC 20006
                                                        Telephone: (202) 559-9745
                                                        Email: dwalker@bm.net

                                                        Eric L. Cramer*
                                                        Patrick F. Madden*
                                                        **BERGER MONTAGUE PC**
                                                        1818 Market Street, Suite 3600
                                                        Philadelphia, PA 19103
                                                        Telephone: (215) 875-3000
                                                        Facsimile: (215) 875-4604

13

Email: ecramer@bm.net
Email: pmadden@bm.net

Gary I. Smith, Jr.*
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3270
Facsimile: (215) 985-3271
Email: gsmith@hausfeld.com

Michael D. Hausfeld*
James J. Pizzirusso*
Melinda R. Coolidge*
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: mhausfeld@hausfeld.com
Email: jpizzirusso@hausfeld.com
Email: mcoolidge@hausfeld.com

Samantha S. Derksen*
**HAUSFELD & CO. LLP**
12 Gough Square
London, EC4A 3DW
Telephone: +44 (0)20 7665-5000
Email: sderksen@hausfeld.com

Kimberly A. Fetsick*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
Email: kfetsick@hausfeld.com

***Co-Lead Counsel for Plaintiffs and the
Proposed Class***

M. David Riggs
Donald M. Bingham
Kristopher Koepsel
**RIGGS ABNEY NEAL TURPEN ORBISON &
LEWIS**

14

502 West Sixth Street
Tulsa, OK 74119
Telephone: (918) 699-8914
Facsimile: (918) 587-9708
Email: driggs@riggsabney.com
Email: don_bingham@riggsabney.com
Email: Email: kkoepsel@riggsabney.com

William A. Edmondson (OBA No. 2628)
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
528 N.W. 12th Street
Oklahoma City, OK 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
Email: dedmondson@riggsabney.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

Larry D. Lahman (OBA No. 5166)
Roger L. Ediger (OBA 19449)
**MITCHELL DECLERK, PLLC**
202 West Broadway Avenue
Enid, OK 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890
Email: ldl@mdpllc.com
Email: rle@mdpllc.com

Vincent J. Esades*
**HEINS MILLS & OLSON, PLC**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: vesades@heinsmills.com

Warren T. Burns*
**BURNS CHAREST, LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
Email: wburns@burnscharest.com

Gregory Davis*
**DAVIS & TALIAFERRO, LLC**
7031 Halcyon Park Drive Montgomery, AL
36117
Telephone: (334) 832-9080
Facsimile: (334) 409-7001
Email: gldavis@knology.net

Charles D. Gabriel*
**CHALMERS, BURCH & ADAMS, LLC**
North Fulton Satellite Office
5755 North Point Parkway, Suite 251
Alpharetta, GA 30022
Telephone: (678) 735-5903
Facsimile: (678) 735-5905
Email: cdgabriel@cpblawgroup.com

Larry S. McDevitt*
David M. Wilkerson*
**VAN WINKLE LAW FIRM**
11 North Market Street Asheville, NC 28801
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
Email: lmcdevitt@vwlawfirm.com
Email: dwilkerson@vwlawfirm.com

Harlan Hentges (OBA No. 17911)
**HENTGES & ASSOCIATES, PLLC**
102 East Thatcher Street
Edmond, OK 73034
Telephone: (405) 340-6554
Facsimile: (405) 340-6562
Email: harlan@organiclawyers.com

John C. Whitfield*
Caroline R. Taylor*
**WHITFIELD BRYSON & MASON, LLP**
19 North Main Street
Madisonville, KY 42431
Telephone: (270) 821-0656
Facsimile: (270) 825-1163
Email: john@wbmllp.com
Email: caroline@wbmllp.com

Jennifer S. Goldstein*
**WHITFIELD BRYSON & MASON, LLP**

5101 Wisconsin Avenue, NW Suite 305
Washington, DC 20016
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email: jennifer@wbmllp.com

J. Dudley Butler*
**BUTLER FARM & RANCH LAW GROUP,
PLLC**
499-A Breakwater Drive
Benton, MS 39039
Telephone: (662) 673-0091
Facsimile: (662) 673-0091
Email: jdb@farmandranchlaw.com

Daniel M. Cohen*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202)789-1813
Danielc@cuneolaw.com

David S. Muraskin*
**PUBLIC JUSTICE, PC**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 861-5245
Facsimile: (202) 232-7203
Email: dmuraskin@publicjustice.net

Kellie Lerner*
Matthew J. Geyer*
**ROBINS KAPLAN, LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
Email: KLerner@RobinsKaplan.com
Email: MGeyer@RobinsKaplan.com

Aaron Sheanin*
**ROBINS KAPLAN, LLP**
46 Shattuck Square, Suite 22
Berkeley, CA 94704

Telephone: (650) 784-4040
Facsimile: (650) 784-4041
Email: ASheanin@RobinsKaplan.com

M. Stephen Dampier*
**LAW OFFICES OF M. STEPHEN DAMPIER, P.C.**
55 North Section Street
 P.O. Box 161
Fairhope, AL 36532
Telephone: (251) 929-0900
Facsimile: (251) 929-0800
Email: dampier.steve@gmail.com

Kevin T. Shutte
**SHAPIRO BIEGING BARBER OTTESON, LLP**
5430 LBJ Fwy, Ste 1540
Dallas, TX 75240
Telephone: 214-377-0149
Email: kschutte@sbbolaw.com

Grant L. Davis*
Thomas C. Jones*
Timothy Gaarder*
Thomas E. Ruzicka, Jr.*
**DAVIS BETHUNE & JONES, LLC**
1100 Main St, Ste 2930
Kansas City, MO 64105
816-421-1600
Email: gdavis@dbjlaw.net
Email: tgaarder@dbjlaw.net
Email: tjones@dbjlaw.net
Email: truzicka@dbjlaw.net

Moneet Kohli, Esq.
1355 Taylor Street #3
San Francisco, CA 94108
Telephone: 781-354-3600
Email: moneet@kohli.com

Marsha Mason, Esq. Mason Law Firm LLC
P.O. Box 1837
Alexander City, AL 35011
Telephone: 256-329-1313

18

Robert Bonsignore, Esq.
**BONSIGNORE, PLLC 3771**
Meadowcrest Drive
Las Vegas, NV 89121
781-350-0000
Email: rbonsignore@classactions.us

***Additional Class Counsel for Plaintiffs and
the Proposed Class***

* admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on this 2nd day of July, 2021, I electronically filed the foregoing Plaintiffs' Motion for an Order Compelling Defendant Pilgrim's Pride to Produce Certain Documents for Failure to Show that the Documents Are Privileged and Incorporated Memorandum in Support with the Clerk of this Court via ECF which will send notification of such filing to all counsel of record.

 */s/ Daniel J. Walker*
Daniel J. Walker (admitted *pro hac vice*)