UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II)<br><br>This Document Relates To: *All actions* | Case No. 6:20-MD-02977-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br>Magistrate Judge Cecilia M. Romero |

## DECLARATION OF CHRISTOPHER J. ABBOTT IN SUPPORT OF PILGRIM'S PRIDE'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

I, Christopher J. Abbott, declare as follows:

1. I am a member in good standing of the bar of the District of Columbia, the State of New York, and the Commonwealth of Massachusetts and an attorney at the law firm Weil, Gotshal & Manges LLP, representing Pilgrim's Pride Corporation ("Pilgrim's") in this matter.

2. The facts stated herein are true of my own personal knowledge or as provided to me by my colleagues at Weil, Gotshal & Manges LLP.

3. I submit this declaration in support of Pilgrim's Pride's Opposition to Plaintiffs' Motion for an Order Compelling Defendant Pilgrim's Pride to Produce Certain Documents for Failure to Show That the Documents Are Privileged (the "Motion").

4. Attached hereto as **Exhibit A** is a true and correct copy of an excerpt of Defendants' mark-up of the draft ESI protocol sent to Plaintiffs on February 14, 2020.

5. Attached hereto as **Exhibit B** is a true and correct copy of an excerpt of Plaintiffs' mark-up of the draft ESI protocol sent to Defendants on March 10, 2020.

1

6. On March 16, 2020, the Defendants at the time (Pilgrim's, Tyson, and Perdue) held a joint meet and confer with Plaintiffs to discuss the draft ESI protocol. Pilgrim's was represented by my colleague Robert Dahnke. The parties agreed that requiring privilege log descriptions as proposed by Plaintiffs defeated the purpose of an objective metadata log.

7. Attached hereto as **Exhibit C** is a true and correct copy of an excerpt of Defendants' mark-up of the draft ESI protocol sent to Plaintiffs on March 19, 2020.

8. Attached hereto as **Exhibit D** is a true and correct copy of an excerpt of Plaintiffs' mark-up of the draft ESI protocol sent to Defendants on March 23, 2020.

9. Attached hereto as **Exhibit E** is a true and correct copy of a March 10, 2021 letter from D. Langer to R. Dahnke.

10. Attached hereto as **Exhibit F** is a true and correct copy of a March 22, 2021 letter from R. Dahnke to D. Langer.

11. On April 1, 2021, Pilgrim's, Tyson, and Perdue held a joint meet and confer with Plaintiffs regarding Defendants' privilege logs. Pilgrim's was represented by my colleague Robert Dahnke.

12. Attached hereto as **Exhibit G** is a true and correct copy of an April 13, 2021 letter from D. Langer to R. Dahnke.

13. The letter attached as Exhibit G identified 104 specific log entries for which Plaintiffs sought further information. The log entries for PRIVID_23026 and PRIVID_24643 describe emails from "White, Nicholas (Legal Counsel)" to Pilgrim's executives and members of the Pilgrim's Board of Directors, with the subject line: "[Document preservation] [METADATA ALTERED FOR PRIVILEGED]." The log entries for STROUD_PRIVID_00004 to STROUD_PRIVID_00013 show messages sent from "Clayton Bailey* <[phone number]>" to

"Randy Stroud <[phone number]>" and vice versa. Clayton Bailey is Pilgrim's' longtime outside counsel.

14. Attached hereto as **Exhibit H** is a true and correct copy of a May 17, 2021 letter from R. Dahnke to D. Langer.

15. On May 21, 2021, Pilgrim's, Tyson, and Perdue held another joint meet and confer with Plaintiffs regarding Defendants' privilege logs. Pilgrim's was represented by my colleagues Robert Dahnke and Lauren Alexander. Defendants reiterated that the ESI protocol requires challenges to particular entries, and that Plaintiffs' most recent letter continued to have blanket challenges to the privilege logs. Defendants asked that Plaintiffs identify the specific entries for which they needed additional information. Plaintiffs stated that the inclusion of third parties on its own is enough to call into question a privilege withholding, and insisted that Defendants must go through the privilege logs and provide additional information any time there is a third party. Plaintiffs also stated that they were "not inclined" to generate a list of entries involving third parties. Defendants asked whether Plaintiffs had looked at each entry they were challenging, and Plaintiffs affirmed that they had (and that the most glaring point related to third parties). Defendants agreed to take back Plaintiffs' position and discuss further. Plaintiffs agreed to do the same, indicating that they wanted to resolve the issues soon *if* the parties were at an impasse. The parties agreed that they should reconvene.

16. Following the May 21, 2021 meet and confer, Pilgrim's reviewed the subject privilege logs to determine the burden of responding to Plaintiffs' various categorical challenges. Pilgrim's determined that providing information on every attachment, as Plaintiffs demanded, would require that Pilgrim's provide a privilege description for upwards of 13,000 documents. Because Pilgrim's had not previously drafted or coded this information when conducting its

privilege review, in reliance on the terms of the ESI Order, Pilgrim's would need to re-review over half the entries in its privilege logs (not including the parent emails). This would be a hugely time-consuming and burdensome effort, and would require Pilgrim's to incur all the costs involved in preparing a traditional privilege log (in addition to costs already incurred), which would defeat the purpose of the parties' negotiated metadata log agreement. Pilgrim's resolved to discuss this request further with Plaintiffs, in the hopes of coming up with a more efficient and less burdensome compromise.

17. Following the May 21, 2021 meet and confer, Pilgrim's also reviewed the privilege log entries that involved third parties, which Plaintiffs alleged defeat privilege claims. Pilgrim's determined that a number of supposed third parties were in fact Pilgrim's employees, agents, or outside counsel, and thus did not break privilege. Pilgrim's ascertained that identifying these individuals or email domains and explaining the nature of their relationship with Pilgrim's would not be overly burdensome, and decided to provide such information to Plaintiffs. For the remaining third party documents, Pilgrim's likewise decided to review each log entry and provide specific information on the basis of each privilege claim. Counsel for Pilgrim's conducted additional research to verify the identities and relationships of various apparent third parties, including speaking with the client, reviewing documents, and conducting internet research.

18. Finally, based on Plaintiffs' representation at the May 21, 2021 meet and confer that they had reviewed each entry challenged, Pilgrim's elected to provide additional information with respect to the 104 documents specifically identified in Plaintiffs' April 13, 2021 letter.

19. Pilgrim's drafted a letter to Plaintiffs reflecting the additional information regarding third parties and the specific entries Plaintiffs had challenged. The draft letter was being finalized

when Plaintiffs filed the instant Motion on Friday, July 2, 2021. Pilgrim's sent the letter and appendices with additional information to Plaintiffs the next business day.

20. Attached hereto as **Exhibit I** is a true and correct copy of the July 6, 2021 letter from L. Alexander to D. Langer.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of July, 2021.

Dated: July 20, 2021                              Respectfully submitted,

                                                  /s/ *Christopher J. Abbott*
                                                  Christopher J. Abbott