**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| **IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II)** | MDL No. 6:20-2977-RJS-CMR<br><br>Hon. Chief Judge Robert J. Shelby<br><br>Hon. Cecilia M. Romero |

**DECLARATION OF ERIC L. CRAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT WITH PERDUE
AND FOR CERTIFICATION OF THE SETTLEMENT CLASS**

I, Eric L. Cramer, Esq., declare and state as follows:

1.      I am Chairman of the law firm of Berger Montague PC, one of the two Court-appointed Interim Co-Lead Counsel ("Class Counsel") for Plaintiffs in the above-captioned action. I am a member in good standing of the State Bars of Pennsylvania and New York, and have been admitted *pro hac vice* in this Court. I am over 18 years of age and have personal knowledge of the facts stated in this Declaration. If called as a witness, I could and would testify competently to them.

2.      I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement with Perdue, which is being filed concurrently herewith. Attached as Exhibit A is a true and correct copy of the Settlement Agreement (the "Settlement") between Plaintiffs Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles B. Weaver, Melissa Weaver, Marc McEntire, Karen McEntire, Mitchell Mason, Anna Mason, Barry Mason, Jonathan Tipton, and Henry Randall Colvin (collectively, "Plaintiffs") and Defendant Perdue Foods, LLC ("Perdue" and together with Plaintiffs, the "Parties")

**Plaintiffs' Litigation Efforts to Date**

3.      Plaintiffs have briefed numerous pre-trial motions in four district courts and one federal bankruptcy court,[1] including, *inter alia*, a motion to stay discovery,[2] a motion to compel

---

[1] *In re: Broiler Chicken Grower Antitrust Litigation (No. II)*, No. 6:20-md-2977-RJS-CMR (Dec. 17, 2020) ("*Growers II*"); *Mason v. Tyson Foods, Inc*., 5:20-cv-07049-BLF (N.D. Cal. Oct. 8, 2020) ("*Mason*"); *Colvin v. Tyson Foods, Inc.*, 2:20-cvb-2464 (D. Kan. Sept. 18, 2020) ("*Colvin*"); *McEntire v. Tyson Foods, Inc.*, No. 1:20-cv-2764-PAB-NYW (D. Colo. Sept. 11, 2020) ("*McEntire*"); *In re: Sanderson & Koch Broiler Chicken Grower Litig.*, No. 7:18-cv-00031-D (E.D.N.C. Feb. 21, 2018) ("*Sanderson*"); *In re: Pilgrim's Pride Corp.*, No. 08-45664 (Bankr. N.D. Tex. Oct. 12, 2017) ("*Pilgrims*"); *In re: Broiler Chicken Grower Litigation*, No. 17-cv-0033-RJS (E.D. Okla. Jan. 27, 2017) ("*Growers*").

[2] Pls' Opp. To [144] Defs' Mot. to Stay Discovery, Growers (Aug 7, 2017), ECF 151.

arbitration,[3] motions to dismiss for failure to state a claim,[4] motions to dismiss for improper venue,[5] motions to dismiss for lack of personal jurisdiction,[6] a motion to enforce a bankruptcy discharge,[7] seriatim motions to dismiss under the "first to file" doctrine,[8] a motion to compel a third party's document production,[9] and a motion to compel production of purportedly privileged documents.[10]

4.      Plaintiffs made two petitions to the Judicial Panel on Multidistrict Litigation, through which they presented briefing and argument in favor of centralization and consolidation in

---

[3] Pls' Mem. of Law in Opp. to [192] Perdue's Mot. to Compel Arbitration & Dismiss or, in the Alternative, to Stay, *Growers* (Oct. 23, 2017), ECF 201; Decl. of Gary I. Smith, Jr. in Opp. to [191], [192], [193], [194], Defs' Mots. to Dismiss, *Growers* (Oct. 23, 2017), ECF 203.

[4] Pls' Resp. in Opp. to [193] J. Mot. to Dismiss Under Fed. R. Civ. P. 12(b), (3), & (6), *Growers* (Oct. 23, 2017), ECF 200; Decl. of Gary I. Smith, Jr. in Opp. to [191], [192], [193], [194], Defs' Mots. to Dismiss, *Growers* (Oct. 23, 2017), ECF 203; Plaintiffs' Resp. in Opp. to [193], [234] Defs' Corrected Suppl. Br. in Supp. of their Mot. to Dismiss, *Growers* (E.D. Okla. June 1, 2018), ECF 239; Pls' Mem. of Law in Opp. to [52] Defs' J. Mot. to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), *Sanderson* (Aug. 13, 2018), ECF 55.

[5] Pls' Omnibus Mem. of Law in Opp. to Koch's Mots. to Dismiss [191 & 194] for Lack of Personal Jurisdiction & Improper Venue & Sanderson's Mot. to Dismiss for Lace of Personal Jurisdiction and Improper Venue, *Growers* (Oct. 23, 2017), ECF 202; Decl. of Gary Smith in Opp. to Mots. to Dismiss [191 & 194], *Growers* (Oct. 23, 2017), ECF 203; Pls' Mem. of Law in Opp. to [193] Defs' J. Mot. to Dismiss Under Fed. R. Civ. P. 12(b), (3), & (6), *Growers* (Oct. 23, 2017), ECF 200; Plaintiffs' Resp. in Opp. to [193], [234] Defs' Corrected Suppl. Br. in Supp. of their Mot. to Dismiss, *Growers* (E.D. Okla. June 1, 2018), ECF 239.

[6] *Id.*

[7] Opp. to Reorganized Debtor's Mot. To Enforce Confirmation Order Against Growers [7222], *Pilgrim's* (Sept. 22, 2017), ECF 7227.

