```
1                IN THE UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF OKLAHOMA

3

4
        IN:  BROILER CHICKEN         )
5       GROWER LITIGATION.           )
                                     )
6       _____ )
                 HAFF POULTRY,       )
7       INC., et al.,                )
                                     )  Case No: 6:20-MD-2977-RJS-CMR
8              Plaintiffs,           )
                                     )
9          vs.                       )
                                     )
10      TYSON FOODS, INC., et al.,   )
                                     )
11             Defendants.           )
        _____ )
12

13

14

15

16

17
                 BEFORE THE HONORABLE ROBERT J. SHELBY
18
                         August 13, 2021
19
                    ZOOM VIDEO STATUS CONFERENCE
20

21

22

23
                         Reported by:
24              KELLY BROWN HICKEN, RPR, RMR
                         801-521-7238
25
```

```
 1                      APPEARANCES OF COUNSEL

 2    FOR THE PLAINTIFFS:        GARY L. SMITH
                                 325 CHESTNUT STREET, STE 900
 3                               PHILADELPHIA, PENNSYLVANIA

 4                               DANIEL WALKER
                                 2001 PENNSYLVANIA AVE, N.W.,
 5                               STE 300
                                 WASHINGTON, D.C.
 6
      FOR DEFENDANT TYSON:       BRADLEY JUSTUS
 7                               RACHEL L. ADCOX
                                 950 F STREET N.W.
 8                               WASHINGTON, D.C.

 9                               KAIL JETHMALANI
                                 512 N. BROADWAY, STE 300
10                               OKLAHOMA CITY, OKLAHOMA

11                               PATRICIA A. SAWYER
                                 512 N. BROADWAY, STE 300
12                               OKLAHOMA CITY, OK  83102

13    FOR DEFENDANT PILGRIM:     CARRIE MAHAN
                                 CHRISTOPHER ABBOTT
14                               2001 M. STREET, N.W., STE 600
                                 WASHINGTON, D.C.
15
                                 LARRY D. OTTAWAY
16                               201 ROBERT S KERR AVE,
                                 12TH FLOOR
17                               OKLAHOMA CITY, OK  73102

18    FOR DEFENDANT PERDUE:      LEONARD GORDON
                                 1270 AVENUE OF THE AMERICAS
19                               24TH FLOOR
                                 NEW YORK, NEW YORK
20
                                 MARK K. STONECIPHER
21                               100 N. BROADWAY, STE 1700
                                 OKLAHOMA CITY, OKLAHOMA
22
      FOR DEFENDANT SANDERSON:   KATE GUILFOYLE
23                               AMANDA H BAILEY
                                 ANTHONY P. BURROWS
24                               300 NORTH LASALLE
                                 CHICAGO, IL
25
```

```
 1                    APPEARANCES OF COUNSEL (CONTINUED):

 2

 3    FOR DEFENDANT KOCH FOODS:      SCOTT PEDIGO
                                     CLINTON SANKO
 4                                   100 VISION DRIVE, STE 400
                                     JACKSON, MISSISSIPPI
 5
                                     JOHN G. CALENDER
 6                                   901 K STREET NW, STE 900
                                     WASHINGTON, DC
 7
                                     ROBERT P COFFEY, JR.
 8                                   4725 E 91ST ST. STE 100
                                     TULSA, OKLAHOMA
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              SALT LAKE CITY, UTAH, FRIDAY, AUGUST 13, 2021

 2                        *   *   *   *   *

 3              THE COURT:  Let's go ahead and go on the record.

 4     We're going to call our consolidated MDL case, In Re: Broiler

 5     Chicken Grower Antitrust Litigation II, Case Number

 6     6:20-MD-2977; and our five numbered cases from the Eastern

 7     District of Oklahoma, North Carolina, Kansas, Colorado and

 8     Northern California.  I'm not going to call those cases

 9     individually.

10              We've got with us counsel for the parties.  And let

11     me just state as we always do at the beginning of these

12     hearings because there are so many interested folks joining us

13     by Zoom and I can't keep track of all of it.  A brief

14     reminder, it is unlawful to record any United States District

15     Court proceedings by audio or video or any other means.  There

16     is one official record of these proceedings, and it's the

17     transcript being prepared by our capable court reporter.

18              Let me invite you all to make your appearances.  If

19     you'd kindly -- and throughout this hearing because we're

20     doing this remotely as is always the case, our court reporter

21     will be unable to make a transcript if you don't kindly

22     introduce yourself before you begin to speak both now and as

23     we move through the hearing.

24              So let me invite counsel for the plaintiffs first

25     to make whatever appearance you think is appropriate.
```

1           MR. SMITH:  Sure, Your Honor.  Why don't I tell you

2      who's here and who might be speaking to what.

3           THE COURT:  Great.

4           MR. SMITH:  So, Your Honor, this is Gary Smith with

5      Hausfeld for the plaintiffs.  With me today is Daniel Walker

6      with Berger Montague.  It's good to see you again.  In terms

7      of who will speak to what, I'll be handling some housekeeping

8      manners and previewing a few things that are coming down the

9      pike.  I'll be addressing our motion for preliminary approval

10     of the Tyson settlement to the extent Your Honor would like to

11     discuss that today, And I'll be addressing any discussion

12     about the deposition protocol.  Mr. Walker will be addressing

13     any discussion about the downstream issues we previewed in the

14     status report, and to the extent that Your Honor has questions

15     on the fully briefed motion to compel as to Pilgrim's

16     privileged log Mr. Walker will be handling that, as well.

17          THE COURT:  Terrific.  Welcome and thank you.

18          Counsel for Tyson?

19          MR. JUSTUS:  Yes, Your Honor.  This is Bradley

20     Justus from Axinn for the Tyson defendants.  I also have with

21     me my colleagues Rachel Adcox and Kail Jethmalani and local

22     counsel Patty Sawyer from Whitten Burrage.

