# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II) | Case No. 6:20-MD-02977-RJS-CMR |
| This Document Relates To: *All actions* | Chief Judge Robert J. Shelby<br>Magistrate Judge Cecilia M. Romero |

## DEFENDANT PILGRIM'S PRIDE'S MOTION FOR PROTECTIVE ORDER REGARDING PRIVILEGED AND PROTECTED COMMUNICATIONS WITH ITS FORMER EMPLOYEE JAMES HEATHERLY

## <u>TABLE OF CONTENTS</u>

Page

**INTRODUCTION** ...................................................................................................................1

**BACKGROUND** ...................................................................................................................1

I.      **Mr. Heatherly Is a Retired Poultry Worker and Non-Party to this Case** ..................1

II.     **The Two Relevant Objections during Mr. Heatherly's Lengthy Deposition** .............2

III.    **Plaintiffs Demand to Re-Depose Mr. Heatherly and Threaten Him with Fees and Costs** ....................................................................................................................3

**LEGAL STANDARD** ...........................................................................................................5

**ARGUMENT** .......................................................................................................................6

I.      **Plaintiffs Improperly Seek to Invade the Attorney-Client Privilege** ..........................6

        A.    *The Default Rule Is to Protect Communications of this Kind* ................................6

        B.    *Plaintiffs Seek to Expand a Narrow Exception to Swallow the Rule* ...................10

II.     **Even if the Attorney-Client Privilege Did Not Apply—and It Does—the Work Product Protection Applies** .............................................................................13

        A.    *The Work Product Protection Covers Communications at the Meeting* ...............13

        B.    *The Work Product Protection Also Covers the Identity of Documents Reviewed at the Meeting* ......................................................................................14

III.    **Even if There Were Some Remaining Discoverable Information, the Dubious Benefit of Obtaining that Information Is Outweighed by the Burden on Mr. Heatherly and Pilgrim's** ......................................................................................17

**CONCLUSION** ..................................................................................................................18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguinaga v. John Morrell & Co.*,
   112 F.R.D. 671 (D. Kan. 1986) ....................................................................16

*In re Allen*,
   106 F.3d 582 (4th Cir. 1997) .........................................................................8

*Boughton v. Cotter Corp.*,
   65 F.3d 823 (10th Cir. 1995) ..........................................................................5

*Command Transportation, Inc. v. Y.S. Line Corp.*,
   116 F.R.D. 94 (D. Mass. 1987) ......................................................................9

*Conroy v. Schafer*,
   No. 2:06-cv-00867-DB, D.E. 57 (D. Utah Apr. 9, 2008) .............................8

*In re Coordinated Proceedings in Petroleum Products Antitrust Litigation*,
   658 F.2d 1355 (9th Cir. 1981) .......................................................................8

*Export-Import Bank of the United States v. Asia Pulp & Paper Co.*,
   232 F.R.D. 103 (S.D.N.Y. 2005) ........................................................... *passim*

*In re Flonase Antitrust Litigation*,
   723 F. Supp. 2d 761 (E.D. Pa. 2010) .............................................................9

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*,
   No. 08-civ-1533-BSJ-JCF, 2011 WL 2020586 (S.D.N.Y. May 20, 2011) .................... *passim*

*In re Gulf Oil/Cities Services Tender Offer Litigation*,
   Nos. 82-civ-5253-MBM, 87-civ-8982-MBM, 1990 WL 108352 (S.D.N.Y.
   July 20, 1990) .........................................................................................14, 16

*Hairston v. Royal Building Products, Inc.*,
   No. 1:18-cv-00003, 2019 WL 1550790 (W.D. Va. Feb. 15, 2019) ...............9

*Hanover Insurance Co. v. Plaquemines Parish Government*,
   304 F.R.D. 494 (E.D. La. 2015) ........................................................9, 15, 16

*Hickman v. Taylor*,
   329 U.S. 495 (1947) .......................................................................................16

*Hof v. LaPorte*,
   No. 19-10696, 2020 WL 5594126 (E.D. La. Sept. 18, 2020) .......................11

*Jacobs v. Alam,*
    No. 15-10516, 2020 WL 3064435 (E.D. Mich. June 9, 2020) ..................................9

*Misner v. Potter,*
    No. 2:07-cv-0330-TS, 2008 WL 11380016 (D. Utah June 19, 2008) .......................8

*New York v. Salazar,*
    No. 6:08-cv-0644-LEK-DEP, 2011 WL 13205947 (N.D.N.Y. June 23, 2011) ...........9, 12, 13

*Nicholls v. Philips Semiconductor Manufacturing,*
    No. 07-civ-6789-KMK, 2009 WL 2277869 (S.D.N.Y. July 27, 2009).....................10, 11, 13

*Perez v. Sphere Drake Insurance, Ltd.,*
    No. civ-2001/11, 2003 WL 23198837 (D.V.I. May 27, 2003)..................................9

*Price v. Porter Novelli, Inc.,*
    No. 07-civ-5869-PAC, 2008 WL 2388709 (S.D.N.Y. June 11, 2008)...............9, 17

*Sandra T.E. v. South Berwyn School District 100,*
    600 F.3d 612 (7th Cir. 2010) ...................................................................8

