# Exhibit A



Deposition of:

## James Heatherly

*November 1, 2021*

In the Matter of:

## Grower_In re Broiler Chicken Grower Antitrust Liti

Veritext Legal Solutions

888.777.6690 | cs-midatlantic@veritext.com | 215-241-1000

Page 1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF OKLAHOMA
2
3
                             MDL No. 6:20-2977-RJS-CMR
4
   IN RE: BROILER CHICKEN      Hon. Chief Judge Robert J.
5  GROWER ANTITRUST           Shelby
   LITIGATION (NO. II)
6                             Hon. Cecilia M. Romer
7  ~~~~~~~~~~~~~~~~~~~~~~~
8
9
10              REMOTE VIDEO DEPOSITION OF
11
             JAMES FREDDIE HEATHERLY
12
13              HIGHLY CONFIDENTIAL
14
15
16              November 1, 2021
17               10:31 a.m. CDT
18
19
20              416 Gunter Avenue
                Guntersville, Alabama
21
22
23
24        S. Julie Friedman, CCR-B-1476
25

HIGHLY CONFIDENTIAL

```
                                                    Page 2

  1                    APPEARANCES OF COUNSEL
  2    Co-Lead Counsel for Plaintiffs and the
       Proposed Class:
  3
           HAUSFELD LLP
  4        KYLE BATES, ESQ.  (Via Zoom)
           Suite 3200
  5        600 Montgomery Street
           San Francisco, California  94111,          +1
  6        415.633.1908
           415.633.4980 Fax
  7        kbates@hausfeld.com
       AND
  8        HAUSFELD & CO. LLP
           SAMANTHA S. DERKSEN, ESQ.
  9        12 Gough Square
           London, EC4A 3DW
 10        +44 (0)20 7665-5000
           sderksen@hausfeld.com
 11
       On behalf of the Defendant Koch Foods:
 12
           BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC
 13        CHRIS WHITE, ESQ. (Via Zoom)
           One Eastover Center, Suite 400
 14        100 Vision Drive,
           Jackson, Mississippi 39211
 15        601.973.3604
           (Via Zoom)662.322.6956 Cell
 16        rcwhite@bakerdonelson.com
 17    On behalf of Defendant Pilgrim's Pride:
 18        WEIL, GOTSHAL & MANGES LLP
           CHRISTOPHER ABBOTT, ESQ. (Via Zoom)
 19        CARRIE C. MAHAN, ESQ. (Via Zoom)
           Suite 600
 20        2001 M Street NW
           Washington, DC  20036
 21        202.682.7197 (CA)
           202.847.0940 Fax
 22        202.682.7231 (CCM)
           christopher.abbott@weil.com
 23        carrie.mahan@weil.com
 24
 25
```

```
 1         APPEARANCES OF COUNSEL (CONTINUED)
 2   AND
         WEIL, GOTSHAL & MANGES LLP
 3       BRIAN LIEGEL, ESQ. (Via Zoom)
         ALLI G. KATZEN (Via Zoom)
 4       1395 Brickell Avenue
         Miami, Florida  33131
 5       305.577.3150 (AGK)
         305.577.3180 (BL)
 6       brian.liegel@weil.com
         alli.katzen@weil.com
 7
     On behalf of Defendant Sanderson Farms:
 8
         KIRKLAND & ELLIS LLP
 9       STEPHEN M. REES, ESQ. (Via Zoom)
         300 North LaSalle
10       Chicago, Illinois  60654
         312.862.3389
11       312.862.2200 Fax
         stephen.rees@kirkland.com
12
     On behalf of the Deponent:
13
         BEARD & BEARD
14       PIERCE JACKSON "P.J." HARRIS, JR. ESQ. (Via
            Zoom)
15       416 Gunter Avenue
         Guntersville, Alabama 35976
16       256.582.3819
         256.582.6787
17       pj@beardandbeard.com
18   Also Present:
         Keith Shulman, Videographer/Concierge Tech
19
20
21
22
23
24
25
```

