# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II) | MDL No. 6:20-2977-RJS-CMR<br><br>Hon. Chief Judge Robert J. Shelby<br><br>Hon. Cecilia M. Romero |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF SETTLEMENTS WITH PERDUE AND TYSON**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

   A.   Procedural Background ................................................................................. 2

   B.   The Settlement Negotiations and Settlement Agreement Terms ........................................4

   C.   Preliminary Approval and the Proposed Notice and Claims Process ...............................6

   D.   Class Notice, Objections, and Exclusions ..........................................................7

   E.   The Proposed Allocation and Distribution to the Settlement Classes ...............................9

   F.   Plaintiffs' Application for Attorneys' Fees, Litigation Costs, and Interim Service
        Awards.....................................................................................................9

III.    ARGUMENT .......................................................................................................10

   A.   The Proposed Settlements are Fair, Reasonable, and Adequate and Should be Finally
        Approved .................................................................................................10

        1.   Plaintiffs and Settlement Class Counsel Have Skillfully Represented the Settlement
             Classes ..........................................................................................10

        2.   The Settlements Were Reached After Arm's Length Negotiation...........................11

        3.   The Relief Provided to the Settlement Classes is More Than Adequate, it is
             Substantial ...................................................................................12

             a.The costs, risks, and delay of trial and appeal favor final approval .......................13

             b.The proposed method of distributing relief to the Settlement Classes, including the
               method of processing of claims, favors final approval............................................15

             c.The proposed award of attorneys' fees favors final approval.................................16

        4.   The Settlements and Proposed Plan of Distribution Treat Members of the Settlement
             Classes Equitably.............................................................................17

        5.   The Parties Agree that the Settlements are Fair, Reasonable, and Adequate............18

   B.   Notice to the Settlement Classes Comported with Rule 23 and Due Process.................19

IV.     CONCLUSION ...................................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado Partners, L.P. v. Mehta*,
    723 F. Supp. 540 (D. Colo. 1989) ....................................................................14, 18

*Aragon v. Clear Water Prods. LLC*,
    No. 15-cv-02821, 2018 WL 6620724 (D. Colo. Dec. 18, 2018) ...........................12

*Blanco v. Xtreme Drilling & Coil Servs., Inc.*,
    No. 16-cv-249, 2020 WL 4041456 (D. Colo. July 17, 2020)..................................12

*In re Broiler Chicken Antitrust Litig.*,
    No. 16-cv-8637 (N.D. Ill.) .......................................................................................3

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
    No. 17-cv-2142, 2020 WL 3288059 (D. Kan. June 18, 2020) ...................... *passim*

*Chieftain Royalty Co. v. XTO Energy Inc.*,
    No. 11-cv-29, 2018 WL 501656 (E.D. Okla. Jan. 18, 2018)..................................21

*Childs v. Unified Life Ins. Co.*,
    No. 10-cv-23, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011) ................................14

*Cisneros v. EP Wrap-It Insulation, LLC*,
    No. 19-cv-500, 2021 WL 2953117 (D.N.M. July 14, 2021) .......................12, 17, 18

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) .................................................................17

*Colvin v. Tyson Foods, Inc., et al.*,
    No. 2:20-cv-2464 (D. Kan.).......................................................................................3

*Cook v. Rockwell Int'l Corp.*,
    No. 90-cv-181, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) ................................16

*In re Corrugated Container Antitrust Litig.*,
    659 F.2d 1322 (5th Cir. 1981) ................................................................................14

*DeJulius v. New England Health Care Emps. Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ................................................................................19

*In re Dep't of Energy Stripper Well Exemption Litig.*,
    653 F. Supp. 108 (D. Kan. 1986)............................................................................18

*In re Domestic Airline Travel Antitrust Litig.*,
    378 F. Supp. 3d 10 (D.D.C. 2019) .........................................................................13

*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
    No. 17-MD-2785, 2021 WL 5369815 (D. Kan. Nov. 17, 2021) .............................................19

*Haff Poultry, Inc., et al. v. Tyson Foods, Inc., et al.*,
    No. 6:17-cv-33 (E.D. Okla.) .............................................................................................3

*Hale v. State Farm Mut. Auto. Ins., Co.*,
    No. 12-cv-660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ........................................15

*Harper v. C.R. England, Inc.*,
    746 F. App'x 712 (10th Cir. 2018) ..............................................................................19

*Khoday v. Symantec Corp.*,
    No. 11-cv-180, 2016 WL 1637039 (D. Minn. Apr. 5, 2016)....................................17, 18

*Lawrence v. First Fin. Inv. Fund V, LLC*,
    No. 19-cv-174, 2021 WL 3809083 (D. Utah Aug. 26, 2021) (Shelby, J.) ..............................10

*Lewis v. Wal-Mart Stores, Inc.*,
    No. 02-cv-0944, 2006 WL 3505851 (N.D. Okla. Dec. 4, 2006) ...........................................16

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-md-2420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ....................................14

*Mason v. Tyson Foods, Inc., et al.*,
    5:20-cv-07049 (N.D. Cal.) ...............................................................................................3

*McEntire v. Tyson Foods, Inc., et al.*,
    No. 1:20-cv-2764 (D. Colo.) ..............................................................................................3

*McGaffin v. Argos USA, LLC*,
    No. 16-cv-104, 2020 WL 3491609 (S.D. Ga. June 26, 2020) ............................................11

*McNeely v. Nat'l Mobile Health Care, LLC*,
    No. 07-cv-933, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ...............................11, 14, 18

*Montgomery v. Cont'l Intermodal Grp. Trucking LLC*,
    No. 19-cv-940, 2021 WL 1339305 (D.N.M. Apr. 9, 2021).........................................10, 11, 18

*Moreno v. Beacon Roofing Supply, Inc.*,
    No. 19-cv-185, 2020 WL 3960481 (S.D. Cal. July 13, 2020)................................................15

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020).................................................................................17

*Perks v. Activehours, Inc.*,
    No. 19-cv-5543, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) .............................................17

*In re Processed Egg Prod. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012)...........................................................................................13

*Retta v. Millennium Prods., Inc.*,
    No. 15-cv-1801, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ............................................14

*In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
   997 F.3d 1077 (10th Cir. 2021) ...............................................................................10, 12

*In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
   No. 17-md-2792, 2020 WL 2616711 (W.D. Okla. May 22, 2020),
   *aff'd*, 997 F.3d 1077 (10th Cir. 2021) ...............................................................................20, 21

*In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
   No. 17-md-2792, 2019 WL 6118267 (W.D. Okla. Nov. 18, 2019).......................................21

*In re Sanderson & Koch Broiler Chicken Grower Litig.*,
   No. 7:18-cv-31 (E.D.N.C.)......................................................................................................3

*Shaw v. Interthinx, Inc.*,
   No. 13-cv-01229, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ...........................................16

*Stewart v. USA Tank Sales & Erection Co.*,
   No. 12-cv-5136, 2014 WL 836212 (W.D. Mo. Mar. 4, 2014) ...............................................12

*Sullivan v. DB Invs.*,
   667 F.3d 273, 328 (3d Cir. 2011)...........................................................................................16

*Suaverdez v. Circle K Stores, Inc.*,
   No. 20-cv-01035, 2021 WL 4947238 (D. Colo. June 28, 2021) ...........................................10

*In re Syngenta AG MIR 162 Corn Litig.*,
   357 F. Supp. 3d 1094 (D. Kan. 2018).....................................................................................16

*Tennille v. Western Union Co.*,
   785 F.3d 422 (10th Cir. 2015) ..........................................................................................20, 21

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
   No. 02-md-1468, 2011 WL 1808038 (D. Kan. May 12, 2011) ..............................................16

*In re Urethane Antitrust Litig.*,
   No. 04-md-1616, 2006 WL 2983047 (D. Kan. Oct. 17, 2006)...............................................13

*In re Urethane Antitrust Litig.*,
   No. 04-md-1616, 2016 WL 4060156 (D. Kan. July 29, 2016)...............................................16

*Vargas v. Ford Motor Co.*,
   No. 12-cv-8388, 2020 WL 1164066 (C.D. Cal. Mar. 5, 2020)...............................................15

