**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II)<br><br><br>*This document relates to all actions.* | Case No. 6:20-MD-02977-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER COMPELLING
NON-PARTY AGRI STATS, INC.'S COMPLIANCE WITH SUBPOENA**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................................. 1

II.     ARGUMENT ...................................................................................................................... 2

   A.    **This Court Is the Proper Court to Adjudicate This Dispute** ..................................... 2

   B.    **Agri Stats' Undisclosed Use of TAR Is Improper** .................................................. 5

     1.    **Agri Stats does not contest that it failed to disclose that it would use TAR**.......................... 6

     2.    **Agri Stats production is deficient** ....................................................................... 8

III.    CONCLUSION ................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Cartel Asset Mgmt. v. Ocwen Fin. Corp*.,
2010 WL 502721 (D. Colo. Feb. 8, 2010) ................................................................. 6

*Estes v. 3M Co.*,
2020 WL 8254487 (M.D. Ala. Dec. 29, 2020) .................................................... 3, 4

*First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*,
2016 WL 3129139, at n.32 (D. Utah June 2, 2016) ................................................. 6

*High Point SARL v. Sprint Nextel Corp.*,
2012 WL 234024, at n.9 (D. Kan. Jan. 25, 2012) .................................................... 6

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
No. 3:19-md-2884, 2020 WL 8673437 (N.D. Fla. Nov. 18, 2020) ........................... 4

*In re Accutane Prods. Liab. Litig.*,
No. 804-md-2523, 2006 WL 1000311 n.3 (M.D. Fla. Apr. 14, 2006) ...................... 3

*In re Automotive Refinishing Paint Antitrust Litig.*,
229 F.R.D. 482 (E.D. Pa. 2005) ............................................................................... 3

*In re Bank of N.Y. Mellon Corp. Forex Trans. Litig.*,
Nos. 12-md-2335-LAK-JLC, 2014 WL 2884726 (S.D.N.Y. June 26, 2014) ............. 1

*In re Clients & Former Clients of Baron & Budd, P.C.*,
478 F.3d 670 (5th Cir. 2007) .................................................................................... 3

*In re Disposable Contact Lens Antitrust Litig.*,
306 F. Supp. 3d 372 (D.D.C. 2017) .......................................................................... 2

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*,
No. 17-md-2785-DDC-TJJ, 2018 WL 2980879 (D. Kan. June 13, 2018) ........... 1, 2, 3

*In re Factor VIII or IX Concentrate Blood Prods. Litig.*,
174 F.R.D. 412 (N.D. Ill. 1997) ............................................................................... 3

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
No. 14-md-2542, 2020 WL 9065791 (S.D.N.Y. May 8, 2020) ................................. 3

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
No. 16-md-2687, ECF No. 468 (D.N.J. Sept. 5, 2017) ............................................. 3

*In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*,
  2009 WL 3681986 (D.N.J. Nov. 4, 2009)....................................................................... 4, 5

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*,
  No. 13-md-2419, ECF No. 885 (D. Mass. Feb. 7, 2014)...................................................... 3

*In re Niaspan Antitrust Litig.*,
  No. 13-md-2460, ECF No. 220 (E.D. Pa. June 9, 2015)........................................................ 3

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
  117 F.R.D. 30 (D.P.R. 1987).................................................................................................. 3

*In re Sunrise Sec. Litig.*,
  130 F.R.D. 560 (E.D. Pa. 1989) ............................................................................................ 3

*In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*,
  337 F.R.D. 610 (D.N.J. 2020) ............................................................................................... 8

*Matter of Orthopedic Bone Screw Prods. Liab. Litig.*,
  79 F.3d 46 (7th Cir. 1996)..................................................................................................... 5

*Mylan, Inc. v. Analysis Grp., Inc.*,
  No. 18-mc-91153, 2018 WL 1904183 (D. Mass. Apr. 20, 2018) .......................................... 4

*Progressive Casualty Insurance Co. v. Delaney*,
  No. 2:11-cv-678, 2014 WL 3563467 (D. Nev. July 18, 2014) .............................................. 8

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
  238 F. Supp. 2d 270 (D.D.C. 2002) ...................................................................................... 4

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
  444 F.3d 462 (6th Cir. 2006).................................................................................................. 3

## Statutes

28 U.S.C. § 1407............................................................................................................... 1, 2, 3

Fed. R. Civ. P. 8(e)(1)............................................................................................................ 4

## Other Authorities

The Sedona Conference, *Cooperation Proclamation*,
  10 SEDONA CONF. J. 331 (2009 Supp.).................................................................................. 6

