1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF OKLAHOMA

3

4    IN RE:  BROILER CHICKEN       )

5    GROWER LITIGATION.            )

6    _____)

7    HAFF POULTRY, INC., et al.,   )

8              Plaintiffs,         )

9    vs.                           )  Case No. 6:20-MD-2977RJS-CMR

10   TYSON FOODS, INC., et al.,    )

11             Defendants.         )

12   _____)

13

14

           BEFORE THE HONORABLE CECILIA M. ROMERO
15         ---------------------------------------

16              January 7, 2022

17

18              Zoom Motion Hearing

19

20

21

22

23

24

25

```
 1                    A P P E A R A N C E S

 2

 3    For Plaintiffs:              GARY L. SMITH
                                   325 Chestnut Street
 4                                 Suite 900
                                   Philadelphia, Pennsylvania
 5
                                   KYLE BATES
 6                                 600 Montgomery Street
                                   Suite 3200
 7                                 San Francisco, California

 8                                 LARRY LAHMAN
                                   202 West Broadway
 9                                 Enid, Oklahoma

10    For Defendant:              CARRIE MAHAN
      Pilgrim's                   CHRISTOPHER ABBOTT
11                                2001 M Street, N.W.
                                  Suite 600
12                                Washington, D.C.

13    For Defendant:              KRISTIN M. KOGER
      Perdue                      600 Massachusetts Avenue, N.W.
14                                Washington, D.C.

15
      For Defendant:              LISA SANTANIELLO
16    Sanderson Farms             300 North LaSalle Street
                                  Chicago, Illinois
17

18    For Defendant:              KAIL J. JETHMALANI
      Tyson                       114 West 47th Street
19                                New York, New York

20

21

22    Court Transcriber:          Ed Young
                                   351 South West Temple
23                                 Room 3.302
                                   Salt Lake City, Utah 84101-2180
24                                 801-328-3202
                                   ed_young@utd.uscourts.gov
25
```

```
 1   January 7, 2022

 2                    P R O C E E D I N G S

 3

 4          THE COURT:  Good afternoon.

 5          We're here in the Broiler Chicken Litigation, the

 6   antitrust litigation, case number 6:20-MJ-2977.  We're here

 7   this afternoon on Pilgrim's Pride's motion for a protective

 8   order, document number 219.

 9          I would like to go through and confirm who is all

10   on the line.  So who is present today on behalf of Pilgrim's

11   Pride?

12          MR. ABBOTT:  Good afternoon, Your Honor.

13          (Inaudible)

14          THE COURT:  I'm sorry.  Let me turn my volume up.

15   I hear somebody trying to talk, but I can't quite hear you.

16          MR. BATES:  I don't think it is your problem, Your

17   Honor.  I can't hear him either.

18          THE COURT:  Okay.  And then whoever is appearing,

19   are you appearing by phone or by video?

20          MR. ABBOTT:  Hi, Your Honor.

21          Is that better, everybody?

22          THE COURT:  There we are.

23          MR. ABBOTT:  Sorry.  My audio source got switched

24   on me without me realizing it.  That is much better.

25          Good afternoon, Your Honor.  Chris Abbott, Weil
```

1    Gotshal on behalf of Pilgrim's Pride.  I'm joined by a few

2    colleagues including Carrie Mahan, but I will be handling

3    the argument this afternoon.

4            THE COURT:  Thank you for that clarification.

5            Who is present on behalf of the plaintiff?

6            MR. SMITH:  Your Honor, Gary Smith and Kyle Bates

7    with Hausfeld on behalf of the plaintiffs.  Mr. Bates will

8    be handling the argument for plaintiffs.

9            THE COURT:  All right.

10            MR. LAHMAN:  Your Honor, I am Larry Lahman from

11    Enid, Oklahoma.  I am appearing solely because of the local

12    rule requiring me to be present with those for whom I

13    obtained pro hacs and I will be silent.

14            THE COURT:  I'm sorry, Mr. Lahman.  I didn't

15    understand what you just said.

16            MR. LAHMAN:  I am appearing because I obtained the

17    pro hacs for several of the attorneys for the plaintiffs --

18            THE COURT:  Okay.

19            MR. LAHMAN:  -- which the local requires me to be

20    present.  I will be silent.

21            THE COURT:  Thank you very much for that

22    clarification.  All right.

23            Do we have anyone present on behalf of Perdue?

24            MS. KOGER:  Good afternoon, Your honor.

25            Kristin Koger of the law firm of Venable on behalf

 1    of Perdue.

 2              THE COURT:  Thank you.

 3              And is there anyone present on behalf of Sanderson

 4    Farms?

 5              MS. SANTANIELLO:  Yes, Your Honor.  Lisa

 6    Santaniello from Kirkland & Ellis.

 7              THE COURT:  Thank you.

 8              Is there anyone present on behalf of Tyson?

 9              MR. JETHMALANI:  Good afternoon, Your Honor.  Kail

10    Jethmalani from Axinn on behalf of the Tyson defendants.

11              THE COURT:  Thank you.

12              With that I will ask -- I see there are a number

13    of individuals on by phone which is fine.  This is a public

14    hearing and you're able to attend, but I need you all to

15    mute your phones to make sure that we don't get any

16    background noise.  It does not appear that you have done

17    that.

18              Is there anyone that I have missed, taking a roll

19    call, that should or wants to make an appearance?  All

20    right.

21              Hearing nothing we will go ahead and get started.

22              I'm going to start by letting you all know that I

23    have read the motion for a protective order and I have read

24    the opposition and I have read the reply.  I have also read

25    a significant number of the cases that are cited, and I tell

1   you that so that you understand that I am ready to go and

2   understand the issues before the Court today.

