**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II)<br><br>*This document relates to all actions.* | Case No. 6:20-MD-02977-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

BACKGROUND ..... 3

ARGUMENT ..... 6

I. The Court Should Grant an Award of Attorneys' Fees in the Amount of One-Third of the Settlement Fund ..... 6

A. A Percentage of the Fund Is the Preferred Method for Awarding Attorneys' Fees in a Common Fund Case ..... 6

B. The Requested Fee Award Is Reasonable Under the Tenth Circuit Law ..... 8

1. The Result Obtained for the Class Favors the Requested Award. ..... 8

2. Class Counsel Devoted Significant Time and Labor to Prosecuting this Action. ..... 9

3. The Litigation Involves Contested Questions of Fact and Law. ..... 11

4. This Litigation Requires a High Level of Skill. ..... 13

5. Class Counsel Had to Forgo Other Employment to Litigate This Action ..... 14

6. The One-Third Award Request Is Within the Range Customarily Awarded in Antitrust Cases. ..... 14

7. The Fee Is Contingent in Nature. ..... 15

8. There Are No Unusual Time Limitations. ..... 15

9. Class Counsel Have Extensive Experience Litigating Antitrust Class Actions. ..... 15

10. The "Undesirability" of the Case. ..... 16

11. The Nature and Length of the Professional Relationship with the Clients. ..... 16

12. The Requested One-Third Fee Award Is Similar to Awards in Other Complex Cases. ..... 17

II. The Court Should Award Reimbursement of Class Counsel's Reasonable and Necessary Litigation Expenses ........ 18

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado Partners, L.P. v. Mehta*,
723 F. Supp. 540 (D. Colo. 1989) ........ 9

*Been v. O.K. Indus., Inc.*,
No. 02-cv-285, 2011 WL 4478766 (E.D. Okla. Aug. 16, 2011) ........ 9

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........ 6

*Brown v. Phillips Petroleum Co.*,
838 F.2d 451 (10th Cir. 1988) ........ 6, 7, 8, 14

*Brown v. Pro Football, Inc.*,
839 F. Supp. 905 (D.D.C. 1993) ........ 18

*Cazeau v. TPUSA, Inc.*,
No. 18-cv-00321, 2021 WL 1688540 (D. Utah Apr. 29, 2021). ........ *passim*

*Cecil v. BP Am. Prod. Co.*,
No. 16-cv-00410, 2018 WL 8367957 (E.D. Okla. Nov. 19, 2018). ........ 16, 18

*Childs v. Unified Life Ins. Co.*,
No. 10-cv-23, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011) ........ 9

*Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*,
No. 89-cv-1186, 1993 WL 355466 (W.D. Okla. June 8, 1993) ........ 7, 17

*Cook v. Rockwell Int'l Corp.*,
No. 90-cv-00181, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) ........ 10, 14

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ........ 6, 7

*Gudenkauf v. Stauffer Commc'ns, Inc.*,
158 F.3d 1074 (10th Cir. 1998) ........ 8

*Harris v. Chevron U.S.A., Inc.*,
No. 19-cv-00355, 2020 WL 8187464 (E.D. Okla. Feb. 27, 2020) ........ 6, 7, 9

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
No. 97-cv-2262, 2009 WL 762438 (S.D.N.Y. Mar. 24, 2009) ........ 10

*In re Credit Default Swaps Antitrust Litig.*,
No. 13-md-2476, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ........................................ 11, 18

*In re Crocs, Inc. Sec. Litig.*,
No. 07-cv-02351, 2014 WL 4670886 (D. Colo. Sept. 18, 2014) ............................................. 18

*In re DDAVP Direct Purchaser Antitrust Litig.*,
No. 05-cv-2237, 2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) ............................................ 15

*In re Flonase Antitrust Litig.*,
951 F. Supp. 2d 739 (E.D. Pa. 2013) ........................................................................................ 14

*In re Linerboard Antitrust Litig.*,
No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .................................................. 11

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-2420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ............................................ 11

*In re Municipal Derivatives Antitrust Litig.*,
2016 WL 11543257 (S.D.N.Y. July 8, 2016) ........................................................................... 15

*In re Nifedipine Antitrust Litig.*,
No. 03-mc-223, 2011 WL 13392312 (D.D.C. Jan. 31, 2011) .................................................. 15

*In re Parking Heaters Antitrust Litig.*,
No. 15-mc-0940, 2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019) ............................................ 10

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 12-cv-83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) ................................................ 15

*In re U.S. Foodservice, Inc. Pricing Litig.*,
No. 07-md-1894, 2014 WL 12862264 (D. Conn. Dec. 9, 2014) ............................................. 15

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
No. 02-md-1468, 2011 WL 1808038 (D. Kan. May 12, 2011) ........................................... 7, 14

*In re Urethane Antitrust Litig.*,
No. 04-md-1616, 2016 WL 4060156 (D. Kan. July 29, 2016) .................................. 7, 9, 10, 14

*In re Wellbutrin XL Antitrust Litig.*,
No. 08-cv-2431, 2012 WL 13224382 (E.D. Pa. Nov. 7, 2012) ............................................... 15

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................................................... 7

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ........................................................................................... *passim*

*Lazy Oil Co. v. Witco Corp.*,
95 F. Supp. 2d 290 (W.D. Pa. 1997) ........................................................................... 18

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998) ....................................................................................... 10

*Lewis v. Wal-Mart Stores, Inc.*,
No. 02-cv-0944, 2006 WL 3505851 (N.D. Okla. Dec. 4, 2006) ......................................... 7, 17

*McNeely v. Nat'l Mobile Health Care, LLC*,
No. 07-cv-933, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ............................................... 9

*Shaw v. Interthinx, Inc.*,
No. 13-cv-01229, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) .............................. 7, 10, 16, 17

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
9 F.3d 849 (10th Cir. 1993) ........................................................................................ 7, 8

*Whittington v. Taco Bell of Am., Inc.*,
No. 10-cv-01884, 2013 WL 6022972 (D. Colo. Nov. 13, 2013) ......................................... 7, 17

*Williams v. Sprint/United Mgmt. Co.*,
No. 03-cv-2200, 2007 WL 2694029 (D. Kan. Sept. 11, 2007) ............................................ 7, 17

**Rules**

Fed. R. Civ. P. 30 ................................................................................................ 2, 4, 12

Fed. R. Civ. P. 33 ...................................................................................................... 11

**Other Authorities**

7B Charles Alan Wright & Arthur R. Miller, Fed*. Prac. & Proc. Civ.* § 1803 (3d ed. 2020) ....... 6

## INTRODUCTION

In connection with the latest settlement in this hard-fought, ongoing, complex antitrust litigation—a $15.5 million settlement (the "Settlement") with defendants Koch Foods, Inc. and Koch Meat Co., Inc. (d/b/a Koch Poultry Co.) (together "Koch") [1]—Plaintiffs,[2] individually and on behalf of the Settlement Class (defined below) respectfully request: (1) an award of attorneys' fees equaling one-third of the Koch Settlement fund (plus accrued interest); and (2) reimbursement of the unreimbursed costs and expenses incurred in furtherance of this litigation that Class Counsel incurred in this case to date.

