**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| **IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II)** | MDL No. 6:20-2977-RJS-CMR<br><br>Hon. Chief Judge Robert J. Shelby<br><br>Hon. Cecilia M. Romero |

**DECLARATION OF GARY I. SMITH, JR. IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH SANDERSON
<u>AND FOR CERTIFICATION OF THE SETTLEMENT CLASS</u>**

1

I, Gary I. Smith, Jr., declare and state as follows:

1.      I am a Partner of the law firm Hausfeld LLP, one of the two Court-appointed Interim Co-Lead Counsel ("Class Counsel") for Plaintiffs in the above-captioned action. I am a member in good standing of the State Bars of California, Pennsylvania, and Arizona, and have been admitted *pro hac vice* in this Court. I am over 18 years of age and have personal knowledge of the facts stated in this Declaration. If called as a witness, I could and would testify competently to them.

2.      I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement with Sanderson and for Certification of the Settlement Class, which is being filed concurrently herewith. Attached as Exhibit A is a true and correct copy of the Settlement Agreement (the "Settlement") between Plaintiffs Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles B. Weaver, Melissa Weaver, Marc McEntire, Karen McEntire, Mitchell Mason, and Anna Mason[1] (collectively, "Plaintiffs") and Defendant "Sanderson," meaning collectively, Sanderson Farms, Inc., Sanderson Farms, Inc. (Food Division), Sanderson Farms, Inc. (Processing Division), Sanderson Farms, Inc. (Production Division), and any and all past, present, and future parents, owners, subsidiaries, divisions, and/or departments, including but not limited to Sanderson Farms, LLC, Sanderson Farms, LLC (Food Division), Sanderson Farms, LLC (Processing Division), Sanderson Farms, LLC (Production Division), and Wayne Farms, LLC. (together with Plaintiffs, the "Parties").

**Plaintiffs' Litigation Efforts to Date**

3.      Plaintiffs have briefed numerous pre-trial motions in four district courts and one federal bankruptcy court,[2] including, *inter alia*, a motion to stay discovery,[3] a motion to compel

---

[1] Anna Mason is an individual plaintiff in a case that is part of this multi-district litigation and is not a proposed class representative.

[2] *In re: Broiler Chicken Grower Antitrust Litigation (No. II)*, No. 6:20-md-2977-RJS-CMR (Dec. 17, 2020) ("*Growers II*"); *Mason v. Tyson Foods, Inc.*, 5:20-cv-07049-BLF (N.D. Cal. Oct. 8, 2020) ("*Mason*"); *Colvin v. Tyson Foods, Inc.*, 2:20-cvb-2464 (D. Kan. Sept. 18, 2020) ("*Colvin*"); *McEntire v. Tyson Foods, Inc.*, No. 1:20-cv-2764-PAB-NYW (D. Colo. Sept. 11, 2020) ("*McEntire*"); *In re: Sanderson & Sanderson Broiler Chicken Grower Litig.*, No. 7:18-cv-00031-D (E.D.N.C. Feb. 21, 2018) ("*Sanderson*"); *In re: Pilgrim's Pride Corp.*, No. 08-45664 (Bankr. N.D. Tex. Oct. 12, 2017) ("*Pilgrims*"); *In re: Broiler Chicken Grower Litigation*, No. 17-cv-0033-RJS (E.D. Okla. Jan. 27, 2017) ("*Growers*").

[3] Pls' Opp. To [144] Defs' Mot. to Stay Discovery, *Growers*, ECF 151 (Aug 7, 2017).

arbitration or to stay,[4] motions to dismiss for failure to state a claim,[5] motions to dismiss for improper venue,[6] motions to dismiss for lack of personal jurisdiction,[7] a motion to enforce a bankruptcy discharge,[8] seriatim motions to dismiss under the "first to file" doctrine,[9] three motions to compel the production of documents (one involving certain defendants, and two involving third parties) resulting in the production of hundreds of thousands of additional documents (comprising millions of additional pages),[10] a motion to compel production of purportedly privileged documents resulting in the supplemental production of thousands of previously withheld documents,[11] opposed motions to quash certain third party subpoenas,[12] and opposed a motion for

---

[4] Pls' Mem. of Law in Opp. to [192] Perdue's Mot. to Compel Arbitration & Dismiss or, in the Alternative, to Stay, *Growers*, ECF 201 (Oct. 23, 2017); Decl. of Gary I. Smith, Jr. in Opp. to [191], [192], [193], [194], Defs' Mots. to Dismiss, *Growers*, ECF 203 (Oct. 23, 2017).

[5] Pls' Resp. in Opp. to [193] J. Mot. to Dismiss Under Fed. R. Civ. P. 12(b), (3), & (6), *Growers*, ECF 200 (Oct. 23, 2017); Decl. of Gary I. Smith, Jr. in Opp. to [191], [192], [193], [194], Defs' Mots. to Dismiss, *Growers*, ECF 203 (Oct. 23, 2017); Plaintiffs' Resp. in Opp. to [193], [234] Defs' Corrected Suppl. Br. in Supp. of their Mot. to Dismiss, *Growers*, ECF 239 (E.D. Okla. June 1, 2018); Pls' Mem. of Law in Opp. to [52] Defs' J. Mot. to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), Sanderson, ECF 55 (Aug. 13, 2018).

[6] Pls' Omnibus Mem. of Law in Opp. to Sanderson's Mots. to Dismiss [191 & 194] for Lack of Personal Jurisdiction & Improper Venue & Sanderson's Mot. to Dismiss for Lace of Personal Jurisdiction and Improper Venue, *Growers*, ECF 202 (Oct. 23, 2017); Decl. of Gary Smith in Opp. to Mots. to Dismiss [191 & 194], *Growers*, ECF 203 (Oct. 23, 2017); Pls' Mem. of Law in Opp. to [193] Defs' J. Mot. to Dismiss Under Fed. R. Civ. P. 12(b), (3), & (6), *Growers*, ECF 200 (Oct. 23, 2017); Plaintiffs' Resp. in Opp. to [193], [234] Defs' Corrected Suppl. Br. in Supp. of their Mot. to Dismiss, *Growers*, ECF 239 (E.D. Okla. June 1, 2018).

