**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| **IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II)** | MDL No. 6:20-md-2977-RJS-CMR<br><br>Hon. Chief Judge Robert J. Shelby<br><br>Hon. Cecilia M. Romero |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR APPROVAL OF THE FORM AND MANNER OF
SETTLEMENT CLASS NOTICE**

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................................1

II.   BACKGROUND ....................................................................................................................2

III.  LEGAL STANDARD ...........................................................................................................4

IV.  THE PROPOSED NOTICE PLAN WARRANTS APPROVAL ...........................................5

     A.   The Notice Plan's Direct Notice Component is Robust ............................................6

     B.   The Notice Plan's Media Notice Components Include Broadly-Directed Notice Mechanisms as Well as Narrowly-Targeted Mechanisms .................................................................7

     C.   The Notice Plan Satisfies Rule 23 and Due Process................................................10

     D.   The Claims Process Allows for As Many Class Members as Possible to Receive Settlement Proceeds, as Easily as Possible ...............................................................11

     E.   The Notice Plan Explains the Opt-Out Process .....................................................12

V.   CONCLUSION ...................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beaver v. Omni Hotels Management Corp.*,
    No. 3:20-cv-00191-AJB-DEB (S.D. Cal.) ......................................................................... 2

*Chieftain Royalty Co. v. XTO Energy, Inc.*,
    No. CIV-11-29-KEW, 2018 WL 501656 (Jan. 18, 2018) ................................................ 10

*In re Crocs, Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) ....................................................................................... 4

*DeJulius v. New England Health Care Emp. Pension Fund*,
    429 F.3d 935 (9th Cir. 2005) ....................................................................................... 4, 5

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ......................................................................................................... 3

*Jien et al. v. Perdue Farms, Inc. et al.*,
    No. 1:19-cv-02521 (D. Md.) .............................................................................................. 3

*Le v. Zuffla LLC, et al.*,
    No. 2:15-cv-01045-RFB-BNW (D. Nev.) ......................................................................... 2

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ......................................................................................................... 4

*Nat'l Treasury Emps. Union v. United States*,
    54 Fed. Cl. 791 (2002) ...................................................................................................... 5

*O'Dowd v. Anthem, Inc.*,
    No. 14-cv-02787, 2019 WL 4279123 (D. Colo. Sept. 9, 2019) ......................................... 5

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006) ............................................................................... 5

*In re Samsung Top-load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    No. 17-ML-2792-D, 2020 WL 2616711 (W.D. Okla. May 22, 2020), *aff'd* 997 F.3d
    1077 (10th Cir. 2021) .................................................................................................... 4, 8

*Tennille v. W. Union Co.*,
    785 F.3d 422 (10th Cir. 2015) ............................................................................... 3, 4, 5, 8

**Statutes & Rules**

Fed. R. Civ. P. 23 ...........................................................................................................*passim*

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 3, 4, 6, 9

Fed. R. Civ. P. 23(c)(2) ......................................................................................................... 1

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 1, 3, 4, 6

Fed. R. Civ. P. 23(c)(3) ..................................................................................................... 4, 10

**Other Authorities**

7AA Wright, Miller & Kane, *Federal Practice & Procedure* § 1787 ...................................................... 4, 9

## I.      INTRODUCTION

Plaintiffs Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles Weaver, Marc McEntire, Karen McEntire, Mitchell Mason (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class, hereby move pursuant to Rule of Civil Procedure 23(c)(2)(B) to approve the form and manner of class notice to members of the Settlement Class (the "Notice Plan") and to appoint Angeion Group, LLC ("Angeion") as the notice administrator for the Notice Plan. The proposed Notice Plan is exemplary, is identical to the successful notice plans this Court has previously approved for the prior settlements reached in this case,[1] will reach well over ninety percent of the Settlement Class, and easily and meets the requirements of Rules 23(c)(2) of the Federal Rules of Civil Procedure.

As with the Court-approved notice plans for the prior settlements, Plaintiffs propose a thorough and comprehensive notice campaign designed and administered by Steven Weisbrot, a well-known expert in this field, and his team at Angeion who have successfully overseen each of the prior settlement-related notice campaigns in this case. Specifically, this Notice Plan will include:

- Direct notice to an estimated 99% of members of the Settlement Class;
- A strategic print publication schedule;
- Programmatic display advertising;
- Social media advertising;
- A press release; and
- A website, a toll-free telephone line, a P.O. Box, and an email address to receive and address questions from Settlement Class members.