[8] Pls' Mem. of Law in Opp. to Sanderson's Mot. to Dismiss Under the First-to-File Rule, *Sanderson* (June 17, 2020), ECF 70; Pls' Resp. in Opp. to Defs' Mot. to Dismiss Pursuant to the First-to-File Rule, *McEntire* (Nov. 18, 2020), ECF 46.

[9] Pls' Mot. for an Order Compelling Non-Party House of Raeford Farms, Inc.'s Compliance with Subpoenas, *Growers II* (Mar. 1, 2021), ECF 60.

[10] Pls' Mot. for an Order Compelling Def. Pilgrim's Pride to Produce Certain Documents for Failure to Show that the Documents are Privileged & Incorporated Mem. in Support, *Growers II*, ECF 97 (July 2, 2021).

this Court.[11]

5.     Plaintiffs have also appeared to present argument on motions to dismiss before this Court,[12] on Pilgrim's motion to enforce its bankruptcy discharge,[13] as well as making regular appearances at status conferences to keep the Court abreast of the litigation's status and any percolating disputes or recent developments.[14]

### Plaintiffs' Discovery Efforts to Date

6.     Plaintiffs have engaged in substantial discovery to date, including the issuance of fifty-one subpoenas to non-parties, including Defendants' seventeen alleged Co-Conspirators, industry trade associations and non-colluding Integrators. Plaintiffs have also issued subpoenas relating to current and former executives and employees of Defendants, including individuals presently under indictment for criminal antitrust violations. Plaintiffs have negotiated substantial document productions with Defendants and the recipients of non-party subpoenas, with Plaintiffs

---

[11] *E.g.*, Oral Argument, *In re: Broiler Chicken Grower Antirust Litigation*, MDL No. 2838 (J.P.M.L. May 31, 2018), ECF 32; Oral Argument, *In re: Broiler Chicken Grower Antitrust Litigation (No. II)*, MDL No. 2977 (J.P.M.L. Dec. 3, 2020); Transfer Order, *Growers II*, MDL No. 2977 (J.P.M.L Dec. 12, 2015), ECF 59 (Transferring *McEntire*, *Colvin*, *Sanderson* and *Growers*); Conditional Transfer Order (CTO-1), *Growers II*, MDL No. 2977 (J.P.M.L. Dec. 29, 2020), ECF 64 (transferring *Mason*).

[12] Mins. of Proceedings, Hearing, Mot. to Dismiss [191] for Lack of Jurisdiction (Personal) and Koch's Mot. to Dismiss [194] for Lack of Jurisdiction and Improper Venue, *Sanderson* (Jan. 19, 2018), ECF 216; Mot. Hearing, Defs' J. Mot. to Dismiss Under Federal Rules of Civil Procedure 12(b)(2), (3), and (6), [193], and Def. Perdue's Mot. to Compel Arbitration & Dismiss or, in the Alternative, to Stay [192], *Growers* (Apr. 20, 2018), ECF 228; Mot. Hearing, Defs' J. Mot. to Dismiss Under Federal Rules of Civil Procedure 12(b)(2), (3), and (6), [193], and Def. Perdue's Mot. to Compel Arbitration & Dismiss or, in the Alternative, to Stay [192], *Growers* (Jan. 6, 2020), ECF 266.

[13] Hearing, Reorganized Debtor's Mot. To Enforce Confirmation Order, *Pilgrim's* (Oct. 12, 2017).

[14] Mins. of Proceedings, Status Conferences, *Growers II,* Feb. 12, 2021 (ECF 55) and May 21, 2021 (ECF 99); *Growers* Nov. 20, 2019 (ECF 263), Jan. 6, 2020 (ECF 266), Apr. 6, 2020 (ECF 306), July 17, 2020 (ECF 322) and Oct. 16, 2020 (ECF 328).

engaging each party and non-party in months' long meet and confers over the selection of document custodians and crafting of search methodologies.

7.      Plaintiffs have received more than 1.2 million documents consisting of tens of millions of pages, much of which was produced on an accelerated schedule. The number of documents continues to grow as Defendants and non-parties complete their document productions.

8.      Plaintiffs have also produced over 10,000 pages of documents in response to Defendants' requests for production, which required complicated remote collection procedures in the midst of the COVID-19 pandemic. Specifically, Plaintiffs made productions of documents in response to requests from Defendants on thirteen separate occasions.[15]

9.      Plaintiffs and Defendants have also propounded interrogatories and served responses.[16]

10.     Plaintiffs propounded requests for admission to Defendants, and Defendants have each served responses.[17]

11.     Plaintiffs have drafted and served deposition notices pursuant to Fed. R. Civ. P. 30(b)(6) on Perdue, Koch, Sanderson, and Pilgrim's. And Plaintiffs' counsel have reviewed dozens of deposition transcripts from prior related litigation.

**The Settlement**

12.     Negotiation of the instant Settlement with Perdue occurred directly between Class Counsel and counsel for Perdue.

13.     I was the primary point of contact with counsel for Perdue on Plaintiffs' behalf

---

[15] *See* Decl. of Gary I. Smith Jr. in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Tyson Defendants, *Growers II* (July 30, 2021), ECF 111-1, ¶7.

[16] *Id.* ¶8.

[17] *Id.* ¶9.

during settlement negotiations.

14.     The Settlement was negotiated at arm's length and the negotiations were rigorous and extensive and took place over the course of approximately eight weeks.

15.     Ultimately, Plaintiffs and Perdue were able to reach the Settlement, which culminated in a long form settlement agreement executed on August 11, 2021.