23          THE COURT:  Terrific.

24          Perdue?

25          MR. GORDON:  Hello, Your Honor.  Leonard Gordon

1    from Venable on behalf of Perdue.  Our local counsel

2    Mark Stonecipher is on the phone.  Thank you.

3            THE COURT:  Thank you.

4            Pilgrims?

5            MS. MAHAN:  Good morning, Your Honor.  Carrie Mahan

6    on behalf of Pilgrims from Weil Gotshal.  I'm joined by my

7    colleague Christopher Abbott and our local counsel Larry

8    Ottaway with the firm of Foliart Huff Ottaway & Bottom.

9            THE COURT:  Thank you.

10          Sanderson?

11          MS. GUILFOYLE:  Good morning, Your Honor.  This is

12    Kate Guilfoyle from Kirkland & Ellis on behalf of Sanderson

13    Farms.  I may be joined by my colleagues Amelia Bailey and

14    Camille Sanchez-Palumbo.

15          THE COURT:  You are just a little quiet.  I don't

16    know if we can get you -- I mean I can hear you, but it will

17    be challenging for our court reporter.  Maybe if you just

18    yell.

19          MS. GUILFOYLE:  I'll work on my volume, too, Judge.

20          THE COURT:  That's terrific.  Thank you.

21          Okay.  And Koch, not Koch, as we learned again last

22    time, only this time maybe it stuck with me.

23          Counsel, there you are.

24          MR. PEDIGO:  Yes, Your Honor this is (technical

25    difficulties) --

1          THE COURT:  You are not coming through clearly at

2     all.  You sound like you're in a windstorm.

3          MR. PEDIGO:  Let me switch my speaker here.

4          Let's see.  Is that any better?

5          THE COURT:  That's outstanding.  Thank you.

6          MR. PEDIGO:  The Bluetooth sometimes does that.

7          In any event, yes, Your Honor, this is Scott

8     Pedigo.  I'm joined by my colleagues with Baker Donelson

9     Clinton Sanko and John Calender.  We also have our local

10    counsel Rob Coffey on the line.

11         THE COURT:  Thank you.  Thanks to all of you.

12         Is there anyone else who cares to make an

13    appearance for some other party that we've not already

14    addressed?

15         I wouldn't expect so.  All right.  Let me, while

16    we're on the subject of counsel, two things, first, Venable

17    and Mr. Gordon have been appointed by the Court as liaison

18    counsel for the defendants, and it seems to me under the

19    circumstances the defendants may wish to have a different

20    party designated as liaison counsel.  And if you've all

21    discussed that and wish to propose somebody today, that's

22    great.  Otherwise, let me invite the defendants to just notify

23    the Court if we should appoint substitute liaison counsel.  I

24    think it will still be helpful to have liaison counsel

25    notwithstanding the recent settlements.  So I just invite you

 1    to discuss that amongst yourselves.

 2              Mr. Gordon, unless you have something to announce

 3    about that?

 4              MR. GORDON:  I don't, Your Honor.  I was going to

 5    raise that issue, but you anticipated it.  Thank you.

 6              THE COURT:  I think you're going to be fired.

 7              All right.  Also sadly before we get too far along,

 8    I want to acknowledge that we're missing one of our colleagues

 9    today.  We've lost a colleague, Miss Stacey Pepper, who

10    recently passed away tragically and unexpectedly as a result

11    of an automobile accident.  This case has been and continues

12    to be a special case for me, largely because of the quality

13    and professionalism of all of you as counsel involved in this

14    case, and that's also especially true of Miss Pepper.  She's

15    going to be missed here and elsewhere.  And I just want to

16    share with all of you and with her colleagues my deepest

17    sympathies for her loss.  It is a stark reminder even in a

18    case as big and important as this one that there are even more

19    important things.

20              Okay.  And so to her friends and colleague at

21    Kirland & Ellis, just we've thinking a lot about you recently.

22              MS. GUILFOYLE:  Thank you very much, Judge.  We

23    really appreciate that.

24              THE COURT:  Okay.  We have some business to attend

25    to.  Let me first thank you all again.  I continue to be

1    impressed and no longer surprised by the quality of your

2    lawyering and your submissions.  I appreciate it very much, as

3    always your comprehensive status report that you submitted

4    last week, Docket Number 113.  As anticipated I think we're

5    nearing that part of the case where we're going to continue to

6    see more and more issues sort of percolate, and I can see that

7    you're continuing to try to resolve those without court

8    intervention, and I'm not surprised or disappointed that we're

9    going to need to get more involved on our side now.

10          Let me -- we've often be done this by me sort of

11   capsulating or summarizing what I think has happened and then

12   hear from all of and then talk about where with we're headed.

13   So let me briefly summarize what I think has happened since we

14   were last together on May 21st.  You've done a lot.

15          So first we've had some settlement action and some

16   other possible resolutions and some dismissals of claims and

17   parties.  On June 14th the plaintiffs provided notice that

18   they'd resolved all of the pending claims against the Tyson

19   defendants and that they've been moving for a hearing on

20   preliminary settlement approval, class notice and getting

21   scheduling in place for final approval.  That's Docket 94.

22          On July 23rd, plaintiffs provided similar notice

23   and settlement concerning the Perdue parties, and that's

24   Docket 107.  On July 30, plaintiffs filed a motion for

25   preliminary approval of their settlement with the Tyson

1     defendants.  It's Docket 111.  Among other things the

2     plaintiffs seek preliminary approval of a settlement to

3     include certifying a settlement counsel under Rules 23(a) and

4     (b)3, to appoint Berger Montague and Hausfeld as settlement

5     counsel under Rule 23(g).

6          And I'll just say the plaintiffs in that briefing

7     asked the Court to take up that preliminary motion during our

8     status conference today.  And I have to admit I was unaware of

9     that.  We saw the motion come in, and we -- but we more than

10    skimmed it, but briefly reviewed it.  We didn't scrutinize it,

11    and we knew there was time still for briefing.

12         I just ask as we go forward if any of you file a

13    motion and you seek some sort of expedited consideration or

14    briefing, please just note that on the caption of the

15    document, and that way it won't slide by us.  We were aware of

16    the motion and the period of time provided for an opposition

17    under the rules and so we didn't take any action on that

18    motion before today.  It may well be, it probably is the case

19    that there isn't any opposition to the motion.  In fact, let

20    me just ask that.  Let me ask if any counsel had in mind

21    filing a response or opposition to that motion.  Mr. Justus?