*Sporck v. Peil,*
    759 F.2d 312 (3d Cir. 1985)................................................................15, 16

*Surles v. Air France,*
    No. 00-civ-5004-RMB-FM, 2001 WL 815522 (S.D.N.Y. July 19, 2001) ...............6, 8, 13

*Thomas v. International Business Machines,*
    48 F.3d 478 (10th Cir. 1995) ..................................................................5

*Torix v. United States,*
    No. civ-19-086-RAW, 2020 WL 1068061 (E.D. Ok. Mar. 5, 2020)....................14

*Weber v. FUJIFILM Medical Systems, U.S.A.,*
    No. 3:10-cv-401-JBA, 2011 WL 3163597 (D. Conn. July 27, 2011).......................9

**Other Authorities**

Fed. R. Civ. P. 26 .............................................................................5, 17, 18

Fed. R. Civ. P. 30 ..................................................................................5

Fed. R. Evid. 612 ................................................................................14

**INTRODUCTION**

On November 1, after a short delay recommended by his doctor, James "Fred" Heatherly appeared remotely for Plaintiffs' deposition in this case. Despite his poor health, he sat for nearly five hours and answered Plaintiffs' questions about his time as a live production manager at Pilgrim's Guntersville, Alabama, complex. Now, Plaintiffs are attempting to haul Mr. Heatherly back for more testimony because he properly refused to answer two questions that intruded on Pilgrim's attorney-client privilege and work product protection. Plaintiffs informed him that if he doesn't breach those protections voluntarily, they reserve the right to pursue him for their costs and fees. Pilgrim's thus has no choice but to seek a protective order from this Court.

**BACKGROUND**

I.      **Mr. Heatherly Is a Retired Poultry Worker and Non-Party to this Case**

Mr. Heatherly is a retired former employee of Pilgrim's and, prior to that, Tyson. He worked at Tyson for 30 years and Pilgrim's for 9 years before finally retiring in 2015. *See* Excerpts of James Heatherly Deposition Transcript, attached as Exhibit A, at 32:3-6, 35:8-11, 37:15-19 ("Dep. Tr."). He did not finish college and worked in the live production division at both companies. *Id.* at 26:7-27:12, 35:12-17. Mr. Heatherly currently lives in Guntersville, Alabama, and suffers from health issues—a fact of which Plaintiffs' counsel are aware, given that Mr. Heatherly's deposition had to be rescheduled so he could be treated for a major medical condition. *See* Oct. 19, 2021 E-mail from G. Smith to C. Abbott, attached as Exhibit B.

Mr. Heatherly is not a party to this case. As he put it, "I'm retired, and I don't really have a dog in this hunt." Dep. Tr. at 68:18-19. Nevertheless, Mr. Heatherly sat for a nearly five-hour deposition noticed by Plaintiffs on November 1, 2021. Plaintiffs' counsel asked him hundreds of transcript pages worth of questions, introduced dozens of exhibits (including spreadsheets filled

1

with technical data), and delved into a range of subjects spanning his decades-long tenure as a poultry worker.

Now, based on their quibble with two limited, well-founded objections by Pilgrim's counsel, Plaintiffs seek to impose on Mr. Heatherly the undue burden and hardship of another deposition.

## II.    The Two Relevant Objections during Mr. Heatherly's Lengthy Deposition

Early in the deposition, after a line of questioning about Mr. Heatherly's representation by counsel (Dep. Tr. at 15:17-16:5), Plaintiffs' counsel asked Mr. Heatherly about the substance of a meeting with his attorney, Mr. Harris, as well as Pilgrim's attorney, Mr. Abbott. Specifically, Plaintiffs' counsel asked, "**What did you and Mr. Abbott and Mr. Harris discuss** at this meeting a week before last that lasted about an hour?" *Id.* at 18:8-10. Pilgrim's counsel objected and instructed Mr. Heatherly not to answer, stating, "The basis [for the objection and instruction] is that I represent Pilgrim's Pride, and I'm entitled to have a privileged conversation with a former employee about his time at the company." *Id.* at 18:19-22. Mr. Heatherly's attorney likewise instructed him not to answer. *Id.* at 19:4-5. Plaintiffs' counsel did not make any attempt to question Mr. Heatherly on whether, at the meeting, he discussed matters that were not related to his time at the company.

The only other relevant objection occurred a few minutes later, also in relation to an inappropriate question about this meeting. Plaintiffs' counsel asked Mr. Heatherly, "**Which documents** did you review [at the meeting]?" *Id.* at 22:6. Pilgrim's counsel objected "on the grounds of privilege and attorney work product," and instructed Mr. Heatherly not to answer, as did Mr. Heatherly's attorney. *Id.* at 22:7-13. Plaintiffs' counsel then stated he would "mark this for a ruling" and moved on. *Id.* at 22:14-17. Again, Plaintiffs' counsel did not make any attempt

2

to question Mr. Heatherly on permissible topics related to these documents, such as whether they were used to refresh his recollection.