HIGHLY CONFIDENTIAL

Page 15

| | | |
|---|---|---|
| 1 | Q. Okay. Have you received a subpoena to | 11:36:28 |
| 2 | testify in a criminal trial? | 11:36:32 |
| 3 | A. No. | 11:36:41 |
| 4 | Q. No. Okay. What did you do to prepare for | 11:36:41 |
| 5 | your deposition today? | 11:36:44 |
| 6 | And, again, when you answer that question, | 11:36:45 |
| 7 | I don't want you to tell me what you said to your | 11:36:47 |
| 8 | lawyer. I just want you to tell me what you did | 11:36:49 |
| 9 | generally to prepare for your deposition today. | 11:36:52 |
| 10 | MR. HARRIS: Answer. | |
| 11 | THE WITNESS: I talked to my attorney. | 11:36:55 |
| 12 | Q. (By Mr. Bates) How many times? | 11:36:56 |
| 13 | A. Three or four, I suppose. | 11:37:00 |
| 14 | Q. Okay. And when you say your attorney, you | 11:37:02 |
| 15 | mean Mr. Harris? | 11:37:04 |
| 16 | A. Yes. | 11:37:05 |
| 17 | Q. Okay. Are you represented by anybody else | 11:37:05 |
| 18 | other than Mr. Harris? | 11:37:07 |
| 19 | MR. HARRIS: Answer that question. | |
| 20 | THE WITNESS: No. I have spoken to Chris | 11:37:15 |
| 21 | Abbott a time or two. | 11:37:17 |
| 22 | Q. (By Mr. Bates) All right. I want to talk | 11:37:19 |
| 23 | about that. But just to be clear, Mr. Abbott's not | 11:37:19 |
| 24 | your lawyer, correct? | 11:37:23 |
| 25 | MR. HARRIS: No. | |

HIGHLY CONFIDENTIAL

Page 16

```
1            THE WITNESS:  Correct.              11:37:24

2       Q.   (By Mr. Bates)  Okay.  Mr. Harris is your   11:37:25

3  only lawyer as it concerns this case; is that    11:37:27

4  correct?

5       A.   Yes.                                  11:37:30

6       Q.   Okay.  All right.  Let's talk about the  11:37:30

7  times that you met with your lawyer.  You said three  11:37:33

8  or four times; is that correct?                 11:37:36

9       A.   Yes.                                  11:37:39

10      Q.   When did those conversations take place?  11:37:39

11      A.   I don't remember the date, but when I -- I  11:37:43

12  got -- received a subpoena.                     11:37:47

13      Q.   Okay.  So that was one time.  What about  11:37:50

14  the other two?                                  11:37:53

15      A.   Well, I spoke to him a few times after  11:37:55

16  that.                                           11:37:59

17      Q.   Okay.  When was the last time you spoke to  11:38:00

18  him?                                            11:38:01

19      A.   Last Friday about this -- this and what  11:38:02

20  time for sure it was.                           11:38:09

21      Q.   Okay.  How long did that meeting last, do  11:38:10

22  you think?                                      11:38:14

23      A.   It was over the phone.  About five  11:38:14

24  minutes.                                        11:38:16

25      Q.   Okay.  Were any of your meetings with Mr.  11:38:16
```