*In re Vitamins Antitrust Litig.*,
   No. 99-cv-197, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) .................................................17

*Wilkerson v. Martin Marietta Corp.*,
   171 F.R.D. 273 (D. Colo. 1997) .............................................................................................14

**Statutes**

Packers and Stockyards Act Section 202..........................................................................................2

iv

Sherman Act Section 1 ................................................................................................................ 2

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Fed. R. Civ. P. 23(a) ........................................................................................................ 10

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 7, 19, 20

Fed. R. Civ. P.  23(c)(2) .............................................................................................. 19, 21

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................... 20, 21

Fed. R. Civ. P. 23(e) .................................................................................................. 10, 17

Fed. R. Civ. P. 23(e)(1) ..................................................................................................... 19

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 1, 2, 10

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................... 10, 11, 12

Fed. R. Civ. P.  23(e)(2)(B) .............................................................................................. 12

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................... 13

Fed. R. Civ. P. (e)(2)(C)(i) ............................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(ii) ..................................................................................... 15, 16

Fed. R. Civ. P. 23(e)(2)(C)(iv) ......................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................................... 17, 18

**Other Authorities**

William B. Rubenstein, 4 Newberg on Class Actions (5th ed.) ......................................... 11, 14, 15

## I.      INTRODUCTION

Plaintiffs,[1] on their own behalf and on behalf of the certified settlement classes ("Settlement Classes") for the settlements with Tyson[2] and Perdue[3] (the "Settlements" or the "Settlement Agreements"), respectfully submit this motion and supporting memorandum for: (1) final approval of the Settlements under Federal Rule of Civil Procedure 23(e)(2);[4] (2) final approval of the proposed *pro rata* plan of distribution to members of the Settlement Classes; and (3) a finding that the class notice program, as implemented, comports with Rules 23 and due process and was effectuated in accordance with the Court-approved notice plan.

Under the Settlements, Perdue and Tyson ("Settling Defendants") have paid $14.75 million and $21 million, respectively, in cash to the Settlement Classes; are providing information, witnesses, and declarations to Plaintiffs to aid in the prosecution of their claims against the Non-Settling Defendants;[5] and, as to Perdue, over the next five years, will exclude from its contracts with members of the Settlement Class provisions that mandate arbitration or bar initiation or participation in a class action and forego enforcement of any such provisions in existing contracts. As this Court previously found in its Orders preliminarily approving the

---

[1] The court appointed Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles Weaver, Melissa Weaver, Marc McEntire, Karen McEntire, Mitchell Mason, Anna Mason, Barry Mason, Jonathan Tipton, and Henry Randall Colvin as representatives for the Perdue and Tyson Settlement classes. ECF No. 144 ¶ 9; ECF No. 145 ¶ 9. Unless otherwise specified, all docket citations are to the MDL docket: No. 6:20-md-2977 (E.D. Okla.).

[2] Tyson means, collectively, Tyson Foods Inc., Tyson Chicken, Inc., Tyson Breeders, Inc., and Tyson Poultry, Inc, and all of their predecessors, successors, assigns, affiliates (including without limitation any affiliates who are alleged co-conspirators), and any and all past, present, and future parents, owners, subsidiaries, divisions, and/or departments.

[3] Perdue means Perdue Foods, LLC, and all of its predecessors, successors, assigns, affiliates (including without limitation any affiliates who are alleged co-conspirators), and any and all past, present, and future parents, owners, subsidiaries, divisions, and/or departments.

[4] The Settlement Agreements were filed as exhibits to Plaintiffs' motions for preliminary approval of the Agreements. The Tyson Settlement Agreement is docketed at ECF No. 111-1. The Perdue Settlement Agreement is docketed at ECF No. 133-1.

[5] "Non-Settling Defendants" are Pilgrim's Pride Corporation; Sanderson Farms, Inc., Sanderson Farms, Inc. (Foods Division), Sanderson Farms, Inc. (Processing Division), and Sanderson Farms, Inc. (Production Division) (collectively, "Sanderson"); and, Koch Foods, Inc. and Koch Meat Co., Inc. (doing business as Koch Poultry Co.) (collectively, "Koch"). "Defendants" collectively refers to the Settling Defendants and Non-Settling Defendants.

Settlements, and as set forth in the Plaintiffs' counsel's declarations previously filed in connection with the Settlements,[6] the Settlements are fair, reasonable, and adequate under the criteria of Rule 23(e)(2) and the law of this Circuit. The Settlements should be finally approved.

## II.   BACKGROUND

### A.   Procedural Background

Certain Plaintiffs filed the original action in this MDL on January 27, 2017. Smith Fee Decl. ¶ 6. Following centralization of various related actions by the Judicial Panel on Multidistrict Litigation ("JPML"), Plaintiffs filed their Consolidated Amended Class Action Complaint alleging Defendants and seventeen Co-Conspirators[7]—the largest vertically integrated Broiler[8] processors ("Integrators") among them—conspired to suppress compensation paid to Broiler farmers ("Growers") in violation of Section 1 of the Sherman Act and Section 202 of the Packers and Stockyards Act. *See, e.g., id.* ¶¶ 8-11; *see also* Consol. Class Action Compl. ("CCAC") ¶¶ 166-179 (ECF No. 59).

Over almost five years, Plaintiffs have vigorously prosecuted their claims while Defendants have aggressively contested them at every stage. *See, e.g.*, Smith Fee Decl. ¶¶ 11-29, 35-59, 97-98. Plaintiffs responded to numerous motions to dismiss for failure to state a claim, to

---

[6] These are the Declaration of Gary I. Smith, Jr. in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Tyson Defendants (ECF No. 111-1) ("Smith Tyson Decl."); the Declaration of Eric L. Cramer in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Perdue (ECF No. 133-1) ("Cramer Perdue Decl."); and the Declaration of Gary I. Smith, Jr. in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and an Award of Interim Service Awards to Class Representatives (ECF No. 214-1) ("Smith Fee Decl.").

[7] "Co-Conspirator" means the alleged co-conspirators identified in the CCAC: Agri Stats, Inc., Foster Farms, Mountaire Farms, Wayne Farms, George's, Inc., Peco Foods, Inc., House of Raeford Farms, Simmons Foods, Keystone Foods, Inc., Fieldale Farms Corp., O.K. Industries, Case Foods, Marshall Durbin Companies, Amick Farms, Inc., Mar-Jac Poultry, Inc., Harrison Poultry, Inc., Claxton Poultry Farms, and Norman W. Fries, Inc., including their past, present, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, associates, divisions, departments, joint ventures, predecessors, and/or successors. *See* Settlement Agreements ¶ 1(e).

[8] "Broilers" excludes specialty chicken that is grown, processed, and sold according to halal, kosher, free range, pasture-raised, or organic standards. Specialty chicken does not include chicken raised without antibiotics, such as No Antibiotics Ever ("NAE") or Antibiotic Free ("ABF") standards. "Broilers" as used herein includes NAE and ABF chicken. *See* Settlement Agreements ¶ 1(d).

compel arbitration, for improper venue, for lack of personal jurisdiction, and to dismiss under the "first to file" doctrine. *Id.* ¶¶ 13-16, 38-45. In order to prosecute their claims efficiently and effectively, Plaintiffs also fought for transfer to this Court by the JPML, eventually succeeding in obtaining centralization in this District of five related actions. *Id.* ¶¶ 48-59. And Plaintiffs also prevented further enjoinment of Plaintiffs' damages claims against Pilgrim's Pride's as a result of Pilgrim's purported bankruptcy discharge. *Id.* ¶¶ 30-34. To further effective case management and facilitate discovery, Plaintiffs also negotiated case management orders and stipulations covering the production of hard copy and electronic discovery, confidentiality, and the boundaries of expert disclosure and discovery. *Id.* ¶¶ 61-64, 77.