## I.      INTRODUCTION

Plaintiffs[1] submit this Reply in support of Plaintiffs' Motion to Compel Non-Party Agri Stats, Inc.'s ("Agri Stats") compliance with Plaintiffs' Subpoena. Agri Stats' Opposition makes two principal arguments, both of which fail. First, Agri Stats argues that this Court is without jurisdiction to compel Agri Stats to produce documents, notwithstanding the clear law to the contrary, as applied by District Courts in the Tenth Circuit and across the country (including in the cases Plaintiffs cited in the Motion and which Agri Stats ignored). Agri Stats bases this argument on the incorrect contention that "[t]he only court with authority to compel nonparty Agri Stats' production of additional documents … is the United States District Court for the Northern District of Indiana." Opp. at 1. MDL courts routinely decide subpoena enforcement in the first instance. In the *EpiPen* MDL, the District Court in the Tenth Circuit explicitly held that "[a]s the Court presiding over the MDL, this Court has authority to decide the motion to compel." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, 2018 WL 2980879, at *3 (D. Kan. June 13, 2018). This finding is unsurprising given that the MDL statute, 28 U.S.C. § 1407, provides that the MDL transferee court "may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions, and "it is widely accepted that th[e MDL Court's] authority extends to all pretrial proceedings, including governance of non-party, extra-district subpoenas [seeking documents]." *In re Bank of N.Y. Mellon Corp. Forex Trans. Litig.*, 2014 WL 2884726, at *1 (S.D.N.Y. June 26, 2014). This dispute is not unique among subpoenas in MDLs, and thus, this Court has jurisdiction to decide the Motion.

Second, Agri Stats argues that the law allows it to use TAR and thus it did nothing wrong. Agri Stats misses the point: Agri Stats *concealed* its use of TAR throughout more than a year of meet and confer correspondence and teleconferences to negotiate the scope of Agri Stats' response and its culling methods, and the law does not permit Agri Stats to secretly apply culling methods in such context. Agri Stats contends that because courts have been clear that "where the producing party wants to utilize TAR for document review, courts will permit it," Agri Stats was under no obligation to disclose its use of TAR. Agri Stats improperly conflates two issues. Plaintiffs do not dispute that producing parties may use TAR; in fact, the Court's ESI Order

---

[1] "Plaintiffs" includes Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles Weaver, Melissa Weaver, Marc McEntire, Karen McEntire, and Mitchell Mason.

explicitly permits it here. However, Agri Stats does have an affirmative obligation *to disclose* during meet and confers on culling methodologies those methods Agri Stats will use pursuant to both the Federal Rules of Civil Procedure and this Court's ESI Order. Agri Stats did not disclose its use of TAR until after Plaintiffs discovered the apparent deficiency in Agri Stats' production. And regardless, Plaintiffs explicitly stated that it was "Plaintiffs['] understand[ing] that Agri Stats' proposal does not . . . [include] any TAR processes." Declaration of Patrick F. Madden ("Madden Decl."), ECF No. 141-1, ¶13 & Ex. E (ECF No. 141-6). Thus, even if Agri Stats had no affirmative duty to disclose it, Agri Stats concealed its use of TAR by failing to respond to Plaintiffs' explicit understanding that Agri Stats was not proposing to use TAR in this case. The Federal Rules, this Court's ESI Order, and applicable law do not condone such concealment over the course of more than a year of detailed meet and confer efforts. Once caught on its undisclosed use of TAR, Agri Stats now professes to be interested in meeting and conferring. But that ship has sailed, as Plaintiffs are in the midst of a rigorous deposition schedule and would be prejudiced by the delay attendant to further meet and confers. In any event, given Agri Stats' conduct and representations to date, no meet and confer would be fruitful, and even if it could be, Agri Stats consistent dilatory conduct in meet and confers make timely resolution impossible.

Therefore, given the months-long delay Agri Stats has injected into compliance with the Subpoena, the ongoing intensive deposition schedule, and the relatively limited amount of remaining time in discovery, Plaintiffs respectfully request the Court decline to rule that the Motion should be heard in Indiana and Order Agri Stats to produce the documents that hit on the narrow, negotiated, and agreed search terms as requested in Plaintiffs' Motion and supported by law in District Courts in this Circuit and around the country.

## II.   ARGUMENT

### A.  This Court Is the Proper Court to Adjudicate This Dispute

This Court has the authority and is best positioned to adjudicate this dispute.[2] The "transferee judge who manages an MDL has jurisdiction under section 1407 . . . to enforce a subpoena that requires compliance in another district, despite the procedural requirements of Rule 45." *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 378 (D.D.C.