3          What I would like to do is to spend the time -- I

4   have a number of questions that I would like to address with

5   Pilgrim's Pride and some with the plaintiffs as well, but

6   the majority with Pilgrim's Pride as I try to understand

7   what they are asking the Court to do here today.

8          So I will start with my questions and then if you

9   think there is something that I should know or that we have

10  not discussed, I will give you an opportunity to inform the

11  Court of that, recognizing that I have read all of the

12  information that has been presented to me.

13         So with that, Mr. Abbott, I understand you're

14  going to address the Court on behalf of Pilgrim's Pride.  I

15  want to start with a standing issue really.  The overriding

16  question and concern that I have as I read your motion and

17  your reply, and then looking at the cases, is I have a

18  concern that you don't have standing to seek the requested

19  relief and, frankly, standing wasn't really addressed at all

20  in your briefing.

21         I look at the Misner vs. Potter case and the

22  Conroy versus Schafer case, which are Tenth Circuit cases,

23  and you are correct that they establish the principle that

24  the attorney-client privilege applies to confidential

25  communications concerning matters within the scope of the

1  employee's corporate duties whether or not they are

2  currently employed, but it seems to me that that issue is

3  not exactly the issue that you're asking the Court to

4  adjudicate.

5          As I understand it, Mr. Heatherly has an attorney.

6  He was represented by counsel at the deposition.  The Misner

7  and Conroy cases don't really seem to answer the question of

8  do you as corporate counsel have to be engaged by those

9  former employees, and so those cases don't quite seem to be

10  addressing the question before this Court, and so it is not

11  clear that those are definitively dispositive to the issue

12  that you're asking the Court to address.

13          That all gets me back to the underlying question

14  of why do you have standing to address this issue and, more

15  specifically, where was that briefed in your pleadings?

16          MR. ABBOTT:  Thank you, Your Honor.

17          I think that Pilgrim's I think has standing here

18  because to the extent that Mr. Heatherly would testify about

19  the matters that Mr. Bates -- about the matters which Mr.

20  Bates inquired about, which were very broad questions about

21  the content of a conversation and the documents reviewed,

22  that is Pilgrim's privilege.  So to the extent that that

23  privilege is impeded on by plaintiffs in this deposition if

24  it were to be reopened, the harm would be to Pilgrim's.  I

25  guess that is number one.

1            And then number two is part of that which is that

2    the burden and the expense of convening another deposition

3    for the sole purpose of asking two questions which would

4    impose on Pilgrim's privilege, that burden and expense would

5    fall on of course Mr. Heatherly, but it would also fall on

6    Pilgrim's.  I think that the cases that we have cited have

7    supported the proposition that the fact that the burden

8    would fall on the defendant corporation is sufficient.

9            THE COURT:  So with respect to the second point,

10   you say that there is an undue burden to Pilgrim's, but then

11   you don't really focus on what that undue burden is.

12   Instead you look to Mr. Heatherly's situation and just sort

13   of say it is not fair for us to have to take a second

14   deposition, but there is case law within the Tenth Circuit

15   that clearly establishes that certainly while it is not the

16   norm to have to sit for a second deposition, where there is

17   a good reason to have to sit for a second deposition it can

18   be justified.  And so your argument appears to be somewhat

19   circular, which gets me to my second question, which is the

20   concern that I have is that you cite to almost exclusively

21   cases outside of the Tenth Circuit.

22            In fact, when I looked at your brief, the Misner

23   versus Potter case was the only case within the Tenth

24   Circuit that you cited to that would be controlling

25   precedent.  The others we could look to perhaps for some

1    persuasive value, but the reality is that you don't cite to

2    anything within the Tenth Circuit.  And so my first question

3    is why are you citing to all of this case law outside of the

4    Tenth Circuit to establish the concept that the

5    attorney-client privilege and work product doctrines apply

6    to the two questions that plaintiff is trying to get?  That

7    is the first part of the question.

8         The second part of the question is separate and

9    apart from citing to cases outside of the Tenth Circuit that

10   are not controlling, you don't ever really even tell me what

11   the standard is that applies, which I think is significant

12   because those are significant issues that you're asking the

13   Court to rule on.

14        So when I look, for example, to the noncontrolling

15   case that you cite from New Jersey, the Nicholls versus

16   Philips case, that case even says when a party seeks a

17   protective order on the grounds of the information sought is

18   protected by the attorney-client privilege, that party has

19   the burden of establishing the essential elements of the

20   privilege, end quote.

21        I look at your brief and I say there is no

22   standard set out for the Court for what privilege applies,

23   which is significant, because when I look at a lot of your

24   other cases, some of those cases are citing to state law on

25   privilege.  For example, I think the Hof versus LaPorte

1  case, which is an Eastern District case out of Louisiana, is

2  looking at state law.  So then I said, well, okay, what law

3  applies, state or federal?  I think it would be federal,

4  because you're here on federal question jurisdiction as

5  opposed to diversity jurisdiction, but that standard is not

6  set out anywhere in your brief, and you're asking me to

7  apply the privilege and say that it is an undue burden for

8  both you and Mr. Heatherly, but the standard for me to know

9  and have comfort what I need to apply to reach that

10  conclusion appears to be lacking.

11       MR. ABBOTT:  Okay.  So in terms of Tenth Circuit

12  law, Your Honor, we did not find controlling Tenth Circuit

13  law, and so we did a survey and researched across the

14  circuits up and down and tried to find kind of how other

15  courts and other circuits have been handling this issue of

16  the privilege as attributed to former employees.