The Koch Settlement is the third settlement in this case thus far. It provides for a payment of $15.5 million to the Settlement Class. Walker Decl. ¶ 106.[3] The Court previously granted final approval to settlements with the Tyson and Perdue Defendants,[4] for a combined $35.75 million in cash payments. Together with the Koch Settlement, the total amount of all three settlements is $51.25 million. In addition to the immediate cash benefit and the avoidance of the risk, expense, and delay of taking this more than five-year old action to trial against Koch and litigating any appeals, the Koch Settlement also provides other important non-monetary benefits to the

---

[1] By an order dated June 10, 2022, the Court granted preliminary approval of a Settlement Agreement with defendants Koch Foods, Inc. and Koch Meat Co., Inc. (doing business as Koch Poultry Co.) (together "Koch") (*Growers* ECF 602). Unless expressly stated otherwise, all references to docket entries, indicated as "*Growers* ECF [docket number]," are to the docket in *In re: Broiler Chicken Grower Litigation*, No. 6:17-cv-0033-RJS (E.D. Okla.) ("*Growers*"). On December 17, 2020, this original action was consolidated with a number of other actions by the Judicial Panel on Multidistrict Litigation as *In re: Broiler Chicken Grower Antitrust Litigation (No. II)*, No. 6:20-md-2977-RJS-CMR (E.D. Okla.). Where filings are docketed solely on the MDL 2977 docket in the Eastern District of Oklahoma they will be identified as "*Growers II* ECF [docket number]."

[2] The term "Plaintiffs" as used in this memorandum and the Settlement Agreement refers to plaintiffs Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles ("Mike") Weaver, Marc McEntire, Karen McEntire, Mitchell Mason, and Anna Mason. Anna Mason is an individual plaintiff in a case that is part of this multi-district litigation and is not a proposed class representative. Melissa Weaver originally served as a plaintiff and a class representative for the prior settlements, however, after the Court granted preliminary approval of the Koch Settlement, Ms. Weaver withdrew as a plaintiff; her husband, Mike Weaver remains a plaintiff and a class representative in this litigation.

[3] The term "Walker Decl." refers to the Declaration of Daniel J. Walker in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and an Award of Interim Service Awards to Class Representatives, which is being filed concurrently.

[4] *Growers* ECF 532.

Settlement Class: (1) Koch will cooperate in the continuing prosecution of Plaintiffs' claims against the remaining Non-Settling Defendants; and (2) Koch will not include or enforce provisions in its contracts with Settlement Class members that mandate arbitration or bar participation in class actions for a period of five year. Walker Decl. ¶¶ 107-08.

Since the Court issued final approval of the Tyson and Purdue settlements earlier this year, Class Counsel's rigorous litigation efforts continued unabated. Most notably, in the past seven months, Plaintiffs have completed fact discovery, including taking 73 depositions pursuant to Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6) and defended eight class representative depositions. Class Counsel recently served a report from an expert economist containing detailed econometric analyses that they helped refine. Class Counsel's rigorous litigation efforts continue against the Non-Settling Defendants. To date, Class Counsel has expended approximately 50,000 hours litigating this case.

Given Class Counsel's enormous efforts in this case and the substantial recoveries that Class Counsel obtained on behalf of the Class, Plaintiffs' request for attorneys' fees are reasonable and justified. Class Counsel expended tens of thousands of hours of work and advanced hundreds of thousands of dollars in costs without any guarantee of remuneration or reimbursement, over the course of five years of litigation. Specifically, Plaintiffs' request for one-third of the cash component of the Koch Settlement, (*i.e.*, \$5,166,667), which when combined with the prior fee award from the Tyson and Perdue settlements, reflects a multiplier of less than 1 (0.634) using Class Counsel's lodestar at current rates (*id.* ¶ 118). This fee request, and the request for an award of litigation expenses incurred in the amount of \$1,250,268.23, which Class Counsel reasonably incurred (and funded) in prosecuting these claims, are reasonable, justified and well-deserved (*id.* ¶ 123).

**BACKGROUND**

Plaintiffs filed the first complaint in this case on January 27, 2017. Walker Decl. ¶ 7. Plaintiffs allege that Defendants and seventeen non-defendant Co-Conspirators[5] engaged in an overarching scheme to reduce Grower compensation. *Id.* ¶ 11. This conspiracy includes two mutually reinforcing courses of anticompetitive conduct: an agreement not to solicit Growers performing Broiler Grow-Out Services for another Integrator (what the cartelists referred to internally as a "no cold call" agreement), and a regular and extensive reciprocal exchange of grower compensation information, which they accomplished through a third-party intermediary, Agri Stats, as well as through direct oral and written interfirm exchanges. *Id.* The purpose and effect of this scheme was to stabilize Grower compensation and reduce Grower mobility, which ultimately reduced Grower compensation below competitive levels, causing Growers to suffer substantial damages in the form of reduced pay for their work. *Id.* ¶ 12.

Since filing the lawsuit, working on Plaintiffs' behalf, Class Counsel have expended nearly 50,000 hours on this case, and advanced more than one million dollars in costs, without any guarantees of compensation or reimbursement. *See id.* ¶¶ 114-25. In the early stages of the case, counsel spent many hours investigating the claims and drafting the complaint, with assistance from Class Representatives. *See id*. Class Counsel then worked to defend the complaint and to consolidate the handful of cases that were ultimately filed. *See generally id.* ¶¶ 11-30, 36-60. Throughout, defense counsel (some of the country's largest firms and most experienced antitrust lawyers) vigorously litigated on behalf of Defendants. *Id.* ¶ 116. In resisting Defendants' efforts, Class Counsel briefed (and where requested, argued) numerous motions before multiple courts, including: motions to dismiss under Rules 12(b)(2), (3), and (6), motions to stay, and a motion to compel arbitration before this Court; multiple motions to dismiss or stay Plaintiffs' claims against Sanderson and Koch in the Eastern District of North Carolina; a motion in the bankruptcy court in the Northern District of Texas; and two rounds of briefing in front of the Panel that resulted in the centralization of multiple different cases against Defendants. *See id.*

---

[5] "Co-Conspirator" means the alleged co-conspirators referred to in the complaint, that is: Agri Stats, Inc. ("Agri Stats"), Foster Farms, Mountaire Farms, Wayne Farms, George's, Inc., Peco Foods, Inc., House of Raeford Farms, Simmons Foods, Keystone Foods, Inc., Fieldale Farms Corp., O.K. Industries, Case Foods, Marshall Durbin Companies, Amick Farms, Inc., Mar-Jac Poultry, Inc., Harrison Poultry, Inc., Claxton Poultry Farms, and Norman W. Fries, Inc.