[7] *Id.*

[8] Opp. to Reorganized Debtor's Mot. To Enforce Confirmation Order Against Growers [7222], *Pilgrim's*, ECF 7227 (Sept. 22, 2017).

[9] Pls' Mem. of Law in Opp. to Sanderson's Mot. to Dismiss Under the First-to-File Rule, *Sanderson*, ECF 70 (June 17, 2020); Pls' Resp. in Opp. to Defs' Mot. to Dismiss Pursuant to the First-to-File Rule, *McEntire*, ECF 46 (Nov. 18, 2020).

[10] Pls' Mot. for an Order Compelling Non-Party House of Raeford Farms, Inc.'s Compliance with Subpoenas, *Growers II*, ECF 60 (Mar. 1, 2021); Pls' Mot. To Compel Non-Party Agri Stats, Inc.'s Compliance with Subpoena, *Growers II*, ECF 233 (Dec. 21, 2021); Pls' Mot. To Compel Non-Settling Defendants to Produce Expert Reports and Materials Relied Upon From the Downstream Litig., *Growers II*, ECF 237 (Dec. 23, 2021).

[11] Pls' Mot. for an Order Compelling Def. Pilgrim's Pride to Produce Certain Documents for Failure to Show that the Documents are Privileged & Mem. in Support*, Growers II*, ECF 97 (July 2, 2021).

[12] Omnibus Opp. To Non-Parties Penn's and Lovette's Motions to Stay Their Depositions, *Growers II*, ECF 107 (Sept. 24, 2021).

a protective order by Pilgrims concerning communications with a former employee.[13]

    4.     Plaintiffs made two petitions to the Judicial Panel on Multidistrict Litigation, through which they presented briefing and argument in favor of centralization and consolidation in this Court.

    5.     Plaintiffs have also appeared to present argument on motions before this Court,[14] on Pilgrim's motion to enforce its bankruptcy discharge in the bankruptcy court,[15] as well as making regular appearances at status conferences to keep the Court abreast of the litigation's status and any percolating disputes or recent developments.[16]

**Plaintiffs' Discovery Efforts**

    6.     Plaintiffs engaged in robust discovery efforts over several years. Plaintiffs served requests for production of documents with all Defendants and more than 50 subpoenas on non-parties. Protracted negotiations over appropriate initial (and supplemental) document custodians and electronic search methodologies, and complicated remote collections and productions in the midst of the Covid-19 pandemic, followed with the Defendants, fifteen alleged co-conspirators, and even more innocent non-party subpoena recipients.

    7.     Plaintiffs produced more than 10,000 pages of documents in response to Defendants' requests for production, which required complicated remote collection amid the Covid-19 pandemic.

    8.     Plaintiffs also propounded several rounds of interrogatories and requests for

---

[13] Pls' Opp. To Defendant Pilgrim's Pride's Motion for a Protective Order, *Growers II*, ECF 226 (Dec. 8, 2021).

[14] *See, e.g.*, Mins. of Proceedings, Hearing, Mot. to Dismiss [191] for Lack of Jurisdiction (Personal) and Sanderson's Mot. to Dismiss [194] for Lack of Jurisdiction and Improper Venue, *Sanderson* (Jan. 19, 2018), ECF 216; Mot. Hearing, Defs' J. Mot. to Dismiss Under Federal Rules of Civil Procedure 12(b)(2), (3), and (6), [193], and Def. Perdue's Mot. to Compel Arbitration & Dismiss or, in the Alternative, to Stay [192], *Growers* (Apr. 20, 2018), ECF 228; Mot. Hearing, Defs' J. Mot. to Dismiss Under Federal Rules of Civil Procedure 12(b)(2), (3), and (6), [193], and Def. Perdue's Mot. to Compel Arbitration & Dismiss or, in the Alternative, to Stay [192], *Growers* (Jan. 6, 2020), ECF 266.

[15] Hearing, Reorganized Debtor's Mot. To Enforce Confirmation Order, *Pilgrim's* (Oct. 12, 2017).

[16] Mins. of Proceedings, Status Conferences, *Growers II,* Feb. 12, 2021 (ECF 55), May 21, 2021 (ECF 99), Aug. 13, 2021 (ECF 128), Aug. 23, 2021 (ECF 140) (before M.J. Romero), Nov. 5, 2021 (ECF 215), Feb. 3, 2022 (ECF 277), and May 6, 2022 (ECF 347); *Growers* Nov. 20, 2019 (ECF 263), Jan. 6, 2020 (ECF 266), Apr. 6, 2020 (ECF 306), July 17, 2020 (ECF 322) and Oct. 16, 2020 (ECF 328).

admissions on Defendants, and negotiated the sufficiency of the responses received. In addition, Plaintiffs responded to several rounds of interrogatories and requests for admissions served on Plaintiffs, and negotiating the scope of those responses.

9.     Plaintiffs engaged in a strategic review of the more than 1.7 million documents produced by Defendants and non-parties, consisting of more than 10 million pages and structured transaction data for more than 650,000 Broiler flocks.

10.    Plaintiffs reviewed and challenged the adequacy of certain of Defendants' privilege logs.

11.    Plaintiffs took 73 depositions under Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6) and defending eight class representative depositions.