*See generally* Weisbrot Decl. ¶¶ 15-35 (summary of notice plan); *id.* Exs. B-D.

Plaintiffs have proposed a schedule for the implementation of the Notice Plan, which is set forth in full in the Proposed Order submitted concurrently herewith. The proposed schedule gives Settlement Class members seventy-five days to request to be excluded. Courts routinely

---

[1] These include the notice plans approved in connection with the Tyson, Perdue, Koch, and Sanderson settlements. *See* ECF Nos 146, 483 and 366.

approve notice plans with exclusion periods as short as forty-five days,[2] and the seventy-five day period here is identical to that recently approved by this Court for all of the prior settlements in this case.[3]

The proposed Notice Plan fully comports with due process and Federal Rule of Civil Procedure 23 and is the best notice practicable under the circumstances. As such, approval of the proposed Notice Plan is warranted.

## II.    BACKGROUND[4]

This case concerns price-fixing in the market for Broiler Grow-Out Services across the country. Plaintiffs and the certified Class are Growers who raised Broilers for Defendants and their alleged Co-Conspirators (together, Integrators) across the country. Plaintiffs contend that Integrators used two alleged agreements to artificially suppress the wages they paid to members of the Class: 1) the No-Poach Agreement (by which Integrators agreed not to "direct[ly]" or "active[ly]" recruit Growers employed by one another) and 2) the Information Sharing Agreement (by which Integrators shared competitively sensitive information with one another and in doing so were able to monitor the rates at which they were each paying their Growers). On March 28, 2013, Plaintiffs moved to certify a class of 24,354 Growers who provided Broiler Grow-Out Services to Integrators from January 27, 2013 through December 31, 2019, and the Court certified the Class on May 8, 2024.[5]  Following the Court's class certification order and in the midst of pre-trial briefing both in this Court and the Tenth Circuit, Plaintiffs and Pilgrim's Pride Corporation ("PPC") engaged with a well-known mediator and ultimately reached a settlement that was announced in the Parties' July 10, 2024 Notice of Settlement.[6]  That settlement, which resolves this almost nine-year litigation and is the largest settlement by a

---

[2] *E.g.*, Order Granting Pls' Unopposed Mot. to Approve Class Notice Plan, *Le v. Zuffa, LLC*, No. 2:15-cv-01045-RFB-BNW (D. Nev. Nov. 17, 2023), ECF No. 921 (approving an exclusion period of forty-five days), Order re J. Mot. Directing Class Notice, *Beaver v. Omni Hotels Mgmt. Corp.*, No. 3:20-cv-00191-AJB-DEB (S.D. Cal. May 3, 2024) (same).

[3] These include including both the Tyson and Perdue settlements (ECF No. 146), the Koch settlement (ECF No. 366) and the Sanderson settlement (ECF No. 483).

[4] For ease of reference capitalized terms throughout this Section have the same meaning as in Plaintiffs' Motion and Memorandum of Law In Support of Motion for Class Certification, ECF No. 454, and the Court's Memorandum Opinion and Order Granting Plaintiffs' Motion for class Certification and Denying Defendant's Motion to Exclude, ECF No. 798.

[5] *See* ECF Nos. 454 and 798.

[6] *See* ECF No. 611.

single defendant in any protein-related antitrust case,[7] is described in more detail in Plaintiffs'
Motion for Preliminary Approval submitted concurrently herewith.

Plaintiffs previously reached Court-approved settlements with all Defendants except
PPC,[8] and in connection with each of those settlements presented notice plans for the Court's
review and approval.[9] Those notice plans, which are identical to the Notice Plan Plaintiffs
present herein in connection with their settlement with PPC, consist of a multi-faceted approach
carefully designed and implemented by experts with a proven track record. Plaintiffs have had
tremendous success in these prior notice campaigns, none of which have been objected to and all
of which resulted in over 90% of the relevant individuals or entities receiving direct notice that
detailed their rights and the relevant deadlines. Indeed, Plaintiffs have made tens of millions of
dollars in relief available to more than 23,000 class members through the successful application
of these settlement-related notice programs. Now Plaintiffs seek to use the same previously
successful methods, to which PPC also does not object, to provide notice to the Settlement Class
about their rights concerning the present settlement with PPC. For the same reasons that the
Court approved each of the prior settlement-related notice plans,[10] the Court should do so here.