16.     Class Counsel believe that this Settlement is fair, reasonable, and adequate.

**Plaintiffs' Proposed Plan of Allocation**

17.     All members of the Settlement Class for whom Plaintiffs possess sufficient structured data will receive a pre-populated form that includes their total payments over the Class Period. Those members of the Settlement Class will have an opportunity to respond to that form by either accepting those calculations or contesting them with their own records. If Settlement Class members do not respond, the amounts on the pre-populated form will be deemed accepted. This ensures that Growers representing approximately 92.5% of Broiler production covered by the Settlement Class will receive a distribution from the common fund even if they do nothing— without having to participate in a formal claims process, and without having to submit their own documentation, unless they so choose.

18.     All members of the Settlement Class for whom Plaintiffs do not presently possess sufficient structured data or for whom Plaintiffs have to date been unable to make a determination about the sufficiency of their data—Growers representing approximately 7.5% of Broiler production covered by the Settlement Class—will have the opportunity to either submit their own documentation to establish their *pro rata* share or to answer a series of simple questions, through

which a reasonable estimate of their total Grower payments can be calculated using available data obtained from Agri Stats, Inc.[18] Currently, these include Growers for:

    a.    Claxton Poultry Farms: accounting for Growers representing approximately 1.1% of production volume. Claxton did not preserve structured data for the class period and such data will not be available to generate pre-populated claim forms.

    b.    Keystone Foods: accounting for Growers representing approximately 2.8% of production volume. Keystone Foods was acquired by Tyson, and Tyson has agreed in its settlement with Plaintiffs to produce certain reasonably available structured data for Keystone Foods' Growers, but has not yet done so.

    c.    Case Farms: accounting for Growers representing approximately 2.0% of production volume. Case Farms has so far not produced complete structured data for all of its complexes in a usable format and it is uncertain Case Farms will be able to do so.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 18th day of August, 2021, in Philadelphia, Pa.

Dated: August 18, 2021

_____

Eric L. Cramer

---

[18] These questions will include primarily (1) the alleged Co-Conspirator Broiler Grow-Out Services were performed for; (2) the years Broiler Grow-Out Services were performed, (3) the number of farms the Settlement Class member operated, and (4) for any partial years the Settlement Class member provided Broiler Grow-Out Services, the number of flocks raised during that partial year.

Exhibit A

**EXECUTION VERSION**

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| **IN RE BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II)** | MDL No. 6:20-2977-RJS-CMR<br><br>Hon. Chief Judge Robert J. Shelby<br><br>Hon. Cecilia M. Romero |

### LONG-FORM CLASS ACTION SETTLEMENT
### AGREEMENT BETWEEN PLAINTIFFS AND PERDUE

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 11th day of August, 2021 ("Execution Date"), by and between the Plaintiffs ("Plaintiffs"),[1] through Interim Co-Lead Class Counsel for the proposed Settlement Class (defined below), and Perdue Foods, LLC, and all of their predecessors, successors, assigns, Affiliates (including without limitation any affiliates who are alleged co-conspirators), and any and all past, present, and future parents, owners, subsidiaries, divisions, and/or departments (collectively referred to as "Perdue"), in the above-captioned action, including any actions currently or subsequently centralized into this action for coordinated pre-trial proceedings (the "Action").[2] Plaintiffs, on behalf of the proposed Settlement Class, together with Perdue are referred to herein collectively as the "Parties" or individually as a "Party."

---

[1] As used herein, "Plaintiffs" means Haff Poultry, Inc.; Nancy Butler; Johnny Upchurch; Jonathan Walters; Myles B. Weaver; Melissa Weaver; Marc McEntire; Karen McEntire; Mitchell Mason; Barry Mason; Anna Mason; Henry Randall Colvin; and Jonathan Tipton.

[2] Actions centralized currently include *McEntire, et al. v. Tyson Foods, Inc., et al.*, C.A. No. 1:20-02764 (D. Colo.); *Colvin v. Tyson Foods, Inc., et al.*, C.A. No. 2:20-02464 (D. Kan.); *Mason, et al., v. Tyson Foods, Inc., et al.*, C.A. No. 5:20-cv-7049 (N.D. Cal.); *In re: Sanderson and Koch Broiler Chicken Grower Litig.*, C.A. No. 7:18-00031 (E.D.N.C.); and *Haff Poultry, Inc., et al. v. Tyson Foods, Inc., et al.*, C.A. No. 6:17-00033 (E.D. Okla.).

WHEREAS, Plaintiffs on behalf of themselves and as representatives of a proposed class of similarly situated persons or entities allege in the Action, among other things, that Perdue participated in a conspiracy to artificially suppress, fix, maintain, and/or stabilize compensation paid to Plaintiffs and a proposed class of Growers (defined below);

WHEREAS, Perdue denies all allegations of wrongdoing in the Action;

WHEREAS, Interim Co-Lead Class Counsel have been appointed by the Court to represent, on an interim basis, the proposed class of Growers;

WHEREAS, the Parties wish to resolve all claims (including any Sherman Act, Clayton Act, and/or Packers and Stockyards Act claims) arising from or in connection with any act or omission through the date of Preliminary Approval relating to the Action and/or arising from the factual predicates of the Action;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations regarding the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the Parties' settlement;

WHEREAS, Plaintiffs have concluded, after investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of Plaintiffs to enter into this Settlement Agreement with Perdue to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the proposed Settlement Class, and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the proposed Settlement Class;

WHEREAS, Plaintiffs and Interim Co-Lead Class Counsel believe that the Settlement Fund  and cooperation to be provided by Perdue as part of this Settlement Agreement reflect fair, reasonable, and adequate compensation for the proposed Settlement Class to release, settle, and

discharge their claims that they were harmed by the alleged anticompetitive conduct of which Perdue is accused in this Action;