22         MR. JUSTUS:  No, Your Honor.

23         THE COURT:  Mr. Gordon?

24         MR. GORDON:  No, Your Honor.

25         THE COURT:  Miss Mahan?

1          MS. MAHAN:  No, Your Honor.

2          THE COURT:  Miss Guilfoyle?

3          MS. GUILFOYLE:  No, Your Honor.

4          THE COURT:  Mr. Pedigo?

5          MR. PEDIGO:  No, Your Honor.

6          THE COURT:  All right.  Well, that doesn't surprise

7    me.  I still think I'm going to propose that we set that for a

8    short hearing, and all of you are welcome to join us but you

9    need not join us.  We'll do it by Zoom.  I think it's

10   something that we should take up separately after I've more

11   carefully scrutinized the motion.  We only became yesterday

12   that counsel were asking us to take it up today.  It's going

13   to be impossible for all of us to be available at the same

14   time and place, but I don't know how many of you have to be

15   with us.  I know we need the plaintiffs' counsel and Tyson's

16   counsel, and others of you can probably find someone to

17   attend.

18          I'm going to propose that we take it up quickly,

19   though.  So I'm going to suggest we hear that motion on

20   Monday, August 23rd in the afternoon.  I'm just going to make

21   up a time, 2 o'clock Central Time.  And let me ask plaintiffs'

22   counsel and Tyson's counsel if you think you can have the

23   people you need at that hearing available at that time, if you

24   know.  Mr. Smith?

25          MR. SMITH:  Yes, Your Honor, we can be available at

1    that time of day.

2                    THE COURT:  All right.  Mr. Justus?

3                    MR. JUSTUS:  Yes, Your Honor, we can.

4                    THE COURT:  Terrific.  So we'll do that.  We'll

5    have that hearing Monday, August 23rd at 2:00 p.m. Central.

6    And I don't think we need anything more from you.  And I don't

7    anticipate it will be a lengthy hearing.  But I think that's

8    when we'll take up the issues in that motion.

9                    Mr. Smith, you want to be heard about that.  Yes,

10   go ahead.

11                   MR. SMITH:  If I may make a suggestion subject to

12   Mr. Gordon's input, we intend to file our motion for

13   preliminary approval of the Perdue settlement in advance of

14   that hearing deadline, and I don't know whether it makes sense

15   to combine that hearing.

16                   And on the point about oppositions, you know, we'll

17   make a better point, Your Honor, about letting you know when

18   we want expedited treatment.  But part of that is because

19   there really isn't an opposition to a preliminary approval

20   brief.  The defendants don't have standing.  It's premature

21   for class objections until notice has gone out.  So you don't

22   actually have to wait around for oppositions to that.  That

23   will come before final approval.

24                   THE COURT:  I appreciate that clarification.  We're

25   going to be deliberate at each step here and make sure that

1    given the interest involved that if there's any issue that

2    anybody cares to raise we have a chance to hear from people

3    and then consider what they have to say before we move

4    forward.  But I appreciate your suggestion about Perdue.  I

5    think that's right.

6              Mr. Gordon, can you also be available on the 23rd?

7              MR. GORDON:  Yes, Your Honor, we can be available.

8              THE COURT:  Terrific.  All right.  We'll get that

9    notice out.  It will be a Zoom hearing.  And we'll look

10   forward for your submission before then, Mr. Smith.

11             Okay.  Yesterday we noticed the plaintiffs filed a

12   number of notices of dismissal in the main MDL action

13   including dismissal of claims asserted by Mr. Mason in

14   Docket 119, Mr. Colvin in Docket 120, Mr. Tipton in

15   Docket 121.  Those plaintiffs were pursuing claims

16   individually and not as designated proposed class

17   representatives.

18             Second, there are a handful of discovery issues

19   that are -- there are a couple that are ripe for some judicial

20   intervention and some others that are brewing.  So on

21   July 2nd, plaintiffs filed a motion to compel relating to

22   Pilgrims Pride the privilege log, privilege document

23   production, Docket Number 97.  Plaintiffs note that Pilgrims

24   have alleged withheld about 24,000 documents, roughly

25   10 times the number of documents withheld by Perdue and Tyson.

1    That motion is fully briefed.  Judge Romero is aware of it and

2    will be noticing the hearing to take that issue up shortly if

3    she hasn't already.  We've been talking, speaking regularly.

4    I'm jumping ahead a little bit, and I'll circle back.  She'll

5    let all of you know if she's going to take up the deposition

6    protocol issues at the same time or not.  Her hearing notice

7    will clearly indicate that.  But whether it's during that

8    hearing or in a separate hearing Judge Romero is aware that

9    that's an issue that needs to be resolved.  I don't think -- I

10   don't want to interfere here.  I think you've addressed the

11   issue pretty thoroughly and robustly in the status report.  I

12   doubt she'll want any further briefing.  I think it's just a

13   matter probably to take up and have discussion.

14          Miss Mahan, you would like to be heard.

15          MS. MAHAN:  I would, Your Honor.  Respectfully, the

16   defendants proposed remote deposition protocol to the

17   plaintiffs indicating that we would like to meet and confer

18   with them, see where we could reach agreement and then we

19   would file a motion either opposed or unopposed with the

20   Court.  That process which is typical process in the federal

21   courts were circumvented largely because of the status

22   conference and because we would be here.

23          So the plaintiffs identified one dispute, and it

24   may be the only dispute we ultimately have.  But they declared

25   an impasse, Your Honor, on one issue.  When there remain other

1   portions of the remote deposition protocol that we have

2   proposed that we have not met and conferred on.

3          So I would request, Your Honor, that you order all

4   of us to meet and confer in compliance with rule, local

5   Rule 7.1F.  And if we have a dispute at the end of the day we

6   will file a motion seeking the Court's assistance.

7   Alternatively, Your Honor, I feel what will happen is that we

8   will use the expedited rushed briefing that occurred last week

9   because of the deadline for the joint status conference.  We

10  will continue to meet and confer, and there could very well be

11  other issues requiring Judge Romero to review the same

12  protocol again.

13          THE COURT:  Mr. Smith, You'd like to be heard.

14          MR. SMITH:  Your Honor, I think it is virtually

15  impossible that we won't resolve every issue except for the

16  in-person attendance issue, which is why we teed it up to see

17  what had we could accomplish today.  You know, maybe there

18  will be some issue for Judge Romero to revisit other than this

19  one issue, but I really do doubt it.  I think these other

20  issues are something that we can work through quickly and

21  easily.