Notably, while Pilgrim's counsel properly lodged these two objections when the questioning intruded upon the attorney-client privilege and/or work product protection, Pilgrim's counsel did ***not*** object to numerous other questions related to meetings with Mr. Heatherly. For instance, there was no privilege objection to questions about the fact of, duration, and format of the meeting at issue (*id.* at 17:12-18:7, 21:16-19); the fact of reviewing documents at the meeting (*id.* at 21:20-22:5); the fact that no other documents were reviewed at other meetings (*id.* at 22:18-23:1); a separate phone conversation that occurred with Pilgrim's counsel (*id.* at 67:16-68:19); and the fact that Mr. Heatherly did not speak to other attorneys at Pilgrim's counsel's firm (118:23-119:4). In other words, Pilgrim's counsel interposed two objections that were narrowly targeted to inappropriate questions, but never stopped the witness from answering proper questions about meetings with him.

At the end of the nearly five-hour deposition, Plaintiffs' counsel purported to hold it open pending resolution of these objections. *Id.* at 232:16-20.

## III.   Plaintiffs Demand to Re-Depose Mr. Heatherly and Threaten Him with Fees and Costs

The next day, Plaintiffs' counsel sent a letter to Pilgrim's counsel demanding that he not "interfere" with subjecting Mr. Heatherly to a purportedly continued deposition. *See* Nov. 2, 2021 Letter from K. Bates to C. Abbott, attached as Exhibit C. Plaintiffs' counsel first appeared to argue that, because Mr. Heatherly had his own attorney, there could be no attorney-client privilege over communications between Pilgrim's counsel and Pilgrim's former employee. *See id.* at 1-2. Plaintiffs' counsel also attempted to greatly expand a narrow exception to the general rule (discussed in the Argument section below) that such communications *are* privileged. *See id.* at 2.

3

Finally, as to the work product claim, Plaintiffs' counsel asserted, without any factual basis, that the documents shown to Mr. Heatherly at the meeting were offered to refresh his memory and were therefore discoverable; Plaintiffs' counsel also cited a case that actually upheld work product protection. *See id.*

Pilgrim's counsel duly responded and explained why each of these arguments is incorrect. *See* Nov. 10, 2021 Letter from C. Abbott to K. Bates, attached as Exhibit D. Pilgrim's response described the general rule, applied by "virtually all courts," that communications between a company's counsel and its former employee are privileged if they concern information obtained during the course of employment. *See id.* at 1-2. Pilgrim's response also cited ample authority to support this point—including the very case that Plaintiffs' counsel had cited. Likewise, Pilgrim's response offered half a dozen cases to back up the work product protection claim, and it pointed out that there was no factual basis to conclude that documents were shown to Mr. Heatherly in order to refresh his recollection. *See id.* at 2.

Plaintiffs' counsel sent a reply on November 15, 2021. *See* Nov. 15, 2021 Letter from K. Bates to C. Abbott, attached as Exhibit E. The reply once more tried to broaden a narrow exception to the general rule, and it simply assumed—again without any factual basis—that the communications here fell within such exception. *See id.* at 1 ("Your conversations with Mr. Heatherly, a former employee of Pilgrim's Pride, clearly 'bear on or otherwise potentially affect' his testimony."). The reply failed to address Pilgrim's work product argument. *See generally id.* It concluded by stating that "Plaintiffs and Pilgrim's Pride appear to be at an impasse on this issue." *Id.* at 2.

Pilgrim's subsequently learned that Plaintiffs' counsel has told Mr. Heatherly—a retiree suffering from significant medical issues and having limited means—that if he refuses to sit and

answer questions relating to his conversations with Pilgrim's counsel, Plaintiffs reserve the right to pursue attorneys' fees and costs associated with a motion to compel. *See* Nov. 15, 2021 E-mail from K. Bates to P.J. Harris, attached as Exhibit F. This Motion for a Protective Order follows.

## **LEGAL STANDARD**

Rule 26(c) permits the Court to issue protective orders to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense, including … forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1). The Court may grant a protective order upon a showing of good cause (*id.*), and the decision to grant such an order is vested in the Court's sound discretion. *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995). "Rule 26(c) is broader in scope than the attorney work product rule, attorney-client privilege and other evidentiary privileges because it is designed to prevent discovery from causing annoyance, embarrassment, oppression, undue burden or expense[,] not just to protect confidential communications." *Boughton v. Cotter Corp.*, 65 F.3d 823, 829-30 (10th Cir. 1995).

Where a deponent has already been deposed in the case, Rule 30(a) requires that the party seeking the deposition obtain leave of court. Fed. R. Civ. P. 30(a)(2)(A)(ii).[1] Courts faced with this situation are guided by the standards governing the limits of discovery in Rule 26(b). *See Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 2011 WL 2020586, at *7 (S.D.N.Y. May 20, 2011). Rule 26(b) requires, among other things, that courts limit discovery where "the party seeking discovery has had ample opportunity to obtain the information" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (2)(C)(ii).

---

[1] While Plaintiffs' counsel purported to hold open the deposition, Pilgrim's does not agree that there was any valid basis to do so, and therefore Rule 30(a) should apply. But Mr. Heatherly may decide that he would rather sit again and allow Plaintiffs to intrude on Pilgrim's privilege, rather than risk being assessed attorneys' fees and costs, so a protective order is necessary.

As discussed below, there is good cause to issue a protective order here because Plaintiffs seek to invade the attorney-client privilege, work product protection, and to oppress Mr. Heatherly with the undue burden and expense of sitting for another deposition that would yield no benefit and would merely rehash a peripheral subject that Plaintiffs' counsel already had ample opportunity to explore.