Page 17

1    Harris about this case longer than five minutes?    11:38:20

2         A.    We -- Most of our conversations have been    11:38:29

3    over the phone, and they were short.    11:38:31

4         Q.    Okay.  Did you ever meet with Mr. Harris    11:38:36

5    in person about this case?    11:38:38

6         A.    Yes.    11:38:40

7         Q.    How many times?    11:38:40

8         A.    Two or three times.    11:38:42

9         Q.    And how long did those meetings last?    11:38:44

10        A.    10 or 15 minutes, I would say.  I don't    11:38:46

11   remember.    11:38:50

12        Q.    Okay.  And when was the last time you had    11:38:50

13   an in-person meeting with Mr. Harris about this case?    11:38:52

14        A.    Week before last.    11:38:57

15        Q.    Okay.  You remember the date?    11:39:03

16        A.    I don't.    11:39:06

17        Q.    All right.  How long did that meeting    11:39:08

18   last, if you know?    11:39:09

19             MR. HARRIS:  If you know.    11:39:13

20             THE WITNESS:  I don't -- about a -- About    11:39:13

21        an hour, I'll say.    11:39:14

22        Q.    (By Mr. Bates)  About an hour.  Okay.  So    11:39:20

23   longer than the rest of your other meetings; is that    11:39:20

24   correct?    11:39:23

25        A.    Yes.    11:39:23

HIGHLY CONFIDENTIAL

Page 18

| | | |
|---|---|---|
| 1 | Q.     Okay.  Was anybody else at that meeting | 11:39:23 |
| 2 | besides you and Mr. Harris? | 11:39:26 |
| 3 | A.     At the meeting, no. | 11:39:27 |
| 4 | Q.     Was anybody on the phone? | 11:39:28 |
| 5 | A.     Yes. | 11:39:30 |
| 6 | Q.     Who was it? | 11:39:32 |
| 7 | A.     Chris Abbott. | 11:39:33 |
| 8 | Q.     All right.  What did you and Mr. Abbott | 11:39:34 |
| 9 | and Mr. Harris discuss at this meeting a week before | 11:39:41 |
| 10 | last that lasted about an hour? | 11:39:45 |
| 11 | MR. ABBOTT:  I'm going to interject here | 11:39:48 |
| 12 | and object and instruct the witness not to | 11:39:50 |
| 13 | answer. | 11:39:52 |
| 14 | MR. BATES:  All right.  Well -- | |
| 15 | MR. ABBOTT:  I was -- | |
| 16 | MR. BATES:  -- you don't represent the | 11:39:55 |
| 17 | witness, Mr. Abbott.  But what's the basis of | 11:39:56 |
| 18 | your objection? | 11:39:57 |
| 19 | MR. ABBOTT:  The basis is that I represent | 11:40:00 |
| 20 | Pilgrim's Pride, and I'm entitled to have a | 11:40:03 |
| 21 | privileged conversation with a former employee | 11:40:09 |
| 22 | about his time at the company. | 11:40:11 |
| 23 | MR. BATES:  Well -- | |
| 24 | MR. ABBOTT:  So -- | |
| 25 | MR. BATES:  -- I don't think --  I don't | |

Page 19

1      think I agree.