Since fact discovery opened in April 2020, Plaintiffs have pursued extensive discovery in this Action[9] including, but not limited to, the following:

- Serving requests for production of documents on all Defendants and more than 50 subpoenas on non-parties;

- Negotiating the scope of document productions with Defendants and non-parties, which included months-long negotiations over appropriate document custodians and electronic search methodologies, and complicated remote collections and productions in the midst of the Covid-19 pandemic;

- Propounding interrogatories and requests for admissions on Defendants;

- Undertaking strategic review of the nearly 1.6 million documents produced by Defendants and third parties, consisting of more than 10 million pages and structured transaction data for more than 650,000 Broiler flocks;

- Reviewing and challenging where appropriate Defendants' privilege logs;

- Seeking production of "downstream" materials from *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 (N.D. Ill.) from Non-Settling Defendants;

- Taking, noticing, or working to schedule more than 55 depositions in the first wave of deposition practice in this action; and

---

[9] Action includes the member cases *Haff Poultry, Inc., et al. v. Tyson Foods, Inc., et al.,* No. 6:17-cv-33 (E.D. Okla.); *In re Sanderson & Koch Broiler Chicken Grower Litig.,* No. 7:18-cv-31 (E.D.N.C.); *McEntire v. Tyson Foods, Inc., et al.,* No. 1:20-cv-2764 (D. Colo.); *Colvin v. Tyson Foods, Inc., et al.,* No. 2:20-cv-2464 (D. Kan.); and *Mason v. Tyson Foods, Inc., et al.,* No. 5:20-cv-07049 (N.D. Cal.).

3

- Producing more than 10,000 pages of documents in response to Defendants'
  requests for production, which required complicated remote collection amid the
  Covid-19 pandemic.

Smith Fee Decl. ¶¶ 60, 65-76. To secure this discovery, Plaintiffs undertook extensive
negotiations with Defendants and non-parties to obtain the requisite discovery while avoiding
bringing disputes to the Court where possible, and engaging in motion practice, where necessary,
regarding non-party depositions, privilege logs, and non-party productions. *Id.* ¶¶ 68, 78-84.

### B.   The Settlement Negotiations and Settlement Agreement Terms

Plaintiffs negotiated the Tyson Settlement directly with Tyson's skilled, experienced
counsel. Smith Tyson Decl. ¶¶ 11-12. The parties' extensive negotiations resulted in the final
Settlement Agreement with Tyson, executed on June 30, 2021. *Id.* ¶¶ 13-14. Similarly, Plaintiffs
negotiated the Perdue Settlement directly with skilled, experienced counsel for Perdue, resulting
in the final Settlement Agreement, executed on August 11, 2021. Cramer Perdue Decl. ¶¶ 12-15.
At the time the Settlements were reached, discovery (described above) was well underway, and
Plaintiffs had received more than one million documents from Defendants and non-parties.
Smith Tyson Decl. ¶¶ 5-10; Cramer Perdue Decl. ¶¶ 6-11.

Both Settlement Agreements define the respective Settlement Classes identically as:

> All individuals and entities in the United States and its territories
> that were compensated for Broiler Grow-Out Services[10] by a
> Defendant or Co-Conspirator, or by a division, subsidiary,
> predecessor, or affiliate of a Defendant or Co-Conspirator, at any
> time during the period January 27, 2013 through December 31,
> 2019.

Settlement Agreements ¶ 5. Under both Settlements, Settling Defendants provide cash and
valuable cooperation to Plaintiffs and the members of the Settlement Classes.

Under the Settlements, Tyson agreed to pay $21 million and Perdue[11] agreed to pay
$14.75 million. Tyson Settlement Agreement § 1(y); Perdue Settlement Agreement ¶ 1(z).
Settling Defendants deposited these funds in escrow accounts. Smith Fee Decl. ¶¶ 90-91; Tyson
Agreement ¶ 8; Perdue Agreement ¶ 9. No portion of the settlement funds revert to Settling

---

[10] "Broiler Grow-Out Services" means Broiler-chicken growing services.

[11] Perdue is approximately one-third the size of Tyson by volume of Broilers processed.
*Compare* CCAC ¶ 12 *with* CCAC ¶ 18.

Defendants following final approval because, as discussed herein, the monetary components (net of Court-awarded fees, costs, service awards and claims administration costs) will be distributed to the Settlement Classes *pro rata*. Smith Tyson Decl. ¶ 17; Cramer Perdue Decl. ¶ 18.

In addition to cash payments, under the Settlement Agreements, Settling Defendants have agreed to provide significant non-monetary consideration. First, both Tyson and Perdue agreed to provide Plaintiffs with valuable cooperation to assist their prosecution of Plaintiffs' claims against the Non-Settling Defendants. Both Settling Defendants are required to: respond to an outstanding interrogatory regarding their communications with competitors regarding certain categories of information, including Grower compensation; respond to Plaintiffs' inquiries regarding their structured transaction data; make current employees available for fact depositions and provide a Rule 30(b)(6) witness to testify on behalf of each Settling Defendant; use reasonable efforts to make current employees available to appear at trial; and use reasonable efforts to cooperate to authenticate documents. Settlement Agreements ¶ 10. In addition, Tyson must produce reasonable, to-be-agreed upon additional documents and transaction data, make two attorney proffers providing a reasonably detailed description of the principal facts known to be relevant to the conduct alleged in this Action, and use reasonable efforts to provide up to five employee declarations testifying as to the facts provided in the proffers. Tyson Settlement Agreement ¶ 10. Second, for a five-year period following final judgment, the Settlement Agreement with Perdue prohibits Perdue from enforcing existing compulsory arbitration and class action waiver provisions in Grower contracts and including such provisions in new Grower contracts during that period. Perdue Settlement Agreement ¶ 10(e).

In consideration of Settling Defendants' cash payments and non-monetary consideration, members of the Settlement Classes agreed to release certain claims against Tyson and Perdue, relating to or referred to in the Action or arising from the factual predicates of the Action. The release covers only claims against Perdue Released-Parties and Tyson Released-Parties.[12] *See* Settlement Agreements ¶ 14.

Under confidential supplements incorporated into each Settlement Agreement, Settling Defendants have the option (but not the obligation) to rescind the Settlement Agreement under

---

[12] Released Parties are identified in paragraph 1(z) of the Tyson Agreement and paragraph 1(q) of the Perdue Agreement.

certain conditions based on the number of members of the Settlement Classes that opt out of the Settlements.[13] *See* Perdue Settlement Agreement ¶ 20; Tyson Settlement Agreement ¶ 21. The confidential supplement to the Perdue Settlement Agreement also provides for a modest reduction of the Settlement Amount based upon a certain threshold of members of the Settlement Classes that exclude themselves from the Settlement Classes. ECF No. 133 at 5. The deadline to object to or opt out of the Settlement Classes expired on December 6, 2021. Order Approving Notice Plan and Authorizing Issuance of Notice ¶ 5 ("Notice Order") (ECF No. 146). As of December 16, 2021, Plaintiffs' analysis reveals that the conditions to rescind or, in the case of Perdue, reduce the amount of the monetary component of the Settlement Agreements had not been triggered. *See also* Section I.D., *infra* (describing the *de minimis* number of opt outs).

### C.   Preliminary Approval and the Proposed Notice and Claims Process

Plaintiffs filed their motions for preliminary approval of the settlements with Tyson and Perdue on July 30, 2021 and August 19, 2021, respectively. ECF Nos. 111 & 133. On August 19, 2021, Plaintiffs filed a motion for approval of the form and manner of notice of the Settlements to the Settlement Classes, which combined notice for both Settlements. *See generally* ECF No. 135. The proposed notice program included direct mail notice to Growers for which Defendants and alleged Co-Conspirators provided mailing addresses. *Id.* at 6-7. This direct notice was supplemented by publication notice targeted at Growers for which mailing addresses were unavailable, including publication in a trade periodical as well as in select print and media outlets that reached geographic areas in which certain alleged Co-Conspirators (that did not produce Grower addresses or pay data) contracted with Growers for Broiler Grow-Out Services. *Id.* at 7-9. The latter publication notice was directed at members of the Settlement Classes for which direct notice could not be provided. *Id.* at 8-9. This direct mail and publication notice was supplemented by an array of additional online services, including targeted internet advertising, a social media campaign, and a settlement website. *Id.* at 8-10; *see also* ECF No. 135-1 (Decl. of Steven Weisbrot on Proposed Notice Plan ("Weisbrot Notice Decl.")) ¶¶ 16, 19-26.