---

[2] The Tenth Circuit Court of Appeals has not weighed in, but at least one District Court in the Tenth Circuit has, *see, e.g.*, *In re EpiPen*, 2018 WL 2980879, at *3, and as set forth herein other courts are near uniform in reaching the same conclusion as the *EpiPen* court.

2017); *In re EpiPen*, 2018 WL 2980879, at *3 ("As the Court presiding over the MDL, this Court has authority to decide the motion to compel."); *see also U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 468-69 (6th Cir. 2006) ("A judge presiding over an MDL case therefore can compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted."); *In re Clients & Former Clients of Baron & Budd, P.C.*, 478 F.3d 670, 671 (5th Cir. 2007) (same, discussing Rule 45 document requests); *In re Accutane Prods. Liab. Litig.*, 2006 WL 1000311, at *2 n.3 (M.D. Fla. Apr. 14, 2006) ("[T]he court finds it has jurisdiction to rule on this matter … The statutory grant of power to a MDL judge to act as judge of any district for pretrial depositions necessarily would include, as is the case here, the power to enforce a subpoena duces tecum issued by another district court.").[3]

Accordingly, transferee judges managing MDLs routinely enter orders requiring subpoena disputes to be heard by the MDL court. *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 9065791 (S.D.N.Y. May 8, 2020) (ordering central enforcement of subpoenas in MDL); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-MD-2687, ECF No. 468 (D.N.J. Sept. 5, 2017) (same); *In re Niaspan Antitrust Litig.*, No. 13-md-2460, ECF No. 220 (E.D. Pa. June 9, 2015) (same); *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. 13-md-2419, ECF No. 885 (D. Mass. Feb. 7, 2014) (same).

And even where motions to compel or quash are filed in the district in which compliance is required, courts generally transfer the dispute to the MDL transferee judge, citing Rule 45(f)'s provision for transfer due to "exceptional circumstances." *See, e.g.*, *Estes v. 3M Co.*, 2020 WL

---

[3] *See also In re Automotive Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 487 (E.D. Pa. 2005) (holding the court could adjudicate a motion to compel a non-party pursuant to its authority as the MDL transferee court); *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 174 F.R.D. 412 (N.D. Ill. 1997) (transferee court has jurisdiction to order compliance of nonparty with subpoena issued in another district and compel nonparty to produce documents); *In re Sunrise Sec. Litig.*, 130 F.R.D. 560 (E.D. Pa. 1989) (holding that under 28 U.S.C. § 1407, "a multidistrict judge may decide a motion to compel a non-party in other districts even if he or she is not physically situated in those districts"); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 117 F.R.D. 30, 32 (D.P.R. 1987) (considering interplay between a motion to enforce a subpoena duces tecum issued to a non-party and 28 U.S.C. § 1407 and holding that because Section 1407 endorses the purpose and policy to "provide for a unified concept of pretrial proceedings," "it is necessary to append to the transferee judge enforcement powers in relation to subpoenas").

8254487 (M.D. Ala. Dec. 29, 2020) (recommending transfer to the Northern District of Florida wherein the *3M Earplugs* MDL was pending); *Mylan, Inc. v. Analysis Grp., Inc.*, No. 18-mc-91153, 2018 WL 1904183 (D. Mass. Apr. 20, 2018) (ordering transfer to the District of Kansas wherein the *EpiPen* MDL was pending); *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2009 WL 3681986 (D.N.J. Nov. 4, 2009) (ordering transfer to MDL court in Middle District of Georgia). This is important here because "[t]he laws and rules governing federal courts strive to minimize elaborate formality and needless procedure." *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 274-75 (D.D.C. 2002) (citing Fed. R. Civ. P. 8(e)(1)). Dismissing this motion only for it to be refiled in Indiana and transferred back here for resolution pursuant to the well-established "exceptional circumstances" present in the context of a subpoena issued in connection with an MDL would create precisely such "elaborate formality and needless procedure" that only results in undue delay and inefficiency.

Agri Stats incorrectly argues that Rule 45 *requires* this motion to be filed in Indiana, where Agri Stats is based. Notably, Agri Stats does not rely on any in-Circuit decisions, does not address the in-Circuit decision in *In re EpiPen*, nor distinguishes any of the cases Plaintiffs cited demonstrating the Court's jurisdiction to hear this Motion. Mot. at 8 & n.13. Instead, Agri Stats relies on a few out-of-circuit district court cases that conflict with *In re EpiPen* (and represent the significant minority view as compared with the authority cited by Plaintiffs). They are unpersuasive and contrary to practice in most jurisdictions, including in this Circuit.