17       THE COURT:  Let me just interrupt you there, Mr.

18  Abbott.  Thank you for that clarification.

19       Going forward for all of you if you could make

20  that clear, because we spent -- my clerk spent significant

21  time trying to figure out why that was not addressed in your

22  brief, and we assumed that that was the case, right, that

23  with these particular circumstance there isn't anything

24  within the Tenth Circuit.

25       But having said that, there is case law within the

1    Tenth Circuit on how privilege works, right, in general.

2    Like what do you need to prove to show that there is an

3    attorney-client privilege?  And it seems to me that what

4    you're asking the Court to do is to look at these New

5    York -- mostly New York cases and say, well -- and Misner

6    and the Conroy case, which support the general proposition

7    that you can have a privileged communication with a former

8    employee.  I don't think in my reading of the plaintiff's

9    briefs that anybody disagrees with that, right, but there is

10   a bunch of caveats to sort of get to that point, right?  In

11   order for that concept to apply, don't I need to know that

12   there was an engagement set up for the purpose of collecting

13   information as part of the litigation process?

14        You might say, well, you could assume that because

15   we're in a deposition but, as I understand it, he is not a

16   controlling -- he is not a control person, right?  I don't

17   know if he was or not.  That wasn't addressed in your brief.

18   And it also seems to me that the concepts of a joint defense

19   agreement, the common interest doctrine, wouldn't some of

20   that or all of that have to be addressed in your brief in

21   order for me to get to that end question and apply the

22   Misner and Conroy concept?

23        MR. ABBOTT:  So a couple of responses to that,

24   Your Honor.  First of all, I think it is nice that we do now

25   agree I think with the plaintiffs that we are able to have

1    privileged conversations with former employees.  That was

2    not the position the plaintiffs took in the deposition.

3    When I objected and instructed Mr. Heatherly not to answer,

4    I stated the basis for that objection and I stated it very

5    clearly, which was that I represent Pilgrim's Pride and I am

6    entitled to have a privileged conversation with a former

7    employee about his time at the company.

8            At the time the plaintiffs said -- Mr. Bates said

9    I don't think I agree.  Now, I think from the briefing that

10   we have now reached a place where they are conceding that

11   those types of privileged conversations are at least

12   theoretically possible, but the exception that they are

13   trying to articulate would swallow the rule.  I think the

14   rule that we are asking the Court to set out is the one that

15   is articulated in Gary Friedrich and the progeny which is

16   that conversations with former employees about, you know,

17   facts related to their time at the company are privileged,

18   and that there is also work product protection that would

19   apply to those communications.  But the --

20           THE COURT:  So you're asking the Court to find

21   that, but the caveat that I would put on that for what I am

22   prepared to consider is that they could be privileged,

23   right?  I mean in the cases that you have cited there is

24   nothing that applies a blanket privilege, right?  It has to

25   be in pursuit of collecting information as it relates to

```
1    litigation, right, or something at issue.  I don't

2    understand there to be a blanket privilege that any

3    communications that you have as either inside counsel or

4    outside counsel with former employees is protected.

5              Is that what you're saying?

6              MR. ABBOTT:  No, that is not what we are saying.

7              THE COURT:  Okay.

8              MR. ABBOTT:  I am fully -- no.  What we are saying

9    is that conversations between counsel for a company and a

10   former employee of that company that relate to, you know,

11   conduct and facts that arose or that they are aware of

12   because of their time at the company when done in the

13   context of litigation like this one are privileged.  And the

14   plaintiffs, despite the fact that they are trying to

15   articulate -- they say they are trying to articulate an

16   exception to that rule, but they are really not.  What they

17   are doing is they are trying to articulate an exception that

18   would completely swallow the rule.

19             What they are asking for, Your Honor, if you look

20   at footnote one of their   brief --

21             THE COURT:  I understand what they are asking me

22   to do and I have some questions for them about that, but

23   what I would like you to give me guidance on is -- I have to

24   say that I'm really uncomfortable from both of your

25   arguments, both from their exception argument and the way
```

1    that you're asking me to rule, based on the fact that you're

2    saying there is nothing in the Tenth Circuit that tells me

3    that I can do this, right, and so it seems to me if -- well,

4    you're telling me there is nothing in the Tenth Circuit in

5    this particular way, but I'm saying, well, isn't there stuff

6    in the Tenth Circuit where you could evaluate more closely

7    what is the -- does there have to be an attorney-client

8    relationship before the general concept that we were just

9    discussing kicks in?

10           Do you know the answer to that, Mr. Abbott?

11           MR. ABBOTT:  I don't sitting here looking at you

12   today, Your Honor.

13           THE COURT:  I think that question must be answered

14   before you can ask me to do what you're asking me to do,

15   because I read the Misner case and the Conroy case really

16   closely, and I don't know if you all went back and looked at

17   the briefing in those cases to make sure and clear up if

18   there was an engagement, but as the plaintiffs rightly point

19   out, in some of the cases that you have cited it is clear

20   that there is an engagement.  And here we have without

21   dispute, as I understand it, Mr. Heatherly declining to have

22   Pilgrim's Pride represent him and went out and got his own

23   attorney.  I have to say I really struggle with your ability

24   to assert the right to a protective order for a privilege

25   that I am not sure that you own because there is no

1    engagement.

2          MR. ABBOTT:  Your Honor, setting aside the Tenth

3    Circuit on that particular issue, I think Gary Friedrich is

4    informative, because there in Gary Friedrich the court said,

5    you know -- in Gary Friedrich the attorneys did represent

6    the deponent, the former employee for purposes of the

7    deposition, and the court set that aside.  The court held in

8    that case or found in that case that the mere kind of

9    representation by the corporate counsel of the deponent for

10   purposes of the deposition was not enough to establish the

11   privilege, because there had to be an independent basis.