¶¶ 13-60. The result of these efforts yielded a single consolidated action before this Court that has proceeded efficiently and effectively against all the Defendants.

A substantial portion of Class Counsel's work in this case has focused on the many tasks necessary to collect and develop the record supporting Plaintiffs' claims by obtaining discovery from the five Defendants and 51 nonparties who possess relevant information, including the sixteen alleged Integrator Co-Conspirators, alleged Co-Conspirator Agri Stats, numerous other non-conspirator integrators, various trade associations, and other individuals with knowledge of the alleged unlawful conduct. *Id.* ¶¶ 67-68. For each of these entities and persons, Plaintiffs served discovery requests, many via subpoena, and then negotiated the scope of discovery, the appropriate custodians, and the search methodologies to be used to identify and collect relevant, responsive documents. *Id.* ¶¶ 69, 115. This process involved thousands of hours of attorney time, scores of letters and telephone calls, and dogged attention to detail. Additionally, for Co-Lead Counsel, this meant supervising and managing the work of multiple other Class Counsel to ensure effective and efficient litigation. *Id.* The result has been the collection of over 1.6 million documents (consisting of tens of millions of pages), as well as massive amounts of structured transactional data on over 650,000 Broiler flocks. *Id.* ¶ 70.

In addition to their work to secure relevant documents, Class Counsel have prepared for, taken, and defended numerous depositions. These depositions include percipient witness depositions under Fed. R. Civ. P. 30(b)(1), and corporate testimony from Defendants and their alleged Co-Conspirators under Fed. R. Civ. P. 30(b)(6). *Id.* ¶ 78. After delays imposed by the noticed witnesses, witness availability, and disruptions from a related criminal trial, Plaintiffs took 68 depositions under Federal Rule of Civil Procedure Rules 30(b)(1) and 30(b)(6) witnesses associated with Defendants and their alleged Co-Conspirators, as well as cross-noticed depositions of five absent class members noticed by Defendants. One additional Rule 30(b)(6) deposition of a nonparty co-conspirator was taken on August 19, 2022, by agreement of the parties. The Rule 30(b)(6) deposition requests to both Defendants and nonparty alleged Co-Conspirators were vigorously contested and Plaintiffs engaged in month's long meet and confers with those entities to reach an agreeable scope for those depositions. In total, Plaintiffs took 73 depositions under Rules 30(b)(1) and 30(b)(6) and defended eight class representative depositions.

On a parallel track with document and deposition discovery, Co-Lead Counsel have

worked with expert economists to digest documents and the structured transactional data to prepare economic analyses supporting Plaintiffs' claims, their widespread impact across the class, and their estimated damages. *Id.* ¶ 70. This economic analysis is a critical component of any antitrust case, and Co-Lead Counsel have overseen the expert work to ensure the work is done effectively and with optimal efficiency. *Id.* ¶ 115. Plaintiffs recently served on defendants a detailed expert report from the expert economist retained by Class Counsel. *Id.*

In addition to their efforts to obtain discovery from Defendants and numerous nonparties, Co-Lead Counsel have worked with the Class Representatives, who have made significant contributions to prosecuting the case. *Id.* ¶ 126-37. Co-Lead Counsel have met telephonically with the Class Representatives many times to assist with discovery and settlement efforts, including responding to document requests, providing access to the more than 10,000 hard copy and electronic files produced to Defendants, preparing written responses to interrogatories, consulting on facts, preparing and sitting for their depositions, and discussing settlement negotiations and outcomes. *Id.*

While these activities—investigation, motion practice, and discovery—have yielded documents and data that substantiate Plaintiffs' claims, reaching the settlement with Koch, as before with the Tyson and Purdue settlements, provides an immediate benefit to the Settlement Class, including the fact that the cash settlement fund would become immediately available. The principles of joint and several liability, however, provide that this immediate benefit to the Settlement Class will not preclude Plaintiffs from recovering their full damages, trebled, against the Non-Settling Defendants.

To Co-Lead Counsel's knowledge, the Koch Settlement, together with the Tyson and Perdue settlements, represent the largest recovery ever on behalf of a class or group of Growers. The Settlements qualify as a meaningful and significant success on behalf of the Settlement Class. Meanwhile, the case continues against Defendants PPC and Sanderson, and, as another benefit of the Koch Settlement, Koch has agreed to cooperate with Plaintiffs in the continuing litigation. This cooperation has already proven to be valuable, and Plaintiffs believe it will continue to benefit the Settlement Class.

## ARGUMENT

### I. The Court Should Grant an Award of Attorneys' Fees in the Amount of One-Third of the Settlement Fund

A fee award of one-third of the gross amount of the Koch Settlement is appropriate here. Through their efforts to date, Class Counsel have produced a common fund of $51.5 million, plus interest accrued, for the benefit of the Settlement Class, along with important cooperation agreements from Koch, as well as Koch's agreement not to enforce any arbitration or class action waiver clause for a period of five years. As discussed below, the requested fee award of one-third of the settlement fund is consistent with Tenth Circuit precedent and is reasonable in the context of this litigation.

#### A. A Percentage of the Fund Is the Preferred Method for Awarding Attorneys' Fees in a Common Fund Case

It is well-established that awarding a percentage of a common fund is the preferred method for calculating attorneys' fees in a class action.[6] "The court's authority for . . . attorney fees stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1803 (3d ed. 2020). "Attorneys' fees are appropriately awarded from that fund, on the theory 'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'" *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (quoting *Boeing Co.*, 444 U.S. at 478). "Courts prefer the percentage of the recovery method because it eliminates disputes about the reasonableness of rate and hours, conserves judicial resources, and aligns the interest of class counsel and the class members to maximize recovery." *Harris v. Chevron U.S.A., Inc.*, No. 19-cv-00355, 2020 WL 8187464, at *2 (E.D. Okla. Feb. 27, 2020);

---

[6] The Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) ("Common fund fees derive in part from the common law premise that a trustee is entitled to reimbursement from the fund administered.") (citation omitted). The Tenth Circuit instructs that "[a]n award of attorneys' fees is a matter uniquely within the discretion of the trial judge who 'has intimate knowledge of the efforts expended and the value of the services rendered.'" *Brown*, 838 F.2d at 453 (quoting *United States v. Anglin & Stevenson*, 145 F.2d 622, 630 (10th Cir. 1944)).