12.    Plaintiffs' counsel participated in emergency conferences before Magistrate Judge Romero concerning scheduled depositions and the invocation of the Fifth Amendment by Pilgrim's William Lovette and Timothy Stiller.

13.    And Plaintiffs' counsel have reviewed dozens of deposition transcripts from prior and ongoing litigation involving broiler growers and broiler production and sales.

**Plaintiffs' Work with Expert Economist**

14.    Plaintiffs' counsel spent a significant amount of time working closely with Plaintiffs' expert economist Dr. Hal Singer to submit Plaintiffs' opening expert reports on class certification and merits issues.

15.    Plaintiffs' counsel then worked with Dr. Singer in analyzing Defendants' three expert reports submitted in opposition, and took the depositions of all three of Defendants' experts.

16.    Plaintiffs' counsel then worked extensively with Dr. Singer as he prepared his rebuttal report, and will defend Mr. Singer's deposition in February 2023.

**The Settlement**

17.    Negotiation of the instant Settlement with Sanderson occurred directly between Class Counsel and counsel for Sanderson.

18.    I was the primary point of contact with counsel for Sanderson on Plaintiffs' behalf during settlement negotiations.

19.    The Settlement was negotiated at arm's length and the negotiations were rigorous and extensive and took place in earnest over the course of three months.

20.     Ultimately, Plaintiffs and Sanderson were able to reach the Settlement, which culminated in a long form settlement agreement executed on February 28, 2023. *See* Exhibit A.

21.     Class Counsel believe that this Settlement is fair, reasonable, and adequate.

**Plaintiffs' Proposed Plan of Allocation**

22.     All members of the Settlement Class for whom Plaintiffs possess sufficient structured data will receive a pre-populated form that includes their total payments over the Class Period. Those members of the Settlement Class will have an opportunity to respond to that form by either accepting those calculations or contesting them with their own records. If Settlement Class members do not respond, the amounts on the pre-populated form will be deemed accepted. This ensures that Growers representing approximately 99% of Broiler production covered by the Settlement Class will receive a distribution from the common fund even if they do nothing— without having to participate in a formal claims process, and without having to submit their own documentation, unless they so choose.

23.     All members of the Settlement Class for whom Plaintiffs do not presently possess sufficient structured data or for whom Plaintiffs have to date been unable to make a determination about the sufficiency of their data—Growers representing approximately 1% of Broiler production covered by the Settlement Class—will have the opportunity to either submit their own documentation to establish their *pro rata* share or to answer a series of simple questions, through which a reasonable estimate of their total Grower payments can be calculated using available data obtained from Agri Stats, Inc.[17] Currently, these include chiefly Growers for Claxton Poultry Farms: accounting for Growers representing approximately 1.1% of production volume. Claxton did not preserve structured data for the class period and such data will not be available to generate pre-populated claim forms.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on DATE, in San Diego, California.

Dated: March 3, 2023

Gary I. Smith, Jr.

---

[17] These questions will include primarily (1) the alleged Co-Conspirator Broiler Grow-Out Services were performed for; (2) the years Broiler Grow-Out Services were performed, (3) the number of farms the Settlement Class member operated, and (4) for any partial years the Settlement Class member provided Broiler Grow-Out Services, the number of flocks raised during that partial year.

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **IN RE BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II)** | MDL No. 6:20-2977-RJS-CMR<br><br>Hon. Chief Judge Robert J. Shelby<br><br>Hon. Cecilia M. Romero |

### LONG-FORM CLASS ACTION SETTLEMENT
### AGREEMENT BETWEEN PLAINTIFFS AND SANDERSON

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered

into as of February 28, 2023 ("Execution Date"), by and between the Plaintiffs ("Plaintiffs"),[1]

through Interim Co-Lead Class Counsel for the proposed Settlement Class (defined below), and

Sanderson Farms, Inc., Sanderson Farms, Inc. (Food Division), Sanderson Farms, Inc.

(Processing Division), and Sanderson Farms, Inc. (Production Division), and all of its

predecessors, successors, assigns, affiliates (including, without limitation, any affiliates named as

alleged co-conspirators), and any and all past, present, and future parents, owners, subsidiaries,

divisions, and/or departments (collectively referred to as "Sanderson"[2]), in the above-captioned

action, including any actions currently or subsequently centralized into this action for

coordinated pre-trial proceedings (the "Action").[3]  Plaintiffs, on behalf of the proposed

---

[1] As used herein, "Plaintiffs" means Haff Poultry, Inc.; Nancy Butler; Johnny Upchurch; Jonathan Walters; Myles B. Weaver;; Marc McEntire; Karen McEntire; Mitchell Mason; and Anna Mason.

[2] This includes, but is not limited to, Sanderson Farms, LLC, Sanderson Farms, LLC (Food Division), Sanderson Farms, LLC (Processing Division), Sanderson Farms, LLC (Production Division), and Wayne Farms, LLC.

[3] Actions centralized currently include *McEntire, et al. v. Tyson Foods, Inc., et al.*, C.A. No. 1:20-02764 (D. Colo.); *Colvin v. Tyson Foods, Inc., et al.*, C.A. No. 2:20-02464 (D. Kan.); *Mason, et al., v. Tyson Foods, Inc., et al.*, C.A. No. 5:20-cv-7049 (N.D. Cal.); *In re: Sanderson*

Settlement Class, together with Sanderson are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, Plaintiffs on behalf of themselves and as representatives of a proposed class of similarly situated persons or entities allege in the Action, among other things, that Sanderson participated in a conspiracy to artificially suppress, fix, maintain, and/or stabilize compensation paid to Plaintiffs and a proposed class of Growers (defined below);

WHEREAS, Sanderson denies all allegations of wrongdoing in the Action;

WHEREAS, Interim Co-Lead Class Counsel have been appointed by the Court to represent, on an interim basis, the proposed class of Growers;

WHEREAS, the Parties wish to resolve all claims (including any Sherman Act, Clayton Act, Packers and Stockyards Act, and/or federal, state, or common law unfair competition or anticompetitive conduct claims) arising from or in connection with any act or omission through the date of Preliminary Approval relating to the Action and/or arising from the factual predicates of the Action;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations regarding the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the Parties' settlement;

WHEREAS, Plaintiffs have concluded, after investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of Plaintiffs to enter into this Settlement Agreement with Sanderson to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the proposed Settlement Class,

---

*and Sanderson Broiler Chicken Grower Litig.*, C.A. No. 7:18-00031 (E.D.N.C.); and *Haff Poultry, Inc., et al. v. Tyson Foods, Inc., et al.*, C.A. No. 6:17-00033 (E.D. Okla.).