---

[7] These cases consist of price-fixing cases related to sales of such proteins (*In re Cattle Antitrust
Litig.*, No. 19-cv-01222 (D. Minn.), *In re Cattle and Beef Antitrust Litig.*, No. 0:22-md-03031
(D. Minn.), *In re Turkey Antitrust Litig.*, No. 19-cv-8318 (N.D. Ill.), *In re Pork Antitrust Litig.*,
No. 21-md-2998 (D. Minn.), *Broiler Chicken Antitrust Litig.*, No. 16-cv-08637 (N.D. Ill.)) and
two antitrust class actions that, like this case, concern conspiracies to suppress wages (*Brown et
al. v. JBS Food Company et al.*, No. 1:22-cv-02946 (D. Colo.), which was filed on behalf of beef
processing plant workers, and *Jien et al. v. Perdue Farms, Inc. et al.*, No. 1:19-cv-02521 (D.
Md.), which concerns poultry processing plant workers).

[8] *See* ECF No. 144, *Order Preliminarily Approving of Settlement with Tyson Defendants,
Certifying the Settlement Class for Purposes of Settlement, and Appointing Settlement Class
Counsel*; ECF No. 145, *Order Preliminarily Approving Settlement with Perdue, Certifying the
Settlement Class for Purposes of Settlement, and Appointing Settlement Class Counsel*; ECF No.
367, *Order Preliminarily Approving Settlement with Koch, Certifying the Settlement Class for
Purposes of Settlement, and Appointing Settlement Class Counsel*; ECF No. 482, *Order
Preliminarily Approving Settlement with Sanderson, Certifying the Settlement Class for
Purposes of Settlement, and Appointing Settlement Class Counsel*.

[9] *See* ECF No. 135, *Pls' Mot. & Mem. of Law in Support of Mot. for Approval of the Form &
Manner of Class Notice & Appointment of Settlement Administrator & Request for Expedited
Treatment* (Perdue & Tyson); ECF No. 359, *Mot. & Mem of Law in Support of Mot. for
Preliminary Approval of the Form & Manner of Class Notice & Appointment of Settlement
Administrator* (Koch), ECF 436, *Mot. & Mem. of Law in Support of Mot. for Approval of the
Form & Manner of Class Notice & Appointment of Settlement Administrator* (Sanderson).
10 ECF Nos 146, 483 and 366.

### III.    LEGAL STANDARD

Plaintiffs' proposed form and manner of notice satisfies the applicable standards governing class notice set out in Federal Rule of Civil Procedure 23. Rule 23(c)(2)(B) governs notice requirements for any class certified under Rule 23(b)(3), requiring the district court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The form of the notice is left to the discretion of the district court. *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015). Notice will satisfy Rule 23 if it gives Rule 23(b)(3) class members "sufficient information about the specific lawsuit to allow a class member to assess whether to exercise the right either to appear or to opt out." *Tennille*, 785 F.3d at 437 (quoting 7AA Wright, Miller & Kane, *Federal Practice & Procedure* § 1787, 511-12).

A class notice must state in plain, easily understood language, (i) the nature of the action; (ii) the definition of the class that is being certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(3).

In addition, due process protections afford unnamed class members certain rights. *Tennille*, 785 F.3d at 436; *DeJulius v. New England Health Care Emp. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). "The legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee[s] of procedural due process are coextensive and substantially similar." *DeJulius*, 429 F.3d at 944; *see also, e.g.*, *Tennille*, 785 F.3d at 436; *In re Samsung Top-load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 17-ml-2792-D, 2020 WL 2616711, at *10 (W.D. Okla. May 22, 2020), *aff'd* 997 F.3d 1077 (10th Cir. 2021); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 693 (D. Colo. 2014). "Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."' *DeJulius*, 429 F.3d at 944 (quoting *Mulane*, 339 U.S. at 314); *In re Crocs*, 306 F.R.D. at 693. However, neither Rule 23 nor due process "require *actual* notice to each party intended to be bound by the adjudication of a representative action."