WHEREAS, Perdue, notwithstanding defenses to any claims that could be asserted by Plaintiffs against it, enters into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation, and thereby put a rest to this controversy; and

WHEREAS, both Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event this Settlement Agreement does not obtain Final Approval;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs be settled, compromised, and dismissed on the merits with prejudice as to Perdue only, subject to Court approval, and that Perdue be forever fully discharged and released from any and all claims covered by this Settlement Agreement:

1.    <u>General Definitions</u>.  The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

      a.   "Action" means the above-captioned proceeding, including any actions currently or subsequently centralized into this action for coordinated pre-trial proceedings.

      b.   "Affiliate" means with respect to any person, entity, or company, a person, entity, or company that, directly or indirectly, controls, is controlled by, or is under common control with such person, entity, or company.

c.   "Broiler Grow-Out Services" means Broiler chicken growing services.

d.   "Broilers" means young chickens bred for meat. Broilers as used herein

excludes specialty chicken that is grown, processed, and sold according to

halal, kosher, free range, pasture-raised, or organic standards. Specialty

chicken does not include chicken raised without antibiotics, such as No

Antibiotics Ever ("NAE") or Antibiotic Free ("ABF") standards. "Broilers" as

used herein includes NAE and ABF chicken.

e.   "Co-Conspirator" means the alleged co-conspirators referred to in the

Complaint, that is: Agri Stats, Inc., Foster Farms, Mountaire Farms, Wayne

Farms, George's, Inc., Peco Foods, Inc., House of Raeford Farms, Simmons

Foods, Keystone Foods, Inc., Fieldale Farms Corp., O.K. Industries, Case

Foods, Marshall Durbin Companies, Amick Farms, Inc., Mar-Jac Poultry,

Inc., Harrison Poultry, Inc., Claxton Poultry Farms, and Norman W. Fries,

Inc., including each of their past, present, and future, direct and indirect,

corporate parents (including holding companies), owners, subsidiaries, related

entities, Affiliates, associates, divisions, departments, joint ventures,

predecessors, and/or successors.

f.   "Complaint" means the Consolidated Class Action Complaint filed on

February 19, 2021 (ECF No. 59).

g.   "Confidential Supplement" means the confidential agreement containing

certain confidential terms providing for rescission of the Settlement

Agreement should certain contingencies occur.

h.  "Court" means the United States District Court for the Eastern District of Oklahoma, or any other court in which the Action is proceeding.

i.  "Defendants" means those defendants named in the Complaint, including each of their past, present, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, associates, divisions, departments, joint ventures, predecessors, and/or successors.

j.  "Escrow Account" means the interest-bearing escrow account established with the escrow agent to receive and maintain funds contributed by Perdue for the benefit of the Settlement Class.

k.  "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and Plaintiffs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

l.  "Fairness Hearing" means a hearing by the Court to determine whether the Settlement Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

m.  "Final Approval" means an order and judgment by the Court that finally approves this Settlement Agreement, including all of its material terms and conditions without modification, pursuant to Federal Rule of Civil Procedure 23 and dismisses Perdue with prejudice from the Action.

n.  "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) no

appeal or petition to seek permission to appeal the Court's Final Approval has been made within the time for filing or noticing any appeal under the Federal Rules of Appellate Procedure; or (2) if any timely appeal(s) from the Final Approval or notices of appeal from the Final Approval are filed, (i) the date of final dismissal of all such appeals or the final dismissal of any proceeding on certiorari or otherwise or (ii) the date the Final Approval is finally affirmed on appeal and affirmance is no longer subject to further appeal or review.

o.   "Growers" means Broiler chicken growers.

p.   "Interim Co-Lead Class Counsel" or "Interim Co-Lead Counsel" mean Hausfeld LLP and Berger Montague PC as appointed by the Court on an interim basis to represent the proposed class of Growers.

q.   "Perdue Released Party" or "Perdue Released Parties" means Perdue (as defined above) together with any and all of Perdue's past, current, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, associates, departments, divisions, joint ventures, predecessors, successors, and each of their respective past, current, and future, direct or indirect, officers, directors, trustees, partners, managing directors, shareholders, managers, members, employees, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives. Notwithstanding the above, and for avoidance of doubt, "Perdue Released Parties" shall not include any Defendant or alleged Co-Conspirator in the Action other than Perdue.

r.   "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

s.   "Released Claims" shall have the meaning set forth in Paragraph 14 of this Settlement Agreement.

t.   "Releasing Party" or "Releasing Parties" shall refer individually and collectively to the following persons and entities, whether or not any of them participate in the Settlement Agreement: Plaintiffs, the Settlement Class, and all members of the Settlement Class (including the Plaintiffs), each on behalf of themselves and their respective predecessors, successors, and all of their respective past, present, and future, direct and indirect, (i) parents (including holding companies), subsidiaries, associates, and Affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions, and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities referred to above, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and also means, to the full extent of the power of the signatories hereto to release past, present, and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer, or any other capacity.

u. "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of settlement funds to the Settlement Class, subject to approval of the Court.

v. "Settlement Class" means the class defined in Paragraph 5 below excluding all persons who file a valid and timely request for exclusion from the Settlement Agreement.

w. "Settlement Class Counsel" means the attorneys appointed by the Court to represent the Settlement Class.

x. "Settlement Class Notice" means notice sent to members of the Settlement Class pursuant to Preliminary Approval, or otherwise approved by the Court pursuant to Federal Rule of Civil Procedure 23.

y. "Settlement Class Period" means January 27, 2013 through December 31, 2019.

z. "Settlement Fund" means $14,750,000 (fourteen million seven hundred and fifty thousand U.S. dollars), the amount Perdue shall pay or cause to be paid into an Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below, as well as any interest accruing within such Escrow Account.