22          I fear a little bit that if we meet and confer on

23  these ancillary issues when we know there will be impasse on

24  this one issue then we could end up in a place where

25  depositions that are scheduled to start would be occurring

 1    without a protocol in place.  So I'm inclined to try to move

 2    quickly on this if we can.

 3              THE COURT:  I'm inclined to move quickly, also, but

 4    I don't think the two are mutually exclusive.  So what I'm

 5    going to ask the parties to do is this.  I'd like you to meet

 6    and confer for now solely on the deposition protocol question.

 7    I know that there are other issues that we may talk about

 8    additional meet and confer obligations or what have you.  And

 9    to submit a notification jointly or separately to the Court no

10    later than the end of the day next Friday.  And let us know

11    whether you require a hearing with the court and if so on

12    which issues, and you don't have to agree on which issues.  If

13    you can't submit a joint statement submit separate ones and

14    include whatever you want to include.  We'll make sure

15    Judge Romero knows that's coming next Friday.  And she won't

16    wait for that submission to schedule a hearing.  And if you've

17    resolved everything she can just vacate it.  Let's get that

18    resolved quickly.

19              Mr. Smith?

20              MR. SMITH:  So to the extent that either side wants

21    to submit any supplemental authority, and just based on past

22    practice I assume both sides may want do that, would you like

23    that supplemental authority perhaps limited to a few pages

24    with that submission on that Friday?  That way we don't have

25    three weeks for a brief, three weeks for an opposition, and

1    two weeks for a reply.

2              THE COURT:  So we're not -- I'm not proposing that

3    anybody file a motion or that we go through formal motion

4    practice to get this resolved.  And because I'm not going to

5    resolve the issue file whatever you'd like.  It really makes

6    no difference.  I'm kidding, of course.  Let's be respectful

7    of Judge Romero's time.  But you've all been efficient in your

8    filings and not abusive.  And tell us what you need to tell

9    us.  It's an important issue.  These depositions are

10   important.  Let's make sure everybody has a chance to present

11   whatever you need to present.  Judge Romero will get through

12   it, and we'll get an answer quickly.

13             So we're employing sort of an informal discovery

14   resolution process here without formal motion practice.  But

15   present your arguments in a brief, and we'll have -- I don't

16   think there will be a need for any responsive briefing.  I

17   think it will all be on the table, and you can duke it out in

18   front of Judge Romero.

19             MS. MAHAN:  Thank you, Your Honor.

20             MR. SMITH:  Thank you, Your Honor.

21             THE COURT:  Thank you.  All right.  The plaintiffs

22   are continuing to work through some lingering discovery

23   issues.  I think with the nonparty house of, I'm going to say

24   that wrong, House of Raeford Farms.  But there doesn't appear

25   to be any impasse on written discovery in either direction

17

1     amongst the plaintiffs or the defendants generally.  There's

2     also some documents.  We're making progress on getting third

3     party documents and subpoenas from Agri Stats, Case Farms,

4     Wing Farms and others.

5             Let's take up -- so downstream data captures a lot

6     of attention in the status report.  Let me share with you what

7     I have in mind to get that teed up for resolution, and then

8     you all tell me if there's a better way to do it.  And I

9     appreciate the position that the defendants found themselves

10    in in responding to a pretty robust discussion of this issue

11    and the status report, the proposal filed, treat it like a

12    motion and file a response was totally reasonable.  I know

13    early on in this case we showed up on these status reports,

14    and I started shooting from the hip and making rulings.  But

15    we're going to be careful about issues like this and make sure

16    that everybody has a chance to be heard as I said.

17            So what I propose is that the plaintiffs file a

18    formal motion.  If there's some relief that the plaintiffs

19    wish to obtain let's put it in a motion.  And let's identify

20    the relief and the basis for that relief and the legal support

21    for it, and then have the defendants respond.  And I think

22    it's important that we move things quickly.  So I'm going to

23    propose that that opening brief be filed by the plaintiffs

24    within seven days with any responsive briefs from the

25    defendants within seven days thereafter.  You're already aware

1    of the facts and the issues.  You've teed them up for your

2    meet and confer obligations and discussion in the status

3    reports.  I don't know if it's necessary to have reply briefs

4    or not.  I suppose we could have a reply brief from the

5    plaintiffs if you wish to reply, I don't even know, if it's a

6    Friday and a Friday.  So let me get my calendar, bear with me

7    for a minute, and we'll talk about this before I make this my

8    ruling.  But I'm proposing that the plaintiffs file their

9    opening brief by next Friday the 20th.  Any responsive

10   memoranda from defendants by the 27th.  And let's have a --

11   let's have a reply by September 1st, if we can.

12            And, Mr. Smith, I don't know if that interferes

13   with a schedule or other things you're trying to do.  If

14   that's not fast enough we can schedule a hearing, in fact we

15   can schedule it right now.  I think we propose a schedule a

16   hearing on the not yet filed motion for -- I apologize.  I

17   know it's Memorial Day weekend, but I would propose that we

18   hear it on -- no, let's not do that.  I would propose we hear

19   it on Wednesday, September 8th.

20            So that's just an idea on the table.  But let's

21   hear from all of you.  Mr. Smith?

22            MR. SMITH:  So the short answer is we'll make that

23   work.  I did get a few heart palpitations because that will be

24   four filings for the plaintiffs next week, but we'll get it

25   done.

1           THE COURT:  Help me understand why that's four

2      filings.

3           MR. SMITH:  Well, it's one on the deposition

4      protocol, we're putting in our notice program papers next

5      week, and then the Perdue preliminary approval papers also on

6      Friday.  But if that's what Your Honor wants we'll get it

7      done.

8           THE COURT:  No.  I want to serve all of you, not

9      vice versa.  I just sensed some urgency from the plaintiffs in

10     the status report, so I didn't want you waiting on me.  But

11     shall we stagger the briefing an additional week?

12          MR. SMITH:  I think an additional week would be

13     perfect, Your Honor.  I think that will still get these things

14     moving quick enough.

15          THE COURT:  All right.  And I'm sure there won't be

16     any opposition from the defendants, though we'll hear from all

17     of you in a moment.