## ARGUMENT

### I.       Plaintiffs Improperly Seek to Invade the Attorney-Client Privilege

#### A.       *The Default Rule Is to Protect Communications of this Kind*

Pilgrim's agrees with Plaintiffs that motion practice should have been "unnecessary" (Ex. E at 2)—the case law overwhelmingly supports the two limited privilege objections interposed by Pilgrim's counsel, as do the two cases on which Plaintiffs rely. Simply put: "Virtually all courts hold that communications between company counsel and former company employees are privileged if they concern information obtained during the course of employment." *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 112 (S.D.N.Y. 2005); *see also Surles v. Air France*, 2001 WL 815522, at *6 (S.D.N.Y. July 19, 2001) ("The vast majority of federal cases hold that communications between company counsel and former company employees are protected by the attorney-client privilege if they are focused on exploring what the former employee knows as a result of his prior employment about the circumstances giving rise to the lawsuit.") (collecting half a dozen cases). There is no good ground to claim that the objections by Pilgrim's counsel overstepped this well-worn rule, let alone that the manifest hardship of subjecting Mr. Heatherly to another deposition is justified.

Both *Export-Import* and *Surles* offered an accurate appraisal of the state of the law on this point. Decisions abound in which—on facts similar to those here—parties were precluded from prying into communications between a company's counsel and its former employee. For instance,

in *Gary Friedrich Enterprises*, a former employee of Marvel Comics was asked several questions at his deposition regarding prior interactions with company counsel, which those lawyers directed him not to answer on the ground of attorney-client privilege. 2011 WL 2020586, at *1. Exactly as here, the plaintiffs argued that Marvel improperly asserted the privilege and that they should be allowed to depose the employee on the substance of his communications with company counsel. *Id.* at *2. The court disagreed, holding that "Mr. Thomas's communications with Marvel's counsel in preparation for his deposition [are] protected by Marvel's attorney-client privilege." *Id.* at *6. This included "any discussion … about Mr. Thomas's work for Marvel." *Id.* at *6 n.2. Further, the court observed that the deposition was "dominated by questions regarding the business practices at Marvel while he was employed there"—just like Mr. Heatherly's deposition was dominated by questions regarding his time at Pilgrim's—reinforcing that the communications were covered by the attorney-client privilege. *Id.* at *6. The court also found that communications related to deposition preparation that might reveal company counsel's legal analysis were protected by the work product doctrine. *Id.* Ultimately, even if discoverable information about the communications existed, "[t]he expense and burden of a reconvened deposition are not justified by the very limited nature of [such non-protected information]." *Id.* at *7. The same rationale applies here.

Other decisions have followed a similar path. In *Export-Import Bank*, for instance, the defendant sought to continue the deposition of a former employee of the plaintiff after plaintiff's lawyer objected to a number of questions based on privilege. 232 F.R.D. at 111. The defendant argued that "Ms. Mostofi's communications with Ex-Im lawyers were not covered by the attorney-client privilege because Ms. Mostofi was a former employee of the agency at the time the conversations took place." *Id.* at 112. The court rejected this argument, noting the weight of authority to the contrary. *Id.* It also noted, like other courts, that the deponent's conversations with

7

plaintiff's counsel may be subject to work product protection to the extent they revealed legal opinions or theories of the case. *Id.* Continuing the deposition—particularly when the defendant already "had its opportunity to obtain from Ms. Mostofi the non-privileged information to which it is entitled"—would therefore be unduly burdensome. *Id.*

Many other cases, from various courts (including within the Tenth Circuit), reaffirm just how wrong Plaintiffs are to seek testimony about the substance of Mr. Heatherly's meeting with Pilgrim's counsel. *See, e.g.*, *Misner v. Potter*, 2008 WL 11380016, at *2 (D. Utah June 19, 2008) (denying plaintiff's motion to compel former employees to answer questions relating to substance of pre-deposition meetings with defense counsel, because "the attorney-client privilege applies to confidential communications concerning matters within the scope of the employee's corporate duties whether or not they are currently employed") (citing *Conroy v. Schafer*, No. 2:06-cv-00867-DB, D.E. 57 (D. Utah Apr. 9, 2008)); *In re Allen*, 106 F.3d 582, 605-06 (4th Cir. 1997) (concluding that deponent was not required to answer questions regarding an interview with former employee, and stating that "[m]ost lower courts have … granted the privilege to communications between a client's counsel and the client's former employees");[2] *In re Coordinated Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981) ("Former employees, as well as current employees, may possess the relevant information needed by corporate counsel to advise the client with respect to actual or potential difficulties."); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 621 n.4 (7th Cir. 2010) ("[E]very circuit to address this question has concluded that the distinction between present and former employees is irrelevant for purposes of the attorney-client privilege."); *Surles*, 2001 WL 815522, at *5-6 (denying motion to compel former employee

---

[2] The Fourth Circuit collected a number of cases to this effect and noted, "Those courts that have denied the privilege to communications between the client's attorney and former employees have generally been following state law or concluded that the former employee had ceased being employed by the client *before* the relevant conduct occurred." *Id.* at 606 n.14 (emphasis in original). Neither situation applies here.