2           Mr. Harris, are you instructing your      11:40:12

3      client not to answer the question?            11:40:15

4           MR. HARRIS:  Instructing him not to       11:40:17

5      answer.                                        11:40:17

6           Q.   (By Mr. Bates)  Okay.  Mr. Heatherly, Mr.   11:40:19

7      Abbott is a lawyer for Pilgrim's Pride; is that   11:40:21

8      correct?                                       11:40:25

9           A.   Yes.                                 11:40:25

10          Q.   All right.  And you don't work for   11:40:26

11     Pilgrim's Pride, do you?                       11:40:28

12               Is that correct?

13          A.   What was the question?               11:40:32

14          Q.   You don't work for Pilgrim's Pride, do   11:40:33

15     you?                                           11:40:36

16          A.   I don't.                             11:40:36

17               MR. ABBOTT:  Object to form.         11:40:39

18          Q.   (By Mr. Bates)  All right.  How long ago   11:40:40

19     did you stop working for Pilgrim's Pride?      11:40:41

20          A.   2015.                                11:40:44

21          Q.   Okay.  So you haven't worked for Pilgrim's   11:40:46

22     Pride in over six years; is that correct?      11:40:49

23          A.   That's correct.                      11:40:55

24          Q.   All right.  And you're not a defendant in   11:40:55

25     this case, are you?                            11:40:56

HIGHLY CONFIDENTIAL

Page 21

```
 1   outcome of this case?                            11:41:43

 2       A.    I hope not.                            11:41:44

 3       Q.    Me, too.                               11:41:45

 4             So is it fair to say that you don't have  11:41:47

 5   any legal interest in the outcome of this case --  11:41:50

 6             MR. ABBOTT:  Object to the form.       11:41:54

 7       Q.   (By Mr. Bates)  -- Mr. Heatherly?       11:42:00

 8             MR. HARRIS:  Answer the best you can,

 9       Fred.

10             THE WITNESS:  Say --  The question, say it  11:42:10

11       again.                                       11:42:12

12       Q.    (By Mr. Bates)  Just want to ask again. 11:42:12

13   You don't have any legal interest in the outcome of  11:42:12

14   this case, do you?                               11:42:15

15       A.    I do not.                              11:42:15

16       Q.    Okay.  And so all right.  You had one  11:42:19

17   conversation with Mr. Abbott and Mr. Harris.  It  11:42:25

18   lasted about an hour two weeks ago; is that correct?  11:42:32

19       A.    Yes.                                   11:42:35

20       Q.    All right.  Did you review any documents  11:42:35

21   during that meeting?                             11:42:41

22             MR. HARRIS:  Asking --

23             THE WITNESS:  Do what?                 11:42:45

24             MR. HARRIS:  He's asking you if you    11:42:46

25       reviewed any documents.                      11:42:47
```

HIGHLY CONFIDENTIAL

Page 22

| | | |
|---|---|---|
| 1 | THE WITNESS:  I have seen documents. | 11:42:50 |
| 2 | Q.   (By Mr. Bates)  Okay.  Did you review any | 11:42:53 |
| 3 | documents during the meeting with Mr. Abbott and Mr. | 11:42:54 |
| 4 | Harris? | 11:42:59 |
| 5 | A.   Yes. | 11:42:59 |
| 6 | Q.   Which documents did you review? | 11:43:00 |
| 7 | MR. ABBOTT:  I object to this.  I'm going | 11:43:04 |
| 8 | to object; and, again, object on the grounds of | 11:43:05 |
| 9 | privilege and attorney work product; and I | 11:43:07 |
| 10 | instruct the witness not to answer. | 11:43:10 |
| 11 | MR. BATES:  Mr. Harris, are you | 11:43:14 |
| 12 | instructing your client not to answer? | 11:43:15 |
| 13 | MR. HARRIS:  Yes.  I am. | 11:43:18 |
| 14 | MR. BATES:  All right.  We'll mark this | 11:43:21 |
| 15 | for a ruling. | 11:43:22 |
| 16 | Q.   (By Mr. Bates)  All right.  Mr. Heatherly, | 11:43:23 |
| 17 | we're going to move on. | 11:43:25 |
| 18 | Did you review any documents in | 11:43:27 |
| 19 | preparation for your deposition other than during the | 11:43:29 |
| 20 | meeting with Mr. Abbott and Mr. Harris? | 11:43:31 |
| 21 | A.   No. | 11:43:34 |
| 22 | Q.   The only documents you ever looked at to | 11:43:34 |
| 23 | get ready for your deposition are the ones you looked | 11:43:36 |
| 24 | at during the meeting two weeks ago with Mr. Abbott | 11:43:40 |
| 25 | and Mr. Harris? | 11:43:43 |

HIGHLY CONFIDENTIAL

```
                                              Page 23

 1      A.    Yes.                              11:43:44

 2      Q.    Okay.  Mr. Heatherly, did --  Strike that.  11:43:48

 3            All right.  Mr. Heatherly, I'm going to go  11:44:00

 4  over some -- some definitions before we get into the  11:44:02

 5  examination.                               11:44:05

 6            So if I use the word "Pilgrim's" today, do  11:44:06

 7  you understand that I'm referring to Pilgrim's Pride,  11:44:10

 8  your former employer?                      11:44:15

 9      A.    Yes.                              11:44:16

10      Q.    Okay.  And if I use the word "defendants,"  11:44:16

11  I mean Pilgrim's Pride and the other defendants in  11:44:19

12  this case, which are Tyson, Perdue, Sanderson, and  11:44:23

13  Koch.                                       11:44:27

14            Do you understand that?           11:44:28

15      A.    Yes.                              11:44:29

16      Q.    Okay.  And there are also certain  11:44:29

17  coconspirators in the case that are not defendants;  11:44:32

18  and these are Amick Farms, Case Farms, Claxton  11:44:35

19  Poultry, Fieldale, Foster Farms, George's, Harrison,  11:44:40

20  House of Raeford, Keystone Foods, Mar-Jac, Marshal  11:44:45

21  Durbin, Mountaire, OK Foods, Peco, Simmons, and  11:44:52

22  Wayne.                                      11:44:57

23            Have you heard of all those companies  11:44:57

24  before?                                     11:44:58

25      A.    I've heard of those companies.    11:44:59
```