Additionally, Plaintiffs included two claim forms in the direct mail notice and made them available to the members of the Settlement Classes via the settlement website or upon request to Angeion (defined *infra*): a pre-populated claim form and an unpopulated claim form. ECF No.

---

[13] The Confidential Supplements were made available for *in camera* review. ECF No. 111 at 5 & n.6; ECF No. 133 at 5 & n.8.

135 at 11-12. Members of the Settlement Classes for which Plaintiffs received sufficient data from Defendants and alleged Co-Conspirators reflecting Grower compensation over the class period received a claim form that was pre-populated with the payments members of the Settlement Classes received for Broiler Grow-Out Services, obviating the need for those members of the Settlement Classes to complete a claim form. *See* Smith Tyson Decl. ¶ 16; Cramer Perdue Decl. ¶ 17; Weisbrot Notice Decl. Ex. D (proposed pre-populated claim form). These members of the Settlement Classes are nonetheless permitted to contest the information that was pre-populated by submitting corrected information and documentation. *See* Weisbrot Notice Decl. Ex. D at 1. Members of the Settlement Classes for which Plaintiffs lacked sufficient data on compensation paid by Defendants and alleged Co-Conspirators received an unpopulated claim form, which they had the option of returning with information and documentation reflecting their total compensation for Broiler Grow-Out Services or, alternatively, if they lack that documentation, with information from which their total compensation could be estimated. *See* Smith Tyson Decl. ¶ 17; Cramer Perdue Decl. ¶ 8; Weisbrot Notice Decl. ¶ 11 & Ex. E.

On August 23, 2021, the Court preliminarily approved the Settlements; certified the Settlement Classes under Federal Rule of Civil Procedure 23(b)(3); appointed Hausfeld LLP and Berger Montague PC as Settlement Class Counsel; appointed Angeion Group, LLC as claims administrator ("Angeion"); appointed Plaintiffs as representatives of the Settlement Classes; and approved the notice plan, the form of notice, and the proposed claim forms. ECF Nos. 144-146. The Court found the notice plan represented the "best notice that is practicable under the circumstances," was "reasonably calculated to reach the members of the Settlement Class," and met "the requirements of Federal Rule of Civil Procedure 23 and due process." Notice Order ¶ 3.

### D.   Class Notice, Objections, and Exclusions

Following approval of the notice plan, Angeion provided potential members of the Settlement Classes with the Court-approved notice in accord with the settlement notice program. *See generally* Declaration of Steven Weisbrot Regarding Implementation of Notice Plan ("Weisbrot Implementation Decl."), attached hereto. Beginning on September 9, 2021, Angeion successfully mailed direct notice to 22,220 valid addresses.[14] Weisbrot Implementation Decl. ¶¶

---

[14] Angeion initially mailed direct notice to 23,278 addresses. Weisbrot Implementation Decl. ¶ 7. 1,806 of those were returned undeliverable. *Id.* ¶ 9. Following address verification searches for

5-11 & Ex. A-C.[15]

Shortly thereafter, Angeion launched the programmatic internet advertising banner program, which uses algorithms to identify websites most likely to be visited by members of the Settlement Classes, as well as the Facebook and Instagram social media campaign, achieving a total of nearly 2.5 million impressions with banner ads. *Id.* ¶¶ 12-14 & Exs. D & E. Also beginning on September 22, 2021, Angeion placed publication notice in eight local print publications to reach Growers who were less likely to be mailed direct notice. *Id.* ¶ 15 & Ex. F. Notice was also published in the national trade publication *Poultry Times*, whose readership of 13,000 includes many Growers. *Id.* ¶ 16 & Ex. G. Angeion issued a press release publicizing the Settlements that was distributed over the National and Agriculture circuits of a major newswire service to drive traffic to the settlement website. *Id.* ¶ 17 & Ex. H.

Angeion timely launched the settlement website to provide potential members of the Settlement Classes with information about the Settlements, which included a downloadable direct notice and an unpopulated claim form, the Settlement Agreements, court filings related to the Settlements (including Plaintiffs' application for attorneys' fees and costs and interim service awards, posted on November 6, 2021), a "Frequently Asked Questions" section, a contact page allowing users to submit questions to Angeion, and a means to upload completed claims forms. *Id.* ¶¶ 18-19. Angeion also established a dedicated toll-free line, allowing callers to speak with a live operator during business hours, request a claim form, and get answers to their questions. As of December 15, 2021, there were more than 4,100 unique visitors on the website and more than 650 calls were made to the dedicated toll-free line, totaling more than 4,500 minutes (or approximately 75 hours of call time). *Id.* ¶¶ 19-21.

The deadline for mailing objections to the Settlements or requests for exclusion from the Settlement Classes was December 6, 2021. *See* Notice Order ¶ 5. As of December 16, 2021, 30 Growers requested exclusion from both the Tyson and Perdue Settlements, 25 requested exclusion from only the Tyson Settlement, and 2 requested exclusion from only the Perdue Settlement. Weisbrot Implementation Decl. ¶ 23 & Ex. I. As of December 16, 2021, no valid

---

those addresses (skip tracing), Angeion remailed Notice to 725 addresses. *Id.* The net successfully mailed notice packets is thus 22,220. *Id.* ¶ 10.

[15] The final direct notice and claim forms provided to potential class members are attached as Exhibits A-C to the Weisbrot Implementation Declaration.

objections have been filed. *Id.* ¶ 24. Although one Grower who excluded himself from the Settlement Classes also objected to the Settlements, as discussed *infra*, he lacks standing to object by virtue of his exclusion request.

### E.   The Proposed Allocation and Distribution to the Settlement Classes

Members of the Settlement Classes who received pre-populated claims forms—those for whom Plaintiffs possessed adequate compensation data—were notified that if they do not exclude themselves from the Settlements or contest the data in the pre-populated form they will be deemed to have accepted the pre-populated calculations. Weisbrot Implementation Decl., Ex. B at 1-3. Their settlement awards will be calculated based on the compensation in the pre-populated claims form. Thus, an estimated 92.5 percent of each Settlement Class is eligible to receive payment from the Settlements even if they do nothing. Cramer Perdue Decl. ¶ 17. Growers who received an unpopulated claim form or obtained one from Angeion or the settlement website have until April 10, 2022 to return the form with completed compensation data or other information from which their Settlement award will be calculated. Notice Order ¶ 5. As of December 14, 2021, Angeion has received 649 Claim Form submissions or updated address submissions. Weisbrot Implementation Decl. ¶ 22.

### F.   Plaintiffs' Application for Attorneys' Fees, Litigation Costs, and Interim Service Awards

The notice informed members of the Settlement Classes that Settlement Class Counsel would seek an award of attorneys' fees, capped at one-third of the gross settlement funds, reimbursement of litigation costs of up to $3 million, and interim service awards of up to $50,000 per class representative,[16] and advised that the motion would be available on the settlement website prior to the objection and opt-out deadlines. Weisbrot Implementation Decl. Ex. A ¶ 15. On November 5, 2021, Plaintiffs filed their motion for fees and costs and for interim service awards. ECF No. 214. The petition sought an award of attorneys' fees of one-third of the gross settlement funds (or $11,916,667 million), reimbursement of $2.3 million in litigation costs, and interim service awards of $50,000 to each of the settlement class representatives. *Id.* at 6, 16-18. Angeion posted the fee petition on the settlement website on November 6, 2021.

---

[16] For purposes of the requested interim service awards, class representatives with a familial relationship ((1) Myles B. Weaver and Mellissa Weaver, (2) Marc McEntire and Karen McEntire, and (3) Mitchell Mason and Anna Mason) are treated as a single class representative.

Weisbrot Implementation Decl. ¶ 18.