But even accepting Agri Stats' cases' reasoning, the cases only stand for the proposition that this Motion should be refiled in Indiana—where the weight of the case law provides for it to simply be transferred back to this Court to be heard. Indeed, Agri Stats cites *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 8673437, *3-4 (N.D. Fla. Nov. 18, 2020), in which the MDL transferee court rejects the MDL parties' effort to enforce a subpoena directly in the transferee court. A short time later, the *Earplug* parties followed the Court's direction for another subpoena, only to have the subpoena dispute transferred back to the MDL court, evidencing the undue delay in such process. *See Estes*, 2020 WL 8254487.

Finally, although this Court has jurisdiction to hear this motion irrespective of any burden imposed on Agri Stats,[4] there would in fact be no undue burden on Agri Stats for this motion (or

---

[4] Agri Stats contends that it is merely a "small benchmarking business" for which litigating outside of Indiana creates a hardship, Opp. at 1, is belied by the significant litigation embroiling

the associated requested relief) to be resolved in the Eastern District of Oklahoma. *Matter of Orthopedic Bone Screw Prods. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir. 1996) (transfer of subpoena dispute to MDL court does not represent an undue burden because it "does not require anyone to travel; lawyers can send the motions …on paper, and the Manual for Complex Litigation suggests that the judge can hear argument by telephone to curtail travel costs"); *In re Mentor Corp.*, 2009 WL 3681986 (D.N.J. Nov. 4, 2009) (same). Because Agri Stats has been and is capable of (1) drafting and filing its papers with this Court, (2) appearing for argument via videoconference, and (3) complying with the requested relief without any travel or other burden attendant to the geographic location of this Court, this Court's resolution of this dispute cannot be said to impose an undue burden on Agri Stats.

### B.  Agri Stats' Undisclosed Use of TAR Is Improper

Agri Stats opposes Plaintiffs' Motion on the grounds that (1) it had no affirmative obligation to meet and confer on culling methods under either the Federal Rules or the Court's ESI Order, (2) even if it did, it should not be ordered to produce documents that Agri Stats claims it determined were not relevant through its TAR process.[5]

To Plaintiffs' knowledge, the Tenth Circuit (and its District Courts) have not directly addressed a third party's obligation to meet and confer concerning use of TAR as a culling method or the applicability of ESI Orders to non-parties (and Agri Stats cited no in-Circuit cases for its positions). But courts in the Tenth Circuit are clear that "a subpoena served on a third party pursuant to Rule 45 is subject to the same standards that govern discovery between the parties." *See Compania de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua, S.A.B. de C.V.*, 2019, WL 8223561 (D. Colo. Dec. 31, 2019).

The law across jurisdictions is clear that the Federal Rules obligate producing parties

---

Agri Stats around the country. Presently, Agri Stats is involved in class action litigation arising out of its "small benchmarking business" in Maryland, Minnesota, and Illinois. *See Jien v. Perdue Farms, Inc.*, No. 1:19-cv-02521 (D. Md.); *In re Pork Antitrust Litig.*, No. 0:18-cv-1776 (D. Minn.); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-8637 (N.D. Ill.). And these class action cases are based on Agri Stats' nationwide conduct, as reflected by the individual actions swept up in the MDLs from more than a dozen states. Further, this "small benchmarking business" has retained counsel from Hogan Lovells, a highly-regarded national law firm.

[5] Agri Stats has never told Plaintiffs (nor included in its filing) how many documents Agri Stats manually reviewed as part of its TAR process. At a bare minimum, documents excluded from manual review by an undisclosed, undescribed, non-negotiated TAR process cannot reasonably be claimed by Agri Stats to have been deemed "Non-Responsive."

negotiating culling methods with the receiving party to disclose any intent to apply additional methods because such practice is part of a good faith meet and confer on culling methods. For example, the Sedona Conference's *Cooperation Proclamation*, relied on by courts (including District Courts in the Tenth Circuit)[6] to establish the obligation of parties to meet and confer early in discovery, advocates for "a coordinated effort to promote cooperation by all parties to the discovery process to achieve the goal of 'a just, speedy, and inexpensive determination of every action.'" THE SEDONA CONFERENCE, *Cooperation Proclamation*, 10 SEDONA CONF. J. 331 (2009 Supp.). And Tenth Circuit District Courts have not been sympathetic to producing parties who fail to meet and confer consistent with the Sedona Conference's Cooperation Proclamation principles. *See, e.g.*, *First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*, 2016 WL 3129139, at n.32 (D. Utah June 2, 2016) (upholding the magistrate judge's Order compelling production and faulting the defendant producing party for utilizing non-negotiated search terms as inconsistent with the principles of the Sedona Conference's *Cooperation Proclamation*).