12         I'm looking at it on page 3, Your Honor.  In the

13   conclusory sentence it says, therefore, to the extent that

14   counsel's communications with Mr. Thomas are protected by

15   the attorney-client privilege that privilege belongs to

16   Marble, the company.

17         So I hear you on the Tenth Circuit issue, and I

18   apologize for not having more on that in the briefing, but I

19   do think that at least the cases -- at least Gary Friedrich

20   is informative on the issue that that distinction between an

21   attorney representing -- corporate counsel representing an

22   individual for purposes of the deposition and not, is not

23   necessarily the turning point of the analysis.

24         THE COURT:  Let me also ask you, you make an

25   argument about the work product and the documents that were

1   reviewed, so the second question that they wanted to ask Mr.

2   Heatherly.  One of the points that they make is, look, we

3   think -- we don't know for sure, because he was not allowed

4   to answer that question, but we think some of the documents

5   that he reviewed were documents that would have Bates

6   numbers on them and were produced to other people.  And if

7   that is the case, then absolutely we're entitled to know

8   what they are.

9          So that is the first point that I have.  It seems

10  to me that the law is consistent with that, right?  Now you

11  may come back and say, look, they could have asked more

12  questions to people to figure that out and their response

13  is, hey, you told us we couldn't ask those questions.  We

14  did what we could.  That is the first question.

15         The second question is you cite to a New York line

16  of cases, and I think there are like three or four of them,

17  where you say, look, the work product doctrine can apply to

18  discussions.  It is not just documents and tangible things.

19  We think that that would cover us having to produce those

20  documents.  I got to tell you that the Tenth Circuit seems

21  pretty clear that that is not the case, right?  I mean that

22  the work product doctrine applies to documents and tangible

23  things, and so my question to you is did you look in the

24  Tenth Circuit for an answer to that question?

25         MR. ABBOTT:  Yes, Your Honor, and we did not find

1    controlling --

2          THE COURT:  Well, what I want to get clarification

3    on is did you not confine -- did you not find controlling

4    authority consistent with the New York cases?  Is that what

5    you didn't find, because it seems to me that it is pretty

6    clear in the Tenth Circuit that it wouldn't apply to

7    discussions.  I am not aware of any cases where the work

8    product doctrine was used to apply to discussions in the

9    Tenth Circuit.

10         MR. ABBOTT:  Your Honor, we did not find binding

11   precedent on that issue in the Tenth Circuit.

12         THE COURT:  And if there is no precedent in the

13   Tenth Circuit that says the discussions that we had is work

14   product, then isn't it true that if they said tell me every

15   document that you recall reviewing he would have to answer

16   that question?

17         MR. ABBOTT:  I think, Your Honor, that without

18   binding precedent I think it -- I think that work -- I think

19   that the work product doctrine -- I'm sorry, Your Honor.

20         Your question is without binding precedent on the

21   specific issue of whether --

22         THE COURT:  Let me ask it differently.

23          MR. ABBOTT:  I'm sorry, Your Honor.

24         THE COURT:  There are no cases that I'm aware of,

25   and you just told me that you couldn't find any cases

1    either, that say what the New York line of cases say when it

2    comes to work product, which is work product can apply to

3    communications, oral communications.  Okay.  If there is no

4    precedent in the Tenth Circuit that says that, it seems to

5    me then that the rule is unless one of those documents

6    relates to a mental impression that you shared with Mr.

7    Heatherly, right, that you wrote down, hey, this is the

8    strategy that we're trying to work up, everything else would

9    have to be disclosed.

10            Do I have that wrong?

11            MR. ABBOTT:  No.  I think, Your Honor -- I think

12   what we're relying on is the principle in Hickman vs.

13   Taylor, which is that the work product doctrine protects an

14   attorney's ability to sift through and assemble information

15   during a case.  I mean there were 402,000 documents produced

16   by Pilgrim's in this case.  The plaintiffs have asked Mr.

17   Heatherly to identify exactly which documents me and my team

18   identified and asked him questions about.  I think that the

19   principle of Hickman is what protects that as work product,

20   and regardless of -- you know, we were not able to find

21   binding authority on that specific point, but I think that

22   that is a justifiable position and principle based on

23   Hickman.

24            THE COURT:  But wouldn't it -- it seems to me that

25   there are two ways.  If I were to find that Hickman case to

1    be controlling, it seems to me that if they had asked tell

2    me the manner in which you were shown these documents,

3    yes -- right, because that would be the attorney compiling

4    it, right, and showing it to Mr. Heatherly in a certain way.

5    But as I understand it, that is not the question they are

6    asking.  They are just saying tell me what documents you

7    reviewed that you can remember.

8         Now, they asked him, as I understand it, asked him

9    at the end of the deposition to write down what he could

10   remember today, so that if they came back he could have that

11   clear, and he might say what I remember is I saw these five

12   documents, right?  Why is that privileged under the work

13   product doctrine, because if those five documents were

14   produced as part of the Bates numbers, why is that

15   privileged?

16        MR. ABBOTT:  Because, Your Honor, the sifting

17   through and identifying of the documents would reveal

18   attorney impressions and attorney thinking about the case.