*see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) (percentage method provides "appropriate financial incentives" necessary to "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so").

The Tenth Circuit expressly prefers the percentage of the fund method in determining the award of attorneys' fees in common fund cases. *See Gottlieb*, 43 F.3d at 483; *Brown*, 838 F.2d at 454; *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993). The Tenth Circuit further instructs that where, as here, "federal common law is used to determine the reasonableness of the attorneys' fee under Rule 23(h), neither a lodestar analysis nor a lodestar cross check is required." *Harris*, 2020 WL 8187464, at *2 (collecting cases). "Rather, the court may make general findings regarding the expenditure of time and labor based on the record as a whole." *Id.* Further, as this Court has observed, an award of "one-third of the settlement fund" is "customary" in class action litigation. *Cazeau v. TPUSA, Inc.*, No. 18-cv-00321, 2021 WL 1688540, at *9 (D. Utah Apr. 29, 2021) (Shelby, J.); *see also In re Urethane Antitrust Litig.*, No. 04-md-1616, 2016 WL 4060156, at *1, *8 (D. Kan. July 29, 2016) (awarding fees of one-third of antitrust settlement of $835 million).[7]

---

[7] *See also*, *e.g.*, *Shaw v. Interthinx, Inc.*, No. 13-cv-01229, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (internal quotation marks omitted); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-md-1468, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) ("[A]n award of one-third of the fund falls within the range of awards deemed reasonable by courts."); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-cv-0944, 2006 WL 3505851, at *1 (N.D. Okla. Dec. 4, 2006) (awarding one-third of the settlement fund in case settling after three years of litigation and noting that "[a] contingency fee of one-third is relatively standard in lawsuits that settle before trial"); *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Williams v. Sprint/United Mgmt. Co.*, No. 03-cv-2200, 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007) (finding 35% fee award "fair and reasonable" for $57 million settlement reached after four years and before trial); *Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*, No. 89-cv-1186, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (awarding one-third fee for settlement reached before trial; "Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis").

### B. The Requested Fee Award Is Reasonable Under the Tenth Circuit Law

The sought fee is reasonable under the factors the Tenth Circuit uses to evaluate a requested fee under the percentage of the fund method. The factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee–this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Brown*, 838 F.2d at 454-55 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

The weight given to each factor varies, and "rarely are all of the *Johnson* factors applicable" to the analysis. *Uselton*, 9 F.3d at 854 (10th Cir. 1993) (quoting *Brown*, 838 F.2d at 456); *see also Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998) ("We have never held that a district court abuses its discretion by failing to specifically address each *Johnson* factor. To the contrary, we have stated that not all of them need be considered." (citation omitted)).

The fee requested here is well supported by the *Johnson* factors.

#### 1. The Result Obtained for the Class Favors the Requested Award.

The factor frequently given the most weight in determining the amount of a fee award is the result achieved for the Class (*i.e.*, the 8th *Johnson* factor). *See Brown*, 838 F.2d at 456. In fact, the result obtained may be given greater weight as a *Johnson* factor where, as here, "recovery was highly contingent and [] the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Id*.

Here, the Koch Settlement, like the prior Tyson and Perdue settlements before it, provides significant benefits for the Settlement Class. The monetary component of the Koch Settlement alone is a settlement fund totaling $15.5 million which brings the total settlements in the case to $51.25 million from three of the five Defendants. The non-monetary component includes important cooperation agreements from Koch which will benefit Plaintiffs and the Settlement Class as the case proceeds through expert discovery, class certification, summary judgment, and trial. Additionally, Koch agreed not to enforce its compulsory arbitration and class

action waiver provisions in Grower contracts for a five-year period following final judgment. Walker Decl. ¶¶ 106-07. Moreover, Plaintiffs achieved the Koch Settlement as discovery has been proceeding. In doing so, Plaintiffs have secured a significant and valuable recovery for the Settlement Class that mitigates any risk as this case moves forward against the remaining three Non-Settling Defendants.

For those reasons, recoveries well before trial are favored by courts. *See, e.g.*, *Cazeau*, 2021 WL 1688540, at *5 ("the value of an immediate recovery outweighs the possibility of a greater recovery after protracted litigation") *Childs v. Unified Life Ins. Co.*, No. 10-cv-23, 2011 WL 6016486, at *13 (N.D. Okla. Dec. 2, 2011) ("settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation") (quotation marks omitted); *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-cv-933, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) (noting that the class was "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted"); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) ("It has been held prudent to take a bird in the hand instead of a prospective flock in the bush.") (internal quotation marks omitted).

In sum, the combination of some substantial monetary relief now with the additional non-monetary components, including cooperation provisions and relief from compulsory arbitration constitute significant benefit to the Settlement Class, and therefore, this factor supports the requested fee award.

**2. Class Counsel Devoted Significant Time and Labor to Prosecuting this Action.**

As noted above, a cross-check of counsel's lodestar is not required under the percentage of the fund approach, and instead, the Court should make a general finding on counsel's expenditure of time and labor. *See, e.g.*, *Harris*, 2020 WL 8187464, at *2. Nonetheless, a lodestar cross check supports Plaintiffs' fee request.

Class Counsel have performed approximately 50,000 hours of work in this litigation, which at current billing rates,[8] from inception through July 31, 2022, amounts to nearly $27

---

[8] *See Urethane Antitrust Litig.*, 2016 WL 4060156, at *7 n.7 (applying current rates to account for "the long delay in receiving payment for past work"); *Been v. O.K. Indus., Inc.*, No. 02-cv-285, 2011 WL 4478766, at *11 (E.D. Okla. Aug. 16, 2011), *report and recommendation*

million of billable time. *See* Walker Decl. ¶¶ 115, 117 (Class Counsel hours worked total 49,657.15 and lodestar totals $26,924,839.80). The requested fee of $5,166,667 is far less than the $27 million of billable time, even when the prior fees awarded to Class Counsel by the Court in connection with the Tyson and Purdue settlements are taken into consideration. *See Growers* ECF 284 (Order Granting Plaintiffs' Motion for Award of Attorneys' Fees, awarding $11,916,667 in fees, plus any interest accrued). If this motion is granted, Class Counsel will have received $17,083,334 in fees for nearly $27 million of accrued lodestar (a multiplier of 0.634).