DocuSign Envelope ID: 55E22407-0898-400F-8FAC-36A1BE4E4B12

and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the proposed Settlement Class;

WHEREAS, Plaintiffs and Interim Co-Lead Class Counsel believe that the Settlement Fund and cooperation to be provided by Sanderson as part of this Settlement Agreement reflect fair, reasonable, and adequate compensation for the proposed Settlement Class to release, settle, and discharge their claims that they were harmed by the alleged anticompetitive conduct of which Sanderson is accused in this Action;

WHEREAS, Sanderson, notwithstanding defenses to any claims that could be asserted by Plaintiffs against it, enters into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation, and thereby put a rest to this controversy; and

WHEREAS, both Parties wish to preserve all arguments, defenses, and responses to all claims in the Action, including any arguments, defenses, and responses to any proposed litigation class proposed by Plaintiffs in the event this Settlement Agreement does not obtain Final Approval;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, the terms of the Confidential Supplement, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the Plaintiffs be settled, compromised, and dismissed on the merits with prejudice as to Sanderson only, subject to Court approval, and that Sanderson be forever fully discharged and released from any and all claims covered by this Settlement Agreement:

1.     <u>General Definitions</u>.  The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

DocuSign Envelope ID: 55E22407-0898-400F-8EAC-36A1BE4E4B12

a. "Action" means the above-captioned proceeding, including any actions currently or subsequently centralized into this action for coordinated pre-trial proceedings.

b. "Affiliate" means with respect to any person, entity, or company, a person, entity, or company that, directly or indirectly, controls, is controlled by, or is under common control with such person, entity, or company.

c. "Broiler Grow-Out Services" means Broiler chicken growing services.

d. "Broilers" means young chickens bred for meat. "Broilers" as used herein excludes specialty chicken that is grown, processed, and sold according to halal, kosher, free range, pasture-raised, or organic standards. Specialty chicken does not include chicken raised without antibiotics, such as No Antibiotics Ever ("NAE") or Antibiotic Free ("ABF") standards. "Broilers" as used herein includes NAE and ABF chicken.

e. "Co-Conspirator" means the alleged co-conspirators referred to in the Complaint, that is: Agri Stats, Inc., Foster Farms, Mountaire Farms, Wayne Farms, George's, Inc., Peco Foods, Inc., House of Raeford Farms, Simmons Foods, Keystone Foods, Inc., Fieldale Farms Corp., O.K. Industries, Case Foods, Marshall Durbin Companies, Amick Farms, Inc., Mar-Jac Poultry, Inc., Harrison Poultry, Inc., Claxton Poultry Farms, and Norman W. Fries, Inc., including each of their past, present, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, divisions, and/or departments, joint ventures, predecessors, and/or successors.

f.  "Complaint" means the Consolidated Class Action Complaint filed on February 19, 2021 (ECF No. 59).

g.  "Confidential Supplement" means the confidential agreement containing certain confidential terms providing for rescission of the Settlement Agreement should certain contingencies occur.

h.  "Court" means the United States District Court for the Eastern District of Oklahoma, or any other court in which the Action is proceeding.

i.  "Defendants" means those defendants named in the Complaint, including each of their past, present, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, divisions, and/or departments, joint ventures, predecessors, and/or successors.

j.  "Escrow Account" means the interest-bearing escrow account established with the escrow agent to receive and maintain funds contributed by Sanderson for the benefit of the Settlement Class.

k.  "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and Plaintiffs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

l.  "Fairness Hearing" means a hearing by the Court to determine whether the Settlement Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

m. "Final Approval" means an order and judgment by the Court that finally approves this Settlement Agreement, including all of its material terms and conditions without modification, pursuant to Federal Rule of Civil Procedure 23 and dismisses Sanderson with prejudice from the Action.

n. "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) no appeal or petition to seek permission to appeal the Court's Final Approval has been made within the time for filing or noticing any appeal under the Federal Rules of Appellate Procedure; or (2) if any timely appeal(s) from the Final Approval or notices of appeal from the Final Approval are filed, (i) the date of final dismissal of all such appeals or the final dismissal of any proceeding on certiorari or otherwise or (ii) the date the Final Approval is finally affirmed on appeal and affirmance is no longer subject to further appeal or review.

o. "Growers" means Broiler chicken growers.

p. "Interim Co-Lead Class Counsel" or "Interim Co-Lead Counsel" mean Hausfeld LLP and Berger Montague PC as appointed by the Court on an interim basis to represent the proposed class of Growers.

q. "Sanderson Released Party" or "Sanderson Released Parties" means Sanderson (as defined above) together with any and all of Sanderson's past, current, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, associates, departments, divisions, joint ventures, predecessors, successors, and each of their respective past, current, and future, direct or indirect, officers, directors,

trustees, partners, managing directors, shareholders, managers, members, employees, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives. Notwithstanding the above, and for avoidance of doubt, "Sanderson Released Parties" shall not include any Defendant or alleged Co-Conspirator in the Action other than Sanderson as defined above and per fn. 2.