4

*DeJulius*, 429 F.3d at 944; *Samsung*, 2020 WL 2616711, at *10. For due process purposes, much like for Rule 23 purposes, Tenth Circuit precedent "focuses upon whether the district court gave the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *DeJulius*, 429 F.3d at 944 (internal quotation omitted); *Samsung*, 2020 WL 2616711 at *10 (quotation omitted).

As to the methods of distributing settlement funds, "[n]otice provided to the class is adequate where it sets forth the formula for distributing the settlement fund among the class members." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006). It is unnecessary to specifically provide the amount that each individual class member may expect to recover (and it is not at all unusual for class members not to know the amounts they will be receiving until after final approval), but notice should explain the procedures for allocating and distributing the settlement funds. *Sprint*, 443 F. Supp. 2d at 1262 (citing *Nat'l Treasury Emps. Union v. United States*, 54 Fed. Cl. 791, 806 (2002)). Further, "as a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787, 2019 WL 4279123, at *15 (D. Colo. Sept. 9, 2019) (approving *pro rata* plan of allocation).

## IV.    THE PROPOSED NOTICE PLAN WARRANTS APPROVAL

The proposed Notice Plan is the best notice practicable under the circumstances and fully comports with Federal Rule of Civil Procedure 23 and due process. The Notice Plan contemplates using a combination of:

- Direct notice to an estimated 99% of members of the Settlement Class;
- A strategic print publication schedule;
- Programmatic display advertising;
- Social media advertising;
- A press release; and
- A website, a toll-free telephone line, a P.O. Box, and an email address to receive and address questions from Settlement Class members.

*See generally* Weisbrot Decl. ¶¶ 15-35 (summary of notice plan); *id.* Exs. B-D.

The proposed Notice Plan is identical to the Court-approved notice plans previously considered in connection with Plaintiffs' settlements with the four prior Settling Defendants, and

contains all of the elements that courts routinely look for in approving class notice.[11] *See, e.g.*, *Tennille*, 785 F.3d at 436-37 (notice provided instructions on how to obtain more information, directions to access a settlement website containing settlement documents, and instructions on how to contact class counsel). The Notice Plan and corresponding notices comply with all legal requirements and fully comport with Federal Rule of Civil Procedure 23 and due process. *See* Weisbrot Decl. ¶ 15.

     **A.**     **The Notice Plan's Direct Notice Component is Robust**

     The Notice Plan contemplates direct notice to all members of the Settlement Class for whom Defendants and alleged Co-Conspirators provided mailing addresses and compensation history. Weisbrot Decl. ¶ 18. Direct notice will be sent via mail and will include a Pre-Populated Claim Form and long-form notice (described below and attached as exhibits to the Weisbrot Declaration) sent to all reasonably identifiable members of the Settlement Class via direct mail, which is estimated to reach approximately 99% of Class members. *Id*. Rule 23(c)(2)(B), which governs the notice requirements for any class certified under Rule 23(b)(3) such as this one, requires that the district court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The Notice Plan, which will provide direct, individual notice to more than 99% of the Settlement Class, readily satisfies Rule 23 and due process. *DeJulius*, 429 F.3d at 945-46. For all members of the Settlement Class for whom Plaintiffs possess sufficient structured data, a Pre-Populated Claim Form will be included in that mailing. Weisbrot Decl. ¶ 17 Currently, Plaintiffs estimate that they have sufficient structured data to mail Pre-Populated Claims Forms to 99% of Settlement Class members. *Id*. ¶ 17. For Settlement Class members for whom a viable address is available, but there is not sufficient structured data to pre-populate a claim form, will be directly mailed an Unpopulated Claim Form. *Id*. ¶ 17. Those Settlement Class members will be able either to submit an Unpopulated Claim Form by either submitting providing sufficient documentation supporting to support their claimed grower payments over the settlement class period or to by filling out a simple series of questions, with either approach being sufficient for the Settlement Administrator to determine their *pro rata* share. *Id*. ¶ 17.

---

[11] ECF Nos 146, 483 and 366.