2.    The Parties' Efforts to Effectuate this Settlement Agreement. The Parties shall cooperate in good faith and use their best efforts to effectuate this Settlement Agreement, including using their best efforts in seeking the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.      <u>Litigation Standstill</u>. Plaintiffs shall cease all litigation activities against Perdue in the Action except to the extent expressly authorized in this Settlement Agreement.  Perdue shall cease all litigation activities against Plaintiffs in the Action, except in connection with the terms of Paragraph 10 below. For the avoidance of doubt, this litigation standstill provision shall not prohibit Perdue from defending itself against litigation by Opt-Out Growers, as defined in the Confidential Supplement hereto.

4.      <u>Motion for Preliminary Approval, including for Settlement Class Notice</u>. No later than twenty-eight (28) days after the Execution Date, Plaintiffs shall move the Court for Preliminary Approval of this Settlement Agreement, including to approve Settlement Class Notice. A reasonable time in advance of submission to the Court, the papers in support of the motion shall be provided by Interim Co-Lead Counsel to Perdue for its review. To the extent that Perdue objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel, and the Parties shall meet and confer to resolve any such objection in good faith. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class for purposes of effectuating this Settlement Agreement.

5.      <u>Certification of a Settlement Class</u>. As part of the motion for Preliminary Approval of this Settlement Agreement, Plaintiffs shall seek, and Perdue shall take no position with respect to,[3] appointment of Interim Co-Lead Counsel as Settlement Class Counsel for

---

[3] By agreeing not to object to the proposed Settlement Class and appointment of Interim Co-Lead Counsel as Settlement Class Counsel, Perdue shall not waive any rights, arguments, or defenses, and Perdue expressly preserves all such rights, arguments, and defenses, including with respect to any situation where the Settlement Agreement is not approved in all material respects by the Court. In no way shall Perdue have waived any right, defense, argument, or position with respect to any other class (including any litigation class in the event the Settlement Agreement is not approved) in this Action or any other, and Plaintiffs shall not use this Settlement Agreement or any part of the Settlement Agreement in any way to support an argument that Perdue has

purposes of this Settlement Agreement and certification in the Action of the following

Settlement Class for settlement purposes only, which shall include Plaintiffs:

> All individuals and entities in the United States and its territories that were compensated for Broiler Grow-Out Services by a Defendant or Co-Conspirator, or by a division, subsidiary, predecessor, or Affiliate of a Defendant or Co-Conspirator, at any time during the period of January 27, 2013 through December 31, 2019.[4]

6.     <u>Settlement Class Notices.</u> Upon Preliminary Approval, and subject to approval by

the Court of the means for dissemination:

a.   Individual Settlement Class Notice of this Settlement Agreement shall be

mailed, emailed, or otherwise communicated by the Settlement Administrator,

at the direction of Interim Co-Lead Class Counsel, to as many potential

members of the Settlement Class as is practicable, in conformance with a

notice plan to be approved by the Court.

b.   All fees, costs, or expenses related to providing Settlement Class Notice,

obtaining Preliminary Approval and Final Approval, and administering the

settlement, shall be paid solely from the Settlement Fund, subject to any

necessary Court approval. Perdue shall have no responsibility, financial

obligation, or liability for any fees, costs, or expenses related to providing

Settlement Class Notice; obtaining Preliminary Approval or Final Approval;

or administering the settlement; other than for Perdue's own attorneys' fees.

---

waived any defense, argument, or position with respect to any other class in this Action or any other.

[4] Capitalized terms are defined herein.

c.   Perdue shall not object to Interim Co-Lead Class Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $250,000 to pay the costs for Settlement Class Notice.

d.   Interim Co-Lead Class Counsel shall use their best efforts to send out Settlement Class Notice within 30 days of Preliminary Approval (unless otherwise agreed between the Parties) to the extent consistent with the Court's directions and contingent upon the availability of sufficient name and address information from Defendants and alleged Co-Conspirators. If the Settlement Agreement is rescinded, cancelled, or terminated, or Final Judgment is not obtained, then whatever portion of the Settlement Fund that remains after payment of Settlement Class Notice costs (including payment of taxes) incurred up through the date of such election shall be returned to Perdue.

7.   <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval, preliminarily certifies the Settlement Class, and approves the form and manner of Settlement Class Notice, then Plaintiffs, through Interim Co-Lead Class Counsel shall, in accordance with the schedule set forth in the Court's Preliminary Approval, submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to Perdue for its review. To the extent that Perdue objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Class Counsel and the Parties shall meet and confer to resolve any such objection in good faith. The motion for Final Approval shall seek entry of an order and Final Judgment:

a. Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement and its material terms and conditions, without material modification of those terms and conditions;

b. Determining that the Settlement Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement;

c. Dismissing the Action with prejudice as to Perdue in all complaints asserted by Plaintiffs without further costs or fees;

d. Discharging and releasing Perdue Released Parties from all Released Claims;

e. Enjoining the Releasing Parties from asserting, directly or indirectly, any of the Released Claims against any of the Perdue Released Parties in any forum;

f. Confirming that Perdue has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA");

g. Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

h. Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Perdue shall be final and appealable and entered forthwith.

The Parties shall use all best efforts to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

8.     Escrow Account. The Escrow Account shall be administered by Interim Co-Lead Counsel for the Plaintiffs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9.     Settlement Consideration. In consideration for the release of Released Claims, the dismissal with prejudice of the Action, and the other material terms and conditions herein, within thirty (30) calendar days of either the Court's grant of Preliminary Approval or Interim Co-Lead Counsel having provided wire instructions to Perdue, whichever occurs later, Perdue shall pay or cause to be paid the Settlement Fund of $14,750,000 (fourteen million seven hundred and fifty thousand U.S. dollars) into the Escrow Account. Perdue shall have no reversionary interest whatsoever in the Settlement Fund should the Settlement Agreement be finally approved by the Court and all appeals from such approval have expired.