18          So my revised proposal that we'll further discuss

19     before we make it the ruling of the Court is that the

20     plaintiffs would file an opening brief by Friday, the 27th.

21     And then if the plaintiffs are going to have more time the

22     defendants should, also.  So how about a responsive brief from

23     the plaintiffs by -- or the defendants, rather, by Wednesday,

24     September 8th; a reply by Wednesday, September 15th; and a

25     hearing date set for Monday, the 20th.  I just made all of

1    that up.  I hope you were getting that because I didn't write

2    it down.

3              So, Mr. Smith, will that schedule work for the

4    plaintiffs?

5              MR. SMITH:  That schedule will work for the

6    plaintiffs, Your Honor.

7              THE COURT:  Are there any defendants that object to

8    that approach?  Miss Mahan?

9              MS. MAHAN:  Your Honor, we do not object to that

10   approach.  But again, I would request the Court's assistance

11   in facilitating compliance with local Rule 7.1F.  The

12   stipulation at the heart of the dispute explicitly states that

13   if a notice is made the parties will meet and confer in good

14   faith.  That has not occurred.  We would very much like for

15   that to occur before we present a dispute to the Court.

16             THE COURT:  So I think what's happened is it seems

17   to me that the plaintiffs are interposing an obligation in

18   front of a meet and confer obligation that exists, and I think

19   I understand why.  But, Mr. Smith, explain to me how that's

20   consistent with our meet and confer obligations under the

21   local rules.

22             MR. SMITH:  So we are obligated to meet and confer,

23   but not when we know there's going to be an impasse.  We came

24   to them and said, okay, if this is what you're going to do

25   then we need, as a baseline we need the production from the

1    purchaser case.  And then we can figure out what other

2    downstream discovery we need, and we can meet and confer over

3    that.

4            But at a minimum what we can't have is the

5    defendants cherry picking from a record where they have access

6    to all the information and they refuse to give us access to

7    that information that has already been reviewed and produced

8    and could be produced to us tomorrow.  They have refused that

9    request.  And so given that refusal we are at an impasse on

10   that issue.  I mean, we can't meet and confer about what this

11   discovery is going to look like when they have complete

12   insight into that discovery record, and we have no insight

13   into that discovery record.

14           So that's the baseline from our perspective on

15   where a meet and confer should start.  When they refuse to

16   make that production there just isn't anywhere else to go from

17   our perspective.

18           THE COURT:  Yeah.  That's not clear to me at all.

19   That sounds like jumping to the end of a meet and confer

20   without going through the process.  And it sounds to me like

21   the plaintiffs are also contemplating other relief that you

22   might be seeking in a motion including possibly striking

23   affirmative defenses or prohibiting the defendants from

24   putting on this evidence.  Or who knows what exactly?  But I

25   think there is stuff to talk about here.

1           Look, I'm mindful, you've all been masterful I

2    think as best I can tell about meeting and conferring about

3    some difficult issues.  I know you're capable of it, and I

4    know that for somebody on this -- in this case to draw a line

5    in the sand means that something different is happening here.

6           But you can meet and confer, and you must meet and

7    confer and talk about these issues and help tee them up.  And

8    your briefing will help.  But your meet and confer will enable

9    you to file I think better briefs, too, and more clearly

10   identify the specific issues that need to be addressed.  And

11   if you reach impasse on production then you reach impasse.

12   But that may not be the only issue.  It sounds to me like it's

13   not the only issue relating to this downstream data.

14          But, Miss Mahan, did you want to add something

15   more?  I'm about to propose a date by which you all complete

16   your meet and confer with adequate time to prepare briefs on

17   the schedule we've just talked about.  Miss Mahan?

18          MS. MAHAN:  Thank you, Your Honor.  That's what

19   we're looking for.  I agree.  Mr. Smith is arguing his

20   ultimate motion.  But the suggestion that sending an e-mail

21   and saying, you must immediately produce a discovery record

22   from a unrelated case, which, Your Honor, so you have some

23   understanding of what we're talking about, the discovery in

24   this unrelated case exceeds 8 million documents and I think

25   we're about up to 9 terabytes of data and hundreds of

1    depositions.  And it's clear that Mr. Smith is saying that's

2    just the beginning, and then we'll think about what else we

3    want.

4            We would like to have an educated discussion.  And

5    I understand Mr. Smith isn't a participant in that case, but

6    we can clearly tell him, you know, what we have as far as the

7    record and why do you think this is relevant.  That

8    discussion, that fulsome narrowing of the issue is required

9    not only by the local rules and common sense, it's actually

10   required by the stipulation plaintiffs agreed to undertake

11   this.

12           THE COURT:  Well, and it's my expectation, and I'm

13   going to impose that expectation on all of you as we have so

14   far in the case to, you know, take a spirited and meaningful

15   step at it.  It appears to me, I don't mean to jump ahead,

16   either, and I don't want to cast some dye in the water too

17   early, but I think there may have been a miscommunication that

18   sort of early on on this issue and maybe unexpressed

19   expectations.  I don't know that.  We'll get your briefing and

20   hear about it first.  But we can resolve this issue, and we

21   will.  And it may involve questions about how the defendants

22   think their experts are intending to use this data or for what

23   purpose or I don't know.  But you'll have a discussion.

24           So, Mr. Smith, mindful of the additional

25   obligations I'm placing on the plaintiffs today in light of

1    the proposed briefing schedule I just gave you, let me know

2    when you think is a reasonable deadline to complete your

3    meeting in your meet and confer efforts with the defendants.

4         MR. SMITH:  Umm, Your Honor, I would normally say I

5    think two weeks is sufficient if everyone on the plaintiffs'

6    side wasn't on vacation next week except for myself, which is

7    part of why I have heart palpitations when you ordered up the

8    fourth round of briefing next Friday.  So if I can actually

9    turn that over to Dan Walker who I know is on the line with us

10   and involved in this issue, and maybe he can weigh in on a

11   timeline.

12        MR. WALKER:  Well, I think it needs -- I think the

13   meet and confer -- well, excuse me.  This is Dan Walker from

14   Berger Montague on behalf of the plaintiffs.  And I think, you

15   know, the meet and confer process can happen, you know, it can

16   overlap with our time for writing the brief.  I think we have

17   a good sense of what, you know, the targeted issues are.  And

18   I'm a little mindful of the fact that I'm on vacation and

19   don't want to put too much -- but I think we can resolve the

20   meet and confer next week amongst people who need to do it and

21   meet the briefing schedule.