to answer questions about his pre-deposition conversations with company counsel, because such conversations were subject to attorney-client privilege and "would likely expose defense counsel's thought processes which are entitled to protection under the work product doctrine"); *New York v. Salazar*, 2011 WL 13205947, at *4-5 (N.D.N.Y. June 23, 2011) (granting motion for protective order that claimed privilege over communications between an agency's counsel and its former employee where the "'nature and purpose' was for the DOI's counsel to learn facts related to this lawsuit that the [deponent] was aware of as a result of his employment"); *Command Transp., Inc. v. Y.S. Line Corp.*, 116 F.R.D. 94, 96-97 (D. Mass. 1987) (noting that courts have applied the attorney-client privilege to communications between company counsel and former employees, and denying plaintiff's motion to compel former employee to answer questions regarding a pre-deposition meeting with defendant's counsel).[3]

This default rule, followed by the vast majority of courts, applies squarely here. Mr. Heatherly is a former employee of Pilgrim's, and he met with Pilgrim's counsel as well as his own lawyer prior to his deposition. Dep. Tr. at 17:12-18:7. Plaintiffs' counsel questioned Mr. Heatherly

---

[3] *See also, e.g.*, *Price v. Porter Novelli, Inc.*, 2008 WL 2388709, at *1-2 (S.D.N.Y. June 11, 2008) (denying application to reopen deposition of former company employee, which was premised on the overbroad argument that "when the employment relationship ended, the attorney-client relationship ended as well"); *Weber v. FUJIFILM Med. Sys., U.S.A.*, 2011 WL 3163597, at *7 (D. Conn. July 27, 2011) (declining to "revisit" the established rule that communications between company counsel and former employees are privileged if they relate to the course of employment); *Jacobs v. Alam*, 2020 WL 3064435, at *6 (E.D. Mich. June 9, 2020) ("Ms. Gross is protected because Ms. Gross was a former employee and the communication [with defense counsel] related to her 'conduct and knowledge' during her employment."); *Hairston v. Royal Bldg. Prods., Inc.*, 2019 WL 1550790, at *1-2 (W.D. Va. Feb. 15, 2019) (denying plaintiff's motion to compel former employees to testify regarding substance of pre-deposition conversations with defense counsel); *In re Flonase Antitrust Litig.*, 723 F. Supp. 2d 761, 764-65 (E.D. Pa. 2010) (similar for conversations *during* deposition); *Perez v. Sphere Drake Ins., Ltd.*, 2003 WL 23198837, at *1, *4 (D.V.I. May 27, 2003) (denying motion for sanctions against counsel who had instructed former employee not to answer questions concerning conversations they had based on privilege, and finding that "some if not all of [deponent's] pre-deposition discussions with Attorneys Meyers and Zebedee was privileged"); *Hanover Ins. Co. v. Plaquemines Parish Gov't*, 304 F.R.D. 494, 497-500 (E.D. La. 2015) (after surveying the case law and noting that nearly every federal court to address the issue has concluded that the attorney-client privilege extends to former employees, affirming magistrate's ruling that communications between company counsel and former employees were privileged).

extensively about his time at Pilgrim's during his nearly five-hour-long deposition. Pilgrim's counsel did not object to various lines of questioning related to the timing, length, format, and attendance of the pre-deposition meeting. *See supra* Background Part II. However, when Mr. Heatherly was asked two questions about what specifically was said and reviewed at a meeting involving Pilgrim's counsel, Pilgrim's counsel objected on the basis of privilege and work product protection. *See id.* The basis for these objections—which is fully supported by the line of authority discussed above—was the right "to have a privileged conversation with a former employee about his time at the company." Dep. Tr. at 18:19-22. Plaintiffs should not be allowed to undermine this well-established right or subject Mr. Heatherly to the undue burden and hardship of another deposition.

> ### B.     *Plaintiffs Seek to Expand a Narrow Exception to Swallow the Rule*

After Pilgrim's submitted its November 10th letter response, Plaintiffs apparently realized that the default rule is to protect the kind of communications at issue here.[4] They now seize upon a narrow exception to that rule, which they blow out of proportion and attempt to shoehorn onto the situation here. In particular, they have cherry-picked language to the effect that communications "between a corporation's counsel 'and a former employee whom counsel does not represent, which bear on or otherwise potentially affect the witness'[s] testimony' are *not* privileged." Ex. C at 2 (quoting *Nicholls v. Philips Semiconductor Mfg.*, 2009 WL 2277869, at *2 (S.D.N.Y. July 27, 2009)); Ex. E at 1 (same). If read broadly and out of context, as Plaintiffs have presented it, this exception would appear to vitiate the long line of authority discussed above and swallow the default rule. But that is certainly not what *Nicholls* stands for.

---

[4] *See* Ex. E at 1 (conceding, in their reply letter, that "there may be times … when the attorney-client privilege could properly be extended to conversations between corporate counsel and a former employee").