HIGHLY CONFIDENTIAL

Page 26

| | | | |
|---|---|---|---|
| 1 | A. | January '06 to present? | 11:47:12 |
| 2 | Q. | Correct. | 11:47:15 |
| 3 | A. | Yes. | 11:47:15 |

4     Q.    If we talk about a specific time in there,    11:47:17
5     I'll --  I'll give you that.  Okay?    11:47:18
6     A.    Okay.    11:47:19
7     Q.    All right.  Can you give me a brief sketch    11:47:20
8     of your educational history starting with high    11:47:22
9     school.    11:47:30
10     A.    I have three years of college.    11:47:30
11     Q.    Okay.  Where did you go to college?    11:47:33
12     A.    At a junior college down in South Alabama,    11:47:35
13     Southern Union; and then I went another year at St.    11:47:41
14     Bernard College over in Cullman --    11:47:48
15     Q.    Okay.  So --    
16     A.    -- in --    11:47:49
17     Q.    I'm sorry.  Go ahead, Mr. Heatherly.    11:47:49
18     A.    -- Cullman, Alabama.    11:47:51
19     Q.    Okay.  So you did two years at Southern    11:47:54
20     Union, and then one year at St. Vernon (sic) College    11:47:56
21     over in Cullman; is that correct?    11:47:59
22     A.    Yes.    11:48:01
23     Q.    Okay.  And you didn't earn a degree from    11:48:01
24     either school; is that correct?    11:48:03
25     A.    Well, it was a two-year degree from    11:48:10

Page 27

1    Southern Union; but not a degree from St. Bernard.      11:48:14

2         Q.    Okay.  And what was your two-year degree

3    from Southern Union in?                                 11:48:20

4         A.    It was just liberal arts.                    11:48:20

5         Q.    Okay.  What did you study in Cullman?        11:48:22

6         A.    Business.                                    11:48:25

7         Q.    Okay.  And that was just for one year,       11:48:26

8    correct?

9         A.    Yes.                                         11:48:28

10        Q.    Okay.  Any other degrees, professional       11:48:28

11   certificates, anything like that?                       11:48:32

12        A.    No.                                          11:48:35

13        Q.    Okay.  Can you briefly describe your work    11:48:38

14   history for me.                                         11:48:44

15        A.    From the start or in that time period        11:48:45

16   you're talking about, '06 to -- or '06 to now -- till  11:48:47

17   '15?                                                    11:48:51

18        Q.    From the start.                              11:48:54

19              Well -- Well, let me go back.  When did      11:48:55

20   you graduate from the university in Cullman?            11:48:56

21        A.    In 1963, I graduated from junior college.    11:49:00

22   I went in the Air Force for four years; and then I      11:49:07

23   went to St. Bernard part-time for about another         11:49:12

24   year's worth after I got out of the Air Force in        11:49:16

25   1967.                                                   11:49:18

HIGHLY CONFIDENTIAL

Page 32

```
 1   all as a live production manager?                    11:55:07

 2        A.    No.                                        11:55:09

 3        Q.    Okay.  And how long were you a live        11:55:09

 4   production manager with Tyson?                        11:55:12

 5        A.    From --  That was in '86 until '0 -- end   11:55:15

 6   of '06.                                               11:55:22

 7        Q.    All right.  Did your job duties change at  11:55:27

 8   all in that almost 20-year period?                    11:55:29

 9        A.    Not a lot as far as the job.               11:55:32

10              But in '91, I transferred with Tyson to    11:55:34

11   Northwest Arkansas and stayed there until '01.        11:55:39

12              In '01, I transferred back here with Tyson 11:55:43

13   until '0 -- end of '06.  I left Tyson after 28 years  11:55:47

14   and went to Pilgrim.                                  11:55:52

15        Q.    Okay.  Were you involved in grower pay at  11:55:55

16   all during any of your time at Tyson?                 11:55:58

17        A.    No.  Not really.                           11:56:03

18        Q.    Okay.  Tell me in what small way you were, 11:56:05

19   'cause you said not really.                           11:56:11

20        A.    Well, I -- I would --  It was above my pay 11:56:13

21   grade to set grower pay.                              11:56:16

22        Q.    I see.  Did you ever talk about grower pay 11:56:18

23   with anybody at Tyson?                                11:56:21

24        A.    Well, sometimes you would think the        11:56:23

25   growers probably need an increase; and you would --   11:56:30
```