## III.    ARGUMENT

### A.    The Proposed Settlements are Fair, Reasonable, and Adequate and Should be Finally Approved

The Settlements should be approved. Rule 23(e) requires that before finally approving a class action settlement, a court must find that the settlement is fair, reasonable, and adequate considering whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2). These considerations augment rather than supplant the traditional factors courts have considered at final approval. *Chavez Rodriguez v. Hermes Landscaping, Inc*., No. 17-cv-2142, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020). In this Circuit, those traditional factors are whether: (1) the proposed settlement was fairly and honestly negotiated; (2) serious questions of law and fact place the ultimate outcome of the litigation in doubt; (3) the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties judge the settlement to be fair and reasonable. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig*., 997 F.3d 1077, 1087 (10th Cir. 2021). With the exception of the fourth traditional factor, this Circuit's factors overlap with the considerations under Rule 23(e)(2). *Rodriguez*, 2020 WL 3288059, at *2. The Settlement Agreements warrant final approval under all of these factors.

### 1.    Plaintiffs and Settlement Class Counsel Have Skillfully Represented the Settlement Classes

In certifying the Settlement Classes, the Court previously found Settlement Class Counsel and Plaintiffs adequate under Rule 23(a), ECF Nos. 144, 145, which is sufficient to satisfy Rule 23(e)(2)(A). *See Suaverdez v. Circle K Stores, Inc.,* No. 20-cv-01035, 2021 WL 4947238, at *7 (D. Colo. June 28, 2021); *Lawrence v. First Fin. Inv. Fund V, LLC*, No. 19-cv-174, 2021 WL 3809083, at *6 (D. Utah Aug. 26, 2021) (Shelby, J.). Under Rule 23(e)(2)(A), courts may also evaluate "the actual performance of counsel acting on behalf of the class," including the extent of discovery taken. *Montgomery v. Cont'l Intermodal Grp. Trucking LLC*, No. 19-cv-940, 2021 WL 1339305, at *4 (D.N.M. Apr. 9, 2021) (citations and quotation omitted). The extent of discovery informs whether the settlements are made with sufficient information about the case and demonstrates that the parties have litigated in an adversarial

10

posture. William B. Rubenstein, 4 Newberg on Class Actions § 13:49 (5th ed.); *see also Montgomery,* 2021 WL 1339305, at *4-5. Those considerations weigh in favor of approval here.

 The record in this Action demonstrates Settlement Class Counsel's adequacy and the informed basis on which they and Plaintiffs negotiated the Settlements. Settlement Class Counsel have extensive experience with the prosecution and settlement of antitrust class actions.[17] As discussed in Section I.A., *supra*, Settlement Class Counsel have zealously and skillfully represented the interests of Plaintiffs and the Settlement Classes through almost five years of hotly contested litigation in five district courts, a bankruptcy court, and two visits to the JPML: they have defeated multiple motions to dismiss; fought a purported bankruptcy discharge of Plaintiffs' claims; secured centralization before this Court; conducted extensive discovery, having served and negotiated production requests and interrogatories, conducted targeted review of the 1.6 million documents produced, and noticed or taken dozens of depositions with dozens more planned; secured $35.75 million in cash for the Settlement Classes along with valuable cooperation; and have diligently complied with the notice plan and settlement procedures. *See, e.g., Montgomery*, 2021 WL 1339305, at *4.

 The Plaintiffs selected as class representatives also have actively participated in the prosecution of their claims by providing information, participating in discovery, and attending hearings, and have no conflicts with the members of the Settlement Classes; each is a Grower that suffered the same harm as every member of the Settlement Classes and shares the same interests of the Settlement Classes in obtaining relief. *See McNeely v. Nat'l Mobile Health Care, LLC,* No. 07-cv-933, 2008 WL 4816510, at *7 (W.D. Okla. Oct. 27, 2008) (considering whether representative had interests antagonistic to the class); *McGaffin v. Argos USA, LLC,* No. 16-cv-104, 2020 WL 3491609, at *4 (S.D. Ga. June 26, 2020) (Rule 23(e)(2)(A) satisfied where representatives have same interests and claims as the class and participated in action).

  **2. The Settlements Were Reached After Arm's Length Negotiation**[18]

 The Settlements satisfy Rule 23(e)(2)(B), which requires courts to evaluate whether the Settlements were reached after fair and honest arm's length negotiations. Similar to Rule

---

[17] Settlement Class Counsel's antitrust and class action experience is described in detail in each of their firm resumes. *See* ECF Nos. 214-18 & 214-19.

[18] "The Tenth Circuit's fair and honest negotiation requirement can be subsumed under Rule 23's second factor—arm's-length negotiation." *Rodriguez*, 2020 WL 3288059, at *3

23(e)(2)(A), courts evaluate whether a settlement was negotiated fairly and honestly by considering the duration of litigation and status of discovery prior to the Settlements and the adversarial nature of the process. *See Cisneros v. EP Wrap-It Insulation, LLC*, No. 19-cv-500, 2021 WL 2953117, at *6 (D.N.M. July 14, 2021) (considering degree of active litigation, disputes, and circumstances of settlement negotiations); *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-249, 2020 WL 4041456, at *3 (D. Colo. July 17, 2020) (same); *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821, 2018 WL 6620724, at *3 (D. Colo. Dec. 18, 2018) (approving settlement after considering status of discovery and duration of litigation).

The record in this case demonstrates the fairness of the negotiation process for the Settlements. As described in Section I.A., *supra*, Plaintiffs and Defendants had been engaged in adversarial litigation for almost five years before settlement discussions began. Further, the terms of the Settlements were vigorously negotiated by Plaintiffs' counsel with counsel for each of the Settling Defendants over many weeks, with counsel often exchanging counter proposals late into evenings and on weekends.

The structure of the Settlements and plan of allocation and distribution—which maximizes relief to the Settlement Classes—also supports a finding of arm's-length negotiations: Settling Defendants have no reversionary interest in the Settlements because the entirety of the Net Settlement Funds are distributed to the member of the Settlement Classes *pro rata*; and the Settlements do not specify attorneys' fees other than that Plaintiffs may petition the Court for an award of fees and costs from the gross common funds, the amount of which can be determined by only the Court. *Cf., e.g., In re Samsung,* 997 F.3d at 1088-91 (scrutinizing fairness of agreement that specified fee for counsel in the agreement with "kicker" provision that returned amounts not awarded by the court to defendant, not the class); *Stewart v. USA Tank Sales & Erection Co.*, No. 12-cv-5136, 2014 WL 836212, at *6 (W.D. Mo. Mar. 4, 2014) (scrutinizing settlements that provide for large reversions).

### 3. The Relief Provided to the Settlement Classes is More Than Adequate, it is Substantial

The relief achieved is more than adequate under Rule 23(e)(2)(C), which requires that courts evaluate whether the relief provided for the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the

terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement [made in connection with the Settlement]."[19] Fed. R. Civ. P. 23(e)(2)(C).

      The terms of the Settlement Agreements themselves make clear the substantial relief afforded members of the Settlement Classes. As discussed in Section I.B., *supra*, the Settlements provide a total of $35.75 million in cash consideration as well as extensive cooperation that will aid Plaintiffs' ongoing prosecution of the claims against Non-Settling Defendants, including proffers, declarations, depositions, documents, and trial witnesses. Courts recognize the value of cooperation in partial settlements in ongoing antitrust litigation. *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (noting cooperation provisions weigh in favor of approval); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012) (finding cooperation throughout the course of pre-trial proceedings and trial is valuable consideration); *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (approving antitrust class action settlement, noting the value of cooperation provisions). Considering the factors under Rule 23(e)(2)(C), the monetary and non-monetary consideration provide significant relief to the Settlement Classes. Additionally, Perdue's agreement to forego enforcement or inclusion of arbitration and class-waiver provisions in contracts with members of the Perdue Settlement Class provides significant structural relief for the Perdue Settlement Class going forward.

      **a.   The costs, risks, and delay of trial and appeal favor final approval** [20]

      Notwithstanding this substantial relief, courts must evaluate the value of the settlements considering the cost and risk of continued litigation, and the delay in monetary relief should the claims proceed to trial and through appeal. This factor weighs in favor of final approval.