Agri Stats' contention that it was unaware of the existence of the ESI Order's provisions relating to the use of TAR is not credible. Such orders are standard operating procedure. Indeed, in each of the downstream litigation, *In re Broiler Chicken*, No. 1:16-cv-8637, ECF No. 586, litigation relating to Agri Stats benchmarking of poultry processing employee wages, *Jien*, No. 1:19-cv-02521, ECF No. 457, and the litigation relating to Agri Stats' pork benchmarking business, *In re Pork*, No. 0:18-cv-1776, ECF No. 292 (D. Minn.), Agri Stats (using the same counsel as here) agreed and is subject to an ESI order concerning TAR. Each such order requires disclosure of TAR by the producing party up front. Moreover, had Agri Stats said it was using TAR, Plaintiffs would have directed Agri Stats to the ESI Order and its relevant provisions.

**1. Agri Stats does not contest that it failed to disclose that it would use TAR.**

As set forth in Plaintiffs' Motion, Agri Stats had an affirmative obligation to raise its intent to use TAR to Plaintiffs as part of the meet and confer on culling methodologies, *i.e.*, before Agri Stats applied it, and Agri Stats failed to do so. Agri Stats' Opposition fails to

---

[6] *See, e.g., Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502721 (D. Colo. Feb. 8, 2010) (noting "[t]his court has endorsed *The Sedona Conference Cooperation Proclamation*" and directing that counsel meet and confer in good faith "consistent with well-established case law and the principles underlying *The Cooperation Proclamation*"); *High Point SARL v. Sprint Nextel Corp.*, 2012 WL 234024, at n.9 (D. Kan. Jan. 25, 2012) (noting that the court has previously endorsed the Sedona Conference Cooperation Proclamation).

address (much less justify) this misconduct. Specifically, Agri Stats' opposition focuses entirely on whether TAR is a culling methodology that parties (and third-party subpoena recipients) may use as part of their compliance with document requests. Agri Stats reasons that because producing parties may use TAR, Agri Stats cannot have done anything wrong when it applied TAR. This argument fails to grapple with Agri Stats' failure to (1) meet and confer about its use of TAR when the parties were negotiating culling methodologies, and (2) Agri Stats concealment of its use of TAR by not responding when Plaintiffs raised the issue.

Agri Stats further tries to cast blame on Plaintiffs for purportedly not raising whether Agri Stats would use TAR, which is both false and irrelevant. First, Plaintiffs directly raised whether Agri Stats was proposing to utilize TAR *in this case*. Specifically, Agri Stats had made proposals leading up to Plaintiffs' March 21, 2021 letter, and Plaintiffs sought clarification explicitly noting that it was Plaintiffs' "understand[ing] that Agri Stats' proposal [in this case] did not include … TAR." Madden Decl., Ex. E. Agri Stats never responded to that understanding. Now, Agri Stats tries to explain it away by saying that Plaintiffs' statement concerning TAR was "confirming the process by which Agri Stats collected and reviewed documents for *In re Broiler Chicken Antitrust Litigation*." Opp. at 5. But such interpretation neither explains Plaintiffs' reference to "Agri Stats' proposal"—thus directly couching Plaintiffs' understanding with what Agri Stats was proposing **in this case**—nor Agri Stats' silence on the issue in response. Plaintiffs did not need to ask again about Agri Stats' TAR intent because the parties were negotiating culling processes and Plaintiffs had no reason to believe there was any change unless Agri Stats raised it. Agri Stats, at a minimum knowing that Plaintiffs previously raised TAR, chose to withhold the information on its intent to use TAR in those negotiations. Agri Stats' after-the-fact assertion that it did not know Plaintiffs were concerned with its use of TAR is not credible given that Plaintiffs previously requested whether Agri Stats was proposing to use TAR and that the parties engaged in a protracted discussion about culling methods that would obviously be informed by Agri Stats' intent to use additional methods.

Finally, Agri Stats asserts that it is false that "the parties had an 'ultimate agreement on use of search terms (but not TAR).'" Opp. at 5. But Agri Stats does not and cannot dispute that the parties reached an ultimate agreement on the use of search terms. Agri Stats also does not and cannot dispute that it withheld the information that it would use TAR as a supplemental culling method when the parties agreed as to search terms. Thus, the parties necessarily reached

agreement on the culling methodology that would be used.