19   So there were 402,000 documents produced, right?  If, Your

20   Honor, they are able to get Mr. Heatherly to answer that

21   question and say he says I remember this document, this

22   document, this document and this document, the issues that

23   those documents hit on, kind of the types of communications

24   potentially and the types of documents that we think are

25   either interesting or important for purposes of

```
 1    understanding our defenses and the strength of the

 2    plaintiff's claims, what they are doing is not just asking

 3    for documents that -- you know, it is not just that they are

 4    documents that have been produced in this case.  It is that

 5    the work that me and my team went through to distill those

 6    documents down into a discrete set would reveal what we

 7    think is important about this case.  Now --

 8            THE COURT:  Let me interrupt you.

 9            So the Hickman case, now that I have it up on my

10    screen, is a Supreme Court case from 1974.  It could still

11    be good law absolutely, but there could still be some

12    further nuances that been developed through the Tenth

13    Circuit.  Did you research any cases in the Tenth Circuit

14    that cite to Hickman versus Taylor?

15            MR. ABBOTT:  We did not cite to any in the brief

16    that I know of, Your Honor.

17            THE COURT:  Okay.  Those are the only questions

18    that I have for you, Mr. Abbott.  You brought the motion so

19    I will absolutely give you an opportunity to close.

20            Is there anything that you would like to say to

21    the Court now, that you would like me to consider before I

22    go to the plaintiffs and ask them some questions?

23            MR. ABBOTT:  No, Your Honor.

24            Yes, Your Honor.  I think the fundamental point

25    that maybe is not duplicative of our briefing is really that
```

1   if you look at footnote one of their brief, they are not

2   just asking to be able to ask about conversations.  They are

3   asking for the ability to ask questions about

4   conversations -- every conversation that we had with Mr.

5   Heatherly and really any former employee for the rest of

6   this case, number one.

7           Number two, if you look at page 10, I think that

8   the exception that they are asking this Court to draw would

9   completely swallow the rule that we are asking the Court to

10  articulate, and which we think has been articulated by the

11  weight of courts in this county, which they are asking --

12  they are saying that these circumstances clearly indicate

13  that Mr. Heatherly's conversations with counsel for

14  Pilgrim's Pride had the potential to affect his testimony

15  which is all that is required.

16          If that is the exception that they are asking this

17  Court to adopt, then I am not sure that there is any

18  conversation that any corporate counsel could have with any

19  former employee for the rest of this case that wouldn't have

20  the potential to affect their testimony.

21          THE COURT:  Thank you, Mr. Abbott.

22          All right.  Now I want to turn to the plaintiffs.

23          Mr. Bates, you're going to be addressing the

24  Court, correct?

25          MR. BATES:  Yes.  Good afternoon, Your Honor.

```
 1              THE COURT:  Good afternoon.

 2              I want to start first with the work product

 3    privilege doctrine and the argument that Mr. Abbott I think

 4    focused in on, which is Hickman versus Taylor suggests and

 5    supports the concept that the attorney sifting through and

 6    compiling documents and then showing them to Mr. Heatherly

 7    would be mental impressions and, therefore -- or legal

 8    strategy and, therefore, privileged.  I want to know your

 9    response to that generally, but then specifically I want to

10    know if you know about cases in the Tenth Circuit that would

11    suggest something different.

12              MR. BATES:  Absolutely, Your Honor.

13              The point that Your Honor made during your

14    discussion with Mr. Abbott about when the Hickman case was

15    decided is exactly the point.  Your Honor is right that that

16    is an old case and a lot has changed about complex

17    litigation since that case was decided.

18              For example, amendments to Rule 26 which require

19    parties to make initial disclosures.  Prior to that

20    amendment to Rule 26, those initial disclosures where

21    parties identified witnesses who might have discoverable

22    information and computations of damages and the locations

23    documents, all of those things would be work product under

24    the standard that Hickman articulates, but that is what

25    parties do in litigation under the federal rules every day.
```

1    There have been other changes to complex litigation

2    including the volume of documents that Mr. Abbott allowed to

3    that are now commonplace in our federal system today.

4           So to apply that old standard to litigation today

5    and to say that any document that counsel looks at or shows

6    a witness before they have a meeting with that person, and

7    the mere identity of that document would somehow invade

8    Mr. Abbott's thoughts about the case is just vastly, vastly

9    overbroad.  There are many cases in the Tenth Circuit that

10   address that question.  We cite them in footnote seven of

11   our opposition on page 13.  All of those cases have

12   consistently held that the selection of documents does not

13   constitute protected work product.

14          THE COURT:  And these are out of the Tenth

15   Circuit, right?  They are district court cases, but they are

16   out of the Tenth Circuit.  Is that correct?

17          MR. BATES:  That is correct, Your Honor.  They are

18   all from the District of Kansas, which is where we found the

19   bulk of the authority addressing this question today.

20          THE COURT:  Logistically your opposition

21   sometimes -- at times read as though you were -- that you

22   sort of -- if I were to deny the plaintiff's motion would

23   sort of mean that you get to do something.  You're not

24   asking me -- that is an odd way to say it, but that is kind

25   of how I put it in my mind.  You're not asking me -- when

1    your motion is just opposing the motion for a protective

2    order, and you're not asking me, and in my mind it wouldn't

3    be appropriate for you to be asking me for affirmative

4    relief through your opposition.  That is a weird way to say

5    logistically if I deny the plaintiff's motion what does that

6    mean for what happens next?  Because it seems to me this

7    issue is probably going to keep coming up, right, so we have

8    got to figure it out.  What does that mean practically?

9              MR. BATES:  Let me start at the beginning, Your

10   Honor.  You're exactly right.  We are not asking the Court

11   for affirmative relief.  We left Mr. Heatherly's deposition

12   open because of his refusal to answer these questions.