Thus, when considered in the context of a lodestar cross-check, the requested fee is well within the acceptable range. "Typical multipliers range from one to four depending on the facts, with many courts awarding multipliers larger than four on case-specific grounds." *Cook v. Rockwell Int'l Corp.*, No. 90-cv-00181, 2017 WL 5076498, at *4 (D. Colo. Apr. 28, 2017) (citing cases and awarding one of the Co-Lead Counsel here a 2.41 multiplier from a $375 million fund); *see also Urethane Antitrust Litig.*, 2016 WL 4060156, at *7 (approving a fee yielding a multiplier of approximately 3.2, and noting that a multiplier of up to 4 or 5 "would fall within the range of multipliers accepted by a number [of] courts"); *Shaw*, 2015 WL 1867861, at *8 (finding multiplier of 1.37 to be "significantly lower than lodestar multipliers . . . courts consistently have approved in other class action cases"); *In re Parking Heaters Antitrust Litig.*, No. 15-mc-0940, 2019 WL 8137325, at *8 (E.D.N.Y. Aug. 15, 2019) (finding lodestar of 2.35 to be "well within what has been deemed reasonable for common fund settlements in antitrust cases in this circuit," and citing cases with multipliers ranging from 3-4).

Here, the requested award of one-third of the Koch Settlement fund, together with the fees awarded from the earlier Tyson and Purdue settlements, *amounts to a multiplier of less than one*, which is well within the bounds of reasonableness.

Courts are particularly interested in making sure attorneys litigating complex antitrust cases are compensated for their efforts, as one recent court explained:

> It is important to encourage top-tier litigators to pursue challenging antitrust cases such as this one. Our antitrust laws address issues that go to the heart of our

---

*adopted*, 2011 WL 4475291 (E.D. Okla. Sept. 26, 2011) (applying current rates as an appropriate adjustment for delay) (citing *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989)); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (applying current rates to account for "the delay in payment"); *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, No. 97-cv-2262, 2009 WL 762438, at *4, n.10 (S.D.N.Y. Mar. 24, 2009) ("Courts have upheld use of 'current' rates to compensate for inflation and delay in payment.").

> economy. Our economic health, and indeed our stability as a nation, depend upon adherence to the rule of law and our citizenry's trust in the fairness and transparency of our marketplace.

*In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476, 2016 WL 2731524, at *18 (S.D.N.Y. Apr. 26, 2016) (awarding multiplier of just over six).

**3. The Litigation Involves Contested Questions of Fact and Law.**

This case, like most antitrust class actions has been hard fought. *See, e.g.*, *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *10 (E.D. Pa. June 2, 2004) (finding an antitrust class action "is arguably the most complex action to prosecute") (quotation marks omitted); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020) ("Antitrust cases are particularly risky, challenging, and widely acknowledged to be among the most complex actions to prosecute.") (collecting cases).

As discussed above, Plaintiffs filed this case against five Defendants, but the claims involve seventeen Co-Conspirators. Initially, this meant briefing and arguing numerous important motions in several federal courts. *See* Walker Decl. ¶¶ 68, 115. Since then, most of the efforts of this case have focused on obtaining and analyzing documents and data from Defendants and 51 nonparties. *Id.* ¶ 115. The discovery process has been an enormous endeavor, including crafting appropriate discovery requests and subpoenas, negotiating the scope of discovery, appropriate custodial and noncustodial data and document sources, and acceptable search terms and other search methodologies for each. *Id.* Thousands of hours of attorney time and scores of meet-and-confer calls and letters were needed to obtain the documents and data needed to litigate this case successfully. To date, these parties and nonparties collectively have produced over 1.6 million documents (amounting to tens of millions of pages), as well as large amounts of structured transactional data covering 650,000 Broiler flocks. *Id.* ¶ 70. The data productions have required work with expert econometricians and repeated follow up correspondence with the producing parties as Plaintiffs' work to understand and interpret the structured data productions. *See id.* Plaintiffs have also issued several rounds of interrogatories and requests for admission to all Defendants, which have required many rounds of follow up and meeting and conferring regarding the sufficiency of Defendants' responses and the review of lengthy Fed. R. Civ. P. 33(d) designations and other supplemental responses flowing from Plaintiffs' meet and confers. *See id.* ¶¶ 69-70. Plaintiffs have also collected and produced their

own documents, totaling more than 10,000 pages, which is a substantial number for Plaintiffs in an antitrust class action. Plaintiffs also responded to Defendants' interrogatories. *Id.*

Plaintiffs also spent thousands of hours searching through and reviewing the documents and other discovery they have obtained to date, including reviewing dozens of deposition and trial transcripts from related litigation involving Defendants and their Co-Conspirators and the Broiler industry. *Id.*

Plaintiffs began issuing deposition notices and requesting proposed dates in June 2021. *Id.* ¶ 78. By the close of fact discovery, Plaintiffs took 68 depositions under Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6) of witnesses associated with Defendants and their alleged Co-Conspirators, as well as cross-noticed depositions of five absent class members noticed by Defendants. The Rule 30(b)(6) deposition requests to both Defendants and nonparty alleged Co-Conspirators were vigorously contested and Plaintiffs engaged in month's long meet and confers with those entities to reach an agreeable scope for those depositions. In total, Plaintiffs took 73 depositions under Rules 30(b)(1) and 30(b)(6) and defended eight class representative depositions. Before the first deposition could be conducted, the parties also negotiated a remote deposition protocol stipulation, with one minor issue resolved in a conference with Magistrate Judge Cecilia M. Romero, to provide witnesses, court reporters, and counsel options for remote examinations in a safe manner due to the ongoing pandemic. Judge Romero approved the remote deposition protocol on September 8, 2021 (*Growers* ECF 455).