r.   "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

s.   "Released Claims" shall have the meaning set forth in Paragraph 14 of this Settlement Agreement.

t.   "Releasing Party" or "Releasing Parties" shall refer individually and collectively to the following persons and entities, whether or not any of them participate in the Settlement Agreement: Plaintiffs, the Settlement Class, and all members of the Settlement Class (including the Plaintiffs), each on behalf of themselves and their respective predecessors, successors, and all of their respective past, present, and future, direct and indirect, (i) parents (including holding companies), subsidiaries, associates, and Affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions, and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities referred to above, as well as any person or entity acting on behalf of or through any of them in any

capacity whatsoever, jointly and severally; and also means, to the full extent of the power of the signatories hereto to release past, present, and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer, or any other capacity.

u. "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of settlement funds to the Settlement Class, subject to approval of the Court.

v. "Settlement Class" means the class defined in Paragraph 5 below excluding all persons who file a valid and timely request for exclusion from the Settlement Agreement.

w. "Settlement Class Counsel" means the attorneys appointed by the Court to represent the Settlement Class.

x. "Settlement Class Notice" means notice sent to members of the Settlement Class pursuant to Preliminary Approval, or otherwise approved by the Court pursuant to Federal Rule of Civil Procedure 23.

y. "Settlement Class Period" means January 27, 2013 through December 31, 2019.

z. "Settlement Fund" means $17,750,000 (seventeen million seven hundred fifty thousand U.S. dollars), the amount Sanderson shall pay or cause to be paid into an Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below, as well as any interest accruing within such Escrow Account.

2.      The Parties' Efforts to Effectuate this Settlement Agreement. The Parties shall cooperate in good faith and use their best efforts to effectuate this Settlement Agreement, including using their best efforts in seeking the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.      Litigation Standstill. Plaintiffs shall cease all litigation activities against Sanderson in the Action except to the extent expressly authorized in this Settlement Agreement. Sanderson shall cease all litigation activities against Plaintiffs in the Action, except in connection with the terms of Paragraph 10 below. For the avoidance of doubt, this litigation standstill provision shall not prohibit Sanderson from defending itself against litigation by Opt-Out Growers, as defined in the Confidential Supplement hereto.

4.      Motion for Preliminary Approval, including for Settlement Class Notice. No later than seven (7) days after the Execution Date, Plaintiffs shall move the Court for Preliminary Approval of this Settlement Agreement, including to approve Settlement Class Notice. A reasonable time in advance of submission to the Court, the papers in support of the motion shall be provided by Interim Co-Lead Counsel to Sanderson for its review. To the extent that Sanderson objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel, and the Parties shall meet and confer to resolve any such objection in good faith. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class for purposes of effectuating this Settlement Agreement.

5.      Certification of a Settlement Class. As part of the motion for Preliminary Approval of this Settlement Agreement, Plaintiffs shall seek, and Sanderson shall take no

position with respect to,[4] appointment of Interim Co-Lead Counsel as Settlement Class Counsel

for purposes of this Settlement Agreement and certification in the Action of the following

Settlement Class for settlement purposes only, which shall include Plaintiffs:

> All individuals and entities in the United States and its territories
> that were compensated for Broiler Grow-Out Services by a
> Defendant or Co-Conspirator, or by a division, subsidiary,
> predecessor, or Affiliate of a Defendant or Co-Conspirator, at any
> time during the period of January 27, 2013 through December 31,
> 2019.[5]

6.    <u>Settlement Class Notices.</u> Upon Preliminary Approval, and subject to approval by

the Court of the means for dissemination:

a.    Individual Settlement Class Notice of this Settlement Agreement shall be

mailed, emailed, or otherwise communicated by the Settlement Administrator,

at the direction of Interim Co-Lead Class Counsel, to as many potential

members of the Settlement Class as is practicable, in conformance with a

notice plan to be approved by the Court.

b.    All fees, costs, or expenses related to providing Settlement Class Notice,

obtaining Preliminary Approval and Final Approval, and administering the

settlement, shall be paid solely from the Settlement Fund, subject to any

---

[4] By agreeing not to object to the proposed Settlement Class and appointment of Interim Co-Lead Counsel as Settlement Class Counsel, Sanderson shall not waive any rights, arguments, or defenses, and Sanderson expressly preserves all such rights, arguments, and defenses, including with respect to any situation where the Settlement Agreement is not approved in all material respects by the Court. In no way shall Sanderson have waived any right, defense, argument, or position with respect to any other class (including any litigation class in the event the Settlement Agreement is not approved) in this Action or any other, and Plaintiffs shall not use this Settlement Agreement or any part of the Settlement Agreement in any way to support an argument that Sanderson has waived any defense, argument, or position with respect to any other class in this Action or any other.

[5] Capitalized terms are defined herein.

necessary Court approval. Sanderson shall have no responsibility, financial

obligation, or liability for any fees, costs, or expenses related to providing

Settlement Class Notice; obtaining Preliminary Approval or Final Approval;

or administering the settlement; other than for Sanderson's own attorneys'

fees.

c.   Sanderson shall not object to Interim Co-Lead Class Counsel withdrawing

from the Settlement Fund, subject to any necessary Court approval, up to

$250,000 to pay the costs for Settlement Class Notice.

d.   Interim Co-Lead Class Counsel shall use their best efforts to send out

Settlement Class Notice within 30 days of Preliminary Approval (unless

otherwise agreed between the Parties) to the extent consistent with the Court's

directions and contingent upon the availability of sufficient name and address

information from Defendants and alleged Co-Conspirators. If the Settlement

Agreement is rescinded, cancelled, or terminated, or Final Judgment is not

obtained, then whatever portion of the Settlement Fund that remains after

payment of Settlement Class Notice costs (including payment of taxes)

incurred up through the date of such election shall be returned to Sanderson.