Angeion will confirm mailing address information for Settlement Class members via the National Change of Address database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the United States Postal Service ("USPS"). Weisbrot Decl. ¶ 18. Notices that are returned to Angeion by the USPS with a forwarding address will be re-mailed to the new address provided and the class member database will be updated accordingly. *Id.* ¶ 19. If notices are returned to Angeion by the USPS without a forwarding address, Angeion will run an address verification search (known as "skip tracing") using a wide variety of data sources, including, *inter alia*, public records, real estate records, electronic directory assistance listings, to locate a current address. *Id.* ¶ 20.

**B.    The Notice Plan's Media Notice Components Include Broadly-Directed Notice Mechanisms as Well as Narrowly-Targeted Mechanisms**

In addition to direct notice, the Notice Plan outlines an extensive campaign for media notice to the Settlement Class. Weisbrot Decl. ¶ 22-28. The Media Notice has five distinct notice components: (i) Angeion will utilize programmatic display advertising to place advertisements on websites Settlement Class members are most likely to visit; (ii) Angeion will place 1/8-page advertisements in publications centered around chicken processing complexes in locations where it is less likely that members of the Settlement Class will be reachable by direct mail; (iii) Angeion will also cause notice to be published in the Poultry Times, a leading industry publication; (iv) Angeion will engage in a social media campaign over Facebook, which will engage with Settlement Class members via news feed and story units, image adds, and right column adds; and (v) a press release which will be distributed over the National & Agriculture circuit in PR Newswire to garner "earned media" as other media outlets and publications pick up and report the story. *Id.* ¶¶ 22-28. These mechanisms will assist in reaching the Settlement Class members who may not have received direct notice. Each component is discussed in more detail below.

**i.    Programmatic Display Advertising**

Angeion will use a form of internet advertising known as Programmatic Display Advertising, the leading method of buying digital advertisements in the country. Weisbrot Decl. ¶ 22. Programmatic Display Advertising uses an algorithm to identify demographic profiles to

place advertisements on specific, targeted websites where members of the audience are most likely to visit. *Id.*

### ii.    Advertisements in Print Publications

The Notice Plan includes a strategically geo-targeted publication notice campaign. Angeion will publish a 1/8-page advertisement one time in each of the following publications, which target locations where it is least likely members of the Settlement Class will be reachable by direct mail notice: the Savannah Morning News and Claxton Enterprise for Claxton, Georgia; the Atlanta Journal Constitution and Barrow News-Journal for Bethlehem, Georgia; the Goldsboro News Argus for Dudley, North Carolina; the Morganton News Herald for Morgantown, North Carolina; the Wooster Daily Record for Winesburg, Ohio; and the Canton Repository for Canton, Ohio. Weisbrot Decl. ¶ 23. Each of these publications will inform Settlement Class members how to obtain information about the case, copies of the long-form and summary notice, and how to find and review the website for other important documents and information. *Id.* ¶ 23.

### iii.    Publication in the Poultry Times

Further to the geo-targeted publications, Angeion will also publish notice in the Poultry Times, a leading industry publication that is published twice a month. Weisbrot Decl. ¶ 24. Angeion will publish a 1/2-page advertisement one time that will reach the paid circulation of over 13,000 targeted readers of the Poultry Times. *Id.* This readership consists of approximately 65% growers, producers, and hatcheries. *Id.*

### iv.    Social Media Campaign

The Notice Plan will also include a social media campaign utilizing Facebook, one of the leading social media platforms in North America. Weisbrot Decl. ¶ 25-28. The social media campaign will engage with Settlement Class members through a mix of news feed and story units to optimize the performance of Facebook whether they are using a desktop site, mobile site, or mobile application, and specific tactics will be implemented to further qualify and deliver impressions to Settlement Class members. *Id.* ¶¶ 26-27. The advertisements on Facebook will

also attempt to geo-target with a weighted delivery to account for the geographics of the Settlement Class. *Id.* ¶ 227.

### v.   Press Release

Finally, Angeion will organize a press release to be distributed over the National and Agriculture circuit on PR Newswire to further diffuse news of the litigation. Weisbrot Decl. ¶ 29. This will allow additional coverage and dissemination to Settlement Class members as other media outlets report on the story from the Press Release. *Id.* ¶ 29.