10.     Cooperation. Cooperation by Perdue is a material term of the Settlement Agreement and shall include the following categories of cooperation:

     a.     Cooperation Available Upon the Execution Date: (a) Within twenty-eight (28) days after the Execution Date, Perdue shall begin to provide written responses to Plaintiffs' Interrogatory Number 8, with complete responses due within sixty (60) days after Execution Date (unless otherwise agreed between the Parties);[5] and (b) Within twenty-eight (28) days after the Execution Date,

---

[5] Perdue shall provide a reasonable response to Interrogatory Number 8 based upon information learned from interviewing up to 12 individuals, to be selected by Plaintiffs from among Perdue's currently employed document custodians and currently employed live production managers, with no more than five such interviews to involve individuals who were not document custodians. Further, Plaintiffs shall amend the definition of Competitive Data, as defined in Plaintiffs' First Set of Interrogatories to Perdue Foods, LLC, to include only the following types of information: (a) Grower compensation; (b) Grower contract terms, including arbitration clauses; (c) the number of chicks in a flock; (d) Broiler weight; and (e) the sex, breed, genetic makeup, and genetics company used for the primary breeder stock.

Perdue shall endeavor to provide answers to Plaintiffs' outstanding questions regarding structured data.

b. <u>Cooperation Available After Preliminary Approval</u>: Plaintiffs shall be entitled to begin receiving all remaining cooperation following Preliminary Approval of the Perdue Settlement. Plaintiffs and Perdue shall agree on reasonable timeframes for Perdue to provide the remaining cooperation, cognizant of Plaintiffs' need to obtain cooperation at an early enough juncture to be useful in deposition practice, expert discovery, class certification proceedings, summary judgment, and trial. Cooperation shall include the following categories: (a) Perdue will use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action; (b) Perdue shall not oppose or object to depositions as follows: (i) depositions of up to three (3) then-current Perdue employees, with aggregate deposition time for Plaintiffs across those three (3) depositions not to exceed eighteen (18) hours, and (ii) one 30(b)(6) deposition, with up to ten (10) hours of deposition time for Plaintiffs for that 30(b)(6) deposition, to occur over two days if necessary; (c) Perdue will use its reasonable efforts should Plaintiffs so request to produce two (2) then current Perdue employees as witnesses live at any trial of Plaintiffs' claims in the Action; and (d) Perdue will consider reasonable requests for additional

relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome.

c. <u>Admissibility and Privilege</u>: Any statements made by Perdue's counsel in connection with cooperation, including the cooperation envisioned by Paragraphs 10.b.(b)-(c), shall be deemed to be "conduct or statements made during compromise negotiations about the claims" and shall be inadmissible in evidence as provided under Federal Rule of Evidence 408 and state-law equivalents. In the event, for whatever reason, this Settlement Agreement is rescinded, canceled, or terminated or the Settlement Agreement is not approved by the Court, such inadmissibility shall survive. Further, no cooperation shall require Perdue to provide information protected by the attorney-client privilege, attorney work-product doctrine, or similar privileges, and Perdue shall not waive any protections, immunities, or privileges.

d. <u>Confidentiality</u>: All non-public data, documents, information, testimony, and/or communications provided to Interim Co-Lead Counsel as part of cooperation, if so designated by Perdue, shall be treated as "Confidential" or "Highly Confidential" under the protective order in the Action.

e. <u>Arbitration Non-Enforcement</u>: For a period of five (5) years after the Court enters Final Judgment in this Action, Perdue agrees not to (a) require that any member of the Settlement Class ("Class Member") arbitrate any claims

against Perdue or against any alleged co-conspirator or co-defendant, (b) add a

provision to any agreements with any Class Member requiring that any claims

against Perdue be arbitrated, (c) argue that any Class Member or Class

Members are required to arbitrate claims against Perdue or against any alleged

co-conspirator or co-defendant based on principles of estoppel, and (d)

enforce any provisions in any agreements with one or more Growers

purporting to ban collective or class actions against Perdue.

11.     Qualified Settlement Fund. The Parties agree to treat the Settlement Fund as being

at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to

that end, the Parties shall cooperate with each other and shall not take a position in any filing or

before any tax authority that is inconsistent with such treatment. In addition, Interim Co-Lead

Counsel shall timely make such elections as necessary or advisable to carry out the provisions of

this Paragraph 11, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j))

back to the earliest permitted date. Such elections shall be made in compliance with the

procedures and requirements contained in such regulations. It shall be the responsibility of

Interim Co-Lead Class Counsel to timely and properly prepare and deliver the necessary

documentation for signature by all necessary parties, and thereafter to cause the appropriate

filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that

is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning

of Treas. Reg. § 1.468B-1. Interim Co-Lead Class Counsel shall timely and properly file all

information and other tax returns necessary or advisable with respect to the Settlement Fund

(including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such

returns shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the

income earned by the Settlement Fund shall be paid out of the Settlement Fund. Perdue and the other Perdue Released Parties shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.    <u>Distribution of Settlement Fund to Settlement Class</u>. Members of the Settlement Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of the Settlement Agreement or in connection with any of the Released Claims against the Perdue Released Parties, and shall not be entitled to any other payment or relief from the Perdue Released Parties. Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. Plaintiffs, members of the Settlement Class, and their counsel shall be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses, and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Perdue and the other Perdue Released Parties shall not be liable for any costs, fees, or expenses of any of Plaintiffs' counsel, including Interim Co-Lead Class Counsel and Settlement Class Counsel, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13.    <u>Fee Awards, Costs and Expenses, and Incentive Payments to Plaintiffs</u>. Consistent with any schedule approved by the Court, Interim Co-Lead Class Counsel may apply to the Court for a fee award, plus expenses, and costs incurred, and incentive payments to the Plaintiffs to be paid from the proceeds of the Settlement Fund. The Perdue Released Parties shall have no responsibility, financial obligation, or liability for any such fees, costs, expenses, or incentive payments beyond the Settlement Fund.