22        MS. MAHAN:  Your Honor, I would suggest that we

23   build in some time to meet and confer.

24        THE COURT:  Mr. Walker?

25        MR. WALKER:  Yeah.  I'm fine with building in some

1          time.  I guess the concern, and I don't want to front run any

2          issues, but the concern is obviously there.  There is the

3          discovery issues which will impact upcoming depositions, which

4          I believe the first one is September 14th, maybe, and then of

5          course the case schedule beyond that.  And obviously we're

6          going to have to discuss that with you and with each other, so

7          I was trying to move quickly.  So perhaps we should have till

8          the 27th meet and confer.  You know, that obviously pushes out

9          the briefing a little bit.  But I don't -- I don't want -- I

10         want to give the meet and confer, you know, due time and have

11         everyone involved.  So maybe that's the best way to do it.

12              THE COURT:  I agree.  I want the parties to have

13         time to have a meaningful meet and confer on this issue.  And

14         it strikes me as a very significant issue at this point in the

15         litigation because of the implications among other things the

16         schedule, but not just the schedule.  So I do see this tension

17         in terms of getting the issue ripe for review and decision and

18         also giving you meaningful time to talk about it and think

19         about it and compromise where you can.

20              So is there any reason if we -- is there any reason

21         it would be prejudicial to your case if we push the briefing

22         schedule I proposed a moment ago one week back so that we had

23         a meet and confer deadline now of the 27th and then started

24         with opening briefs on the 3rd and with a response or an

25         opposition say on the 15th, a reply on the 22nd and a hearing

                                                                    26

1    on the 27th?  Now you've had some depositions that will get in

2    front of that being briefed and decided.  But are those

3    depositions going to be directly impacted by this issue,

4    Mr. Smith?  Mr. Walker?

5                   MR. SMITH:  Go for it, Dan.

6                   MR. WALKER:  Okay.  I think the one on the 14th,

7    perhaps, but we can work that out amongst ourselves.  I mean,

8    there's also the deposition protocol which will affect this,

9    too.  So we'll abide by the schedule, and we'll just make the

10   adjustments necessary.

11                  MS. MAHAN:  Your Honor --

12                  THE COURT:  I'm sorry.  Mr. Smith, you wanted to

13   add something?

14                  MR. SMITH:  I did; which is just if we're going to

15   go through this process I have no problem with it.  I'm happy

16   to do it, and I think we're reaching the right resolve.  If we

17   are -- if we lose, if we lose and all of this downstream stuff

18   comes in and now we're going to have to figure out, you know,

19   deponents that we didn't have on the schedule, I just would --

20   I would hope that both the defendants and the Court would be

21   sympathetic if we need a little more time at the end because

22   the schedule is quite aggressive if we are expanding the case

23   to now encompass all of these downstream issues.

24                  So I guess I'm simply putting a flag on that.  If

25   we're not going to resolve it, you know, in the next two weeks

1    and in October or November I'm finding out that I need, you

2    know, all these new depositions.  So....

3              THE COURT:  We've been at this I think for almost

4    five years, and I'm responsible for some portion of that delay

5    for sure early on in the case and waiting for the MDL.  And we

6    all want to get this case resolved, and your clients do, too.

7    But if we have to make modifications to the schedule because

8    of unexpected issues that arose to enable everyone to

9    meaningfully meet defenses or claims or issues that arise,

10   then we're going to do that.  I'm not going to prejudice the

11   plaintiffs by saying surprise, here's some new claims, some

12   new issues to deal with, and you don't have any time to manage

13   it.  That's not going to happen.  I don't know where we're

14   going to land on this issue, but we're not -- you're not going

15   to be.

16             If the defendants are allowed to present these

17   issues and develop them and there is significant discovery

18   that you have to receive and digest and get to your experts in

19   order to meet those issues you'll have time to do that.  So

20   we'll go one step at a time.

21             Miss Mahan, you wanted to add something more.

22             MS. MAHAN:  No.  I was just going to comment, Your

23   Honor, that the deposition that is set for the 14th is

24   actually our witness, and we are happy, Dan, to get new dates

25   if you want to push him off a couple of weeks.

 1              THE COURT:  And we don't want to do piecemeal
 2     depositions.  But if there are one or two that we have to
 3     reopen at some point, I know that -- I well remember I like to
 4     have a deposition done when I'm defending a deposition and not
 5     have it subject to reopening because a can of worms, but it
 6     happens sometimes.  You'll all be able to work that part out.
 7              (To the law clerk)  Okay.  Did you write down those
 8     final dates, then?
 9              So let me propose these dates again, and the,
10     counsel, let me know.  I'm proposing that you meet and confer,
11     you conclude your meet and confer obligation on this issue by
12     Friday, August 27th; that the plaintiffs file their opening
13     paper assuming that a brief is necessary in the form of a
14     motion by Friday, September 3rd; that any oppositions be filed
15     by Wednesday, September 15th; any reply memorandum by the next
16     Wednesday, the 22nd; and I'm proposing that we have a hearing
17     on the motion on Monday, the 27th.
18              Let me ask you first whether those dates give
19     anybody any heartburn by show of hands?  Okay.  Terrific.
20     We're set with dates.
21              Let me say my law clerk reminded me I should
22     mention I don't know who will hear that motion.  I think it
23     will depend on the nature of the motion and the relief you're
24     seeking.  But I'll coordinate with Judge Romero to make sure
25     that -- so we'll wait for your brief.  We'll read it.  And if

1     sounds like a dispositive motion then I'll decide it, and if

2     it sounds like it's a discovery motion Judge Romero will

3     decide it or we'll coordinate.  But plan on that date.

4          We'll wait -- let's not wait.  Let's set a date.

5     Let's set a time on the hearing on the 27th.  Let's get that

6     done while we're together.  So we'll hear the motion at

7     2 o'clock Central on the 27th.

8          Okay.  I'm going to propose a schedule going

9     forward, but there may be more for us to take up today.  And

10    let me now hand the microphone around the room.  Mr. Smith,

11    for the plaintiffs, what else should we talk about today?