In fact, the ***very same sentence*** of *Nicholls*—which Plaintiffs' counsel's correspondence cropped off—makes clear that communications with a former employee "whose 'nature and purpose' was for the corporation's counsel to learn facts related to a legal action that the former employee was aware of as a result of his or her employment, ***are privileged regardless of when they occurred***." *Nicholls*, 2009 WL 2277869, at *2 (emphasis added). And that is exactly what the numerous cases cited in Argument Part I.A above—including other cases from the Southern District of New York that cite *Nicholls* with approval—conclude as well. So, obviously, the exception cited by Plaintiffs did not work the sea change that they urge. What's more, the very next sentence of *Nicholls* says, "communications between a corporation's counsel and former employee which are counsel's 'legal conclusions or legal opinions that reveal [the corporation's] legal strategy' may be protected by the work-product doctrine." *Id.* (alteration in original). Plaintiffs omitted that important context from their correspondence too.

Even if the scope of the exception Plaintiffs cite were unclear in *Nicholls*—and as discussed above, it is not—other cases have confirmed that it is very narrow indeed. In *Gary Friedrich* (decided by the S.D.N.Y. after *Nicholls*), the court stated that the carve-out for discussions that "bear on or otherwise potentially affect the witness's testimony" is "a very narrow exception." 2011 WL 2020586, at *5; *see also Export-Import Bank*, 232 F.R.D. at 112 (similar). This narrow exception is meant to cover situations where a pre-deposition conversation has "changed the witness's testimony." *Gary Friedrich*, 2011 WL 2020586, at *5; *see also Hof v. LaPorte*, 2020 WL 5594126, at *5 (E.D. La. Sept. 18, 2020) (while the exception applies to discussions that may have changed the witness's testimony, "this does not mean [the examiner] can ask about privileged communications"). This would occur, for example, if company counsel informed the former employee of "facts of which he had no prior knowledge," or if company counsel gave "advice on

how to handle deposition questioning"—though this may still be afforded protection under the work product doctrine. *Salazar*, 2011 WL 13205947, at *5; *see also* Argument Part II *infra*.

Plaintiffs have no basis to claim that this narrow exception applies here. Instead, their correspondence simply assumes that it does. *See* Ex. E at 1 ("Your conversations with Mr. Heatherly, a former employee of Pilgrim's Pride, clearly 'bear on or otherwise potentially affect' his testimony."). But Plaintiffs' counsel did not even *attempt* to elicit testimony that, during the meeting with Pilgrim's counsel, non-privileged matters were discussed. After Pilgrim's counsel objected on the basis that he had a right to conduct "a privileged conversation with a former employee **about his time at the company**" (Dep. Tr. at 18:19-22), Plaintiffs' counsel could have asked whether any matters were discussed that did not relate to Mr. Heatherly's time at the company. Plaintiffs' counsel chose not to do so, and he thereby failed to lay a foundation that any potentially non-privileged discussions occurred. Similarly, Plaintiffs' counsel chose not to ask whether any of the documents reviewed at the meeting were used to refresh Mr. Heatherly's recollection, again failing to lay a foundation for the bald claim of discoverability. Mr. Heatherly should not have to bear the burden of another deposition due to Plaintiffs' counsel's strategic choices (or oversights, if that's what they were). *See Gary Friedrich*, 2011 WL 2020586, at *7 ("[T]he plaintiffs have had ample opportunity to probe whether Mr. [Heatherly's] deposition testimony was improperly influenced by [Pilgrim's]. The expense and burden of a reconvened deposition are not justified by the very limited nature of the information regarding Mr. [Heatherly's] communications with [Pilgrim's] counsel that plaintiffs might properly discover.").

II.    **Even if the Attorney-Client Privilege Did Not Apply—and It Does—the Work Product Protection Applies**

    *A.    The Work Product Protection Covers Communications at the Meeting*

Courts have concluded that pre-deposition communications between a company's counsel and its former employee are not only attorney-client privileged, but also that they are subject to protection under the work product doctrine. While Pilgrim's raised this point in its response letter (Ex. D at 2), Plaintiffs' reply failed to address it. *See generally* Ex. E. Yet, it is an independent ground for protecting Mr. Heatherly from the undue burden and hardship of another deposition.

On facts nearly identical to these, courts have opined that the work product protection applies. In *Gary Friedrich*, for instance, the court stated, "Although there are some aspects of attorney communications with former employees that are carved out of the attorney-client privilege, many of these communications are nevertheless protected under the aegis of the work product doctrine." 2011 WL 2020586, at *6. This is because pre-deposition conversations with former employees may well convey "legal opinions and theories of the case," rendering them "immune from discovery." *Export-Import Bank*, 232 F.R.D. at 112. Thus, questioning about pre-deposition discussions that would tend to reveal counsel's conclusions or opinions should be precluded by the work product doctrine. *See Salazar*, 2011 WL 13205947, at *5; *see also, e.g.*, *Surles*, 2001 WL 815522, at *6 ("Additionally, any information beyond the underlying facts of this case that Surles might unearth by questioning [the former employee] about his conversations with Air France's counsel would likely expose defense counsel's thought processes which are entitled to protection under the work product doctrine."); *Nicholls*, 2009 WL 2277869, at *2 (similar).