HIGHLY CONFIDENTIAL

Page 35

```
 1        A.    Yes.                                    11:58:58

 2        Q.    Did you ever talk to any other companies  11:59:00

 3   in the poultry business about grower pay when you   11:59:01

 4   were at Tyson?                                      11:59:05

 5        A.    No.                                      11:59:06

 6        Q.    Never?                                   11:59:06

 7        A.    No.  I did not.                          11:59:08

 8        Q.    Okay.  All right.  So in 2006, you went to  11:59:10

 9   Pilgrim's; is that correct?                        11:59:16

10        A.    I --  I changed to Pilgrim in two, oh,   11:59:18

11   six.                                               11:59:22

12        Q.    I see.  And what was your job title at   11:59:22

13   Pilgrim's in 2006?                                 11:59:24

14        A.    Live production manager.                11:59:26

15        Q.    Okay.  So the same as the job that you   11:59:27

16   were doing at Tyson; is that correct?              11:59:30

17        A.    Yes.                                     11:59:32

18        Q.    Okay.  And did you relocate, or you were  11:59:32

19   still in Alabama in 2006?                           11:59:36

20        A.    Oh, I lived --  Oh, I lived here.        11:59:39

21        Q.    Okay.  Did your job duties change at all  11:59:40

22   at Pilgrim's as a live production manager, or were  11:59:45

23   you doing the same job you were doing at Tyson?     11:59:48

24              MR. ABBOTT:  Object to the form.          11:59:40

25              THE WITNESS:  It's the same job except the  11:59:53
```

HIGHLY CONFIDENTIAL

Page 37

| | | |
|---|---|---|
| 1 | role in running the feed mill was. | 12:00:51 |
| 2 | A.    I did not.  I was not involved in | 12:00:54 |
| 3 | ingredients or a feed formulation.  We had the Ph.D. | 12:00:57 |
| 4 | nutritionist that did that.  We had grain buyers that | 12:01:02 |
| 5 | bought the grain. | 12:01:06 |
| 6 | All I did or -- or my part of that was | 12:01:07 |
| 7 | making sure we ran the feed mill efficiently, that we | 12:01:11 |
| 8 | kept the birds fed, that we didn't have broiler farms | 12:01:14 |
| 9 | or any farms running out of feed.  And, you know, | 12:01:19 |
| 10 | it's the day-to-day operation, things at the feed | 12:01:23 |
| 11 | mill.  Not -- Not involved in grain buying or | 12:01:28 |
| 12 | formulation. | 12:01:30 |
| 13 | Q.    I see.  And were --  How long were you a | 12:01:34 |
| 14 | live production manager at Pilgrim's? | 12:01:38 |
| 15 | A.    At Pilgrim? | 12:01:43 |
| 16 | Q.    Yes. | |
| 17 | A.    From the end of '06 till July '15. | 12:01:46 |
| 18 | Q.    And is that when you retired? | 12:01:51 |
| 19 | A.    Yes. | 12:01:53 |
| 20 | Q.    Okay.  So your entire employment at | 12:01:53 |
| 21 | Pilgrim's, you were a live production manager; is | 12:01:56 |
| 22 | that correct? | |
| 23 | A.    Correct. | |
| 24 | Q.    Did your job duties change at all during | 12:02:01 |
| 25 | that nine-year period? | 12:02:03 |