---

[19] Rule 23(e)(2)(C)(iv) is inapplicable here. There are no agreements in connection with the Settlements. The confidential supplements incorporated into the Settlement Agreements—which set conditions for reduction of the Settlement Amounts or recission of the Agreements based on class member exclusions—are terms of the Settlement Agreements themselves and are available to the Court for *in camera* review. *See supra* n.13. And in either event, Plaintiffs' analysis shows that the triggering events for those confidential supplements have not been met, mooting them.

[20] The Tenth Circuit's requirement that courts evaluate whether "serious questions of law and fact . . . plac[e] the ultimate outcome of the litigation in doubt and whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. . . . largely overlap[s] and can be subsumed under" Rule 23(e)(2)(C)(i)'s evaluation of the costs, risk, and delay of trial and appeal. *Rodriguez*, 2020 WL 3288059, at *3.

Courts consider antitrust cases to be "particularly risky" and acknowledge that they are among the most complex actions to prosecute. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020) (collecting cases). Plaintiffs remain confident in their claims, but there are complex questions of law and fact that pose risks in any antitrust litigation. Defendants have disputed and will continue to dispute the existence and scope of the alleged anticompetitive conspiracy. This "[l]egal complexity [and] factual complexity . . . all weigh in favor of settlement." Newberg § 13:52. Additionally, although Plaintiffs are confident that the proposed class will be certified for litigation purposes, they expect Defendants to vigorously contest class certification as well as Plaintiffs' experts' conclusions through *Daubert* challenges. *See Retta v. Millennium Prods., Inc*., No. 15-cv-1801, 2017 WL 5479637, at *5 (C.D. Cal. Aug. 22, 2017). And proceeding through class certification and summary judgment to trial, even with the strongest evidentiary arsenal, poses risks because any "ultimate jury result is uncertain, unknown and unpredictable." *Wilkerson v. Martin Marietta Corp*., 171 F.R.D. 273, 285 (D. Colo. 1997). This is particularly so in a complex antitrust case. *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1327 (5th Cir. 1981) ("The complexity of an antitrust jury trial of [multiple] defendants gives rise to the very real possibility that the plaintiffs' case could be prejudiced.").

Absent these Settlements, with summary judgment briefing not scheduled to conclude until April 2023, trial likely two years away, and any trial outcome likely subject to a lengthy appeal process, members of the Settlement Classes would need to wait years before receiving any recovery. Courts recognize that a class is often "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely*, 2008 WL 4816510, at *13; *see also Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) ("It has been held prudent to take a bird in the hand instead of a prospective flock in the bush.") (quotation omitted); *Childs v. Unified Life Ins. Co.*, No. 10-cv-23, 2011 WL 6016486, at *13 (N.D. Okla. Dec. 2, 2011) (noting settlement "creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation") (quotation omitted). Early recovery is particularly important here where the Settlements provide the certainty of some recovery now at a time when so many, including Settlement Class members, are recovering from the economic consequences of the Covid-19 pandemic. And by virtue of principles of joint and several

14

liability, Plaintiffs can recover the remainder of their class-wide treble damages from the remaining Non-Settling Defendants.

> **b.    The proposed method of distributing relief to the Settlement Classes, including the method of processing of claims, favors final approval**

Plaintiffs satisfy the relevant standard for ensuring that the claims process facilitates filing legitimate claims while protecting against unduly burdensome claims procedures. Fed. R. Civ. P. 23(e)(2)(C)(ii) advisory committee notes (2018 amendments). This ensures that the claims process and distribution provide "as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." Newberg § 13:53; *see also Rodriguez*, 2020 WL 3288059, at *3.

The claims and notice process here ensures that an overwhelming majority of the Settlement Classes will receive a distribution from the Net Settlement Funds without having to do anything at all. As described in Section I.C., *supra*, Plaintiffs obtained from Defendants and alleged Co-Conspirators sufficient compensation information and mailing addresses for most members of the Settlement Classes, allowing them to mail claims forms that were pre-populated with the compensation information on which their settlement awards would be based. Those who receive pre-populated claims forms and do not opt out of the Settlements will automatically receive their *pro rata* shares of the Net Settlement Funds even if they do nothing in response to the notice, ensuring an outstanding claims rate. Courts widely recognize that claims procedures that require little or no action by settlement class members to receive a payment satisfy Rule 23(e)(2)(C)(ii). *Moreno v. Beacon Roofing Supply, Inc.*, No. 19-cv-185, 2020 WL 3960481, at *5 (S.D. Cal. July 13, 2020) (finding "claim process is not burdensome and straightforward because it does not require Class Members to submit a claim to receive compensation"); *Vargas v. Ford Motor Co.*, No. 12-cv-8388, 2020 WL 1164066, at *9 (C.D. Cal. Mar. 5, 2020) (finding method of distribution appropriate where claims forms are pre-populated); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-cv-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (similar).

Growers who are among the small portion of the Settlement Classes for which Plaintiffs did not have sufficient claims data to provide a pre-populated claim form or whose identities were unknown (approximately 7.5 percent), need only submit a claim form with their compensation information and documentation. If they do not have that information, they may instead provide basic information to qualify for a payment, such as the name of the Defendant or

alleged Co-Conspirator for whom they grew Broilers, the number of farms operated, and years those farms were in operation, from which their resulting *pro rata* share may be calculated. Weisbrot Implementation Decl. Ex. C; Weisbrot Notice Decl.  Ex. F.[21] A claims process that requires submission of such basic data provides for an efficient and reasonable distribution while meeting the goals of Rule 23(e)(2)(C)(ii) to ensure legitimate claims are submitted. *See*, *e.g.*, *Hale*, 2018 WL 6606079, at *5 (finding claims procedure to be claimant-friendly, efficient, and cost-effective where class members whose contact information is known need not submit a claim at all and others need only submit a simple claim form); *Vargas*, 2020 WL 1164066, at *9 (requirement to submit basic documentation is reasonable).

> ### c.    The proposed award of attorneys' fees favors final approval

Here, Plaintiffs have sought an award of attorneys' fees of one-third of the gross settlement funds—an amount routinely recognized as falling within an acceptable range of fee awards. *Cook v. Rockwell Int'l Corp.*, No. 90-cv-181, 2017 WL 5076498, at *1 & n.1 (D. Colo. Apr. 28, 2017) (citing cases awarding fees from one-third to 40%, including cases awarding one-third of the fund). [22] A one-third fee in class action common fund cases, including in antitrust cases, is routinely awarded. *See, e.g.*, *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (awarding one-third of $835 million settlement); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-md-1468, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (finding award of one-third of the fund falls within the range of awards deemed reasonable by courts). And, as explained in Plaintiffs' fee petition, the award is warranted under the applicable law of this Circuit. *See* ECF No. 214 at 8-15.

---

[21] The calculation has been made available on the settlement website.

[22] *See also, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1099 (D. Kan. 2018) (awarding one-third of common fund); *Shaw v. Interthinx, Inc.*, No. 13-cv-01229, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-cv-0944, 2006 WL 3505851, at *1-2  (N.D. Okla. Dec. 4, 2006) (noting that a "contingency fee of one-third is relatively standard in lawsuits that settle before trial").

4.    **The Settlements and Proposed Plan of Distribution Treat Members of the Settlement Classes Equitably**

The Court-approved distribution plan treats all members of both Settlement Classes equitably. As discussed in Section I.E., *supra*, Plaintiffs propose to distribute the Net Settlement Fund *pro rata*, based on total qualifying compensation each member of the Settlement Classes received for Broiler Grow-Out Services from any Defendant or alleged Co-Conspirator during the class periods as a percentage of total qualifying compensation received by all members of the Settlement Classes who have valid claims. Such a *pro rata* distribution is fair and equitable because it compensates members of the Settlement Classes based on their relative harm suffered.