Thus, decisions in cases like *In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610 (D.N.J. 2020) and *Progressive Casualty Insurance Co. v. Delaney*, 2014 WL 3563467 (D. Nev. July 18, 2014) are directly on point. In those cases, the parties reached agreement on the use of search terms as the agreed culling methodology, but the producing party decided instead to apply TAR unilaterally. Neither court accepted the producing party's argument that TAR is a generally accepted methodology, with each case turning on the fact that the parties negotiated a different method: search terms. That is exactly the case here, except that Agri Stats' conduct is worse. In each of those other cases, the producing party affirmatively raised the use of TAR at a comparatively early point. In *Progressive*, the producing party did so prior to production and only after it found manually reviewing the agreed search term hits to be cost prohibitive—and the court still ordered production of all search term hits. In *Valsartan*, the court rejected the producing party's unilateral use of TAR, but because the parties had previously negotiated a different TAR protocol ***and*** the producing party informed the receiving party of its unilateral TAR process weeks before production, the court denied the requested relief here (*i.e.*, production of all search term hits). Here, by contrast, Agri Stats did not disclose its use TAR until well after production (and only when asked directly), never negotiated a protocol for TAR or validation, and now, given the case schedule, Plaintiffs would be prejudiced by starting such negotiations anew. The conclusion of *Valsartan* on the inappropriateness of unilateral TAR holds, but the conclusion as to the remedy does not given Agri Stats' misconduct.[7]

### 2.   Agri Stats production is deficient

Agri Stats further contends that because it has the right to apply TAR (which, as set forth herein and in Plaintiffs' Motion is a qualified right dependent upon disclosure and good faith meet and confer—Agri Stats thus had no such right here), Plaintiffs must identify "a specific deficiency" in Agri Stats' production. Opp. at 9-10.[8] Of course, Plaintiffs identified a specific

---

[7] Indeed, Agri Stats suggestion that further meet and confer is an appropriate remedy here is incorrect. Plaintiffs have already been deprived documents during the ongoing deposition program. And requiring Plaintiffs to expend resources to meet and confer (which Agri Stats' history suggests will take months) and possibly (if not likely) ultimately place the parties right back in a motion posture would merely compound the harm Plaintiffs have endured already.

[8] Plaintiffs need not show that Agri Stats' production is deficient under the Sedona Principles that Agri Stats cites, because that authority begins with the assumption that the producing party has disclosed its intent to use TAR and met and conferred up front with the receiving party. Agri

deficiency, even given Agri Stats failure to meet and confer on TAR.[9] *See generally* Mot. at 5-6 (describing dearth of emails, Word files, Excel spreadsheets, and PowerPoint presentations, and nearly the entire production consisting of 18 archive zip files containing primarily pdfs of reports that are duplicative of Agri Stats' structured data production); *id.* at 5 (describing how Defendants produced relevant and responsive documents that should be in the possession, custody, or control of Agri Stats, but which Agri Stats did not produce).

Agri Stats claims Plaintiffs only "argue that the Defendants produced more documents [than Agri Stats]." Opp. at 10 (citing Mot. at 5). While Defendants produced more documents than Agri Stats, that is not the nature of the asserted deficiency. Rather, Defendants produced far more documents ***from Agri Stats' custodians***. Mot. at 5. In other words, if a Defendant produces an email between an Agri Stats custodian and the Defendant's custodian, the expectation is that Agri Stats would also have the document and produce it, along with any other documents in Agri Stats' custodians' possession, custody, or control (such as internal discussions about the issues identified in the email between Agri Stats and the Defendant). And Defendants' productions of correspondence from Agri Stats' custodians is so much larger than Agri Stats' production from the custodians, it is indicative of a deficiency. These are not, as Agri Stats suggests (Opp. at 10),[10] documents that Defendants have that Agri Stats would not because of their different businesses. Rather, these are documents sent by or to Agri Stats' custodians by or to Defendants. These documents are relevant, are almost certainly in the collections Agri Stats used to apply its TAR, but were not produced. That is a specific deficiency.

---

Stats did not do so; that Agri Stats failed to comply with its obligations is sufficient. As set forth herein (and in the Motion and in the Exhibits to Agri Stats' Opposition, *see, e.g.*, Mot. at 8-9; Exhibit 11 to the Declaration of Justin Bernick (articulating deficiencies in detail in October 29, 2021 email)), Plaintiffs satisfy any burden of identifying such a deficiency anyway.