13   Pilgrim's Pride moved for a protective order preventing the

14   resumption of our examination of Mr. Heatherly.  So if

15   Pilgrim's Pride's motion is denied, the plaintiffs will

16   proceed to continue their examination of Mr. Heatherly.

17             To your last point about whether this issue will

18   keep coming up, I think that the Court's decision on this

19   issue will hopefully inform and deter Pilgrim's Pride's

20   counsel from instructing future witnesses, including Mr.

21   Heatherly, not to answer questions during their deposition.

22             THE COURT:  Okay.  All right.

23             Now what I want to do is I want to go to the

24   attorney-client privilege issue.  So the relief that

25   Pilgrim's Pride is asking this Court for is under Rule 26,

1    right?  They are saying give us a protective order for undue

2    burden, oppression, and one of the bases for the Court to

3    apply that concept is because the information is privileged

4    under the attorney-client privilege issue.  They cite a line

5    of cases that say that communications with former employees

6    can be privileged.  I think, and this is the first part of a

7    longer discussion I think, but I think you concede that

8    point.

9              Am I wrong on that that communications with former

10   employees can be privileged, but in this case you think they

11   are not?  Is that right?  Do I have that right?

12             MR. BATES:  That is right, Your Honor.

13             For example, I can think of a hypothetical

14   situation in which while Mr. Heatherly was still employed

15   with Pilgrim's Pride he was interviewed by Mr. Abbott.  Then

16   he since leaves the employment of Pilgrim's Pride and I

17   examine him and I ask him about that conversation, and

18   Pilgrim's Pride would object and they would say that that

19   was a privileged conversation between a then current

20   employee who is now a former employee and I think they would

21   be right about that, but that is so far afield from this

22   situation.  Your Honor is correct that that is our position.

23             THE COURT:  And your point to this is, look, this

24   isn't that typical situation where a company reaches out to

25   an employee, a former employee that is going to be deposed

1    and says, hey, we understand that you're going to be

2    deposed.  You have relevant information and we can represent

3    you.  We'll get you prepared for the deposition.  You're

4    saying, look, that is a separate situation from what we have

5    here, and I think both sides agree that Mr. Heatherly, a

6    nonparty, was represented by counsel and so what does that

7    do to these concepts?

8            Mr. Abbott says we couldn't find anything in the

9    Tenth Circuit that specifically addresses it so we went to

10   New York, mostly New York.  There are other cases, but

11   mostly New York, and the New York cases seem to be factually

12   probably the most similar, and you also look to New York

13   cases for the exception that you're arguing.

14           So you say first, you know, we don't think that

15   there is an engagement and, therefore, the privilege can't

16   apply, but, secondarily, we think that there is an exception

17   to that rule that conversations that bear on or otherwise

18   potentially affect a witness's testimony defeat the

19   privilege.  You're looking at the Nicholls case and the

20   Polatta case, one from New York and one from the District of

21   Connecticut.  I really struggle with both of you asking me

22   to apply these concepts that are not in the Tenth Circuit.

23           Is that concept not in the Tenth Circuit?

24           MR. BATES:  So, Your Honor, I would say that the

25   rule about what happens in this very specific situation

1    where a former employee who is not represented by corporate

2    counsel has a conversation with corporate counsel incident

3    to their deposition, that specific situation does not exist

4    in the law in the Tenth Circuit.

5            What does exist in the law in the Tenth Circuit,

6    and this goes back to your discussion with Mr. Abbott about

7    your discomfort with how Pilgrim's Pride is asking that law

8    to be applied to this situation is the fact that the

9    attorney-client privilege is a voluntary relationship

10   between a client and an attorney, and there is lots of law

11   in the Tenth Circuit about how the attorney-client

12   relationship works.

13           What is strange about what Pilgrim's Pride is

14   asking the Court to do in this situation, is Pilgrim's Pride

15   is asking to use the attorney-client privilege offensively

16   on its own behalf to reach out and protect the conversation

17   it had with a separately represented third party.  So even

18   if the specifics of this situation are not addressed in the

19   Tenth Circuit, that notion does not comport with the Tenth

20   Circuit law on attorney-client privilege.

21           THE COURT:  Because when there is an engagement --

22   so I as the client would engage an attorney and I own --

23   because I'm engaging the attorney, I own the right to the

24   privilege, correct?  And so if I want to waive that

25   privilege as the client, I can do that?

```
1              MR. BATES:  That is exactly right, Your Honor.

2              THE COURT:  What I struggle with, Mr. Bates, is it

3    seems to me that as I talked about with Mr. Abbott, sort of

4    the general privilege principles need to be addressed here,

5    which they were not, and perhaps this is an unfair question

6    to ask you, and you may say you should ask him that, but I'm

7    going to ask you anyway.  If there was, for example, a joint

8    defense or common interest, because it seems to me that

9    there very well would be a common interest, although I'm not

10   sure if that is the case based on -- I believe you said

11   perhaps he was providing testimony sympathetic to your side.

12   I don't know the answer to that.  I mean don't I need to

13   know if those are applicable here before I can decide this

14   issue?

15             MR. BATES:  So, Your Honor, I would say that yes,

16   if Pilgrim's Pride were going to advance those arguments, it

17   would be Pilgrim's burden to present you with that

18   information and they did not.  The reason they did not is

19   because I asked those questions of Mr. Heatherly during his

20   deposition and he unequivocally testified that there was no

21   joint defense or common interest privilege and he answered

22   all of those questions very clearly, and I am not a lawyer

23   for Pilgrim's Pride, but that would be my guess as to why

24   they didn't raise that argument.

25             THE COURT:  Okay.  Sorry.  I'm just checking my
```

1    notes to make sure I have covered my questions.