On two occasions, Plaintiffs participated in emergency conferences before Magistrate Judge Romero concerning scheduled depositions. On May 19, 2022, counsel for Tim Stiller, a former PPC executive, informed the parties that Mr. Stiller was under federal indictment and would invoke his Fifth Amendment right at the deposition scheduled for the next day, May 20, 2022. Defendants PPC and Sanderson sought to stay the deposition to file a motion for a protective order. Plaintiffs argued that they had prepared for the deposition and that the parties had been aware of Mr. Stiller's indictment in July 2021. Magistrate Judge Romero found that the moving Defendants could have addressed the need for a protective order earlier in the litigation and ordered the deposition to proceed. (*Growers* ECF 590)

On July 27, 2022, Plaintiffs requested an emergency conference before Magistrate Judge Romero during the deposition of William Lovette, a former PPC executive who had been federally indicted and tried and acquitted of criminal charges relating to conspiring in the poultry

industry. Mr. Lovette stated at the outset of the deposition that he would be invoking his Fifth Amendment right against self-incrimination during the deposition. However, in responding to questions, Mr. Lovette would only state that he would not answer the question on advice of counsel without stating that the basis for his refusal to respond was the invocation of his Fifth Amendment right against self-incrimination. Magistrate Judge Romero found that Mr. Lovette must specifically invoke the privilege against self-incrimination and directed that the deposition continue with that instruction to the witness. (*Growers* ECF 628).

A number of issues also required motion practice, including a motion to compel nonparty Co-Conspirator House of Raeford, a motion to compel PPC to supplement its privilege log claims, motions to quash deposition subpoenas filed by two PPC executives, Jayson Penn and Bill Lovette (who had been criminally tried in an action brought by the Department of Justice), a motion by PPC to shield conversations its counsel had with a non-party witness a week prior to the individual's deposition, a motion to compel Agri Stats to produce documents responsive to Plaintiffs' subpoena, and a motion to compel the production of documents produced in another litigation (involving the sale of broilers to consumers) that Defendants Koch, PPC, and Sanderson indicated their experts intend to rely upon in this litigation. Walker Decl. ¶¶ 84-91.

Plaintiffs have also been engaged in the process of obtaining valuable cooperation from Tyson and Perdue afforded by the Settlements. *Id.* ¶¶ 92-103.

Plaintiffs continue to prepare for the many other issues that await as the parties proceed through expert discovery, class certification, summary judgment and trial. This factor also weighs in favor of the requested fee award.

**4. This Litigation Requires a High Level of Skill.**

The litigation required—and continues to require—expertise in both antitrust matters and knowledge of federal civil procedure and substantial experience in litigating and managing nationwide antitrust class actions. *See, e.g.*, *Cazeau*, 2021 WL 1688540, at *9 (recognizing that "class actions tend to 'involve a specialized area of the law which is often complex and difficult, and where some degree of extra skill is needed to litigate the cases properly'") (quotation marks omitted).

Co-Lead Counsel—experienced class action litigators who have collectively recovered billions of dollars for injured plaintiffs and class members over the course of their careers—have zealously and skillfully represented the interests of Plaintiffs and the Settlement Classes through

nearly five years of hotly contested litigation. Class Counsel (*i.e.*, Co-Lead Counsel and the firms working on the litigation at Co-Lead Counsel's direction) will continue to pursue the litigation against the Non-Settling Defendants, now with the benefit of cooperation agreements as part of the Settlements. Class Counsel devoted the requisite skills to prosecute this action and their collective background and experience are a measure of the significant resources devoted to the litigation.

"[T]he number of adverse parties and the quality of opposing counsel" also weigh in favor of the fee application. *Brown*, 838 F.2d at 455. Here, Class Counsel was opposed by highly skilled attorneys from some of the largest law firms in the country, with substantial resources at their disposal and recognized antitrust expertise, who have vigorously litigated this case. This *Johnson* factor supports Class Counsel's requested award.

**5. Class Counsel Had to Forgo Other Employment to Litigate This Action.**

As discussed above, this action involves numerous complex issues of fact and law, which have been vigorously contested at all stages of the action by opposing counsel. Class Counsel have—and will continue to—devote considerable resources to achieve further benefits for the Settlement Class. As a result, Class Counsel have forgone other matters in order to pursue this litigation, which they undertook at the outset with no guarantee of compensation. This factor weighs in favor of the requested award.

**6. The One-Third Award Request Is Within the Range Customarily Awarded in Antitrust Cases.**

Class Counsel seeks an award of one-third of the combined Settlement fund. Courts in this Circuit have found that even a fee award request as high as "a forty percent fee falls within an acceptable range of fee awards." *Cook*, 2017 WL 5076498, at *1 & n.1 (citing cases awarding fees from one-third to 40%, including cases awarding one-third of the fund).

Numerous courts presiding over antitrust cases have awarded a one-third fee in class action common fund cases, including in antitrust cases. *See, e.g.*, *Urethane Antitrust Litig.*, 2016 WL 4060156, at *8 (awarding one-third of $835 million settlement); *Universal Serv. Fund Tel. Billing Pracs. Litig.*, 2011 WL 1808038, at *2 ("an award of one-third of the fund falls within the range of awards deemed reasonable by courts") (citing *Brown*, 838 F.2d at 455 & n.2); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748-52 (E.D. Pa. 2013) ("in the last two-and-a-half

years, courts in eight direct purchaser antitrust actions approved one-third fees"); *see also* Part A *supra*. Accordingly, the one-third fee request is reasonable relative to fee awards customarily awarded in antitrust and other complex class actions. This *Johnson* factor supports the requested fee award.[9]

**7. The Fee Is Contingent in Nature.**

Class Counsel agreed to pursue this complex antitrust matter on a contingent fee basis, with all the attendant risks to counsel and benefits to clients that such arrangements entail. There was a chance that, despite their best efforts, no recovery would be achieved. Class Counsel have so far incurred near $27 million in lodestar (as of July 31, 2022) and a total of $1,250,268.23 in unreimbursed expenses. Walker Decl. ¶¶ 117-23. All of this was incurred at the risk of no compensation or reimbursement absent a recovery. This factor weighs in favor of the requested award. *See, e.g.*, Cazeau, 2021 WL 1688540, at *10 ("the contingent nature of Class Counsel's representation supports the requested fee award").

**8. There Are No Unusual Time Limitations.**

The *Johnson* factor concerning the presence of any unusual time limitations is not a factor here. While Plaintiffs, and the Settlement Class, desire a speedy recovery, it is well known that antitrust cases involve protracted litigation.