7.      Motion for Final Approval and Entry of Final Judgment. If the Court grants

Preliminary Approval, preliminarily certifies the Settlement Class, and approves the form and

manner of Settlement Class Notice, then Plaintiffs, through Interim Co-Lead Class Counsel shall,

in accordance with the schedule set forth in the Court's Preliminary Approval, submit to the

Court a separate motion for Final Approval of this Settlement Agreement by the Court. A

reasonable time in advance of submission to the Court, the papers in support of the motion for

Final Approval shall be provided by Interim Co-Lead Counsel to Sanderson for its review. To the extent that Sanderson objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Class Counsel and the Parties shall meet and confer to resolve any such objection in good faith. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.  Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement and its material terms and conditions, without material modification of those terms and conditions;

b.  Determining that the Settlement Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement;

c.  Dismissing the Action with prejudice as to Sanderson in all complaints asserted by Plaintiffs without further costs or fees;

d.  Discharging and releasing Sanderson Released Parties from all Released Claims;

e.  Enjoining the Releasing Parties from asserting, directly or indirectly, any of the Released Claims against any of the Sanderson Released Parties in any forum;

f.  Confirming that Sanderson has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA");

g.  Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

     h.   Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Sanderson shall be final and appealable and entered forthwith.

The Parties shall use all best efforts to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

8.     <u>Escrow Account</u>. The Escrow Account shall be administered by Interim Co-Lead Counsel for the Plaintiffs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9.     <u>Settlement Consideration</u>. In consideration for the release of Released Claims, the dismissal with prejudice of the Action, and the other material terms and conditions herein, within thirty (30) calendar days of either the Court's grant of Preliminary Approval or Interim Co-Lead Counsel having provided wire instructions to Sanderson, whichever occurs later, Sanderson shall pay or cause to be paid the Settlement Fund of $17,750,000 (seventeen million seven hundred fifty thousand U.S. dollars) into the Escrow Account. Sanderson shall have no reversionary interest whatsoever in the Settlement Fund should the Settlement Agreement be finally approved by the Court and all appeals from such approval have expired.

10.     <u>Cooperation</u>. Cooperation by Sanderson is a material term of the Settlement Agreement and shall include the following categories of cooperation:

     a.   <u>Cooperation Available After Preliminary Approval of Sanderson Settlement</u>: Plaintiffs shall be entitled to begin receiving all remaining cooperation following Preliminary Approval of the Sanderson Settlement. Plaintiffs and Sanderson shall agree on reasonable timeframes for Sanderson to provide the remaining cooperation, cognizant of Plaintiffs' need to obtain cooperation at

an early enough juncture to be useful in deposition practice, expert discovery, class certification proceedings, summary judgment, and trial. Cooperation shall include the following categories: (a) Sanderson will use reasonable efforts to assist Plaintiffs in authenticating documents and/or things produced in the Action for purposes of summary judgment and/or trial where the facts indicate that the documents and/or things at issue are authentic, whether by declarations or affidavits, or, if declarations or affidavits are not reasonably sufficient, depositions, hearings, and/or at trial(s) as may be necessary for the Action;; and (b) Sanderson will consider reasonable requests for additional relevant information about Plaintiffs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome.

b. <u>Admissibility and Privilege</u>: Any statements made by Sanderson's counsel in connection with cooperation, including the cooperation envisioned by Paragraph 10(a), shall be deemed to be "conduct or statements made during compromise negotiations about the claims" and shall be inadmissible in evidence as provided under Federal Rule of Evidence 408 and state-law equivalents. In the event, for whatever reason, this Settlement Agreement is rescinded, canceled, or terminated or the Settlement Agreement is not approved by the Court, such inadmissibility shall survive. Further, no cooperation shall require Sanderson to provide information protected by the attorney-client privilege, attorney work-product doctrine, or similar

privileges, and Sanderson shall not waive any protections, immunities, or privileges.

c.  <u>Confidentiality</u>: All non-public data, documents, information, testimony, and/or communications provided to Interim Co-Lead Counsel as part of cooperation, if so designated by Sanderson, shall be treated as "Confidential" or "Highly Confidential" under the protective order in the Action.

d.  <u>Arbitration Non-Enforcement</u>: For a period of five (5) years after the Court enters Final Judgment in this Action, Sanderson agrees not to (a) require that any member of the Settlement Class ("Class Member") arbitrate any claims against Sanderson or against any alleged co-conspirator or co-defendant, (b) argue that any Class Member or Class Members are required to arbitrate claims against Sanderson or against any alleged co-conspirator or codefendant based on principles of estoppel, and (c) enforce any provisions in any agreements with one or more Class Member purporting to ban collective or class actions against Sanderson.

11.  <u>Qualified Settlement Fund</u>. The Parties agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 11, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of

DocuSign Envelope ID: 55E32407-9898-400F-8FAC-36A1BE4E4B12

Interim Co-Lead Class Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.468B-1. Interim Co-Lead Class Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. Sanderson and the other Sanderson Released Parties shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.  <u>Distribution of Settlement Fund to Settlement Class</u>. Members of the Settlement Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of the Settlement Agreement or in connection with any of the Released Claims against the Sanderson Released Parties, and shall not be entitled to any other payment or relief from the Sanderson Released Parties. Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. Plaintiffs, members of the Settlement Class, and their counsel shall be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses, and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Sanderson and the other Sanderson Released Parties shall not be liable for any costs, fees, or expenses of any of Plaintiffs' counsel, including Interim Co-Lead Class Counsel and Settlement Class Counsel,

DocuSign Envelope ID: 55E22407-0898-400F-8FAC-36A1BE4E4B12

experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13.      <u>Fee Awards, Costs and Expenses, and Incentive Payments to Plaintiffs</u>. Consistent with any schedule approved by the Court, Interim Co-Lead Class Counsel may apply to the Court for a fee award, plus expenses, and costs incurred, and incentive payments to the Plaintiffs to be paid from the proceeds of the Settlement Fund. The Sanderson Released Parties shall have no responsibility, financial obligation, or liability for any such fees, costs, expenses, or incentive payments beyond the Settlement Fund.