Plaintiffs Will Establish a Settlement Website, P.O. Box, Email Address, and Toll-Free Number to Assist Settlement Class Members

The Notice Plan includes a website, https://www.broilergrowersantitrustsettlement.com/, where members of the Settlement Class can easily view general information about the case, review relevant Court documents, view important dates and deadlines, and reach out via the "Contact Us" page if they have questions. Weisbrot Decl. ¶ 30-31. On the Settlement website, Settlement Class members will have the ability to upload claims forms and supporting documentation where necessary. *Id.* ¶ 31. The Settlement website will also provide access to generic claim forms and important case documents and will prominently display important deadline information. This website also contains similar information about Plaintiffs' prior settlements, and has already had substantial traffic from Settlement Class members. *Id.* ¶ 32. In addition to the monetary relief PPC has agreed to provide to the Settlement Class, PPC has also agreed to certain non-monetary relief in the form of certain restrictions on its ability to enforce arbitration provisions against broiler chicken growers and on its ability to enforce provisions restricting collective or class actions brought by Broiler chicken growers against Pilgrim's. That non-monetary relief will last for a period of five years, and Plaintiffs have undertaken to maintain the settlement website for a period of six years to ensure that Settlement Class members can still seek out and receive information about the settlement through the entire operative period for the non-monetary relief.

Angeion will also implement a toll-free hotline to further apprise Settlement Class members of their rights and options with regard to their participation in the Settlement Class. This hotline includes an automated Interactive Voice Recording ("IVR"), available 24 hours a day, seven days a week, that will provide class members with case-related information and the ability to request and receive the notices by mail. Weisbrot Decl. ¶ 32. Lastly, Angeion will

establish an email address to receive and process communications by Settlement Class members.
¶ 30.

      **C.**      **The Notice Plan Satisfies Rule 23 and Due Process**

The Notice Plan is consistent with the Federal Rules of Civil Procedure and due process.
Although some non-material modifications may be necessary to accommodate case events (*e.g.*,
changing deadlines or personnel or converting and conforming exhibits to electronic or digital
formats), the final products will be substantially similar to the materials attached to the Weisbrot
Declaration at Exhibits B-E. Each contain summaries of the case and the options that are
available to Settlement Class members, as well as how to obtain more information about the
case. The Notice Plan, therefore, clearly meets the prevailing requirements. *See Tennille*, 785
F.3d at 437 (quoting 7AA Wright, Miller & Kane, *Federal Practice & Procedure* § 1787, 511-
12) (holding that notice will satisfy Rule 23 if it gives Rule 23(b)(3) class members "sufficient
information about the specific lawsuit to allow a class member to assess whether to exercise the
right either to appear or to opt out.")

The long-form notice will be posted on the website. Weisbrot Decl. ¶ 30. The long-form
notice provides details regarding the nature of the action; the makeup of the Settlement Class;
general descriptions of the claims asserted by Plaintiffs and the defenses raised by Pilgrim's
Pride; the right of class members to opt out of the Settlement Class; a description of the method
of allocation for the Settlement's monetary relief including claim forms; and the binding effect of
any future Court orders on members of the Settlement Class who choose not to opt out. *See
generally id.* Ex. B. The long-form notice also provides, *inter alia*, details on when claims and
objections are due, the procedures and timing for objecting or opting out, how and where to seek
additional information, and how to submit a claim. *Id.*; *Chieftain Royalty Co. v. XTO Energy,
Inc.*, No. CIV-11-29-KEW, 2018 WL 501656, at *3 (Jan. 18, 2018); *Samsung*, 2020 WL
2616711, at *10 (notice approved that explained the nature of the action, the definition of the
class certified, the class claims, issues, or defenses, that a class member may enter an appearance
through an attorney if the member so desires, that the court will exclude from the class any
member who requests exclusion, the time and manner for requesting exclusion, and the binding
effect of a class judgment on members under Rule 23(c)(3)). Weisbrot Decl. Ex. B.

The short-form notice was based on the long-form notice to create summary forms of
notice for publication. The short-form notice provides, among other things, a summary of what

the lawsuit is about, who is affected, the deadline for valid requests to opt out, and how and where to obtain more information. Weisbrot Decl. Ex. C.

Finally, the Pre-Populated Claim Form or the Unpopulated Claim Form, whichever is applicable to the Class Member, will provide Class members with information about their compensation amounts, if known. Weisbrot Decl. Ex. D and E, respectively.