14.     <u>Release</u>. Upon final approval of the Settlement Agreement and the passing of the time to appeal such final approval, and consistent with the terms of the Settlement Agreement, Plaintiffs shall grant to Perdue Released Parties a release of all claims covered by the Settlement Agreement. The release shall be nationwide in scope and release all claims (including but not limited to any Sherman Act, Clayton Act, and/or Packers and Stockyards Act claims) any member of the Settlement Class ever had, now have, or hereinafter, can, shall, or may ever have, on account of, or any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected and unsuspected, actual or contingent, liquidated or unliquidated claims, causes of action, injuries, losses, or damages arising from or in connection with any act or omission through the date of Preliminary Approval relating to or referred to in the Action or arising from the factual predicate of the Action, including but not limited to Defendants' and Co-Conspirators' alleged overarching scheme, combination, understanding, and/or conspiracy to fix, maintain, stabilize, and/or suppress the compensation paid to Broiler Growers for their provision of Broiler Grow-Out Services (the "Released Claims"). Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant or alleged Co-Conspirator other than the Perdue Released Parties, nor (ii) any claims wholly unrelated to the allegations in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, a securities claim, or breach of warranty. This reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Perdue Released Parties to assert any and all arguments and defenses to such claims, and the Parties agree that all such arguments and defenses are preserved. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request

18

to be excluded from the Settlement Class shall be preliminarily enjoined and barred from

asserting any and all Released Claims against Perdue Released Parties. The release of the

Released Claims shall become effective as to all Releasing Parties upon Final Judgment. Upon

Final Judgment, the Releasing Parties further agree that they shall not assert any claim, directly

or indirectly, against Perdue Released Parties arising out of or relating to the Released Claims.

15.     <u>Further Release</u>. In addition to the provisions of Paragraph 14, the Releasing

Parties hereby expressly waive and release, solely with respect to the Released Claims, upon

entry of Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of

the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is

similar, comparable, or equivalent to Section 1542 of the California Civil Code, including

without limitation Section 20-7-11 of the South Dakota Codified Laws (providing "A

GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES

NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING

THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED

HIS SETTLEMENT WITH THE DEBTOR"). Each Releasing Party may hereafter discover facts

other than or different from those which he, she, or it knows or believes to be true with respect to

the claims which are released pursuant to the provisions of Paragraph 14, but each Releasing

Party hereby expressly waives and fully, finally, and forever settles and releases, upon entry of

Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent

claim that the Releasing Parties have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual, and not a mere recital.

16.    <u>Covenant Not to Sue</u>. Plaintiffs and each Releasing Party covenant not to sue, directly or indirectly, in any forum any of the Perdue Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

17.    <u>Full Release</u>. The Parties expressly agree that they intend for Paragraphs 14-16 to be interpreted as broadly as possible and to the fullest extent permitted by law.

18.    <u>No Admission of Wrongdoing or Liability</u>. Neither this Settlement Agreement (regardless of whether it receives Preliminary Approval or Final Approval), nor the Final Judgment or any order for Preliminary Approval, nor any and all negotiations, documents, or discussions associated with them, nor any proceedings undertaken in accordance with the terms set forth herein, shall be deemed or construed as (i) an admission as to the merits of the allegations made in the Action, (ii) a presumption, admission or concession of fault, liability, wrongdoing, or violation of any statute or law, or (iii) used as evidence of fault, liability, wrongdoing, or violation of any statute or law, for any purpose in any legal proceeding in any forum, claim, regulatory or administrative investigation or proceeding, or government investigation or proceeding.

19.    This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed and approved by the Court.

20.     <u>Perdue's Right to Rescind</u>. Perdue shall have the right to rescind and withdraw

from the Settlement Agreement under the terms of the Confidential Supplement.

21.     <u>Effect of Disapproval or Rescission</u>. If the Court does not certify the Settlement

Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement

Agreement in all material respects, or if the Court does not enter Final Approval as provided for

in Paragraph 7 herein, or if any order approving this Settlement Agreement is materially

modified or set aside on appeal, or if Perdue exercises its rescission rights pursuant to Paragraph

20, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1.n of this

Settlement Agreement, then this Settlement Agreement may be rescinded, canceled, or

terminated by Perdue or Plaintiffs on behalf of the Settlement Class. If rescinded, canceled, or

terminated, this Settlement Agreement shall become null and void, and, with the exception of

any Settlement Funds used for notice purposes pursuant to Paragraph 6.b, the Settlement Fund,

including any interest accrued thereto, and any attorneys' fees, costs, and incentive payments that

may have been disbursed pursuant to Court approval, shall be returned to Perdue and the Parties'

position shall be returned to the status quo ante.  In no way shall Plaintiffs have the right to

rescind, cancel, or terminate this Settlement Agreement if the Court fails or refuses to grant any

requested attorneys' fees, costs, expenses, or awards to Plaintiffs.

22.     <u>Choice of Law</u>. All terms of this Settlement Agreement and the Confidential

Supplement, including any related disputes, shall be governed by and interpreted according to

the substantive laws of the State of New York without regard to its choice-of-law or conflicts-of-

law principles.