12         MR. SMITH:  Well, I had quite a bit to talk about,

13    and I think we just talked about almost everything.  So I'll

14    give you a few small updates and it will be brief.

15         So, you know, the last time we spoke, Your Honor, I

16    know we told you we planned to start deposition practice in

17    the summer.  We endeavored to do that in June.  We served our

18    30(b)6 deposition notices to the defendants and asked to meet

19    and confer.  They served objections a month later.  We're

20    still ironing those out.  We served depositions notices on a

21    number of recipient witnesses for dates in August.

22    Unfortunately nobody's calendars aligned.  So as you heard our

23    first deposition is going to be on September 14th.

24         There's also going to be some motion practice

25    around two of the witnesses.  Jason Pen and William Leavitt

1    are expected to move to quash their deposition notices because

2    of the pendency I suppose of their criminal trial, and I'll

3    talk more about that in a minute.

4          And I guess the last point I'll make is that, you

5    know, we had planned in our first waive of deposition notices

6    because of how the productions were coming in which Tyson,

7    Pilgrims and Perdue complete, Sanderson and Cook not yet

8    complete that the first wave would include Pilgrims, Tyson,

9    Perdue notices.  And of course, because of the settlements

10   with Tyson and Perdue we have a litigation standstill until

11   they're preliminarily approved, so our first waive of the

12   notices did not include Tyson and Perdue witnesses because of

13   those settlement obligations that we have.

14         All of which is to say we tried and hoped to start

15   depositions in the summer, but they will now start in

16   September, although I believe for some very good reasons

17   including the Tyson and Perdue settlements, which I think a

18   good result in the class and the case.

19         The only other thing I will bring up, so we have

20   largely -- well, two other things.  I'm sorry.  We have

21   largely reached agreement with Agri States, Wing Farms and

22   Case Farms.  The only outstanding dispute we have with them is

23   timing.  Some of them won't commit to a timetable for their

24   production.  Wing Farms has committed to a timetable, but it

25   is in our view far, far too deep into the discovery period.

1    And so mostly for Agri Stats and Case where they won't tell us

2    when the documents are coming, we might have to if we can't

3    fix this move to compel for a date certain for that production

4    because we just can't, we can't have this, well, we'll get to

5    the documents at some point.  Don't worry about it.  It will

6    work for the schedule.  It's a little awkward.  I have never

7    had to do it before, but we might have to file a motion where

8    we say, everyone agrees on what they're going to give us.  We

9    just need a deadline by which they will give to us because we

10   need some certainty with this case scheduled.

11          You know, the last thing which I just mentioned,

12   you know, Mr. Pen and Mr. Leavitt, they're going to move to

13   quash the deposition notices until after their criminal

14   trials, or at least that's what they said.  We'll see what the

15   motions look like.  We agreed on a briefing schedule with

16   Mr. Pen that that motion will come in on August 30th.  We're

17   trying to get Mr. Leavitt to agree to a similar timetable.

18          You know, from our view, I won't talk about this

19   too much especially since their counsel isn't present, but

20   especially if this schedule holds we cannot be taking these

21   depositions in January.  These are important people.  The

22   documents are all important to our case.  We need to figure

23   out what they're going to say now, because if they give us

24   testimony in January we're going to have no time to chase up

25   all the followup, like, how did you get this?  What was the

1    result of your conversation with X?  I anticipate that those

2    depositions could well lead to the need for numerous followup

3    depositions based on what they say.  So in our view we're

4    going to obviously oppose those motions because we don't think

5    we should have to wait until right before the discovery

6    deadline closes to figure out what the important witnesses are

7    going to say.

8             THE COURT:  We are happy to help with third-party

9    discovery issues.  I think it's important -- I mean, I'm

10   mindful of realities in the world, but this case needs to keep

11   moving on a track and on a timetable.  And I'm happy to help

12   third parties understand that if we need to.  And we've dealt

13   with parallel criminal and civil proceedings before.  I'm

14   familiar with those issues.  I look forward to those motions.

15   I think I understand the importance of the sequence of those

16   depositions in the course of this case.  I appreciate that

17   update.

18            Mr. Justus, anything Tyson would like to bring up

19   today?

20            MR. JUSTUS:  Nothing else, Your Honor.

21            THE COURT:  Mr. Gordon?

22            MR. GORDON:  Nothing further, Your Honor.  Thank

23   you.

24            THE COURT:  Miss Mahan, hi.

25            MS. MAHAN:  Hi, Your Honor.  Nothing further.  I

1    would just state for the record that obviously Mr. Smith's

2    description of his discussions with third-party defendants

3    don't really have much to add.  For many of these we get a

4    copy of a notice of the subpoena that they intend to serve.

5    But then we never know if it's actually served or how the

6    witness or the entity have responded.  Obviously all of the

7    entities that are being served as well as Mr. Leavitt and

8    Mr. Pen have their own counsel.

9           Just to put a pin in it, it could very well be if

10   Mr. Pen and Mr. Leavitt do, in fact, move to intervene and

11   file for a protective order Pilgrims Pride may also have a

12   motion or a view on that deposition.  But regretfully I don't

13   think any of the defendants can contribute meaningfully to

14   Mr. Smith's description of third-party discovery because we

15   just have no idea what they're doing.

16          THE COURT:  I appreciate that.  Thank you.  I'm

17   guessing, and I just realized this is going to sound sharper

18   than I meant it to.  I don't mean to be facetious or too

19   colorful.  But you have his phone number, and I think

20   Mr. Smith is happy to answer your call and let you know what

21   the status of that, of any subpoenas are.

22          MS. MAHAN:  I agree, Your Honor.  We've requested

23   in the past copies of correspondence with the third parties

24   which have been declined, but we'll certainly ask again.

25          THE COURT:  Well, I'm not sure I'm talking about

1    correspondence, but at least the status of things.  But I

2    understand.  Mr. Smith, you thought --

3              MR. SMITH:  Yeah.  Sorry.  I feel like I have to

4    respond to that.  We were asked for counsel by I believe Tyson

5    for that, and then Tyson settled out.  We can get that

6    correspondence over to you, we'll have it over to you on

7    Monday.

8              MS. MAHAN:  Absolutely.  Thank you very much.

9              And we will make an effort, Your Honor, to ask

10   every time.