The court in *In re Gulf Oil/Cities Services Tender Offer Litigation* summed this situation up well:

> In this case there is no real dispute that [the former employee] was asked to attend the New Orleans meeting to discuss the matters concerning which he subsequently testified at his deposition. **It is therefore obvious that the discussions at the meeting come within the broad purview of the work-product doctrine.** Disclosure of statements made or questions posed by Chevron's counsel at the meeting could tend to reveal their thoughts about or analysis of the issues posed by this litigation. As for any statements made by [the former employee] at the meeting, even if purely factual they would amount to a statement of a witness provided to counsel, and thus come within the ambit of the rule as factual work-product.

1990 WL 108352, at *3 (S.D.N.Y. July 20, 1990) (emphasis added). Here too, forcing Mr. Heatherly to disclose statements made at a meeting with Pilgrim's counsel would tend to reveal information that is protected under the broad umbrella of work product. Thus, even if the Court were to conclude—against the great weight of authority outlined above in Argument Part I.A—that the communications at the meeting were not covered by the attorney-client privilege, they would still be protected under the work product doctrine.

       B.      *The Work Product Protection Also Covers the Identity of Documents Reviewed at the Meeting*

Plaintiffs also should not be allowed to inquire into the identity of the specific documents reviewed during the meeting between Mr. Heatherly, his lawyer, and Pilgrim's counsel. In their initial correspondence, Plaintiffs claimed that this information was discoverable, citing *Torix v. United States*, 2020 WL 1068061, at *2 (E.D. Ok. Mar. 5, 2020). *See* Ex. C at 2. Not only did *Torix* actually *uphold* a claim of work product protection, but Plaintiffs overstate its import—claiming it shows that "the identity of documents reviewed prior to deposition are discoverable." *Id.* What *Torix* and Federal Rule of Evidence 612 really say is that documents used *to refresh a witness's recollection* before testifying may be discoverable in some circumstances. *See Torix*, 2020 WL 1068061, at *2 ("Plaintiffs are not entitled to production of the statement under Rule 612, because Dr. Hsieh did not use the statement to refresh his memory in preparation for his deposition or during the deposition."); Fed. R. Evid. 612 ("This rule gives an adverse party certain

14

options when a witness uses a writing to refresh memory … before testifying, if the court decides that justice requires the party to have those options.").

Plaintiffs have no basis to claim that Mr. Heatherly reviewed documents during the meeting in order to refresh his recollection. Plaintiffs' counsel chose not to ask about that, as discussed above, and instead "move[d] on" immediately after Pilgrim's counsel objected to inquiry into the identity of the specific documents reviewed. *See* Dep. Tr. at 22:6-17. It is therefore wrong for Plaintiffs to claim that Pilgrim's counsel's objection was improper under *Torix* and Rule 612. This case is more like *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985), where the examiner "failed to lay a proper foundation" for application of Rule 612 and sought all documents from a pre-deposition meeting. *Id.* at 318. The Third Circuit reversed the lower court's order allowing such discovery, concluding that "[p]roper application of Rule 612 should never implicate an attorney's selection, in preparation for a witness'[s] deposition, of a group of documents that he believes critical to a case. Instead, identification of such documents under Rule 612 should only result from opposing counsel's own selection of relevant areas of questioning, and from the witness'[s] subsequent admission that his answers to those specific areas of questioning were informed by documents he had reviewed." *Id.* Plaintiffs' counsel should not be allowed to pierce work product protection based on his own failure to lay a foundation for application of Rule 612—in other words, "deposing counsel [sh]ould discover the documents through his own wit, and not through the wit of his adversary." *Id.* at 318-19.

Case law supports application of the work product doctrine in these circumstances. In *Hanover Insurance*, for instance, the court ruled that the identity of any documents shown to the former employees in a pre-deposition meeting was protected work product. 304 F.R.D. at 500. It noted that numerous documents had been produced in the litigation, and when "an attorney culls

through a large volume of documents and identifies those that she believes are important to the litigation, that selection of documents necessarily reveals the attorney's opinions regarding the litigation." *Id.* As a result, inquiring into the identity of the documents shown at the meeting "asks the witness to reveal the thoughts and opinions of the corporate attorney." *Id.* The *Hanover Insurance* court thus had "no difficulty" in holding that the identity of the documents was protected. *Id.*

This comports with the U.S. Supreme Court's observation in *Hickman v. Taylor*, 329 U.S. 495 (1947)—the seminal work product case—that an attorney must "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and protect their clients' interests." *Id.* at 511. Lower courts have adhered to this rationale when upholding work product protection over the identity of documents compiled for pre-deposition meetings. *See, e.g.*, *Sporck*, 759 F.2d at 316-17 (holding that "the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product," because it is critical for counsel to distill the most relevant information and absent protection, the attorney's work would be stifled); *Aguinaga v. John Morrell & Co.*, 112 F.R.D. 671, 683 (D. Kan. 1986) ("Since the plaintiffs already had possession of the documents, the only purpose for ordering discovery of the documents [the deponent] reviewed would be to inform plaintiffs of the attorneys' process of selection and distillation of documents. … Thus, this Court holds that the process of selecting the [] documents is protected by the attorney opinion work product doctrine."); *In re Gulf Oil*, 1990 WL 108352, at

16

*6 n.8 (noting that an attorney's selection of documents to show a witness will generally be protected by the work product doctrine).

Consistent with these authorities, the identity of the documents shown to Mr. Heatherly at the meeting is protected by the work product doctrine, and Plaintiffs' counsel did not lay a proper foundation for application of Rule 612.