HIGHLY CONFIDENTIAL

Page 67

```
 1      record, the time is 11:37.                      12:37:38

 2           (Recess from 11:37 a.m. to 11:49 a.m.)    12:37:43

 3           THE VIDEOGRAPHER:  We are back on the      12:49:00

 4      video record.  This begins Media Volume No. 2.  12:49:06

 5      The time is 11:49.                              12:49:11

 6      Q.    (By Mr. Bates)  All right.  Mr. Heatherly, 12:49:14

 7      we're back on the record.  Are you ready to continue? 12:49:16

 8      A.    I'm ready.                                 12:49:19

 9      Q.    Great.  Before we get back into my         12:49:20

10      questioning, I have some preliminaries I want to go  12:49:22

11      back over with you.                              12:49:24

12           Are you taking any medication today, any    12:49:26

13      narcotics or pain killers that would interfere with  12:49:29

14      your ability to give testimony today?            12:49:33

15      A.    No.                                        12:49:35

16      Q.    Okay.  And we spoke earlier today about a  12:49:36

17      conversation you had with Mr. Abbott and Mr. Harris,  12:49:41

18      do you recall that?                              12:49:45

19      A.    Yes.                                       12:49:47

20      Q.    Have you had any other conversations with  12:49:49

21      Mr. Abbott other than that one which I think you said  12:49:50

22      was two weeks ago and lasted about an hour?      12:49:55

23      A.    No.                                        12:49:59

24      Q.    The only time you've ever spoken to Chris  12:49:59

25      Abbott was once two weeks ago during the meeting with  12:50:03
```

HIGHLY CONFIDENTIAL

Page 68

1    Mr. Harris; is that correct?                      12:50:06

2         A.    He called me on -- before I knew anything  12:50:07

3    about any of this and asked me if I would volunteer  12:50:10

4    to a deposition.                                  12:50:15

5              And I told him I'd rather not get       12:50:18

6    involved.                                         12:50:22

7              And he told me he couldn't discuss the  12:50:23

8    case, that I would probably be getting a subpoena  12:50:26

9    from the other side, which I did.                 12:50:29

10        Q.    I see.  And how long ago was that       12:50:31

11   conversation?                                     12:50:34

12        A.    I don't remember exactly.  I'd say a    12:50:34

13   couple months.                                    12:50:36

14        Q.    Okay.  And you mentioned that you -- you 12:50:39

15   didn't want to get involved; is that correct?     12:50:44

16        A.    Correct.                               12:50:47

17        Q.    Why not?                               12:50:48

18        A.    Because I'm retired, and I don't really 12:50:48

19   have a dog in this hunt.                          12:50:50

20        Q.    Fair enough.  Mr. Heatherly, did you speak 12:50:52

21   to your lawyer, Mr. Harris, during the break we just 12:51:00

22   took?                                             12:51:03

23        A.    We spoke.                              12:51:05

24        Q.    That's what I'm asking.                12:51:07

25        A.    We did speak.                          12:51:09

HIGHLY CONFIDENTIAL

Page 118

```
 1            MR. BATES:  Is ten minutes okay?          13:53:13

 2            MR. ABBOTT:  Yeah.  That's fine.  Thanks.

 3            MR. BATES:  Okay.                          13:53:16

 4            THE VIDEOGRAPHER/TECH:  Going off the      13:53:16

 5      video record, the time is 12:53.                13:53:18

 6            (Recess from 12:53 p.m. to 1:02 p.m.)     13:53:22

 7            THE VIDEOGRAPHER/TECH:  We are back on the 14:02:36

 8      video record.  This begins Media Volume No.  3. 14:02:47

 9      The time is 1:02.                               14:02:51

10      Q.   (By Mr. Bates)  All right.  Mr. Heatherly, 14:02:54

11      we are back on the record.  Are you ready to    14:02:57

12      continue?                                       14:02:59

13      A.    I'm ready.                                14:03:00

14      Q.    All right.  Did you speak to Mr. Harris   14:03:01

15      during the break?                               14:03:04

16      A.    Yes.                                      14:03:05

17      Q.    Did you speak to Mr. Abbott during the    14:03:06

18      break?                                          14:03:08

19      A.    No.                                       14:03:08

20      Q.    Did you speak to anyone other than Mr.    14:03:09

21      Harris during the break?                        14:03:11

22      A.    No.                                       14:03:12

23      Q.    All right.  And, Mr. Heatherly, I know we 14:03:12

24      talked about your deposition preparation; and you 14:03:20

25      testified that you only spoke once with Mr. Abbott 14:03:22
```