Since the 2018 amendment of Rule 23(e) expressly required this consideration, courts have consistently found *pro rata* distribution is equitable to settlement classes. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020) (in antitrust action, finding courts uniformly approve plans of allocation distributing funds on a *pro rata* basis as equitable under Rule 23(e)(2)(D)); *Perks v. Activehours, Inc.*, No. 19-cv-5543, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) (*pro rata* distribution is "inherently equitable" because it allocates settlement proceeds based on the amount of each member's potential damages); *Cisneros*, 2021 WL 2953117, at *10 (finding *pro rata* allocation provides equitable treatment). Even prior to the 2018 amendment, courts considered this factor and routinely found *pro rata* distribution of settlement funds in antitrust actions to be fair and reasonable. *See, e.g.*, *In re Vitamins Antitrust Litig.*, No. 99-cv-197, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) (*pro rata* distribution has "repeatedly been deemed fair and reasonable").[23]

Courts also consider service awards under Rule 23(e)(2)(D). *See Cisneros*, 2021 WL 2953117, at *9. The service awards sought for certain Plaintiffs treat members of the Settlement Classes equitably. Such awards are equitable where, as here, they compensate class representatives for their efforts in prosecuting this action on behalf of absent members of the Settlement Classes over five years and for assuming reputational and financial risk that absent class members did not undertake or face. *See* ECF No. 214 at 17, 19 (collecting cases); *Khoday*

---

[23] *See also, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable"); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (allocation plan based on the type and extent of their injuries is generally reasonable).

*v. Symantec Corp.*, No. 11-cv-180, 2016 WL 1637039, at *14 (D. Minn. Apr. 5, 2016) (service award is equitable because it is commensurate to class representatives' efforts and the benefit they achieved for absent class members who did not contribute to the prosecution of the claims), *report and recommendation adopted,* No. 11-cv-180, 2016 WL 1626836 (D. Minn. Apr. 22, 2016). Additionally, the service awards sought here are consistent with or well below amounts awarded in other comparable cases, including antitrust cases, reinforcing their fairness. *See e.g.*, *Montgomery*, 2021 WL 1339305, at *8-9 (finding service awards appropriate based on the work performed and risk taken and their consistency with awards in analogous cases); *Cisneros*, 2021 WL 2953117, at *9 (similar); ECF No. 111 at 13 & n.16 (collecting cases).

### 5.   The Parties Agree that the Settlements are Fair, Reasonable, and Adequate

Experienced counsel for both Plaintiffs and Settling Defendants endorse the Settlements,[24] which is a further basis to approve them. *Rodriguez*, 2020 WL 3288059, at *4 ("If all Class Members are treated equitably, counsel for both sides agree the outcome is good, and there are no objections to the Settlement Agreement, it appears the parties agree the settlement is fair and reasonable."). Counsel's opinion that the Settlement is fair and reasonable is entitled to "considerable weight." *McNeely*, 2008 WL 4816510, at *13; *see also In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 116 (D. Kan. 1986) (noting "the professional judgment of counsel involved in the litigation—who have made a determination that the settlement represents a fair allotment for their clients—is entitled to significant weight"); *Alvarado*,723 F. Supp. at 548 ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."). This is particularly true where, as demonstrated above, Settlement Class Counsel and the Plaintiffs have already zealously represented the interests of the Settlement Classes. *See* Section I.A., *supra*.

Settlement Class Counsel are experienced antitrust litigators who, at the time of the Settlements, were extremely knowledgeable about the factual and legal issues in the case. *See, e.g.*, Smith Fee Decl. ¶¶ 96-97. As demonstrated by Plaintiffs' motion papers and as discussed herein, it is the opinion of Settlement Class Counsel that the Settlements offer tremendous value to the Settlement Classes both because of the monetary consideration provided now and Settling Defendants' ongoing cooperation through trial that will aid Plaintiffs in securing additional

---

[24] *See* Smith Tyson Decl. ¶ 15; Cramer Perdue Decl. ¶ 16.

18

monetary and injunctive relief from the Non-Settling Defendants.

The reaction of the Settlement Classes demonstrates that the class members agree. Only 57 Growers have excluded themselves from one or both settlements. Weisbrot Implementation Decl. ¶ 23 & Ex. I. And there have been no valid objections by any member of either Settlement Class. Although (only) one Grower registered an objection, he has no standing to object because he unambiguously excluded himself from both Settlement Classes.[25] *See, e.g.*, *Harper v. C.R. England, Inc.*, 746 F. App'x 712, 718 (10th Cir. 2018) ("Opted-out class members lack standing to object to a settlement."); *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785, 2021 WL 5369815, at *3 (D. Kan. Nov. 17, 2021) (finding excluded parties are "no longer" class members and lack standing to object) (collecting cases). Accordingly, the Court should disregard the objection. *In re: EpiPen*, 2021 WL 5369815, at *3. Moreover, the objection was entirely conclusory, citing no relevant facts or defects in the Settlements or the motion for fees, cost, and service awards. Even were the Court to consider the unsupported objection, it should not credit it because, as explained, the Settlements are fair, reasonable, and adequate and the request for fees, expense, and service awards is appropriate

### B. Notice to the Settlement Classes Comported with Rule 23 and Due Process

The means and manner of notice satisfies the Federal Rules and due process. Under Rule 23(e)(1), notice of the settlement must be provided in a reasonable manner to all class members who would be bound by the proposal. Fed. R. Civ. P. 23(e)(1). Under Rule 23(c)(2) and procedural due process, the court must direct to members of a Rule 23(b)(3) monetary relief class "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (noting constitutional guarantees and the requirements of Rule 23(c)(2)(B) are coextensive); *see also Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015). Due process does not require, however, "*actual* notice to each party intended to be bound by the adjudication of a representative action." *DeJulius*, 429 F.3d at 944 (emphasis in original). It is universally recognized that the method of notice used here, namely direct notice supplemented with publication notice targeted to reach class members who cannot be sent direct notice, satisfies due

---

[25] *See* ECF No. 200 ("I wish to be excluded from the Tyson settlement, and the Perdue settlement, or any settlement arising from these issues.").

process and Rule 23(c)(2)(B). *See, e.g.*, *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-2792, 2020 WL 2616711, at *11 (W.D. Okla. May 22, 2020), *aff'd*, 997 F.3d 1077 (10th Cir. 2021).

Substantively, Rule 23(b)(3) class notices must state in plain, easily understood language, (i) the nature of the action; (ii) the definition of the class that is being certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B). Notice will satisfy Rule 23 if it gives Rule 23(b)(3) class members "sufficient information about the specific lawsuit to allow a class member to assess whether to exercise the right either to appear or to opt out." *Tennille*, 785 F.3d at 437 (quotation and citation omitted); Weisbrot Implementation Decl. Exs. A, D-H.

Here the notice plan approved by the Court and as implemented by Settlement Class Counsel and Angeion satisfies these criteria. Settlement Class Counsel obtained from Defendants and alleged Co-Conspirators mailing addresses for 23,278 members of the Settlement Classes. Angeion mailed direct notice and claims forms to those addresses, and remailed notice to updated addresses for addressees whose notice was returned undeliverable, resulting in direct notice mailed to the overwhelming majority of the Settlement Classes. *See* Section I.D., *supra*, Weisbrot Implementation Decl. ¶¶ 7-11.

For the remainder of the Settlement Classes for which Settlement Class Counsel did not have mailing addresses, a supplemental publication notice program was implemented. Publication notice was placed in print publications in geographic locations in which members of the Settlement Classes without known mailing addresses raised Broilers (in Ohio, Georgia, and North Carolina), and in a trade publication targeted at the Broiler industry. Weisbrot Implementation Decl. ¶¶ 12-17. An internet-based programmatic display advertising campaign was launched, targeting placement on websites expected to be of interest to Growers, and a social media campaign engaged with Settlement Class members via news feed and story units, image ads, and right column ads. *Id.* Publication notice directed members of the Settlement Classes to the settlement website where they could obtain the Settlement Agreements, the long form notice, and an unpopulated claim form. *Id.* Exs. D-F. This notice—combining direct notice to nearly all members of the Settlement Classes and robust publication notice—satisfies Rule

23(c)(2) and due process. *See, e.g.*, *In re Samsung*, 2020 WL 2616711, at *9-11.