[9] Agri Stats contends that Plaintiffs should have continued to meet and confer with Agri Stats. Plaintiffs have already suffered prejudice from Agri Stats' failure to meet and confer, and continuing the process would only exacerbate the problem. A meaningful meet and confer on Agri Stats' production deficiency needed to begin with Agri Stats providing full disclosure concerning the TAR process and validation up front.

[10] Agri Stats also argues that, "[i]t is not surprising that Defendants would produce different documents than Agri Stats—they received different discovery requests." But the Subpoena requests "All documents concerning or reflecting communications between You and any Integrator(s) and/or among Integrators concerning:" a wide variety of topics relevant to this litigation. *See* Madden Decl., Ex. A (ECF No. 141-2) (Request No. 12). The emails to and from Agri Stats custodians in Defendants' files fit within this request.

Notwithstanding this apparent deficiency in the ***production***, Agri Stats contends that Plaintiffs fail to identify any actual problem with Agri Stats' TAR ***methodology***. Opp. at 10. That is a function of Agri Stats failure to meet and confer in good faith. Specifically, per the Federal Rules, the ESI Order, and applicable law (as set forth in the Motion), to the extent Agri Stats wanted to use TAR, it was incumbent upon Agri Stats to meet and confer with Plaintiffs so that Plaintiffs could obtain information concerning the methodology, and the parties could negotiate an appropriate validation protocol. Because Agri Stats concealed its use of TAR from Plaintiffs, no such information was exchanged and no such validation protocol was negotiated. Even in its Opposition, Agri Stats only vaguely describes its TAR process and validation,[11] and Agri Stats did not provide Plaintiffs with that information in the Opposition before filing it (much less the back-up that would allow Plaintiffs to analyze the accuracy of the representations).

These are precisely the types of negotiations that happen up front in a properly functioning meet and confer—*i.e.*, where the producing party discloses and does not conceal its intended culling methods. Had Agri Stats done so, Plaintiffs would have had more information to articulate and identify the deficiencies (including any deficiency in the TAR process), and the parties would be months closer to resolving the issues that arose. Instead, Agri Stats chose to conceal its culling methods, shirk its meet and confer obligation as to those methods, elect not to provide any information to Plaintiffs about what it did unless each piece of information was specifically requested, and then has the audacity to suggest that it is Plaintiffs' fault that Plaintiffs do not have the information Plaintiffs could not have known to ask for because of Agri Stats' deception. Agri Stats should not be rewarded for such conduct, and instead should be made to produce the documents generated by the culling process to which Agri Stats agreed.

## III.   CONCLUSION

For the foregoing reasons and those in Plaintiffs' Motion, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion.

---

[11] Agri Stats' unverified contentions about its TAR process and validation should be disregarded. Agri Stats did not describe its TAR process to Plaintiffs (indeed it did not disclose it up front at all), and thus its new contentions about how it applied TAR (including using vaguely described and unidentified "experts") are self-serving and unhelpful to these issues. Further, Agri Stats provides no information about how it applied its validation protocol, which is a key factor in analyzing any purported recall and precision statistics. That is why these processes are required to be negotiated up front, so that both the producing and receiving parties understand and can negotiate, revise, and object before it is too late.

Dated: January 21, 2021                    Respectfully submitted,

*/s/ Patrick F. Madden*
Patrick F. Madden*
Eric L. Cramer*
Ellen T. Noteware*
David A. Langer*
Haley Pritchard*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: pmadden@bm.net
Email: ecramer@bm.net

Gary I. Smith, Jr.*
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3270
Facsimile: (215) 985-3271
Email: gsmith@hausfeld.com

Michael D. Hausfeld*
James J. Pizzirusso*
Melinda R. Coolidge*
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: mhausfeld@hausfeld.com
Email: jpizzirusso@hausfeld.com
Email: mcoolidge@hausfeld.com

Samantha S. Derksen*
**HAUSFELD & CO. LLP**
12 Gough Square
London, EC4A 3DW
Telephone: +44 (0)20 7665-5000
Email: sderksen@hausfeld.com

11

Kimberly A. Fetsick*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
Email: kfetsick@hausfeld.com

Kyle G. Bates
**HAUSFELD LLP**
600 Montgomery St.,
San Francisco, CA 94111
Telephone: (415) 633-1098
Facsimile: (415) 633-4980
Email: kfetsick@hausfeld.com

Daniel J. Walker*
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
Email: dwalker@bm.net

*Co-Lead Counsel for Plaintiffs and the
Proposed Class*

M. David Riggs
Donald M. Bingham
Kristopher Koepsel
**RIGGS ABNEY NEAL TURPEN ORBISON &
LEWIS**
502 West Sixth Street
Tulsa, OK 74119
Telephone: (918) 699-8914
Facsimile: (918) 587-9708
Email: driggs@riggsabney.com
Email: don_bingham@riggsabney.com
Email: Email: kkoepsel@riggsabney.com