2              MR. ABBOTT:  Your Honor, if I may just add one

3    point in response?

4              THE COURT:  One second.  I will give you the

5    opportunity --

6              MR. ABBOTT:  I'm sorry.

7              THE COURT:  Yes.  I will come back to you to give

8    your final concluding remarks.

9              I think you have addressed all of my questions.

10             Mr. Bates, is there anything else that you would

11   like to inform the Court of that we have not discussed?

12             MR. BATES:  There is not, Your Honor.

13             THE COURT:  Thank you.

14             Mr. Abbott.

15             MR. ABBOTT:  Thank you, Your Honor.

16             I just wanted to chime in with one additional

17   point, which is that the point on the engagement from our

18   perspective is that the weight -- while there aren't cases

19   in the Tenth Circuit that go to that specific issue, the

20   weight of the cases elsewhere hold that the privilege that

21   applies -- the conversation between corporate counsel and

22   former employees belongs to the corporation, which I wanted

23   to raise in the context of the waiver conversation, because

24   here Mr. Heatherly cannot waive Pilgrim's privilege, but he

25   can testify about conversations -- about conversations that

1    I had with him, and so what we're trying to do is assert

2    Pilgrim's privilege.  It is not offensive.  It is defensive.

3    I wanted to make sure that that position is clear.

4            THE COURT:  Thank you, Mr. Abbott.

5            The other issue that I would like you to address

6    is in response on the work product, and you cite to the

7    Hickman case, which we talked about is a 1943 case, and Mr.

8    Bates has a footnote rightly included in his brief, footnote

9    seven, where he cites a plethora of district court cases out

10   of the Tenth Circuit that confirm that disclosure of the

11   documents would not disclose the mental processes.  I did

12   not see any cases out of Oklahoma, but there are many of

13   them out of Kansas.  I am wondering, did you look at any

14   cases in Oklahoma that would reach a contrary result other

15   than the one cited in footnote seven?

16           MR. ABBOTT:  So we have -- I don't have any cases

17   that I can give you right now that reach a contrary result,

18   but I do have all of the distinguishing factors of the cases

19   and the numerous distinguishing factors in the cases cited

20   in footnote seven.  There were cases in there that related

21   to refreshed recollection, for example, you know, that

22   counsel did not lay a foundation for refreshed recollection

23   and there were cases about privilege logs.  I think that the

24   cases were not on point.

25           THE COURT:  All right.  Anything more, Mr. Abbott?

1          MR. ABBOTT:  No.

2          THE COURT:  Thank you.

3          I am going to take a brief recess and then I will

4    come back on.  I'm going to stop the recording.  If I come

5    back on and I don't push start, please somebody interrupt me

6    to make sure I do push start.  So if you could all just hold

7    on the line.

8          (Recess)

9          THE COURT:  Thank you.

10          We're back on the record and the Court is prepared

11    to issue its rulings.  Before I start I do want to let both

12    parties know that I appreciate your professionalism today

13    and coming prepared to address these issues, which you all

14    concede perhaps are a little novel, and then also to thank

15    you for the quality and caliber of your briefs.  They were

16    well written, well organized and easy to follow and had good

17    case law cited, other than it was not the Tenth Circuit, but

18    we do appreciate that because it makes our job much easier.

19    My clerk in particular wanted me to tell you both that.

20    Thank you.  With that the Court is prepared to issue its

21    ruling.

22          Rule 26(e) confers broad discretion -- sorry.  I

23    am jumping ahead.

24          The standard that applies is under Federal Rule of

25    Civil Procedure 26(c)(1) which states that the Court may for

1   good cause issue a protective order to a party or person

2   from annoyance, embarrassment, oppression or undue burden or

3   expense.  Rule 26(c) confers broad discretion on the Court

4   to decide when a protective order is appropriate and what

5   degree of protection is required.  That comes from Siegel

6   versus Blue Giant Equipment Corp, 793F, Appendix 737, a

7   Tenth Circuit case from 2019.

8          Applying this standard, the Court denies the

9   motion as Pilgrim's Pride has failed to meet the standard.

10  Pilgrim's Pride is asking this Court to grant a protective

11  order based on claims that the information sought is covered

12  by the attorney-client privilege and work product doctrines

13  for a former employee it does not represent and who did not

14  join the motion.  They also argue it is an undue burden to

15  require Mr. Heatherly and Pilgrim's Pride to sit for another

16  deposition.

17         With respect to the attorney-client privilege,

18  Pilgrim's Pride has failed to address why it has standing in

19  such a situation.  At the hearing they proffered that they

20  own the privilege, but that issue was not briefed and

21  addressed in the brief sufficient that the Court is

22  comfortable to issue a ruling on it.

23         Moreover, it has failed to set out or discuss in

24  any material way the elements of privilege as set forth in

25  Hoog versus PetroQuest Energy, 2021 WestLaw 3291793, Eastern

1    District of Oklahoma case from August of 2021.  It is

2    Pilgrim's burden to show good cause as to why the discovery

3    should not be permitted.  They have failed to meet that

4    standard.  It is not clear, for example, if state or federal

5    law would apply to the privilege, and assuming federal law

6    would apply, Pilgrim's failed to address the applicable

7    standard within the Tenth Circuit.  Rather it cites to cases

8    outside of New York which are not controlling.

9         Now, today Pilgrim's has asserted that there is

10   not any factually controlling cases in the Tenth Circuit,

11   but separate and apart from that, there is case law within

12   the Tenth Circuit to discuss the attorney-client privilege

13   standard and that was not addressed.  So with respect to

14   that argument the Court is denying it.