**9. Class Counsel Have Extensive Experience Litigating Antitrust Class Actions.**

Class Counsel have decades of extensive experience litigating antitrust class actions, including leading and managing other counsel to assist them, and have recovered billions of dollars for class members. A detailed discussion of Co-Lead Counsel's experience can be found

---

[9] *See also In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (one-third of $73 million fund); *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-2431, 2012 WL 13224382, at *4 (E.D. Pa. Nov. 7, 2012) (one-third of $37.5 million fund); *In re Nifedipine Antitrust Litig.*, No. 03-mc-223, 2011 WL 13392312, at *2 (D.D.C. Jan. 31, 2011) (one-third of $35 million fund); *In re Municipal Derivatives Antitrust Litig.*, No. 08-cv-02516, 2016 WL 11543257, at *1 (S.D.N.Y. July 8, 2016) (one-third fee from $101 million settlement fund); *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05-cv-2237, 2011 WL 12627961, at *5 (S.D.N.Y. Nov. 28, 2011) (one-third fee from $20.25 million settlement fund); *In re U.S. Foodservice, Inc. Pricing Litig.*, No. 07-md-1894, 2014 WL 12862264, at *3 (D. Conn. Dec. 9, 2014) (one-third fee from $297 million settlement fund in a case that settled before summary judgment).

at their firm websites and in their firm resumes (and were previously submitted at *Growers II* ECF 214-18 and 214-19 respectively).[10] This factor supports the requested fee award.

**10. The "Undesirability" of the Case.**

This factor considers the complexity and challenges associated with a case and whether attorneys would be willing to bring the case to a resolution. *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. 16-cv-00410, 2018 WL 8367957, at *8 (E.D. Okla. Nov. 19, 2018). As discussed above, this case presents issues that require counsel to dedicate considerable resources in terms of attorney time and litigation expenses over a period of years with no guarantee of remuneration. Indeed, while the consumer/purchaser end of this case proceeding in the District of Illinois attracted hundreds of filings by parties and firms, very few parties and firms initially saw fit to bring these particular claims on behalf of Growers around the country. Thus, this factor weighs in favor of the requested award. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *7 (emphasizing the exposure to counsel in time, money and resources in choosing to represent the plaintiffs and class); *Cazeau*, 2021 WL 1688540, at *10 ("the significant time commitment and financial investment coupled with risk of no payment enhances the undesirability of this case").

**11. The Nature and Length of the Professional Relationship with the Clients.**

The *Johnson* court described this factor in terms of whether a "lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office." *Johnson*, 488 F.2d at 719. In the context of class action litigation, it is unlikely that the same class representatives or class members will seek additional or extended representation from counsel beyond the class litigation. *See Shaw*, 2015 WL 1867861, at *7 ("Unlike corporate clients, who may need future legal services from their counsel, the likelihood that many class members will be seeking additional representation from Class Counsel is slim."). To the extent the Court considers the relationship between counsel and the Class Representatives, here, Class Counsel have worked closely with the Class Representatives throughout this litigation. Class Counsel consulted with Class Representatives at important stages of the litigation, including to obtain information to understand the Broiler market and industry, assistance with developing the

[10] *See* Hausfeld LLP website (https://www.hausfeld.com); Berger Montague PC website (https://bergermontague.com).

complaints, and to provide responses to Defendants' document requests and interrogatories. *See* Walker Decl. ¶¶ 125-36. This factor weighs in favor of the requested award.

**12. The Requested One-Third Fee Award Is Similar to Awards in Other Complex Cases.**

As discussed above, Class Counsel's request for a fee award of one-third of the $15.5 million Koch Settlement fund falls within the range of fee awards granted in antitrust class actions. The requested fee award is also comparable to awards in other class actions granted by courts in this Circuit. *See, e.g.*, *Cazeau*, 2021 WL 1688540, at *9 (recognizing a contingent fee of one-third of the settlement "is customary and consistent with fee arrangements in similar cases"); *Shaw*, 2015 WL 1867861, at *6 (finding one-third award "is well within the percentage range approved in similar cases") (collecting cases); *Whittington*, 2013 WL 6022972, at *6 ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Williams*, 2007 WL 2694029, at *6 (finding 35% fee award "fair and reasonable" for $57 million settlement reached after four years and before trial); *Lewis*, 2006 WL 3505851, at *1 ("A contingency fee of one-third is relatively standard in lawsuits that settle before trial and, given the length [four years] and complexity of this lawsuit, it is a reasonable percentage for a contingency fee."); *Cimarron Pipeline*, 1993 WL 355466, at *2 (awarding one-third fee for settlement before trial; "Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

In light of this precedent, an award of one-third of the Koch Settlement is fair and reasonable as Class Counsel have obtained the Koch Settlement of $15.5 million, in addition to the earlier Tyson and Purdue settlements, after litigating the case for more than five years and engaging in significant discovery and litigation. Through their efforts, Class Counsel also obtained cooperation from Koch to aid them in pursing further relief on behalf of the Settlement Class from the Non-Settling Defendants, as well as additional valuable relief from Koch concerning compulsory arbitration. *See generally* Walker Decl. ¶¶ 107-08. The requested fee award is reasonable when considering this *Johnson* factor.

## II. The Court Should Award Reimbursement of Class Counsel's Reasonable and Necessary Litigation Expenses

Class Counsel respectfully request that the Court also award reimbursement of reasonable costs and expenses incurred. "As with attorney fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred . . . in addition to the attorney fee percentage." *Cecil*, 2018 WL 8367957, at *9 (quotation marks omitted). Courts routinely award class counsel out-of-pocket costs such as "computer research, investigation, and experts/consultants." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014).

Since the Purdue and Tyson settlements, Class Counsel incurred reasonable costs and expenses, in relation to the tasks involved, in the amount of $67,650.69, paid expenses from the litigation fund in the amount of $410,623.89, and have outstanding due and owing invoices in the amount of $771,993.65 for a total of $1,250,268.23. *See* Walker Decl. ¶¶ 119-23. These unreimbursed expenses include items typically billed to fee-paying clients, such as computer-based research costs, copying costs, expert fees, travel expenses, and other typical litigation expenses. The bulk of these expenses are for the work of economic experts. Economic and econometric analysis are critical components for any successful antitrust action, particularly with respect to antitrust merits analyses and certification of a class. Co-Lead Counsel have worked closely with the economic experts to ensure that the expenses incurred are reasonably necessary to the success of the case.[11]

All of these reasonable costs and expenses were directly related and necessary to Class Counsel's efforts to litigate this matter and to achieve the best possible result for the Settlement Class. Class Counsel advanced all of these costs on behalf of the Settlement Class over many years with no guarantee of every getting that money back. An award covering these expenses, advanced by Class Counsel for the benefit of the Settlement Class, is appropriate.