14.      <u>Release</u>. Upon final approval of the Settlement Agreement and the passing of the time to appeal such final approval, and consistent with the terms of the Settlement Agreement, Plaintiffs shall grant to the Sanderson Released Parties a release of all claims covered by the Settlement Agreement. The release shall be nationwide in scope and release all claims (including but not limited to any Sherman Act, Clayton Act, Packers and Stockyards Act, and/or federal, state, or common law unfair competition or anticompetitive conduct claims) any member of the Settlement Class ever had, now has, or hereinafter, can, shall, or may ever have, on account of, or any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected and unsuspected, actual or contingent, liquidated or unliquidated claims, causes of action, injuries, losses (including, without limitation, all costs, expenses, and attorney's fees), or damages arising from or in connection with any act or omission through the date of Preliminary Approval relating to or referred to in the Action or arising from the factual predicate of the Action, including but not limited to Defendants' and Co-Conspirators' alleged overarching scheme, combination, understanding, and/or conspiracy to fix, maintain, stabilize, and/or suppress the compensation paid to Broiler Growers for their provision of Broiler Grow-Out

Services (the "Released Claims"). Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant or alleged Co-Conspirator other than the Sanderson Released Parties, nor (ii) any claims wholly unrelated to the allegations in the Action that are based on breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, a securities claim, or breach of warranty. This reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Sanderson Released Parties to assert any and all arguments and defenses to such claims, and the Parties agree that all such arguments and defenses are preserved. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any and all Released Claims against Sanderson Released Parties. The release of the Released Claims shall become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they shall not assert any claim, directly or indirectly, against Sanderson Released Parties arising out of or relating to the Released Claims.

15.   <u>Further Release</u>. In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon entry of Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is

similar, comparable, or equivalent to Section 1542 of the California Civil Code, including

without limitation Section 20-7-11 of the South Dakota Codified Laws (providing "A

GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES

NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING

THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED

HIS SETTLEMENT WITH THE DEBTOR"). Each Releasing Party may hereafter discover facts

other than or different from those which he, she, or it knows or believes to be true with respect to

the claims which are released pursuant to the provisions of Paragraph 14, but each Releasing

Party hereby expressly waives and fully, finally, and forever settles and releases, upon entry of

Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent

claim that the Releasing Parties have agreed to release pursuant to Paragraph 14, whether or not

concealed or hidden, without regard to the subsequent discovery or existence of such different or

additional facts. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and

unaccrued losses or claims is contractual, and not a mere recital.

16.    <u>Covenant Not to Sue</u>. Plaintiffs and each Releasing Party covenant not to sue,

directly or indirectly, in any forum any of the Sanderson Released Parties for any transaction,

event, circumstance, action, failure to act, or occurrence of any sort or type arising out of the

Released Claims, including, without limitation, seeking to recover damages relating to any of the

Released Claims. This Paragraph shall not apply to any action to enforce this Settlement

Agreement.

17.     <u>Full Release</u>. The Parties expressly agree that they intend for Paragraphs 14-16 to be interpreted as broadly as possible and to the fullest extent permitted by law.

18.     <u>No Admission of Wrongdoing or Liability</u>. Neither this Settlement Agreement (regardless of whether it receives Preliminary Approval or Final Approval), nor the Final Judgment or any order for Preliminary Approval, nor any and all negotiations, documents, or discussions associated with them, nor any proceedings undertaken in accordance with the terms set forth herein, shall be deemed or construed as (i) an admission as to the merits of the allegations made in the Action, (ii) a presumption, admission or concession of fault, liability, wrongdoing, or violation of any statute or law, or (iii) used as evidence of fault, liability, wrongdoing, or violation of any statute or law, for any purpose in any legal proceeding in any forum, claim, regulatory or administrative investigation or proceeding, or government investigation or proceeding.

19.     This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed and approved by the Court.

20.     <u>Sanderson's Right to Rescind</u>. Sanderson shall have the right to rescind and withdraw from the Settlement Agreement under the terms of the Confidential Supplement.

21.     <u>Effect of Disapproval or Rescission</u>. If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 7 herein, or if any order approving this Settlement Agreement is materially modified or set aside on appeal, or if Sanderson exercises its rescission rights pursuant to Paragraph 20, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1.n of this Settlement Agreement, then this Settlement Agreement may be rescinded, canceled, or

terminated by Sanderson or Plaintiffs on behalf of the Settlement Class. If rescinded, canceled, or terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6.b, the Settlement Fund, including any interest accrued thereto, and any attorneys' fees, costs, and incentive payments that may have been disbursed pursuant to Court approval, shall be returned to Sanderson and the Parties' position shall be returned to the status quo ante. In no way shall Plaintiffs have the right to rescind, cancel, or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorneys' fees, costs, expenses, or awards to Plaintiffs.

22.     <u>Choice of Law</u>. All terms of this Settlement Agreement and the Confidential Supplement, including any related disputes, shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice-of-law or conflicts-of-law principles.

23.     <u>Consent to Jurisdiction</u>. The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the Confidential Supplement, or the applicability of this Settlement Agreement or the Confidential Supplement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 14-16, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 14-16 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraphs 14-16 are asserted by any Sanderson Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby

DocuSign Envelope ID: 55E22407-9898-400F-8EAC-36A1BF4E4B12

agreed that such Sanderson Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions.  Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court.  Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement or the Confidential Supplement.