### D.    The Claims Process Allows for As Many Class Members as Possible to Receive Settlement Proceeds, as Easily as Possible

The Notice Plan is designed to direct claimants on how to efficiently file their claims. There are two versions of the Claim Form—a Pre-Populated Claim Form and an Unpopulated Claim Form. The Claim Forms are designed to ensure that filing a claim is as simple as possible and will be sent to any individual who requests one.

#### 1.    Pre-Populated Claim Form

The Pre-Populated Claim Form—whether simply disregarded because a Settlement Class member agrees with the information therein or corrected or supplemented via the Settlement website or in hard copy—is designed to ensure that participating in the Settlements is as simple as possible.

The Pre-Populated Claim Form will contain information from payment records maintained by the Defendants and alleged Co-Conspirators and directs Settlement Class members to review and, if necessary, submit the claim form. Weisbrot Decl., Ex. E. The first portion of the Pre-Populated Claim Form directs class members to review the records of payment information provided by Defendants and alleged Co-Conspirators, and if the information is correct, they do not need to do anything further: their *pro rata* award will be based on the payment information provided. This ensures the vast majority of Settlement Class members will receive a distribution form the Settlement Funds even if they do nothing. If, however, a Settlement Class member perceives inconsistencies or errors in the records of payment information provided by Defendants and their alleged Co-conspirators, they are directed to correct or supplement their payment information with supporting documentation by the applicable deadlines.

#### 2.    Unpopulated Claim Form

The Unpopulated Claim Form is similarly designed to ensure that filing a claim is as simple as possible. The Unpopulated Claim Form will be sent to members of the Settlement

Class where Plaintiffs have viable address information but lack sufficient structured data from Defendants and Co-Conspirators to pre-populate a claim form. Weisbrot Decl. ¶ 17. It will also be available on the settlement website, where prospective class members that receive any of the various forms of publication and media notice will be directed. *Id.* ¶¶ 31, 23-24. Class members have two options. First, they can answer a series of simple questions on the Unpopulated Claim Form that will enable the Settlement Administrator to estimate their *pro rata* share based on available industry data from Agri Stats, Inc.[12] *Id.* ¶ 31. Alternatively, Settlement Class members who received (or request, download, or otherwise obtain and submit) an Unpopulated Claim Form have the option to submit their own documentation to substantiate their *pro rata* share of the Net Settlement Fund. *Id.* ¶ 17.

### E.     The Notice Plan Explains the Opt-Out Process

Any member of the Settlement Class may decide to exclude themselves ("opt out") from the Settlement Class. The long-form notice explains these legal rights to Settlement Class members, Weisbrot Decl. Ex. B, and both forms of notice (long-form and summary) provide the deadlines for taking such action, *id.* Ex. B-C. That information is also available on the website. The deadline for requesting exclusion from the Settlement Class will be established by the Court and Plaintiffs have proposed such a deadline in their Proposed Order.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted.

Dated: August 16, 2024                    Respectfully submitted,

*/s/ Kyle G. Bates* \*
Kyle G. Bates\*
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, NY 10004
Telephone: (415) 744-1966
Facsimile (212) 202-4322
kbates@hausfeld.com

---

[12] These questions will include primarily (1) the Defendant or Co-Conspirator Broiler Grow-Out Services were performed for; (2) the years Broiler Grow-Out Services were performed; (3) the number of farms the Settlement Class member operated; and (4) for any partial years the Settlement Class member provided Broiler Grow-Out Services, the number of flocks raised during that partial year. Smith Decl. ¶ 18 n.15, ECF No. 614-1.

Gary I. Smith, Jr.*
**HAUSFELD LLP**
600 Montgomery Street, Suite
3200 San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 633-4980
gsmith@hausfeld.com

Samantha S. Derksen*
Michael D. Hausfeld*
James J. Pizzirusso*
Melinda R. Coolidge*
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
sderksen@hausfeld.com
mhausfeld@hausfeld.com
jpizzirusso@hausfeld.com
mcoolidge@hausfeld.com

Eric L. Cramer*
Ellen T. Noteware*
Patrick F. Madden*
Michaela L. Wallin*
David Langer*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
pmadden@bm.net
dlanger@bm.net
enoteware@bm.net
mwallin@bm.net

Daniel J. Walker*
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
dwalker@bm.net