23.     <u>Consent to Jurisdiction</u>. The Parties and any Releasing Parties hereby irrevocably

submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute

arising out of or relating to this Settlement Agreement or the Confidential Supplement, or the applicability of this Settlement Agreement or the Confidential Supplement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 14-16, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 14-16 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraphs 14-16 are asserted by any Perdue Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Perdue Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement or the Confidential Supplement.

24.     Class Action Fairness Act. Within ten (10) days of filing of this Settlement Agreement in Court with the motion for Preliminary Approval referenced in Paragraph 4, Perdue, at its sole expense, shall (i) serve upon appropriate Federal and State officials all materials required pursuant to CAFA and (ii) confirm to Plaintiffs' Interim Co-Lead Counsel that such notices have been served.

25.     <u>Costs Relating to Administration</u>. The Perdue Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

26.     <u>Binding Effect</u>. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein.  Each and every covenant and agreement in this Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, members of the Settlement Class, the Releasing Parties, and the Perdue Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the Plaintiffs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

27.     <u>Sole Remedy</u>. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Perdue Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Perdue Released Party.

28.     <u>Counsel's Express Authority</u>. Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

29.     <u>Admissibility.</u> It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

30.     <u>Notices</u>. All notices or communications by any Party intended for any other Party related to this Settlement Agreement shall be in writing. Each such notice or communication

shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt

requested, postage pre-paid; (c) Federal Express or similar overnight courier; or (d) electronic

mail, and, in the case of either (a), (b), (c) or (d) shall be addressed as follows:

If directed to Plaintiffs, the Settlement Class, or any member of the Settlement Class, to:

Eric L. Cramer
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
ecramer@bm.net

Melinda R. Coolidge
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
mcoolidge@hausfeld.com

Gary I. Smith, Jr.
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
gsmith@hausfeld.com

If directed to Perdue, to:

J. Douglas Baldridge
VENABLE, LLP
600 Massachusetts Ave, NW
Washington, DC 20001
jbaldridge@venable.com

Leonard L. Gordon
VENABLE, LLP
1270 Ave of the Americas, 24th Flr
New York, NY 10020
lgordon@venable.com

Lisa Jose Fales
VENABLE, LLP
600 Massachusetts Ave, NW
Washington, DC 20001
ljfales@venable.com

or such other address as the Parties may designate, from time to time, by giving notice to all Parties hereto in the manner described in this Paragraph. The Parties shall provide courtesy copies of all notices by electronic mail.

31.     No Admission. Whether or not Preliminary Approval is granted, Final Judgment is entered or this Settlement Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission of liability by any Party or Perdue Released Party.

32.     No Unstated Third-Party Beneficiaries. No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Perdue Released Party, Plaintiff, member of the Settlement Class, Interim Co-Lead Counsel, or Settlement Class Counsel.

33.     No Party is the Drafter. None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

34.     Amendment and Waiver. This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

35.     Breach. This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

36.     Execution in Counterparts. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or .pdf signatures shall be considered as valid signatures as of the date hereof and may thereafter be appended to this Settlement Agreement and filed with the Court.

37.     Integrated and Final Agreement. This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. As set forth in Paragraph 34, the Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties. The Parties further agree that no Party shall assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

38.     Voluntary Settlement. The Parties agree that this Settlement Agreement was negotiated at arm's length and in good faith by the Parties, and reflects a settlement that was

reached voluntarily after consultation with competent counsel, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

39.    <u>Confidentiality</u>. The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. However, following execution of this agreement, Perdue and Plaintiffs can each inform other parties to this Action that they have reached a settlement agreement, the amount of the Settlement Fund, and the cooperation and other relief provided for in Paragraph 10 of this agreement.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.

Dated: _Aug. 11, 2021_

By: _Lisa Jose Fales_

J. Douglas Baldridge
Lisa Jose Fales
Kristin M. Koger
**VENABLE, LLP**
600 Massachusetts Ave, NW
Washington, DC 20001
202-344-4264
Fax: 202-344-8300
jbaldridge@venable.com
ljfales@venable.com
kmkoger@venable.com

Leonard L. Gordon
**VENABLE, LLP**
1270 Ave of the Americas, 24th Flr
New York, NY 10020
212-370-6252
Fax: 212-307-5598
lgordon@venable.com

Mark K. Stonecipher, OBA # 10483
**FELLERS SNIDER BLANKENSHIP BAILEY & TIPPENS**
100 N Broadway, Ste 1700
Oklahoma City, OK 73102
405-232-0621
Fax: 405-232-9659
mstonecipher@fellerssnider.com

*Counsel for Perdue Foods, LLC*

**EXECUTION VERSION**

Dated: August 11, 2021

By: _____

Eric L. Cramer
Patrick F. Madden
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
ecramer@bm.net
pmadden@bm.net

Daniel J. Walker
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Tel: (202) 559-9745
dwalker@bm.net

*Co-Lead Counsel For The
Proposed Settlement Class*

Dated: August 11, 2021

By: _____

Gary I. Smith, Jr.
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 985-3270
Fax: (215) 985-3271
gsmith@hausfeld.com

Michael D. Hausfeld
James J. Pizzirusso
Melinda R. Coolidge
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeld.com
jpizzirusso@hausfeld.com
mcoolidge@hausfeld.com

Samantha S. Derksen
**HAUSFELD & CO. LLP**
12 Gough Square
London, EC4A 3DW
Tel: +44 (0)20 7665-5000
sderksen@hausfeld.com

Kimberly A. Fetsick
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
kfetsick@hausfeld.com

*Co-Lead Counsel For The
Proposed Settlement Class*