11             THE COURT:  Let me just say to the extent that

12   Pilgrims may have an interest in the protective order issues

13   with Mr. Pen or Mr. Leavitt, just be prepared to move quickly.

14   If a motion is filed we're going to take it up and address it.

15   But I appreciate you letting me know that we may be hearing

16   from others.  That is not surprising under the circumstances.

17   I think I understand.  I appreciate that, Miss Mahan.

18             Mr. Guilfoyle, anything for Sanderson?

19             MS. GUILFOYLE:  Nothing further, Your Honor.

20   Thank's again.

21             THE COURT:  Mr. Pedigo?

22             MR. PEDIGO:  Nothing further from Koch.  Thank you,

23   Your Honor.

24             THE COURT:  I can't tell yet whether it's time for

25   us to start doing this every 60 days.  Maybe.  I'm going to

1       propose that we -- let me ask.  Mr. Smith, I had in mind

2       keeping a similar schedule asking for our next status report

3       on about November -- not on about -- on or before November 5th

4       with an eye towards having a hearing on November 19th.  And I

5       think I had in mind initially noticing that hearing as a Zoom

6       hearing, though I think we're getting near a point in time

7       where some in-person hearings would enable us to consolidate

8       numerous things.  I think we may be having class hearings.  We

9       haven't seen a schedule yet for class notice on the

10      settlements and the like.  And we have other cases in Oklahoma

11      that we're handling, and we could do.  So I don't know.  I

12      don't want to impose a burden on you, and we don't know what's

13      happening with the Delta variant.  But my instinct is to

14      initially schedule it as a Zoom hearing with the idea we may

15      be meeting in person.

16              How's the schedule?  First, let me ask you, or do

17      we need to meet more often than that, Mr. Smith?

18              MR. SMITH:  Your Honor, I think the stage of the

19      case that we're in now, you know, we've done as good a job as

20      we can of keeping disputes off your docket.  And I think

21      there's just going to be more as we get into deposition

22      practice and motion practice.  So from the plaintiffs'

23      perspective seeing you more regularly would be helpful.

24              THE COURT:  Well, the defendants enjoy seeing me

25      more often, also.  I know that.  I don't know.  It does feel

```
 1    like we're at that point maybe two months instead of three

 2    months out.  I don't want to impose an additional -- I know

 3    it's not an insignificant burden to prepare these status

 4    reports because you're doing that while you're doing

 5    meaningful work.  But it is prompting you to talk and meet and

 6    confer and work through issues.  And maybe -- and this is just

 7    a big case.  Maybe we should start having those every 60 days.

 8            Miss Mahan, you wanted to weigh in on this.  No?

 9            MS. MAHAN:  I don't, Your Honor.  We're happy to

10    visit with you as much as you would like.

11            THE COURT:  I think we are there.  Just one moment.

12    Hold on.

13            (Time lapse.)

14            THE COURT:  I appreciate your patience.  Our

15    calendar is a mess.  We're just very busy in October and

16    November.  I'm going to spend some time with my calendar and

17    think some more about what we've said today, think about our

18    briefing schedule and hearing schedule that we've just put in

19    place to try to come up with a schedule that I think makes the

20    more sense where we are.  And I'll include dates for the next

21    status report and proposed hearing in a minute entry that

22    we'll enter after this hearing.  And then we'll send out a

23    notice of hearing for the next status conference.

24            But let me ask you in connection with that,

25    Mr. Smith, do you have a proposed schedule in mind for class
```

1    notice of the preliminary settlements with Tyson and Perdue?

2              MR. SMITH:  You mean for like when a final approval

3    hearing would be set?

4              THE COURT:  That's what I'm thinking.

5              MR. SMITH:  Yeah.  So I don't want to shoot from

6    the hip on that.  There's a general sequencing that is usually

7    used in these cases.  The one wrinkle we have is we want to

8    make sure that as many claimants as possible get prepopulated

9    claim forms, and we just recently received data from Wing and

10   Fieldale.  What we would like to do if it's realistic is to

11   propose dates that would be far enough in advance where those

12   class members would also get prepopulated claim forms so that

13   it's easier for more people to participate in the settlement

14   with, you know, having to do as little work as possible.

15             So if my experts come to me and say, well, this

16   data we just got is going to take two months, we probably

17   won't want to wait two months.  But if they say it's going to

18   take two weeks, we might want to make two weeks.  I'm not

19   comfortable giving you those dates now.  I can tell you those

20   dates will come next week with the motion.  So there will be

21   proposed dates in that motion, and Your Honor can adjust them

22   as you see fit.

23             THE COURT:  All right.  Well, that's helpful.  I

24   think I'll wait -- why don't we wait until we see that

25   submission, and then we'll figure out a schedule for the next

1    status report and hearing date and see if we can consolidate

2    some matters and get a bunch of business done all at once.

3            Okay.  Well, in some sort of strange way it's like

4    a family reunion now when we get together.  Your faces are all

5    familiar, and we're seeing you regularly.  I hope you're all

6    staying safe during these continually unprecedented and

7    uncertain times.  And we look forward to when we can visit

8    with all of you in person again some day.

9            Good luck.  You have a lot on your plates.  Remain

10   well, and we'll send out a schedule next week.  And we'll look

11   forward to seeing you again soon.  Thanks everyone for your

12   help.

13           (Whereupon, the court proceedings were concluded.)

14                        *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

```
1     STATE OF UTAH        )

2                          ) ss.

3     COUNTY OF SALT LAKE  )

4              I, KELLY BROWN HICKEN, do hereby certify that I am

5     a certified court reporter for the State of Utah;

6              That as such reporter, I attended the hearing of

7     the foregoing matter on August 13, 2021, and thereat reported

8     in Stenotype all of the testimony and proceedings had, and

9     caused said notes to be transcribed into typewriting; and the

10    foregoing pages number from 3 through 39 constitute a full,

11    true and correct report of the same.

12             That I am not of kin to any of the parties and have

13    no interest in the outcome of the matter;

14             And hereby set my hand and seal, this ____ day of

15    _____ 2021.

16

17

18

19

20    _____
                                KELLY BROWN HICKEN, CSR, RPR, RMR
21

22

23

24

25
```