**III.   Even if There Were Some Remaining Discoverable Information, the Dubious Benefit of Obtaining that Information Is Outweighed by the Burden on Mr. Heatherly and Pilgrim's**

For the reasons discussed in Argument Parts I and II above, the information sought by Plaintiffs is protected from disclosure by the attorney-client privilege and/or the work product doctrine. That should end the matter. But even if there were some fragment of information not covered by these twin protections, Mr. Heatherly should not be subjected to another deposition merely to allow Plaintiffs to try to find it.

First, Plaintiffs' counsel had "ample opportunity" to question Mr. Heatherly not only about a wide range of substantive matters, but also about the meeting in question. *Gary Friedrich*, 2011 WL 2020586, at *7; *see also* Fed. R. Civ. P. Rule 26(b)(2)(C)(ii) (discovery may be limited where "the party seeking discovery has had ample opportunity to obtain the information"). During his nearly five-hour-long deposition, Mr. Heatherly freely answered questions about the meeting's format, length, and attendees, among other things. He also offered fulsome testimony based on his decades of experience in the poultry industry. *See Price*, 2008 WL 2388709, at *2 (denying application to reopen deposition of former employee and noting, "[o]nce the deposition turned to essential, relevant matters as alleged in the complaint, as opposed to peripherals, the witness appears to have testified fully about the underlying facts and to her own conduct, and knowledge of the relevant events. … Plaintiffs' counsel's questions fully probed the appropriate subject matter."). At the end of the day, Plaintiffs' counsel has teed up a dispute over a meager *two*

objections, and in spite of the fact that he failed to lay a foundation to support his arguments here. Mr. Heatherly and Pilgrim's should not have to pay for that oversight.

Second, the significant burden of imposing another deposition on Mr. Heatherly—a retiree with no "dog in this hunt" who is suffering from major medical issues—clearly outweighs any marginal benefit of asking him the few questions that would not be precluded by the attorney-client privilege and/or work product protection. *See* Fed. R. Civ. P. 26(b)(1) (discovery may be limited where "the burden or expense of the proposed discovery outweighs its likely benefit"). Courts have concluded as much in similar circumstances, and without Mr. Heatherly's extenuating circumstances. *See, e.g.*, *Gary Friedrich*, 2011 WL 2020586, at \*7 ("The expense and burden of a reconvened deposition are not justified by the very limited nature of the information regarding [the former employee's] communications with Marvel's counsel that plaintiffs might properly discover."); *Export-Import Bank*, 232 F.R.D. at 112 ("The benefit that might be obtained from asking [the former employee] about communications with Ex-Im lawyers that neither concerned information she learned while she was an Ex-Im employee nor was work product is outweighed by the burden a new deposition would impose on Ex-Im."). Here too, the scales tip decidedly in favor of issuing a protective order.

## **CONCLUSION**

For these reasons, Pilgrim's respectfully requests that the Court grant this Motion for a Protective Order, forbid Plaintiffs from further deposing Mr. Heatherly and from otherwise inquiring into the matters addressed herein, and award any other relief deemed just and proper.

Dated: November 24, 2021

Respectfully submitted,

/s/ Carrie C. Mahan

Carrie C. Mahan, D.C. Bar #459802, admitted *pro hac vice*
Christopher J. Abbott, D.C. Bar #1014487, admitted *pro hac vice*
**WEIL, GOTSHAL & MANGES LLP**
2001 M Street, NW, Ste 600
Washington, D.C. 20036
Tel: 202-682-7000
Fax: 202-857-0940
carrie.mahan@weil.com
christopher.abbott@weil.com

Larry D. Ottaway, OK Bar #6816
Amy Sherry Fischer, OK Bar #16651
**FOLIART HUFF OTTAWAY & BOTTOM**
201 Robert S. Kerr. Ave., 12th Floor
Oklahoma City, OK 73102
Tel: 405-232-4633
Fax: 405-232-3462
larryottaway@oklahomacounsel.com
amyfischer@oklahomacounsel.com

***Counsel for Defendant Pilgrim's Pride Corporation***

19

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(f), I hereby certify that on November 22, 2021, counsel for Pilgrim's conferred in good faith with counsel for Plaintiffs by telephone. The distance between Pilgrim's counsel's office (in Washington, D.C.) and Plaintiffs' counsel's office (in San Francisco, California) renders a personal conference infeasible. Counsel for Plaintiffs oppose the relief requested in this Motion.

/s/ Carrie C. Mahan

Carrie C. Mahan, D.C. Bar #459802,
admitted *pro hac vice*
**WEIL, GOTSHAL & MANGES LLP**
2001 M Street, NW, Ste 600
Washington, D.C. 20036
Tel: 202-682-7000
Fax: 202-857-0940

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of November, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System, which will send notice of electronic filing to all parties at the e-mail addresses on file.

*/s/ Carrie C. Mahan*

Carrie C. Mahan, D.C. Bar #459802,
admitted *pro hac vice*
**WEIL, GOTSHAL & MANGES LLP**
2001 M Street, NW, Ste 600
Washington, D.C. 20036
Tel: 202-682-7000
Fax: 202-857-0940

21