HIGHLY CONFIDENTIAL

Page 119

1    two weeks ago.                                          14:03:25

2            Have you spoken to any other lawyers from       14:03:28

3    Mr. Abbott's firm in preparation for your deposition?   14:03:30

4        A.   No.                                            14:03:37

5        Q.   Okay.  All right.  I want to show you a        14:03:38

6    document.  It's going to be Exhibit 123 to your         14:03:39

7    deposition.                                             14:03:45

8            MR. BATES:  It's going to be Tab 36,            14:03:49

9        Keith.                                              14:03:52

10           (Plaintiff's Exhibit 123 was marked for

11       identification.)                                    14:04:11

12       Q.   (By Mr. Bates)  All right.  Mr. Heatherly,     14:04:11

13   this is Exhibit 123, and it's Bates-numbered            14:04:15

14   PPC-GROWERS-001449133.                                  14:04:19

15           Do you see that?                                14:04:22

16       A.   Yes.                                           14:04:24

17       Q.   Okay.  This is an e-mail from Chris            14:04:24

18   Carter, to you and Mr. Lacy, dated November 6, 2012.    14:04:28

19           Do you see that?                                14:04:35

20       A.   Yes.                                           14:04:35

21       Q.   And the subject in the attachment is,          14:04:36

22   "October AS presentation Gunt 3..."                     14:04:39

23           Do you see that?                                14:04:44

24       A.   Yes.                                           14:04:45

25       Q.   Do you know what that presentation is?  Do     14:04:45

Page 232

1        THE VIDEOGRAPHER/TECH:  We are back on the    16:53:45

2     video record.  This begins Media Volume No. 5.    16:53:52

3     The time is 3:53.                                 16:53:56

4        Q.   (By Mr. Bates)  All right.  Mr. Heatherly,  16:54:00

5     did you speak to your attorney, Mr. Harris, during  16:54:03

6     the break?                                        16:54:05

7        A.   Yes.                                      16:54:05

8        Q.   Did you speak to Mr. Abbott during the    16:54:05

9     break?                                            16:54:07

10       A.   No.                                       16:54:07

11       Q.   Did you speak to anyone other than Mr.    16:54:08

12    Harris during the break?                          16:54:10

13       A.   No.                                       16:54:11

14       MR. BATES:  Okay.  Mr. Heatherly, I have       16:54:13

15    no further questions.                             16:54:15

16       I am going to hold your deposition open,       16:54:16

17    pending the resolution of the attorney-client     16:54:19

18    privilege issue that Mr. Abbott raised at the      16:54:23

19    beginning; so we're going to await the Court's     16:54:26

20    resolution on that.                               16:54:30

21       I also want to instruct you that the           16:54:30

22    conversation you had with Mr. Abbott two weeks     16:54:33

23    ago may be discoverable, depending on the          16:54:37

24    outcome of that ruling; and so if you need to      16:54:39

25    memorialize that conversation so that you don't    16:54:43

HIGHLY CONFIDENTIAL

Page 236

1                    C E R T I F I C A T E

2

3

4    STATE OF GEORGIA:

5    COUNTY OF FULTON:

6

7            I hereby certify the foregoing transcript

8        was taken down, as stated in the caption, and

9        the questions and answers thereto were reduced

10       to typewriting under my direction; that the

11       foregoing pages 1 through 235 represent a true,

12       complete, and correct transcript of the evidence

13       given upon said hearing, and I further certify

14       that I am not of kin or counsel to the parties

15       in the case; am not in the regular employ of

16       counsel for any of said parties; nor am I in

17       anywise interested in the result of said case.

18            This, the 3rd day of November, 2021.

19

20

                 S. JULIE FRIEDMAN, CCR-B-1476

21

22

23

24

25