Similarly, the substance of the notice satisfied Rule 23(c)(2)(B). The direct and publication notice informed members of the Settlement Classes: (i) about the nature of the action; (ii) of the definition of the classes that were being certified; (iii) about the class claims, issues, or defenses; (iv) that each has a right to enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Classes any member who timely requests exclusion; (vi) how and when to request exclusion; and (vii) about the binding effect of a class judgment on members. Weisbrot Implementation Decl. Ex. A at ¶ 1-3, 5, 14, 16-17; 21-24. The notice also used clear and concise language in conveying this information and identified all critical deadlines as well as the date of the fairness hearing. *See id.* Ex. A at 2-3, 14. Thus, the notice met all of the requirements of Rule 23. *See Tennille*, 785 F.3d at 436-37 (finding notice adequate when notice generally informed class members that if they did not opt out, they would give up their right to sue defendant for the claims the lawsuit resolved); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. 11-cv-29, 2018 WL 501656, at *3 (E.D. Okla. Jan. 18, 2018) (approving notice that, *inter alia*, described the terms and effect of the settlement, notified the class of important deadlines, and described the procedure for objecting and opting out); *In re Samsung*, 2020 WL 2616711, at *10 (approving notice that, *inter alia*, explained the nature of the action, the definition of the class certified, identified the claims, explained that the court will exclude any member who makes a timely request, and provided important deadlines).

Finally, the notice disclosed the maximum amount Plaintiffs would seek from the gross settlement funds for attorneys' fees and reimbursement of litigation costs, as well as the amount of service awards to certain Plaintiffs, and notified members of the Settlement Classes that Plaintiffs' request for fees, costs, and service awards would be posted on the settlement website prior to the objection deadline. Weisbrot Implementation Decl. Ex. A ¶ 15. Plaintiffs' fee petition was posted on the website on November 6, 2021. *Id.* ¶ 18. Members of the Settlement Classes thus had adequate notice of the fee petition and an opportunity to review it prior to deciding whether to exclude themselves from or object to the Settlements. *See In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-2792, 2019 WL 6118267, at *1-2 (W.D. Okla. Nov. 18, 2019).

## IV.    CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement Agreements with Tyson and Perdue, grant final approval to the *pro rata* distribution, and find notice to the Settlement Classes comported with Rule 23 and due process.

Dated: December 16, 2021                    Respectfully submitted,

/s/ Gary I. Smith, Jr.
Gary I. Smith, Jr.*
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3270
Facsimile: (215) 985-3271
Email: gsmith@hausfeld.com

Michael D. Hausfeld*
James J. Pizzirusso*
Melinda R. Coolidge*
Samantha S. Derksen*
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: mhausfeld@hausfeld.com
Email: jpizzirusso@hausfeld.com
Email: mcoolidge@hausfeld.com
Email: sderksen@hausfeld.com

Kimberly A. Fetsick*
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
Email: kfetsick@hausfeld.com

Kyle G. Bates*
HAUSFELD LLP
600 Montgomery St, Ste 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 633-4980
Email: kbates@hausfeld.com

22

Eric L. Cramer*
Patrick F. Madden*
David A. Langer*
Haley Brogan Pritchard*
Ellen T. Noteware*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: ecramer@bm.net
Email: pmadden@bm.net
Email: dlanger@bm.net
Email: hpritchard@bm.net
Email: enoteware@bm.net

Daniel J. Walker*
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
Email: dwalker@bm.net

***Co-Lead Counsel for Plaintiffs and the Proposed Class***

M. David Riggs
Donald M. Bingham
Kristopher Koepsel
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
502 West Sixth Street
Tulsa, OK 74119
Telephone: (918) 699-8914
Facsimile: (918) 587-9708
Email: driggs@riggsabney.com
Email: don_bingham@riggsabney.com
Email: kkoepsel@riggsabney.com

William A. Edmondson (OBA No. 2628)
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
528 N.W. 12th Street
Oklahoma City, OK 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
Email: dedmondson@riggsabney.com

23

*Liaison Counsel for Plaintiffs and the Proposed Class*

Larry D. Lahman (OBA No. 5166)
Roger L. Ediger (OBA 19449)
**MITCHELL DECLERK, PLLC**
202 West Broadway Avenue
Enid, OK 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890
Email: ldl@mdpllc.com
Email: rle@mdpllc.com

Vincent J. Esades*
**HEINS MILLS & OLSON, PLC**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: vesades@heinsmills.com

Warren T. Burns*
**BURNS CHAREST, LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
Email: wburns@burnscharest.com

Gregory L. Davis*
**DAVIS & TALIAFERRO, LLC**
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: (334) 832-9080
Facsimile: (334) 409-7001
Email: gldavis@knology.net

Charles D. Gabriel*
**CHALMERS & ADAMS LLC**
North Fulton Satellite Office
5755 North Point Parkway, Suite 251
Alpharetta, GA 30022
Telephone: (678) 735-5903
Facsimile: (678) 735-5905
Email: cdgabriel@cpblawgroup.com

24

Larry S. McDevitt*
David M. Wilkerson*
**VAN WINKLE LAW FIRM**
11 North Market Street
Asheville, NC 28801
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
Email: lmcdevitt@vwlawfirm.com
Email: dwilkerson@vwlawfirm.com

Harlan Hentges (OBA No. 17911)
**HENTGES & ASSOCIATES, PLLC**
102 East Thatcher Street
Edmond, OK 73034
Telephone: (405) 340-6554
Facsimile: (405) 340-6562
Email: harlan@organiclawyers.com

John C. Whitfield*
Caroline R. Taylor*
**WHITFIELD COLEMAN BULLOCK, PPLC**
19 North Main Street
Madisonville, KY 42431
Telephone: (270) 821-0656
Facsimile: (270) 825-1163
Email: jwhitfield@wcbfirm.com
Email: caroline@wbmllp.com

J. Dudley Butler*
**BUTLER FARM & RANCH LAW GROUP, PLLC**
499-A Breakwater Drive
Benton, MS 39039
Telephone: (662) 673-0091
Facsimile: (662) 673-0091
Email: jdb@farmandranchlaw.com

Daniel M. Cohen*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202)789-1813
Email: danielc@cuneolaw.com

25

David S. Muraskin*
**PUBLIC JUSTICE, PC**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 861-5245
Facsimile: (202) 232-7203
Email: dmuraskin@publicjustice.net

Kellie Lerner*
Matthew J. Geyer*
Meegan F. Hollywood*
**ROBINS KAPLAN, LLP**
900 Third Avenue, Suite 1900
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
Email: KLerner@RobinsKaplan.com
Email: MGeyer@RobinsKaplan.com
Email: MHollywood@RobinsKaplan.com

Aaron Sheanin*
**ROBINS KAPLAN, LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
Email: ASheanin@RobinsKaplan.com

M. Stephen Dampier*
**DAMPIER LAW FIRM**
55 North Section Street
P.O. Box 161
Fairhope, AL 36532
Telephone: (251) 929-0900
Facsimile: (251) 929-0800
Email: stevedampier@dampierlaw.com

Michael L. Silverman*
**ROACH LANGSTON BRUNO, LLP**
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
Telephone: (773) 969-6160
Email: msilverman@rlbfirm.com

Grant L. Davis*

26

Thomas C. Jones*
Timothy C. Gaarder*
Thomas E. Ruzicka, Jr.*
**DAVIS BETHUNE & JONES, LLC**
1100 Main St, Ste 2930
Kansas City, MO 64105
Telephone: (816) 421-1600
Email: gdavis@dbjlaw.net
Email: tjones@dbjlaw.net
Email: tgaarder@dbjlaw.net
Email: truzicka@dbjlaw.net

Robert J. Bonsignore*
**BONSIGNORE TRIAL LAWYERS, PLLC**
23 Forest St.
Medford, MA 02155
Telephone: (781) 350-0000
Email: rbonsignore@classactions.us

***Additional Class Counsel for Plaintiffs and
the Proposed Class***

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2021, I electronically transmitted a true and correct copy of the foregoing document to the Clerk of Court for filing using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Gary I. Smith, Jr.*
Gary I. Smith, Jr.