William A. Edmondson (OBA No. 2628)
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
528 N.W. 12th Street
Oklahoma City, OK 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
Email: dedmondson@riggsabney.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

Kellie Lerner*
Matthew J. Geyer*
Meegan Hollywood*
**ROBINS KAPLAN, LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
Email: KLerner@RobinsKaplan.com
Email: MGeyer@RobinsKaplan.com

Aaron Sheanin*
**ROBINS KAPLAN, LLP**
46 Shattuck Square, Suite 22
Berkeley, CA 94704
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
Email: ASheanin@RobinsKaplan.com

Larry D. Lahman (OBA No. 5166)
Roger L. Ediger (OBA 19449)
**MITCHELL DECLERK, PLLC**
202 West Broadway Avenue
Enid, OK 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890
Email: ldl@mdpllc.com
Email: rle@mdpllc.com

Vincent J. Esades*
**HEINS MILLS & OLSON, PLC**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: vesades@heinsmills.com

Warren T. Burns*
**BURNS CHAREST, LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
Email: wburns@burnscharest.com

Gregory Davis*
**DAVIS & TALIAFERRO, LLC**
7031 Halcyon Park Drive Montgomery, AL
36117
Telephone: (334) 832-9080
Facsimile: (334) 409-7001
Email: gldavis@knology.net

Charles D. Gabriel*
**CHALMERS, BURCH & ADAMS, LLC**
North Fulton Satellite Office
5755 North Point Parkway, Suite 251
Alpharetta, GA 30022
Telephone: (678) 735-5903
Facsimile: (678) 735-5905
Email: cdgabriel@cpblawgroup.com

Larry S. McDevitt*
David M. Wilkerson*
**VAN WINKLE LAW FIRM**
11 North Market Street Asheville, NC 28801
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
Email: lmcdevitt@vwlawfirm.com
Email: dwilkerson@vwlawfirm.com

6:20-md-02977-RJS-CMR   Document 268   Filed in ED/OK on 01/21/22   Page 19 of 21

Harlan Hentges (OBA No. 17911)
**HENTGES & ASSOCIATES, PLLC**
102 East Thatcher Street
Edmond, OK 73034
Telephone: (405) 340-6554
Facsimile: (405) 340-6562
Email: harlan@organiclawyers.com

John C. Whitfield*
Caroline R. Taylor*
**WHITFIELD BRYSON LLP**
19 North Main Street
Madisonville, KY 42431
Telephone: (270) 821-0656
Facsimile: (270) 825-1163
Email: john@whitfieldbryson.com
Email: caroline@whitfieldbryson.com

J. Dudley Butler*
**BUTLER FARM & RANCH LAW GROUP,
PLLC**
499-A Breakwater Drive
Benton, MS 39039
Telephone: (662) 673-0091
Facsimile: (662) 673-0091
Email: jdb@farmandranchlaw.com

Daniel M. Cohen*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202)789-1813
Danielc@cuneolaw.com

David S. Muraskin*
**PUBLIC JUSTICE, PC**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 861-5245
Facsimile: (202) 232-7203
Email: dmuraskin@publicjustice.net

15

M. Stephen Dampier*
**LAW OFFICES OF M. STEPHEN DAMPIER, P.C.**
55 North Section Street
 P.O. Box 161
Fairhope, AL 36532
Telephone: (251) 929-0900
Facsimile: (251) 929-0800
Email: dampier.steve@gmail.com

Grant L. Davis*
Thomas C. Jones*
Timothy Gaarder*
Thomas E. Ruzicka, Jr.*
**DAVIS BETHUNE & JONES, LLC**
1100 Main St, Ste 2930
Kansas City, MO 64105
816-421-1600
Email: gdavis@dbjlaw.net
Email: tgaarder@dbjlaw.net
Email: tjones@dbjlaw.net
Email: truzicka@dbjlaw.net

Robert Bonsignore, Esq.
**BONSIGNORE, PLLC 3771**
Meadowcrest Drive
Las Vegas, NV 89121
781-350-0000
Email: rbonsignore@classactions.us

*Additional Class Counsel for Plaintiffs and the Proposed Class*

* admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 21st of January, 2022, I electronically transmitted a true and correct copy of the foregoing document and supporting materials to the Clerk of the Court for filing using the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s Patrick F. Madden*
Patrick F. Madden