15        I do want to clarify, however, that the Court is

16   not ruling today that the privilege does not apply, only

17   that Pilgrim's has failed to fully and accurately address

18   the Rule 26(c) standard, which I know the parties were

19   hoping for more clarity on, but I don't have the information

20   that I need to find whether or not the privilege applies.

21        With respect to the argument that the work product

22   privilege applies to communications as opposed to just

23   documents or tangible things that are prepared in

24   anticipation of litigation as set out in Rule of Civil

25   Procedure 26(e)(3)(a), Pilgrim's Pride cites two cases that

1   are not controlling to support that position.  For example,

2   they cite to a number of cases out of New York and the Court

3   is not inclined to follow those cases.

4          In addition, they cite to the Hicks case, which is

5   a Supreme Court case, but it is fairly dated, and they fail

6   to rebut the cases cited in plaintiff's brief at footnote

7   seven out of the Tenth Circuit that are district court cases

8   that clearly establish that disclosure of documents that are

9   being requested would not disclose the mental process of

10  counsel.

11         Finally, addressing the argument that there is an

12  undue burden on Mr. Heatherly and Pilgrim's Pride to have to

13  sit for a second deposition, Pilgrim's has failed to meet

14  the standard of showing undue burden.  Pilgrim's argues that

15  because Mr. Heatherly is a retiree who is a nonparty to this

16  suit, who is suffering from an unidentified medical issue,

17  that sitting for a second deposition outweighs its likely

18  benefit.

19         At this point the Court disagrees.  Assuming that

20  it is appropriate for Pilgrim's Pride to make such an

21  argument regarding the former employee who it does not

22  represent and, importantly, who has not made that argument

23  for himself, and as the Court has just discussed, it is not

24  clear that Pilgrim's Pride has the right to make that

25  argument, no specific medical information was submitted to

1   justify the bald claim that such an unidentified medical

2   condition would impact Mr. Heatherly in a significant way.

3          With respect to the argument that Pilgrim's Pride

4   should not have to sit because of the burden and expense,

5   those are the only reasons that were proffered and as set

6   out in Sentry Insurance vs. Shivers, 164 F.R.D. 255, a

7   District of Kansas case from 1996, bald assertions of

8   emotional and financial stress do not suffice, end quote.

9          Pilgrim's also made, somewhat, the point that it

10  was just inherently unfair to have to sit for a second

11  deposition, and while the Court would agree that certainly

12  it is not the norm to have to sit for a second deposition,

13  the law is clear that unless there is a showing of a need or

14  some good reason to do so, that it is not common to sit for

15  a second deposition.

16         Here, because it is not clear that the privilege

17  applies, the Court is not able to find that there is an

18  undue burden based on that reason offered.

19         For these reasons the motion for the protective

20  order is denied.

21         Now, having said that, it is clear that this issue

22  is going to come back, and I don't know if it is going to

23  come back by way of a renewed motion for a protective order

24  or a motion to compel.  When it comes back I want to give

25  you some guidance on what it is that I need to help us all

1    figure out this issue.

2           Mr. Abbott has said, and I think Mr. Bates

3    concedes because they didn't include any cases, as far as I

4    can recall, that there are no factually similar cases within

5    the Tenth Circuit, and that there perhaps may be factually

6    similar cases outside of the Tenth Circuit, namely the

7    Nicholls case and that line of cases.

8           Before we get to those cases, though, I need to

9    know, number one, what the general standard is within the

10   Tenth Circuit when it comes to attorney-client privilege,

11   right, just the general standard that we all know.  I think

12   we start there.

13          Then to the extent that you can drill down, I

14   think really the question that we need answered is with

15   respect to former employees, does there need to be an

16   engagement, which we know was not done here, a joint defense

17   agreement, a common interest or some other concept to apply

18   or not to find the privilege applies.

19          Now, I know you all attempted to do that in your

20   briefs, but you focused on cases outside of our

21   jurisdiction.  Mr. Abbott said maybe some were looked at

22   within and maybe some were not, but I need to have certainty

23   what the Tenth Circuit says so that it is clear why it would

24   be appropriate for me to look at New York or perhaps some

25   other place, right?  So that is what I am looking at.

1          The other thing, and I hope this does not lead you

2    astray too much, but in processing this issue I was thinking

3    about the UpJohn case and the UpJohn warning that you give

4    to clients.  For example, when you would go in and you would

5    be seeking information -- not clients -- that you would give

6    to individuals that you were interviewing.

7          When you go in and you are talking to, for

8    example, a former employee about something that happened

9    that has now resulted in litigation, the UpJohn warning says

10   that you have to make it clear if you represent that person

11   or not, right?  And if you don't represent that person, then

12   I think the answer is that communication is discoverable.

13   If you do represent that person, it is not.  And it seems to

14   me that that line of cases perhaps could be helpful in this

15   situation, although I don't know for sure, but perhaps it is

16   the common interest doctrine that would apply.

17          I basically just need you to dig a little bit more

18   on the law and give me a little more certainly of which way

19   I'm supposed to go, and if you want me follow New York, why

20   that is justified in this circumstance.

21          Do you have any questions?  Let's start with Mr.

22   Abbott.

23          MR. ABBOTT:  No questions, Your Honor.

24          THE COURT:  Thank you.

25          Mr. Bates?

1                    MR. BATES:  No, Your Honor.  No questions.  Thank

2        you.

3                    THE COURT:  All right.

4                    Thank you.

5                    We'll conclude the hearing for today and be in

6        recess.

7                    (Proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25