---

[11] *See also Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *18 (awarding $10 million in expenses, most of which was for expert expenses); *Brown v. Pro Football, Inc.*, 839 F. Supp. 905, 916 (D.D.C. 1993) ("Plaintiffs' out-of-pocket costs for telephone, telecopier, air and local couriers, postage, photocopying, W[estlaw] research, secretarial overtime, and counsels' travel expenses are routinely billed to fee-paying clients, and thus are all compensable as part of a reasonable attorney's fee") (citations omitted); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 344 (W.D. Pa. 1997) (awarding costs for "copying expenses, travel and lodging expenses, telephone and telecopy expenses and other litigation expenses").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their request for an award of attorneys' fees of one-third of the Koch Settlement amount of $15.5 million plus accrued interest (that is, an award of $5,166,667 plus one-third of any accrued interest), an award of litigation expenses incurred in the amount of $1,250,268.23, and authorize Co-Lead Counsel to distribute the attorneys' fees in a manner that, in their judgment, fairly compensates each firm in view of its contribution to the prosecution of the Plaintiffs' claims.

Dated: August 24, 2022

Respectfully submitted,

*/s/ Daniel J. Walker*

Daniel J. Walker*
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
Email: dwalker@bm.net

Patrick F. Madden*
Eric L. Cramer*
Ellen T. Noteware*
David A. Langer*
Michaela L. Wallin*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: pmadden@bm.net
Email: ecramer@bm.net
Email: enoteware@bm.net
Email: dlanger@bm.net
Email: mwallin@bm.net

Gary I. Smith, Jr.*
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3270
Facsimile: (215) 985-3271
Email: gsmith@hausfeld.com

Michael D. Hausfeld*
James J. Pizzirusso*
Melinda R. Coolidge*
Samantha S. Derksen*
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: mhausfeld@hausfeld.com
Email: jpizzirusso@hausfeld.com
Email: mcoolidge@hausfeld.com
Email: sderksen@hausfeld.com

Kyle G. Bates*
**HAUSFELD LLP**
600 Montgomery St, Ste 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 633-4980
Email: kbates@hausfeld.com

***Co-Lead Counsel for Plaintiffs and the Proposed Class***

M. David Riggs
Donald M. Bingham
Kristopher Koepsel
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
502 West Sixth Street
Tulsa, OK 74119
Telephone: (918) 699-8914
Facsimile: (918) 587-9708
Email: driggs@riggsabney.com
Email: don_bingham@riggsabney.com
Email: kkoepsel@riggsabney.com

William A. Edmondson (OBA No. 2628)
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
528 N.W. 12th Street
Oklahoma City, OK 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
Email: dedmondson@riggsabney.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

Larry D. Lahman (OBA No. 5166)
Roger L. Ediger (OBA 19449)
**MITCHELL DECLERK, PLLC**
202 West Broadway Avenue
Enid, OK 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890
Email: ldl@mdpllc.com
Email: rle@mdpllc.com

Vincent J. Esades*
**HEINS MILLS & OLSON, PLC**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: vesades@heinsmills.com

Warren T. Burns*
**BURNS CHAREST, LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
Email: wburns@burnscharest.com

Gregory L. Davis*
**DAVIS & TALIAFERRO, LLC**
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: (334) 832-9080
Facsimile: (334) 409-7001
Email: gldavis@knology.net

Charles D. Gabriel*
**CHALMERS & ADAMS, LLC**
13200 Strickland Rd, Suite 114-177
Raleigh, NC 27613
Telephone: (919) 803-2635
Facsimile: (678) 735-5905
Email: cdgabriel@chalmersadams.com

Larry S. McDevitt*

David M. Wilkerson*
**VAN WINKLE LAW FIRM**
11 North Market Street
Asheville, NC 28801
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
Email: lmcdevitt@vwlawfirm.com
Email: dwilkerson@vwlawfirm.com

Harlan Hentges (OBA No. 17911)
**HENTGES & ASSOCIATES, PLLC**
102 East Thatcher Street
Edmond, OK 73034
Telephone: (405) 340-6554
Facsimile: (405) 340-6562
Email: harlan@organiclawyers.com

John C. Whitfield*
Caroline R. Taylor*
**WHITFIELD COLEMAN BULLOCK, PPLC**
19 North Main Street
Madisonville, KY 42431
Telephone: (270) 821-0656
Facsimile: (270) 825-1163
Email: jwhitfield@wcbfirm.com
Email: caroline@wbmllp.com

J. Dudley Butler*
**BUTLER FARM & RANCH LAW GROUP, PLLC**
499-A Breakwater Drive
Benton, MS 39039
Telephone: (662) 673-0091
Facsimile: (662) 673-0091
Email: jdb@farmandranchlaw.com

Daniel M. Cohen*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202)789-1813
Email: danielc@cuneolaw.com

David S. Muraskin*
**PUBLIC JUSTICE, PC**

1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 861-5245
Facsimile: (202) 232-7203
Email: dmuraskin@publicjustice.net

Kellie Lerner*
Meegan F. Hollywood*
Benjamin Steinberg*
**ROBINS KAPLAN, LLP**
1325 Avenue of the Americas, Suite 2601New
York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
Email: KLerner@RobinsKaplan.com
Email: MHollywood@RobinsKaplan.com
Email: bsteinberg@robinskaplan.com

M. Stephen Dampier*
**DAMPIER LAW FIRM**
55 North Section Street
P.O. Box 161
Fairhope, AL 36532
Telephone: (251) 929-0900
Facsimile: (251) 929-0800
Email: stevedampier@dampierlaw.com

Michael L. Silverman*
**ROACH LANGSTON BRUNO, LLP**
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
Telephone: (773) 969-6160
Email: msilverman@rlbfirm.com

Grant L. Davis*
Thomas C. Jones*
Timothy C. Gaarder*
Thomas E. Ruzicka, Jr.*
**DAVIS BETHUNE & JONES, LLC**
1100 Main St, Ste 2930
Kansas City, MO 64105
Telephone: (816) 421-1600
Email: gdavis@dbjlaw.net
Email: tjones@dbjlaw.net
Email: tgaarder@dbjlaw.net
Email: truzicka@dbjlaw.net

Robert J. Bonsignore*
**BONSIGNORE TRIAL LAWYERS, PLLC**
23 Forest St.
Medford, MA 02155
Telephone: (781) 350-0000
Email: rbonsignore@classactions.us

***Additional Class Counsel for Plaintiffs and the Proposed Class***

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on August 24, 2022, I electronically filed the foregoing Plaintiffs' Motion for an Award of Attorneys' Fees And Reimbursement of Litigation Expenses with the Clerk of this Court via ECF which will send notification of such filing to all counsel of record.

*/s/ Daniel J. Walker*
Daniel J. Walker (admitted *pro hac vice*)