24.     Class Action Fairness Act. Within ten (10) days of filing of this Settlement Agreement in Court with the motion for Preliminary Approval referenced in Paragraph 4, Sanderson, at its sole expense, shall (i) serve upon appropriate Federal and State officials all materials required pursuant to CAFA and (ii) confirm to Plaintiffs' Interim Co-Lead Counsel that such notices have been served.

25.     Costs Relating to Administration. The Sanderson Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

26.     Binding Effect. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein.  Each and every covenant and agreement in this Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, members of the Settlement Class, the Releasing Parties, and the Sanderson Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by

the Plaintiffs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

27.     <u>Sole Remedy</u>. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Sanderson Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Sanderson Released Party.

28.     <u>Counsel's Express Authority</u>. Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

29.     <u>Admissibility</u>. It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

30.     <u>Notices</u>. All notices or communications by any Party intended for any other Party related to this Settlement Agreement shall be in writing. Each such notice or communication shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; (c) Federal Express or similar overnight courier; or (d) electronic mail, and, in the case of either (a), (b), (c) or (d) shall be addressed as follows:

If directed to Plaintiffs, the Settlement Class, or any member of the Settlement Class, to:

Eric L. Cramer
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
ecramer@bm.net

Melinda R. Coolidge
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
mcoolidge@hausfeld.com

DocuSign Envelope ID: 55E22407-0898-400F-8EAC-36A1BE4E4B12

Gary I. Smith, Jr.
Hausfeld LLP
600 Montgomery St, Ste 3200
San Francisco, CA 94111
gsmith@hausfeld.com

If directed to Sanderson, to:

Christopher E. Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW, Suite 600 South
Washington, DC 20004-2533
condeck@proskauer.com

or such other address as the Parties may designate, from time to time, by giving notice to all

Parties hereto in the manner described in this Paragraph. The Parties shall provide courtesy

copies of all notices by electronic mail.

31.   <u>No Admission</u>. Whether or not Preliminary Approval is granted, Final Judgment

is entered or this Settlement Agreement is terminated, the Parties expressly agree that this

Settlement Agreement and its contents, and any and all statements, negotiations, documents, and

discussions associated with it, are not and shall not be deemed or construed to be an admission of

liability by any Party or Sanderson Released Party.

32.   <u>No Unstated Third-Party Beneficiaries</u>. No provision of this Settlement

Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a

Sanderson Released Party, Plaintiff, member of the Settlement Class, Interim Co-Lead Counsel,

or Settlement Class Counsel.

33.   <u>No Party is the Drafter</u>. None of the Parties hereto shall be considered to be the

drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case

law, or rule of interpretation or construction that would or might cause any provision to be

construed against the drafter thereof.

34.     <u>Amendment and Waiver</u>. This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

35.     <u>Breach</u>. This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement. Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

36.     <u>Execution in Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement. Facsimile or .pdf signatures shall be considered as valid signatures as of the date hereof and may thereafter be appended to this Settlement Agreement and filed with the Court.

37.     <u>Integrated and Final Agreement</u>. This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. As set forth in Paragraph 34, the Parties agree that this Settlement Agreement may be modified only by a written instrument

signed by the Parties. The Parties further agree that no Party shall assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

38.     <u>Voluntary Settlement</u>. The Parties agree that this Settlement Agreement was negotiated at arm's length and in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

39.     <u>Confidentiality</u>. The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. However, following execution of this agreement, Sanderson and Plaintiffs can each inform other parties to this Action that they have reached a settlement agreement, the amount of the Settlement Fund, and the cooperation and other relief provided for in Paragraph 10 of this agreement.

[SIGNATURE PAGES FOLLOW]

DocuSign Envelope ID: 55E22407-9898-400F-8EAC-36A1BE4E4B12

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.

### PLAINTIFFS' SIGNATURE PAGE

Dated: _2/28/2023_

By: _____

Eric L. Cramer
Patrick F. Madden
David A. Langer
Ellen T. Noteware
Michaela L. Wallin
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: ecramer@bm.net
Email: pmadden@bm.net
Email: dlanger@bm.net
Email: enoteware@bm.net
Email: mwallin@bm.net

Daniel J. Walker
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Tel: (202) 559-9745
Email: dwalker@bm.net

*Co-Lead Counsel For The
Proposed Settlement Class*

Dated: February 28, 2023

By: _____

Gary I. Smith, Jr.
Kyle G. Bates
**HAUSFELD LLP**
600 Montgomery St, Ste 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 633-4980
Email: gsmith@hausfeld.com
Email: kbates@hausfeld.com

Michael D. Hausfeld
James J. Pizzirusso
Melinda R. Coolidge
Samantha S. Derksen
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
Email: mhausfeld@hausfeld.com
Email: jpizzirusso@hausfeld.com
Email: mcoolidge@hausfeld.com
Email: sderksen@hausfeld.com

*Co-Lead Counsel For The
Proposed Settlement Class*

## SANDERSON SIGNATURE PAGE

Dated: 23 February 2023

By: _____

Jeremy V. Kilburn
Chief Legal & Compliance Officer
WAYNE SANDERSON FARMS
Corporate Headquarters
4110 Continental Drive | Oakwood, GA 30566
jeremy.kilburn@waynefarms.com

Dated: 22 February 2023

By: _____

Christopher E. Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW, Suite 600 South
Washington, DC 2004-2533
condeck@proskauer.com

*Attorneys for Defendants Sanderson Farms, Inc., Sanderson Farms, Inc. (Food Division),
Sanderson Farms, Inc. (Processing Division), and Sanderson Farms, Inc. (Production Division)*

28