***Interim Co-Lead Counsel for Plaintiffs and the***

13

*Proposed Class*

M. David Riggs
Donald M. Bingham
Kristopher Koepsel
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
502 West Sixth Street
Tulsa, OK 74119
Telephone: (918) 699-8914
Facsimile: (918) 587-9708
driggs@riggsabney.com
don_bingham@riggsabney.com
kkoepsel@riggsabney.com

William A. Edmondson (OBA No. 2628)
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
528 N.W. 12th Street
Oklahoma City, OK 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
dedmondson@riggsabney.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

Larry D. Lahman (OBA No. 5166)
Roger L. Ediger (OBA 19449)
**MITCHELL DECLERK, PLLC**
202 West Broadway Avenue
Enid, OK 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890
ldl@mdpllc.com
rle@mdpllc.com

Warren T. Burns*
**BURNS CHAREST, LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com

Gregory L. Davis*
**DAVIS & TALIAFERRO, LLC**
7031 Halcyon Park Drive

14

Montgomery, AL 36117
Telephone: (334) 832-9080
Facsimile: (334) 409-7001
gldavis@gregdavislaw.com

Charles D. Gabriel*
**CHALMERS & ADAMS LLC**
North Fulton Satellite Office
5755 North Point Parkway, Suite 251
Alpharetta, GA 30022
Telephone: (678) 735-5903
Facsimile: (678) 735-5905
cdgabriel@cpblawgroup.com

Larry S. McDevitt*
David M. Wilkerson*
**VAN WINKLE LAW FIRM**
11 North Market Street Asheville, NC
28801 Telephone: (828) 258-2991
Facsimile: (828) 257-2767
lmcdevitt@vwlawfirm.com
dwilkerson@vwlawfirm.com

Harlan Hentges (OBA No. 17911)
**HENTGES & ASSOCIATES, PLLC**
102 East Thatcher Street
Edmond, OK 73034
Telephone: (405) 340-6554
Facsimile: (405) 340-6562
harlan@organiclawyers.com

John C. Whitfield*
**WHITFIELD COLEMAN MONTOYA, PLLC (TN)**
518 Monroe Street
Nashville, TN 37208
Telephone: (615) 921-6500
Facsimile: (615) 921-6501
jwhitfield@wcbfirm.com

J. Dudley Butler*
**BUTLER FARM & RANCH LAW GROUP, PLLC**
499-A Breakwater Drive
Benton, MS 39039
Telephone: (662) 673-0091
Facsimile: (662) 673-0091
jdb@farmandranchlaw.com

15

Daniel M. Cohen*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202)789-1813
Danielc@cuneolaw.com

Leah M. Nicholls*
**PUBLIC JUSTICE, PC**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Facsimile: (202) 232-7203
lnicholls@publicjustice.net

Kellie Lerner*
Meegan F. Hollywood*
Benjamin Steinberg*
**ROBINS KAPLAN, LLP**
1325 Avenue of the Americas, Suite
2601 New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
KLerner@RobinsKaplan.com
MHollywood@RobinsKaplan.com
BSteinberg@RobinsKaplan.com

M. Stephen Dampier*
**DAMPIER LAW FIRM**
55 North Section Street
P.O. Box 161
Fairhope, AL 36532
Telephone: (251) 929-0900
Facsimile: (251) 929-0800
stevedampier@dampierlaw.com

Michael L. Silverman*
**ROACH LANGSTON BRUNO LLP**
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
Telephone: (773) 969-6160
msilverman@rlbfirm.com

Grant L. Davis*

16

Thomas C. Jones*
Timothy Gaarder*
Thomas E. Ruzicka, Jr.*
**DAVIS BETHUNE & JONES, LLC**
1100 Main Street, Suite 2930
Kansas City, MO 64105
Telephone: (816) 421-1600
gdavis@dbjlaw.net
tgaarder@dbjlaw.net
tjones@dbjlaw.net
truzicka@dbjlaw.net

Robert Bonsignore, Esq.*
**BONSIGNORE, TRIAL LAWYERS, PLLC**
23 Forest Street
Medford, MA 02155
Telephone: (781) 350-0000
rbonsignore@class-actions.us

*Additional Class Counsel for
Plaintiffs and the Proposed Class*

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2024, I electronically transmitted a true and correct copy of the foregoing document to the Clerk of Court for filing using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kyle G. Bates*

Kyle G. Bates